# EXHIBIT D

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

| | |
|---|---|
| Nestle Purina PetCare Company, | ) |
| *Plaintiff* | ) |
| v. | ) |
| The Blue Buffalo Company Ltd., | ) |
| *Defendant* | ) |

Civil Action No.   4:14-cv-00859

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Wilbur-Ellis Company, c/o C T Corporation System
             120 South Central Avenue, Clayton, MO 63105

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: see attached Schedule A.

| Place: David A. Roodman, Bryan Cave LLP | Date and Time: |
|---|---|
| 211 North Broadway, Suite 3600 | |
| St. Louis, MO 63102-2750 | 08/22/2014 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     08/08/2014

CLERK OF COURT                                         OR     _Richd M Assmus_
_____                              _____
Signature of Clerk or Deputy Clerk                              Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Nestle
Purina PetCare Company                                                                   , who issues or requests this subpoena, are:
Richard M. Assmus; 71 S. Wacker Drive, Chicago, IL 60606; rassmus@mayerbrown.com; 312-701-8623

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  4:14-cv-00859

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  (1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

  (2) *For Other Discovery.* A subpoena may command:
    (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  (2) *Command to Produce Materials or Permit Inspection.*
    (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  (3) *Quashing or Modifying a Subpoena.*
    (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
    (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  (1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  (2) *Claiming Privilege or Protection.*
    (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

NESTLÉ PURINA PETCARE COMPANY,    )
                                     )
          Plaintiff,             )
                                       )
         v.                     )   Case No. 4:14-cv-00859
                                     )
THE BLUE BUFFALO COMPANY LTD.,    )
                                     )
          Defendant.         )

## SCHEDULE A

**DEFINITIONS**

The following subpoena requests are subject to the definitions and instructions set forth below:

A.     "Blue Buffalo" means defendant The Blue Buffalo Company Ltd., including without limitation any divisions, departments, parents, predecessors, successors, subsidiaries, affiliates, and other organizational or operating units and present or former officers, directors, employees, or agents and all persons purporting to act on Blue Buffalo's behalf.  This definition includes, but is not limited to, any co-packers operating on behalf of Blue Buffalo.

B.     "Purina" means plaintiff Nestlé Purina PetCare Company, including all of its officers, directors, employees, agents, consultants, attorneys, or predecessors.

C.     "Wilbur-Ellis," "you," or "your" means Wilbur-Ellis Company, including without limitation any  divisions, departments, parents, predecessors, successors, subsidiaries, affiliates, and other organizational or operating units and present or former officers, directors, employees, or agents and all persons purporting to act on Wilbur-Ellis's behalf.  This definition includes, but is not limited to, the Feed Division and the American By-Products, Inc. division of Wilbur-Ellis.

1

D.      "Co-packer" means any person or entity that is currently or in the past has been responsible for manufacturing and/or packaging the Blue Buffalo Products for sale.

E.      "Chicken meal" is defined as the dry rendered product from a combination of clean chicken flesh and skin with or without accompanying bone, derived from whole carcasses of chicken, exclusive of feathers, heads, feet and entrails.

F.      "Chicken by-product meal" is defined as the ground, rendered, clean parts of the carcass of slaughtered chicken, such as necks, feet, undeveloped eggs and intestines, exclusive of feathers.

G.      "Poultry meal" is defined as the dry rendered product from a combination of clean poultry flesh and skin with or without accompanying bone, derived from whole carcasses of poultry, exclusive of feathers, heads, feet and entrails.

H.      "Poultry by-product meal" is defined as the ground, rendered, clean parts of the carcass of slaughtered poultry, such as necks, feet, undeveloped eggs, intestines, exclusive of feathers.

I.      "Person" means any natural person or any business, legal or governmental entity or association.

J.      "Entity" means legal or business entity of any kind and includes, without limitation, corporations, partnerships, trusts, associations and organizations, or any other form of business or any legal, governmental or business unit.

K.      "Document" is defined as having the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation all handwritten, typed, printed, graphic, digital, and/or computer-stored matter such as correspondence, memoranda, notes, desk calendars, logs, drafts, work papers, blueprints, drawings or sketches,

2

minutes or recordings of meetings, speeches, presentations, conversations or telephone calls (whether recorded in writing, mechanically or electronically), records, studies, analyses, reports, forecasts, schedules, surveys, invoices, receipts, check stubs, CD-ROMs, computer data, any retrievable data, computer printouts, financial statements, balance sheets, profit and loss statements, statements of earnings, statements of net worth, credit reports, statements of operations, audit reports, financial summaries, statements of lists or assets, figures, statistics, agreements, government filings, inquires, reports, contracts, expense reports, photographs, slides, videos, communications (including without limitation electronic mail and web site information), and information or statistics contained on any memory device or other information storage and retrieval systems (whether stored, encoded, taped, or coded electrostatically, electromagnetically, optically, digitally or otherwise).  "Document" also means an authentic copy where the original is not in Wilbur-Ellis's possession, custody or control and every copy of a document where the copy is not an identical duplicate of the original.

L.      "Communication" means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, letters, correspondence, memoranda, meetings, notes, speeches, cable, facsimile, telex, telephone call, electronic mail message or other transfer of information, whether written, oral or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests, transcribes or records any such communication.

M.      "Things" means all physical items that are not considered documents and shall have the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure.

N.      The terms "relate," "refer," "reflect," "concern," and "pertain" mean discussing, evidencing, mentioning, memorializing, describing, constituting, containing, analyzing, studying,

reporting on, commenting on, recommending, concerning, reflecting, summarizing, referring to, pertaining to, supporting, refuting, and/or purporting to evidence, mention, memorialize, describe, constitute, contain, concern, reflect, summarize, refer to, support, refute, and/or in any way be relevant, in whole or in part.

O.      The term "any" shall be understood in either its most or least inclusive sense as it will bring within the scope of discovery requests all responses that might otherwise be construed to be out of its scope.

P.      The use of a singular form of any word includes the plural and vice versa.

Q.      The connectives "and" and "or" shall be construed both disjunctively and conjunctively so as not to exclude any information otherwise within the scope of any discovery request.

## INSTRUCTIONS

A.      Unless otherwise noted, these requests require production of documents and things that were prepared, created, written, sent, dated, or received on or after May 6, 2009.

B.      The following requests are intended to be construed as broadly as their language permits.  They are to be construed independently, except when such construction limits their scope. Any ambiguity should be resolved by selecting the broadest construction possible.

C.      These requests are continuing.   In the event any responsive information or materials come to Wilbur-Ellis's attention, please produce such information as soon as possible.

D.      If any responsive document has been lost or destroyed, identify: (i) the author; (ii) the date of loss or destruction; (iii) the reason for loss or destruction; (iv) the identity of those directing the destruction, if any; and (v) the substance of the document.

E.      If Wilbur-Ellis objects to the scope or breadth of any request, Wilbur-Ellis is directed to (i) respond within the scope or breadth of production that Wilbur-Ellis contends is proper and (ii) define the scope or breadth in which Wilbur-Ellis has responded.  Any limited response does not preclude Purina from seeking additional discovery of the full scope or breadth of the request.

F.      If any request or term in these requests is ambiguous or unclear to you, please contact Richard M. Assmus at rassmus@mayerbrown.com or at 312-701-8623 as soon as possible so the request can be clarified so as to avoid unnecessary delay.  If an objection is made to part of a request, then that part shall be specified and an answer or production given for the remaining parts.

G.      Produce all documents which exist or have been maintained in electronic form in the electronic media required to be accessed and read by appropriate electronic equipment or, if necessary, written identification of the electronic equipment or software needed to access the electronic data.

H.      These requests seek all documents, objects, or other tangible things described in the categories below which are in Wilbur-Ellis's possession, custody or control.

## REQUESTS FOR PRODUCTION

**Request No. 1:** Separately for (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, and (iv) poultry by-product meal, documents sufficient to show (a) the amount of each product purchased by you each month, (b) the price that you paid for each product you purchased each month, and (c) the source of each product you purchased each month.

**Request No. 2:** Separately for (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, and (iv) poultry by-product meal, documents sufficient to show (a) the amount of

each product you sold each month, (b) the price paid to you for each product sold by you each month, and (c) the customer to whom you sold each product each month.

**Request No. 3:**  Documents sufficient to show (i) the amount of any product you sold to Blue Buffalo that was not provided in response to Request No. 2 and (ii) the price that Blue Buffalo paid you for such product.

**Request No. 4:**  Documents sufficient to show (i) the amount of raw ingredients used to create chicken meal, poultry meal, chicken by-product meal, or poultry by-product meal purchased by you each month, (ii) the price you paid for such raw ingredients each month, and (iii) the source of such raw ingredients you purchased each month.

**Request No. 5:** For the raw ingredients used to create chicken meal, poultry meal, chicken by-product meal, or poultry by-product meal that you purchased each month, documents sufficient to show (i) the amount of such raw ingredients that were combined, blended, mixed, or otherwise used to create chicken meal, poultry meal, chicken by-product meal, or poultry by-product meal and the amount of such product that was created, (ii) the amount of such raw ingredients  that were combined, blended, mixed, or otherwise used to create a different product, including the identity of the product created, and (iii) the amount of such raw ingredients that were sold without modification.

**Request No. 6:**  Documents sufficient to show the identity, position, and last known address of all current and former employees of your company having any responsibility for (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, or (iv) poultry by-product meal, including but not limited to former employees of American By-Products Inc.

**Request No. 7:**  Documents sufficient to show each facility that performs operations for your feed division and the operations or tasks performed at each facility.

**Request No. 8:**  Documents sufficient to show the location at each facility where (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, (iv) poultry by-product meal, or (v) the raw ingredients used to create chicken meal, poultry meal, chicken by-product meal, or poultry by-product meal was or is stored.

**Request No. 9:**  All documents related to or reflecting any policies, procedures, or practices regarding the storage of (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, (iv) poultry by-product meal, or (v) the raw ingredients used to create chicken meal, poultry meal, chicken by-product meal, or poultry by-product meal, including but not limited to the length of time that such product can be stored.

**Request No. 10:**  All documents relating to any rendering or manufacturing of (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, or (iv) poultry by-product meal performed by you.

**Request No. 11:**  All documents related to any inspection, audit, test, sampling, quality control procedure, or the like that you performed or commissioned (including the results thereof) on the (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, (iv) poultry by-product meal or (v) the raw ingredients used to create chicken meal, poultry meal, chicken by-product meal, or poultry by-product meal purchased by you.

**Request No. 12:**  All documents related to any inspection, audit, test, sampling, quality control procedure, or the like that you performed or commissioned (including the results thereof) to test or monitor the quality of (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, or (iv) poultry by-product meal sold by you.

**Request No. 13:**  All documents related to or reflecting any policies, procedures, or practices to ensure that the (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, (iv)

7

poultry by-product meal, or (v) the raw ingredients used to create chicken meal, poultry meal, chicken by-product meal, or poultry by-product meal stored at each facility is not contaminated, adulterated, misbranded, or otherwise modified.

**Request No. 14:** All policies or procedures related to any inspection, audit, test, sampling, quality control procedure, or the like related to any product sold to Blue Buffalo, including the ingredient content thereof.

**Request No. 15:** Samples of each type of (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, or (iv) poultry by-product meal that you sold to Blue Buffalo.  The samples should have identical formulations and ingredients to the product sold to Blue Buffalo.

**Request No. 16:** All documents related to the quality or purity (including the formulations or ingredient contents) of any product sold to Blue Buffalo.

**Request No. 17:** Without regard to time period, all documents relating in any way to your sale of misbranded and/or adulterated ingredients to Blue Buffalo as further referenced in Exhibit 1 hereto, including but not limited to internal and external correspondence, memoranda, emails, notes, or documents referring to or reflecting remedial measures.

**Request No. 18:** All documents related to any blending or mixing of (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, or (iv) poultry by-product meal performed by you.

**Request No. 19:** All documents reflecting any instance in which ash was added to (i) chicken meal or (ii) poultry meal.

**Request No. 20:** All documents related to any instance (i) in which an ingredient other than those identified in Definition E above was added to, mixed with, or blended with chicken

meal or (ii) in which an ingredient other than those identified in Definition G was added to, mixed with, or blended with poultry meal.

**Request No. 21:**   All documents reflecting or relating to any investigation or inquiry relating to the inclusion of non-confirming ingredients in (i) chicken meal, (ii) poultry meal, (iii) chicken by-product meal, or (iv) poultry by-product, including but not limited to any such investigation involving American By-Products Inc.

**Request No. 22:**   Documents sufficient to show all your past or present full and part-time employees who have or had contact or communication of any type or manner with Blue Buffalo, including: (i) the name of each employee, (ii) the title(s) of each employee, (iii) the dates between which each employee held their respective titles, and (iv) whether each employee is a current employee.

**Request No. 23:** All documents or communications exchanged with Blue Buffalo, including but not limited to communications with Leonard Brennan, communications related to any agreement regarding the content of any product sold to Blue Buffalo, or ingredient specifications provided by Blue Buffalo.

**Request No. 24:**  Documents sufficient to show the identity of all Blue Buffalo personnel that visited your premises, including the date, duration, and purpose of the visit.

**Request No. 25:**   All documents referring or relating to the litigation entitled Nestlé Purina PetCare Co. v. The Blue Buffalo Co. Ltd., Case No. 4:14-cv-00859 (E.D. Mo.) or to any allegation contained in the First Amended Complaint in that litigation (Dkt. No. 9) (attached hereto as Exhibit 2).

**Exhibit 1**

Case: 4:14-cv-00859-RWS   Doc. #: 40-4   Filed: 08/20/14   Page: 15 of 27 PageID #: 436

**Free Republic**
Browse · Search

**News/Activism**
Topics · Post Article

Skip to comments.

## Blue Buffalo Recalls Can and Biscuit Products Due To Tampering By American Nutrition Inc.

Food and Drug Administration ^ | 4/27/07 | news release

Posted on **Friday, April 27, 2007 7:24:22 PM** by **girlangler**

Blue Buffalo Recalls Can and Biscuit Products Due To Tampering By American Nutrition Inc.
Contact: Consumer Inquiries: 1-800-919-2833 Media Inquiries: David Petrie 1-203-762-9751

FOR IMMEDIATE RELEASE -- Wilton, Connecticut, April 26, 2007- We at the Blue Buffalo Company have just learned that American Nutrition Inc. (ANI), the manufacturer of all our cans and biscuits, has been adding rice protein concentrate to our can formulas without our knowledge and without our approval. This is product tampering, and it apparently has been going on for some time. The can formulas that we developed, and trusted them to produce, never contained any rice protein concentrate. It appears that only an FDA investigation of ANI's rice protein concentrate supplies forced them to reveal this product tampering to us.

While this activity by ANI is in itself unlawful, the situation is further clouded by the fact that ANI has been receiving rice protein concentrate from Wilber-Ellis, some of which the FDA has determined to be contaminated with melamine.

So while no BLUE or Spa Select canned product has tested positive for the presence of melamine, and there has been no reported illness due to any of our canned products, we simply cannot be sure of what ANI has been including in our formulas. For this reason, we have decided to remove all of our canned and biscuit products from retail distribution. While this may seem to many to be a major over-reaction, as other ANI customers will probably only recall the products that tested positive for melamine, we see this as a matter of integrity.

We founded Blue Buffalo on the principle of providing dogs and cats with the highest quality and most nutritious food, and we will not sell any product that doesn't meet this standard. And under these circumstances, we cannot say that any products manufactured by ANI measure up.

The obvious question is "how could Blue Buffalo not know that ANI was putting rice protein concentrate into our canned food?" The answer is we trusted them. In business and in life, we all trust our partners to deal with us honestly. When we buy produce from our local grocery store, we are trusting growers, shippers and a series of handlers to have delivered a product that is safe and nutritious for our family. If any one of these parties betrays our trust, contaminated products can make their way to our dinner table.

And while we test for known toxins and contaminants, we don't test for protein sources, like rice protein concentrate, especially when we did not formulate our products to contain them.

In the end, this all comes down to an issue of integrity, and ANI has not been honest with us and with the pet parents who buy our products. We will not put any product made by ANI on the shelf, and are temporarily withdrawing an important part of our business in order to be true to our pet parents.

We have already started the process of identifying a can and biscuit manufacturer with whom we can build a partnership based on trust. Once we have accomplished this, BLUE and Spa Select cans and BLUE Health Bars will be reintroduced with the high quality and superior nutrition that our brand stands for and that dogs and cats deserve.

We have informed our retail partners and the FDA about this action and will be cooperating with them to complete this recall quickly. The specific product involved includes all "BLUE" brand can dog foods, all "Spa Select" brand can cat foods and all "BLUE Health Bar" treats.

Consumers who have unused or partially used packages of any of these products should return them to their place of purchase for a complete refund.

All "BLUE" dry natural food for dogs and "Spa Select" dry natural foods for cats are not affected by this recall and are safe for consumption. Should consumers have a specific question, they can call the Company at 1-800-919-2833, Monday through Friday, 9 a.m. to 5 p.m. EDT, to receive more information.

####

FDA's Recalls, Market Withdrawals and Safety Alerts Page: http://www.fda.gov/opacom/7alerts.html

---

Thanks for subscribing to the FDA Recalls list.

To subscribe to or unsubscribe from this list, go to

https://list.nih.gov/archives/fda-recalls-l.html

---

**TOPICS:** Business/Economy; Front Page News; News/Current Events
**KEYWORDS:** americannutritioninc; ani; bluebuffalo; china; doggieping; food; melamine; petfoodrecall; pets; recall; riceprotein; tampering

**Navigation:** use the links below to view more comments.
first **1-50**, 51-86 nextlast

---

**1** posted on **Friday, April 27, 2007 7:24:23 PM** by **girlangler**
[ **Post Reply** | **Private Reply** | **View Replies** ]

To: **Calpernia; mom4kittys; Arizona Carolyn; HairOfTheDog**

Just received this by email a few minutes ago.

**2** posted on **Friday, April 27, 2007 7:28:08 PM** by **girlangler** (Fish Fear Me)
[ **Post Reply** | **Private Reply** | **To 1** | **View Replies** ]

Case: 4:14-cv-00859-RWS   Doc. #: 40-4   Filed: 08/20/14   Page: 17 of 27 PageID #: 438

To: **girlangler; HairOfTheDog**

Just Damn.

Hair, you might want to give this a dog ping.

**3**posted on **Friday, April 27, 2007 7:28:29 PM**by **AnAmericanMother**((Ministrix of Ye Chase, TTGC Ladies' Auxiliary (recess appointment)))
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **girlangler**

meeeeeeeeeeeeeeeoowwwwwwwwwwwwwww!!!!

**4**posted on **Friday, April 27, 2007 7:28:32 PM**by **drlevy88**
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **girlangler**

Beat me to it.

**5**posted on **Friday, April 27, 2007 7:28:56 PM**by **AnAmericanMother**((Ministrix of Ye Chase, TTGC Ladies' Auxiliary (recess appointment)))
[**Post Reply** | **Private Reply** | **To 2** | **View Replies**]

To: **girlangler**

It's just awful to see our small, honorable businesses get ripped to shreds while the big guys will go untouched.

**6**posted on **Friday, April 27, 2007 7:30:48 PM**by **tkathy**
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **AnAmericanMother; sinkspur; 88keys; DugwayDuke; sissyjane; Severa; the OlLine Rebel; ...**

I am getting really tired of this...

## Ping!



Other articles with keyword "DOGGIEPING" since 12/29/04

**7** posted on **Friday, April 27, 2007 7:31:25 PM**by **HairOfTheDog**

Case: 4:14-cv-00859-RWS   Doc. #:  40-4   Filed: 08/20/14   Page: 18 of 27 PageID #: 439

[**Post Reply** | **Private Reply** | **To 3** | **View Replies**]

To: **girlangler**

What happened to the companies that made all their own product rather than find someone else to do part of it? Does anyone know anything about Newman's Own animal food? It is expensive and their site says it is safe.

**8** posted on **Friday, April 27, 2007 7:35:10 PM** by Snoopers-868th
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **Arizona Carolyn; mom4kittys; blam; Salamander; Red Badger; upchuck; WakeUpAndVote; dirtboy; ...**



**9** posted on **Friday, April 27, 2007 7:41:08 PM** by **mom4kittys** (If velvet could sing, it would sound like Josh Groban)
[**Post Reply** | **Private Reply** | **To 2** | **View Replies**]

To: **girlangler**

WOW, that is a VERY strong statement. They must have really solid evidence that ANI did this, and did it knowingly or with gross negligence, to put out a statement like this. If ANI had a leg to stand on, they'd sue, but I suspect Blue Buffalo's attorneys have already checked things out and made sure their evidence is strong enough to protect them.

**10** posted on **Friday, April 27, 2007 7:42:17 PM** by **GovernmentShrinker**
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **Snoopers-868th**

"What happened to the companies that made all their own product "

Saw a new product being sold on HSN yesterday.
Very $$$.
http://www.hsn.com/cnt/search/searchresults/default.aspx?
Ntt=dog+food&N=0&Ntk=Std&st=1&criteria=boolean&days=&minprice=&maxprice=&o=esearch

**11** posted on **Friday, April 27, 2007 7:45:17 PM** by **sweetiepiezer**
[**Post Reply** | **Private Reply** | **To 8** | **View Replies**]

To: **mom4kittys**

TANKS...

**12**posted on **Friday, April 27, 2007 7:45:36 PM**by **1COUNTER-MORTER-68**(THROWING ANOTHER BULLET-RIDDLED TV IN THE PILE OUT BACK~~~~~)
[**Post Reply** | **Private Reply** | **To 9** | **View Replies**]

To: **girlangler**

On one of their dry dog adult dog foods it clearly states rice protein concentrate.

**13**posted on **Friday, April 27, 2007 7:47:56 PM**by **freekitty**
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **girlangler**

Arrggggh! I recently switched my dogs and cats to their food in the midst of this recall nightmare. Now I don't know what to feed them.

**14**posted on **Friday, April 27, 2007 7:48:16 PM**by **Wolfstar**(When you whip the good guys into rage at the wrong enemy, don't be surprised when the bad guys win.)
[**Post Reply** | **Private Reply** | **To 2** | **View Replies**]

To: **girlangler**

*"The obvious question is "how could Blue Buffalo not know that ANI was putting rice protein concentrate into our canned food?" The answer is we trusted them."*

You can't trust anybody anymore!! Hello.............this is a wake up call to all businesses that are thinking like this.

**15**posted on **Friday, April 27, 2007 7:49:32 PM**by **WestCoastGal**(-EARNHARDT-ELLEDGE) Dale Jr~ 5-31-07 ~ MIDNIGHT GIT-R-DONE -- I vote NO on BOD!!)
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **mom4kittys; HairOfTheDog**

Thanks for the ping .

Haven't read about the chicken farm yet, they have yet to tell us about what they are going to do with the chickens.

these people are getting on my last nerve.

Did hear on tv this morning on CNN, that the pork HAD been sold in supermarkets.

Just got off the phone with my Senators office and told them the March For Pets is in front of his office tomorrow at noon. Also sent him a flyer on it.

Case: 4:14-cv-00859-RWS   Doc. #:  40-4   Filed: 08/20/14   Page: 20 of 27 PageID #: 441

**16**posted on **Friday, April 27, 2007 7:50:19 PM**by **sweetiepiezer**
[**Post Reply** | **Private Reply** | **To 9** | **View Replies**]

To: **Snoopers-868th**

Newman manufactures nothing.

It's all made to their specs (supposedly)


**17**posted on **Friday, April 27, 2007 7:50:41 PM**by **adjuster**
[**Post Reply** | **Private Reply** | **To 8** | **View Replies**]

To: **GovernmentShrinker**

The only party that should be thinking about instigating a suit is Blue Buffalo.

They may own their own canning and packaging operation when this is over.


**18**posted on **Friday, April 27, 2007 7:51:52 PM**by **2111USMC**
[**Post Reply** | **Private Reply** | **To 10** | **View Replies**]

To: **sweetiepiezer**

It is expensive but there is no cat food which is what I need. Thanks anyway.


**19**posted on **Friday, April 27, 2007 7:52:29 PM**by **Snoopers-868th**
[**Post Reply** | **Private Reply** | **To 11** | **View Replies**]

To: **girlangler**

The FDA emails come in handy, don't they? I too received this one and was going to post it if no one else had. I was a little confused at first since I was reading cans and biscuits and thinking "Hungry Jack?? Grands??" Then as I read further it dawned on me what they were referring to.


**20**posted on **Friday, April 27, 2007 7:52:51 PM**by **Sally'sConcerns**(http://www.fda.gov/emaillist.html - Class I (life threatening) recalls email alert sign-up)
[ **Post Reply** | **Private Reply** | **To 2** | **View Replies**]

To: **sweetiepiezer**

Hey, when I post lately I am always in a hurry (lot going on) and ALWAYS plan to ping you and Milaukee Guy, but for some reason always get a message that can't find that poster (because I can't seem to spell your posting names right and am in a hurry).

I assume you'll get pinged by other freepers, but wanted you to know I didn't forget you.

**21**posted on **Friday, April 27, 2007 7:54:06 PM**by **girlangler**(Fish Fear Me)
[**Post Reply** | **Private Reply** | **To 11** | **View Replies**]

To: **sweetiepiezer**

Thank you for doing that—I wish there was something near me to participate in.

**22**posted on **Friday, April 27, 2007 7:54:35 PM**by **mom4kittys**(If velvet could sing, it would sound like Josh Groban)
[**Post Reply** | **Private Reply** | **To 16** | **View Replies**]

To: **adjuster**

Guess, I knew that. I don't envision Paul stirring the stuff up in the kitchen. LOL

**23** posted on **Friday, April 27, 2007 7:55:19 PM**by **Snoopers-868th**
[**Post Reply** | **Private Reply** | **To 17** | **View Replies**]

To: **sweetiepiezer**

Wasn't the pork fed here in Oklahoma? I thought that's what I had read somewhere. Hmmm, I'm wondering now about the bacon I was going to give the fur kids in lieu of other treats.

Aaaargh!

**24**posted on **Friday, April 27, 2007 7:55:41 PM**by **Sally'sConcerns**(http://www.fda.gov/emaillist.html - Class I (life threatening) recalls email alert sign-up)
[ **Post Reply** | **Private Reply** | **To 16** | **View Replies**]

To: **GovernmentShrinker**

*I suspect Blue Buffalo's attorneys have already checked things out*

I have a suspicion that you confuse which side is going to be plaintiff and which defense in this matter.

**25**posted on **Friday, April 27, 2007 7:55:59 PM**by **AndyJackson**
[**Post Reply** | **Private Reply** | **To 10** | **View Replies**]

To: **Sally'sConcerns**

LOL, I was FREAKING out when I first read cans and bisquits, thought the same thing.

Although I don't use canned bisquits often (in fact, never now because I am not eating any bread).

**26**posted on **Friday, April 27, 2007 7:58:08 PM**by **girlangler**(Fish Fear Me)

Case: 4:14-cv-00859-RWS  Doc. #:  40-4  Filed: 08/20/14  Page: 22 of 27 PageID #: 443

[**Post Reply** | **Private Reply** | **To 20** | **View Replies**]

---

To: **AuntB; Calpernia; pissant; Kevmo; Slings and Arrows**

It continues.


**27**posted on **Friday, April 27, 2007 7:59:56 PM**by **Ultra Sonic 007**(Why vote for Duncan Hunter in 2008? Look at my profile.)
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

---

To: **girlangler**

Thank you. We just swithed to BLUE lasssssst weekend. Fortunately it was the dry food.


**28**posted on **Friday, April 27, 2007 8:01:25 PM**by **freeangel**(( free speech is only good until someone else doesn't like what you say))
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

---

To: **sweetiepiezer**

I use Purina One for both dog and cat. So far, so good. Purina sent an email yesterday with the same info their website has - none of the ingredients that are suspect in any of their feed.


**29**posted on **Friday, April 27, 2007 8:03:04 PM**by **Abby4116**
[**Post Reply** | **Private Reply** | **To 11** | **View Replies**]

---

To: **All**

I'm slowly introducing these recipes into my dogs' and cats' daily meals. I mix it in with their Purina One dry food which has not been recalled..yet..

Dr. Michael Fox's Homemade 'Natural' Dietary Supplement for Dogs

**30**posted on **Friday, April 27, 2007 8:05:02 PM**by **lysie**
[**Post Reply** | **Private Reply** | **To 27** | **View Replies**]

---

To: **girlangler**

Okay...now lets "out" every executive and sales manager who participated in this scheme to defraud the consumer....

name, company, contact address....the works.

**31**posted on **Friday, April 27, 2007 8:06:10 PM**by **pointsal**(q)
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

---

To: **Abby4116**

You are correct. I check their site daily. I think I will sign up for email, tho. Thanks.

**32**posted on **Friday, April 27, 2007 8:06:20 PM**by **lysie**
[**Post Reply** | **Private Reply** | **To 29** | **View Replies**]

To: **Sally'sConcerns**

Yes the FDA alerts are a way to find out asap if you are eating, or feeding your pets, something dangerous.

One of the FR posters posted that info and I am thankful.


**33**posted on **Friday, April 27, 2007 8:09:14 PM**by **girlangler**(Fish Fear Me)
[**Post Reply** | **Private Reply** | **To 20** | **View Replies**]

To: **AndyJackson; 2111USMC**

Obviously Blue Buffalo will be suing ANI, but normally when a company makes an extremely negative public statement like this about another company, the target of the statement will sue for libel, regardless of any suits that may be coming at it from the other side. It's why you very rarely see anything like this in a public statement. It's the same reason why employers won't give negative references about former employees in writing (and often not orally either). Makes no difference how richly the ex-employee may deserve to be described as a lazy, no-good, dishonest, hothead — the employer still risks an expensive lawsuit for saying so, and is likely to end up settling out of court, rather than spend huge sums trying to prove the truth of every detail of what they said.


**34**posted on **Friday, April 27, 2007 8:11:01 PM**by **GovernmentShrinker**
[**Post Reply** | **Private Reply** | **To 25** | **View Replies**]

To: **AndyJackson**

*I have a suspicion that you confuse which side is going to be plaintiff and which defense in this matter.*

Oh, I think ANI stands a good chance of being the defendent, since at least one other company, Natural Balance, is claiming the same thing: the ingredient was added by ANI without their knowledge.

Of course, it does put the lie to these premium brands' claims that they keep strict control over their product, inspect it, etc. I doubt that most of them have done much more than market the stuff.

I suspect that if a consumer went to the expense of having some of these brands analyzed by a lab, they'd find the ingredients don't come close to matching the labels.

**35**posted on **Friday, April 27, 2007 8:24:52 PM**by **browardchad**(ta)
[**Post Reply** | **Private Reply** | **To 25** | **View Replies**]

To: **GovernmentShrinker**

Case: 4:14-cv-00859-RWS   Doc. #:  40-4   Filed: 08/20/14   Page: 24 of 27 PageID #: 445

It was a pretty strong statement, wasn't it.

Blue Buffalo has Big Balls!

**36**posted on **Friday, April 27, 2007 8:25:53 PM**by **2111USMC**
[**Post Reply** | **Private Reply** | **To 34** | **View Replies**]

To: **girlangler**

Well crap. I give my dogs the Blue Buffalo treats all the time. Dammit.

**37**posted on **Friday, April 27, 2007 8:28:19 PM**by **USMCWife6869**(Godspeed Sand Sharks.)
[ **Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **Wolfstar**

Canidae

http://www.canidae.com/

**38**posted on **Friday, April 27, 2007 8:30:28 PM**by **USMCWife6869**(Godspeed Sand Sharks.)
[ **Post Reply** | **Private Reply** | **To 14** | **View Replies**]

To: **girlangler**

I was quite a ways down that article before I realized it was pet food.

**39**posted on **Friday, April 27, 2007 8:34:00 PM**by **steve86**(Acerbic by nature, not nurture)
[ **Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **HairOfTheDog; All**

I have been trying to reach that consumer number. I get nothing, no answer, no recording. It just rings for a while then kicks to a fast busy signal.

I just cried on the phone last night to my husband that I think something is wrong with my female. She has been incontinent for a few days (she only has accidents when she is asleep, she is five and has never peed in the house since she has been housetrained) and vomiting. She has not been herself for a few days. I give them the Blue Buffalo treats all the time. I already have an appointment tomorrow, but just DAMN.

They still aren't answering.

**40**posted on **Friday, April 27, 2007 8:34:12 PM**by **USMCWife6869**(Godspeed Sand Sharks.)

Case: 4:14-cv-00859-RWS   Doc. #:  40-4   Filed: 08/20/14   Page: 25 of 27 PageID #: 446

[ **Post Reply** | **Private Reply** | **To 7** | **View Replies** ]

To: **girlangler**

*And while we test for known toxins and contaminants, we don't test for protein sources, like rice protein concentrate, especially when we did not formulate our products to contain them.*

While some nut job is going to be whining that they should have tested for everything, it's just no reasonable to expect that. Even if they tried, they'd miss the one thing that ends up being a problem. They were completely reasonable in what they did. Why would you think to test for something that wasn't even formulated to be in the product in the first place? Sounds like the kind of company I'd want to do business with.

**41**posted on **Friday, April 27, 2007 8:36:22 PM**by **metmom** (Welfare was never meant to be a career choice.)
[ **Post Reply** | **Private Reply** | **To 1** | **View Replies** ]

To: **metmom**

I'm still sticking to Pedigree...no bad news yet.

**42**posted on **Friday, April 27, 2007 8:43:01 PM**by **Knitting A Conundrum**(Act Justly, Love Mercy, and Walk Humbly With God Micah 6:8)
[ **Post Reply** | **Private Reply** | **To 41** | **View Replies** ]

To: **girlangler**

Sell ANI stock....quick.

**43**posted on **Friday, April 27, 2007 8:45:22 PM**by **blam**
[ **Post Reply** | **Private Reply** | **To 2** | **View Replies** ]

To: **girlangler**

Did you verify it by checking the Blue Buffalo website? I did and yes, they are doing a recall.

http://www.google.com/search?hl=en&q=Blue+Buffalo+recall&btnG=Search

**44**posted on **Friday, April 27, 2007 8:46:47 PM**by **B4Ranch**("Steer clear of entangling alliances with any portion of the foreign world." -George Washington-)
[ **Post Reply** | **Private Reply** | **To 2** | **View Replies** ]

To: **girlangler**

This is terrible news. For months, I've been feeding my dogs Solid Gold Bark at the Moon (no grain). So far they are doing really well but I hope this company doesn't get burned by a supplier as well. They say they source their ingredients.

Case: 4:14-cv-00859-RWS   Doc. #:  40-4   Filed: 08/20/14   Page: 26 of 27 PageID #: 447

**45**posted on **Friday, April 27, 2007 8:47:24 PM**by **Varda**
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **Abby4116**

I don't need the dog food now. Click on my name.

**46**posted on **Friday, April 27, 2007 8:47:27 PM**by **sweetiepiezer**
[**Post Reply** | **Private Reply** | **To 29** | **View Replies**]

To: **Sally'sConcerns**

Here is where the pork is, yes Oklahoma is one of the states.

http://www.freerepublic.com/focus/f-news/1824386/posts

**47**posted on **Friday, April 27, 2007 8:49:39 PM**by **sweetiepiezer**
[**Post Reply** | **Private Reply** | **To 24** | **View Replies**]

To: **girlangler**

*So while no BLUE or Spa Select canned product has tested positive for the presence of melamine, and there has been no reported illness due to any of our canned products, we simply cannot be sure of what ANI has been including in our formulas. For this reason, we have decided to remove all of our canned and biscuit products from retail distribution. While this may seem to many to be a major over-reaction, as other ANI customers will probably only recall the products that tested positive for melamine, we see this as a matter of integrity.*

Well said by Blue Buffalo. This type of public excoriation should be done to all of the companies that have knowingly defrauded the public and their partners in this poisoning case.

**48**posted on **Friday, April 27, 2007 8:50:00 PM**by **snowislander**
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **girlangler**

Crap!! That's what I've been feeding my dogs!

**49**posted on **Friday, April 27, 2007 8:59:55 PM**by **dljordan**
[**Post Reply** | **Private Reply** | **To 1** | **View Replies**]

To: **Wolfstar**

http://www.buckeyenutrition.com/

They say all their ingredients originate from within the USA and they have *one* plant where *they* make everything.

Case: 4:14-cv-00859-RWS   Doc. #:  40-4   Filed: 08/20/14   Page: 27 of 27 PageID #: 448

**50**posted on **Friday, April 27, 2007 9:02:44 PM**by **Salamander**(And don't forget my Dog; fixed and consequent.......)
[**Post Reply** | **Private Reply** | **To 14** | **View Replies**]

**Navigation:** use the links below to view more comments.
first **1-50**, 51-86 nextlast

**Disclaimer:** Opinions posted on Free Republic are those of the individual posters and do not necessarily represent the opinion of Free Republic or its management. All materials posted herein are protected by copyright law and the exemption for fair use of copyrighted works.

**Free Republic**                                                                                      **News/Activism**
**Browse** · **Search**                                                                          **Topics** · **Post Article**

**FreeRepublic**, LLC, PO BOX 9771, FRESNO, CA 93794
FreeRepublic.com is powered by software copyright 2000-2008 John Robinson