**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

NESTLÉ PURINA PETCARE COMPANY,
       Plaintiff/ Counterclaim Defendant,

      v.

BLUE BUFFALO COMPANY LTD.
       Defendant/ Counterclaim Plaintiff.

Case No. 4:14-CV-00859 (RWS)

**BLUE BUFFALO'S MOTION TO COMPEL NESTLÉ PURINA TO RESPOND TO
INTERROGATORY NO. 4 AND DOCUMENT REQUESTS 10, 12, 31, 45-47, 59-61,
63-70, 72, 79 AND 81, AND MEMORANDUM IN SUPPORT THEREOF**

7382209v.1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ......................................................................................................................2

I.     NESTLÉ PURINA MUST ANSWER BLUE BUFFALO'S
INTERROGATORY NO. 4................................................................................3

II.    NESTLÉ PURINA MUST RESPOND TO BLUE BUFFALO'S REQUESTS
FOR PRODUCTION .......................................................................................5

    A.    Nestlé Purina Should Be Required to Produce Documents Concerning Its
Premium Products ...............................................................................6

    B.    Nestlé Purina Should Be Compelled to Produce Documents Concerning
Its Quality Control, Procurement and Manufacturing Procedures ..........................9

        1.    Quality Control and Ingredient Procurement.................................9

        2.    Manufacturing Procedures .......................................................11

    C.    Nestlé Purina Should Be Compelled to Produce Documents Concerning
Its Pricing, Advertising and Management Communications ................................12

        1.    Nestlé Purina's Pricing Documents ...........................................12

        2.    Nestlé Purina's Advertising and Marketing Documents ..........................13

        3.    Nestlé Purina Management Communications...........................................15

CONCLUSION.................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Holman v. Cayce*,
    873 F.2d 944 (6th Cir. 1989) ....................................................................4

*In re Harmonic, Inc. Sec. Litig.*,
    245 F.R.D. 424 (N.D. Cal. 2007)..............................................................4

*In re MTI Tech. Corp. Secs. Litig. II*,
    No. 00-CV-0745, U.S. Dist. LEXIS 13015 (C.D. Cal. June 13, 2002) ....................5

*Massachusetts v. First Nat'l Supermarkets, Inc.*,
    112 F.R.D. 149 (D. Mass. 1986)...........................................................5, 1

*Mayhall v. Berman & Rabin, P.A.*,
    No. 13-CV-0175, 2013 U.S. Dist. LEXIS 118280 (E.D. Mo. Aug. 21, 2013)........................2

*Myers v. Goldco, Inc.*,
    No. 08-CV-8, 2008 U.S. Dist. LEXIS 37089 (N.D. Fla. May 6, 2008) ...................4

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*,
    278 F.R.D. 335 (S.D.N.Y. 2011) .............................................................4

*Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.*,
    137 F.R.D. 267 (D. Neb. 1989).................................................................4

*United States v. District Council*,
    1992 U.S. Dist. LEXIS 12307 (S.D.N.Y. Aug. 14, 1992) .......................................5

STATUTES

15 U.S.C. § 1117...............................................................................13

Fed. R. Civ. P. 26 ..............................................................................2, 4

Fed. R. Civ. P. 37 ..............................................................................1, 2

7382209v.1

Blue Buffalo Company Ltd. ("Blue Buffalo") respectfully brings this motion pursuant to Rule 37(a)(3) to compel Nestlé Purina Petcare Company ("Nestlé Purina") to answer Blue Buffalo's Interrogatory No. 4 and to produce documents responsive to Blue Buffalo Document Requests 10, 12, 31, 45-47, 59-61, 63-70, 72, 79, and 81.

## PRELIMINARY STATEMENT

Blue Buffalo Interrogatory 4 seeks the names of individuals that told Nestlé Purina that a Blue Buffalo employee—Leonard Brennan—allegedly has accepted improper payments from a supplier.  Blue Buffalo disputes that Mr. Brennan engaged in any improper conduct and seeks the sources of Nestlé Purina's information to test their veracity.  Nestlé Purina refuses to provide this information claiming work-product privilege, even while doggedly pursuing burdensome and intrusive discovery regarding Mr. Brennan.  The law on this point is unequivocal:  Nestlé Purina cannot use a claim of work product to hide the identity of potential witnesses.

Blue Buffalo also seeks the production of documents responsive to three categories of requests.  *First*, Blue Buffalo seeks specified documents regarding Nestlé Purina's premium products, which compete with its own products.  Nestlé Purina claims its products are irrelevant.  But Nestlé Purina has made advertising claims relating to its premium products that are almost indistinguishable from the Blue Buffalo ads it challenges here.  Those ads are potentially relevant to a defense of unclean hands, or to show that Blue Buffalo's ads are proper.  This discovery is also relevant to Blue Buffalo's claim that Nestlé Purina's lawsuit stems from its failure to compete in the premium market.  And Nestlé Purina has itself conceded that its premium products are relevant by stating that it will introduce evidence regarding them to calculate its damages.

*Second*, Blue Buffalo seeks documents concerning Nestlé Purina's ingredient procurement, manufacturing and quality control practices.  Nestlé Purina seeks wide ranging

1

discovery from Blue Buffalo on these same topics, because it contends that Blue Buffalo's practices were somehow deficient.  Blue Buffalo has agreed to produce this discovery.  Blue Buffalo is entitled to discovery of Nestlé Purina's own practices and procedures to show how they compare.  Nestlé Purina can hardly argue that Blue Buffalo's practices are deficient if those practices are equal to or more robust than its own.

*Third*, Blue Buffalo seeks documents concerning Nestlé Purina's pricing and marketing, as well as certain records of management communications on these subjects.  Again, on each category, Nestlé Purina seeks documents from Blue Buffalo that it is refusing to produce itself. Nestlé Purina has even expressly reserved the right to rely on its pricing information to calculate damages against Blue Buffalo while refusing to produce the same information in discovery. Blue Buffalo is also entitled to discovery of the full range of Nestlé Purina dry pet food advertising, which is relevant to both the extent of its false advertising and the defense of unclean hands, as well as Nestlé Purina management communications on relevant issues addressed herein.

Blue Buffalo's motion to compel should be granted.

## ARGUMENT

"Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b) (1).  Rule 37 provides that "[i]f a party fails to make a disclosure required by Rule 26(a) any other party may move to compel disclosure and for appropriate sanctions."  Fed. R. Civ. P. 37(a)(3)(A).  "'Relevance' within the meaning of Rule 26(b)(1) is a considerably broader concept than 'relevance' for purposes of trial" and is "generously construed."  *Mayhall v. Berman & Rabin, P.A.*, No. 13-CV-0175, 2013 U.S. Dist. LEXIS 118280, *8-9 (E.D. Mo. Aug. 21, 2013) (citing *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)).  Blue Buffalo met

and conferred with Nestlé Purina by telephone and by letter in an attempt to resolve these disputes before filing this motion but was unable to do so.[1]

## I.   NESTLÉ PURINA MUST ANSWER BLUE BUFFALO'S INTERROGATORY NO. 4

Blue Buffalo's Interrogatory No. 4 states

> Please identify any person or entity that informed [Nestlé Purina] that (a) Pilgrim's Pride Corporation, Wilber-Ellis, American By-Products, Inc., Darling International, and/or Diversified Ingredients supplied Blue Buffalo with poultry meal and/or poultry by-product meal, (b) Blue Buffalo received payments from Leonard Brennan, (c) Diversified Ingredients made payments to Leonard Brennan, and (d) Leonard Brennan made payments to Diversified Ingredients.

Blue Buffalo served this interrogatory in response to Nestlé Purina's allegations that Mr. Brennan is engaged in improper conduct.  Nestlé Purina has also sought its own discovery regarding Mr. Brennan, including "all documents" relating to payments Mr. Brennan has received from ingredient suppliers, as well as documents regarding Mr. Brennan's compensation.[2]  Blue Buffalo posed Interrogatory 4 to ascertain the bases for Nestlé Purina's suspicions.  Blue Buffalo also seeks the sources of Nestlé Purina's information regarding the identities of its suppliers, which is Blue Buffalo proprietary information that Nestlé Purina has apparently obtained and used in crafting its document demands.[3]  Nestlé Purina has refused to answer this interrogatory on the basis of the attorney-work-product doctrine.[4]

---

[1] *See* Declaration of Vivian Storm ("Storm Decl.") ¶ 2.  All exhibits referenced herein are attached to the Storm Decl.

[2] Ex. 1 (Plaintiff's First Set of Requests for Production of Documents and Things to the Blue Buffalo Company Ltd. ("Nestlé Purina's Requests for Production"), at Request 21).

[3] *Id.* at Requests 16, 20-21, 24.

[4] Ex. 2 (Plaintiff Nestlé Purina PetCare Company Responses to the Blue Buffalo Company's First Set of Interrogatories).

3

The law is clear that work product cannot be used to cloak the identities of individuals with relevant information.   While an "informer's privilege" exists in the civil as well as criminal context, it is "uniquely available to the government."  *Holman v. Cayce*, 873 F.2d 944, 946 (6th Cir. 1989).  Moreover, the Federal Rules explicitly permit discovery seeking "the identity and location of persons who know of any discoverable matter."  See Fed. R. Civ. P. 26(b)(1).

"The courts have consistently held that the work product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the person from whom he has learned such facts."  *Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 281 (D. Neb. 1989) (quoting Wright and Miller, Federal Practice and Procedure, Civil § 2023).  Therefore even "[a]n interrogatory seeking the names and addresses of witnesses whom a party has interviewed is not protected work product."  *Myers v. Goldco, Inc.*, No. 08-CV-8, 2008 U.S. Dist. LEXIS 37089, 4-5 (N.D. Fla. May 6, 2008) (citing *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984)).

In analogous circumstances, a number of courts have also concluded that the names of confidential sources of information listed in complaints cannot be withheld during discovery.  *See, e.g., Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 340 (S.D.N.Y. 2011) ("In this Court's view, the names of the persons identified in the [Complaint] as confidential informants are not entitled to any work product protection; and if any work product protection does apply to these names, it is minimal.").  *See also In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 427 (N.D. Cal. 2007) ("Defendants are not seeking the preliminary notes or other memoranda written during the interviews of these witnesses, which would be considered protected work product. . . .  Nor are Defendants asking for Plaintiffs to summarize the substance of those interviews in an interrogatory response. . . .

4

What Defendants seek here is only the identities of witnesses whom Plaintiffs have deemed credible enough to rely upon in two of their complaints.").

In pre-motion correspondence, Nestlé Purina cited three cases in support of its work product argument.[5]  These cases, however, support Blue Buffalo's argument, not Nestlé Purina's. While the cases recognize that work product may be implicated if discovery is sought as to an attorney's mental impressions, such as through discovery implicating counsel's strategy in conducting interviews, mere witness identities are not protected.  *See Massachusetts v. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149, 152 (D. Mass. 1986) (quoting 4 Moore's Federal Practice, para. 26.57[2], pp. 26-166-7 (1984 ed.)) ("'[an] interrogated party cannot avoid an answer [to an interrogatory seeking the names of witnesses] on the ground that the names were learned by counsel in the course of an investigation'"); *United States v. District Council*, 1992 U.S. Dist. LEXIS 12307 (S.D.N.Y. Aug. 14, 1992) ("the identity of persons . . . with information relevant to the issues in the case" is "routinely provided in discovery"); *In re MTI Tech. Corp. Secs. Litig. II*, No. 00-CV-0745, U.S. Dist. LEXIS 13015, at *7-8 (C.D. Cal. June 13, 2002) ("the identity and location of witnesses that may have knowledge of any discoverable matter is not protected").

Accordingly, Nestlé Purina must answer Interrogatory No. 4 and identify its claimed confidential witness sources.

## II.    NESTLÉ PURINA MUST RESPOND TO BLUE BUFFALO'S REQUESTS FOR PRODUCTION

In the course of pre-motion conferrals, Blue Buffalo narrowed many of its document requests to eliminate Nestlé Purina's claims of burden.  Blue Buffalo now moves to compel

---

[5] Ex. 8 (Letter from R. Assmus to A. Mangi, dated October 2, 2014).

production responsive to its requests as narrowed.[6]  To facilitate the Court's reference, Blue

Buffalo has compiled at Appendix A hereto the full text as revised and narrowed of the various

document requests on which it moves to compel.

> **A.**     **Nestlé Purina Should Be Required to Produce Documents Concerning Its Premium Products**

Blue Buffalo moves to compel the production of documents relating to the launch of

Nestlé Purina's Beyond premium product (Request 10) as well as documents concerning the

development, formulation, promotion and sales of Nestlé Purina's full line of premium products,

including discontinued products (Request 47).  Nestlé Purina has refused to produce any of these

documents on grounds of relevance.[7]

Nestlé Purina's Beyond product is its latest attempt to compete with Blue Buffalo in the

premium product space.  Beyond appears to have been launched as a new iteration of an older

product in about May 2014, at almost exactly the same time that Nestlé Purina began its

"Honesty" campaign against Blue Buffalo and filed its complaint in this action.  Beyond is

marketed with the following claims, which bear obvious similarly to those employed by Blue

Buffalo:[8]



---

[6] Ex. 7 (Letter from A. Mangi to R. Assmus, dated October 2, 2014); Ex. 11 (Letter from A. Mangi to R. Assmus, dated October 9, 2014).

[7] *See* Ex. 3 (Plaintiff Nestlé Purina PetCare Company's Responses to Blue Buffalo Company Ltd.'s First Set of Requests for the Production of Documents and Things "Nestlé Purina's Responses to Blue Buffalo's Document Requests").

[8] https://www.beyondpetfood.com/products

Nestlé Purina's prior attempts at natural premium products similarly made claims almost indistinguishable from those Nestlé Purina now challenges as to Blue Buffalo.  *See* Blue Buffalo Compl. ¶ 29.  Nestlé Purina's current advertising for Beyond (on the left below) even mimics Blue Buffalo's True Blue Test (on the right), which Nestlé Purina challenges as false and misleading in this action:[9]



Blue Buffalo is entitled to discovery relating to the launch of the Beyond product to probe the connections between Nestlé Purina's latest foray into the premium sector and this lawsuit.  To the extent that discovery shows Nestlé Purina planned this lawsuit as part of its Beyond launch, that is relevant to Blue Buffalo's contention that Nestlé Purina's lawsuit is just part of a marketing strategy against a rapidly growing competitor.

Blue Buffalo is also entitled to probe the full range of advertising claims Nestlé Purina has made for its premium products and its bases for those claims.  To the extent discovery shows that Nestlé Purina purposefully copied the very advertising it now challenges from Blue Buffalo, or made similar claims, that calls into question the veracity of Nestlé Purina's allegations and

---

[9] *Compare* https://www.beyondpetfood.com/compare/ *with* Nestlé Purina's First Am. Compl. ¶ 26.

bears on a defense of unclean hands.  For example, Nestlé Purina challenges claims made by Blue Buffalo regarding the "health benefits" of certain "vitamins, minerals and nutrients" contained in Blue Buffalo's LifeSource Bits for which Nestlé Purina alleges "there is no scientific evidence."[10]  To the extent Nestlé Purina has made similar claims relating to its own use of the same vitamins, minerals and nutrients in its premium products, its substantiation for those claims will rebut its allegations here, or its claims will be barred by unclean hands.

Nestlé Purina will doubtless argue that even if it makes the same advertising claims, that does not render its ads relevant because it alleges that Blue Buffalo products include by-product meal, whereas there is no such allegation as to Nestlé Purina's premium products.  Nestlé Purina's premise is wrong because it does make broader claims premised on "scientific evidence" as to particular ingredients in LifeSource bits, as described above.  *See id.*  More importantly, however, the bases for Nestlé Purina's identical claims are nonetheless relevant.  For example, Nestlé Purina argues that Blue Buffalo should have exercised greater oversight of its ingredient suppliers before making "no by-product meal" claims.  To the extent discovery shows that Nestlé Purina was making similar "no by-product" claims while exercising similar levels of oversight over its product suppliers, that bears on Nestlé Purina's credibility.

Similarly, Blue Buffalo is entitled to discovery regarding the development, formulation, advertising, marketing, promotion or sales of Nestlé Purina's prior failed premium products.  The development and ultimate failure of these products is again part of the narrative backdrop to this litigation that Blue Buffalo expressly pled in its Complaint.  Blue Buffalo Compl. ¶¶ 29-30.  Nestlé Purina's formulations of those products are also relevant.  To the extent any of Nestlé Purina's grain-free products included rice-hulls, that will directly contradict its position in this

---

[10] Nestlé Purina First Am. Complaint ¶¶ 33-34 (challenging claims regarding inclusion of e.g. Omega 3 fatty acids, taurine and L-Lysine).

8

case that rice-hulls are "grains" and that their inclusion in grain-free products is improper.[11]
Similarly, Nestlé Purina has challenged Blue Buffalo's advertising regarding certain vitamins,
minerals and nutrients on the ground that that they are not included in sufficient quantities to
provide the advertised benefits.[12]  Blue Buffalo is entitled to probe the extent to which Nestlé
Purina has made similar claims for its own products, and the quantities of the ingredients it
deemed necessary and appropriate before making those claims for its own products.

Finally, Nestlé Purina has indicated that it intends to base its damages on the failure of its
Purina ONE Natural Blends, Pro Plan Selects, and Pet Promise products.[13]  Nestlé Purina
apparently intends to attribute those failures to Blue Buffalo advertising.  Nestlé Purina should
not be permitted to selectively rely on discovery relating to these products in areas it deems
favorable to its case, while denying as irrelevant discovery on topics relevant to Blue Buffalo's
case.  Indeed, Nestlé Purina implicitly concedes the relevance of its premium lines by agreeing to
produce documents relevant to another narrow Blue Buffalo request—Request 49—relating to
them.[14]

### B.    Nestlé Purina Should Be Compelled to Produce Documents Concerning Its Quality Control, Procurement and Manufacturing Procedures

#### 1.    Quality Control and Ingredient Procurement

Blue Buffalo Requests 59, 69, 70 and 72 seek documents concerning Nestlé Purina's
quality control procedures.  These include documents sufficient to show its quality control
procedures, all documents regarding instances where Nestlé Purina deviated from its

---

[11] Nestlé Purina First Am. Compl. ¶¶ 29, 40.

[12] Nestlé Purina First Am. Compl. ¶¶ 33-34.

[13] Ex. 6 (Letter from R. Assmus to A. Mangi, dated September 12, 2014, at 6).

[14] *See* Ex. 3 (Nestlé Purina's Response to Blue Buffalo Document Request 49).

manufacturing procedures or where product formulation deviated from the intended ingredients, and documents reflecting Nestlé Purina's testing of its dry pet food products.

Blue Buffalo also moves to compel on document requests 61and 63-68, which seek documents concerning Nestlé Purina's ingredient procurement.  These include documents relating to its ingredient specifications and ensuring supplier compliance with those specifications, the identities of Nestlé Purina's suppliers and any instances of contamination or mislabeling by those suppliers, and Nestlé Purina's procedures for testing and auditing ingredients and suppliers.

Nestlé Purina seeks even broader categories of documents on the same topics concerning Blue Buffalo's ingredient procurement, manufacturing practices and quality control.[15]  Blue Buffalo has agreed to produce responsive documents.  Yet Nestlé Purina refuses to produce *any* documents regarding its own procedures, claiming they are irrelevant.  This position is untenable.  Nestlé Purina intends to use the documents Blue Buffalo produces to impugn Blue Buffalo's procurement, manufacturing and quality control procedures.  Blue Buffalo is entitled to discovery of Nestlé Purina's procedures to show that its own practices are equal or superior to those employed by Nestlé Purina.  For example, if a Nestlé Purina expert witness opines on the inadequacy of Blue Buffalo quality control procedures, Blue Buffalo will cross-examine that witness on the fact that Nestlé Purina's own procedures are similar to or inferior to Blue Buffalo's.  Similarly, to the extent Nestlé Purina faults Blue Buffalo for its choices of suppliers or vendors, Blue Buffalo is entitled to know whether Nestlé Purina used the same vendors and

---

[15] *See, e.g.,* Ex. 1(Nestlé Purina Requests for Production at Requests 16, 18, 19, 21-24 (seeking documents about Blue Buffalo's ingredient procurement), Requests 13, 42 (seeking documents about Blue Buffalo manufacturing practices), and Requests 10, 18 (seeking documents about Blue Buffalo quality control).

what procedures Nestlé Purina uses when selecting its own vendors or testing the ingredients supplied to it.

Blue Buffalo's Document Request 61 also seeks documents sufficient to show the weight and price of poultry by-product meal, chicken meal or turkey meal Nestlé Purina purchased for use in its dry food products.  These documents are relevant for two additional reasons.  As set forth in Blue Buffalo's Complaint at ¶¶ 21-28, Nestlé Purina's business model is based on the use of low-cost poultry by-product meal and it achieves substantial savings based on its use of this ingredient rather than the premium ingredients in Blue Buffalo's products.  Blue Buffalo will show the jury at trial just how many thousands of tons of poultry by-product meal Nestlé Purina purchases—the very ingredient it accuses Blue Buffalo of using—and the amount of money it saves compared to what Blue Buffalo pays for premium chicken meal.  Additionally, Nestlé Purina apparently intends to argue that Blue Buffalo knowingly bought poultry by-product meal because there was not an adequate amount of poultry meal to meet global demand.[16]  Nestlé Purina's ability to acquire chicken and turkey meal and the prices at which it acquired them are directly relevant to the credibility of this argument.

### 2.    Manufacturing Procedures

Blue Buffalo document Request 60 seeks "All documents concerning the use of heat during the manufacturing of Nestlé Purina's Pet Food Products."  Nestlé Purina has refused to produce documents in response to this request.

These documents are necessary to defend against Nestlé Purina's challenge to Blue Buffalo's claims regarding the "cold formed process" used to manufacture its LifeSource bits.  In particular, Nestlé Purina has challenged Blue Buffalo's claim that "other manufacturers process

---

[16] *See* Ex. 3 (Letter from R. Assmus to S. Zalesin, dated August 18, 2014, at 4).

their foods with heat as high as 350° . . . [which] can destroy the potency of many vitamins, minerals, antioxidants and important enzymes."[17]

To defend the accuracy of these claims, Blue Buffalo seeks documents regarding Nestlé Purina's manufacturing processes using heat.  Blue Buffalo anticipates this will support and confirm the validity of its claims regarding its competitors' use of heat in manufacturing and its impact on potency.  This goes directly to defending against Nestlé Purina challenge.  Indeed, Nestlé Purina has sought from Blue Buffalo, and Blue Buffalo has agreed to produce, the manufacturing specifications of LifeSource bits showing Blue Buffalo's "cold formed" process.[18]  Nestlé Purina cannot limit discovery to half of the story:  the defense of this claim will include evidence relating to both Blue Buffalo manufacturing as well as Nestlé Purina's, which will highlight the difference between the two.

**C.     Nestlé Purina Should Be Compelled to Produce Documents Concerning Its Pricing, Advertising and Management Communications**

**1.     Nestlé Purina's Pricing Documents**

Document Request 31 seeks "Documents sufficient to show Nestlé Purina's pricing for its dry food products, including price lists, price schedules, price changes, price announcements, and discounts from list prices."  Nestlé Purina has refused to produce responsive documents, other than unspecified "basic pricing information" for its "ProPlan" premium products.[19]

Blue Buffalo is entitled to documents concerning the pricing of each of Nestlé Purina's products.  Blue Buffalo expressly asked during the conferral process whether Nestlé Purina would make a representation that it would not be using any of its own pricing information in

---

[17] Nestlé Purina First Am. Compl. ¶ 32.

[18] Ex. 11 (Letter from A. Mangi to R. Assmus, dated October 9, 2014).

[19] Ex. 10 (Letter from R. Assmus to A. Mangi, dated October 7, 2014).

relation to its damages claims.  Nestlé Purina refused.  Rather, Nestlé Purina expressly reserved its right to base its damages claim on its own product pricing.[20]  Nestlé Purina cannot have it both ways and reserve the right to use information it does not produce.

Moreover, Nestlé Purina pricing documents are relevant to Blue Buffalo's own damages claims.  Blue Buffalo is potentially entitled to profits that Nestlé Purina earned as a result of its false advertising.  15 U.S.C. § 1117(a).  Those profits are the difference between its revenue and costs, and to understand those revenues and use them in a damages calculation Blue Buffalo is entitled to discovery regarding Nestlé Purina's unit sales and prices.  Notably, Nestlé Purina sought the same pricing information from Blue Buffalo in ostensible support of its own damages claims.[21]  Blue Buffalo has agreed to produce this information.  Nestlé Purina originally submitted that it was "willing to discuss reciprocal limitations on the scope of the parties' requests seeking pricing terms" and later agreed to a reciprocal scope of production, but has now reneged.[22]  It must produce the same documents it seeks given that both parties have damages claims to pursue.

### 2. Nestlé Purina's Advertising and Marketing Documents

Blue Buffalo seeks documents showing the content of historic versions of Nestlé Purina's website (Request 12); final ads it has run on television, in print, or on the internet for its dry pet food products (Request 46); and copies of its product packaging and labels (Request 81).  Nestlé Purina has agreed to produce copies of its historic websites only if they reference Blue Buffalo or the allegations in this case and has refused outright to produce any of the other documents sought.

---

[20] Ex. 9 (Letter from A. Mangi to R. Assmus, dated October 7, 2014).

[21] *See* Ex. 1 (Nestlé Purina's Requests for Production at Request 6)

[22] *See* Ex. 6 (Letter from R. Assmus to A. Mangi, dated September 12, 2014, at 2); Ex. 9 __ (Letter from A. Mangi to R. Assmus, dated October 7, 2014).

Blue Buffalo seeks these documents for the same reasons it sought ads relating to Nestlé Purina's premium products:  Blue Buffalo is entitled to explore the full extent to which Nestlé Purina has made advertising claims similar to those it is challenging here.  Additionally, Blue Buffalo needs a full accounting of all claims Nestlé Purina has made regarding Blue Buffalo specifically, including in internet ads beyond its website.  And labels in particular are necessary to compare Nestlé Purina products to Dr. Makowski's purported findings regarding the products' constituent ingredients.[23]  Nestlé Purina has sought the same documents from Blue Buffalo and Blue Buffalo has agreed to produce them.[24]  Nestlé Purina again originally agreed to produce responsive documents on a reciprocal basis, but then reneged on its position.[25]  Nestlé Purina should be compelled to produce the same scope of documents on these topics as it demands from Blue Buffalo.

Also as to advertising, Blue Buffalo's Document Request 45 seeks "Documents sufficient to show Nestlé Purina's advertising expenditures for its dry food products."  Nestlé Purina's advertising budget is relevant because Nestlé Purina makes pejorative allegations in its Complaint concerning the amount of money Blue Buffalo's spends on advertising.[26]  Nestlé Purina apparently intends to argue this shows that Blue Buffalo's business is built on hype rather than substance.  Blue Buffalo is entitled to discovery regarding Nestlé Purina's own doubtless massive advertising budget to put Nestlé Purina's allegations in their appropriate context.  Again,

---

[23] *See* Ex. 13 (Expert Report of James V. Makowski, dated July 23, 2014).

[24] *See* Ex. 1 (Nestlé Purina's Requests for Production at Requests 27 (labels), 28 (website), and 29 (advertisements)).

[25] *See* Ex. 9 (Letter from A. Mangi to R. Assmus, dated October 7, 2014).

[26] Nestlé Purina First Am. Compl. ¶ 2.

Nestlé Purina sought mirror information from Blue Buffalo, which Blue Buffalo agreed to provide.[27]

Nestlé Purina's advertising expenditures are also potentially relevant to the amount of corrective advertising that might be necessary to rebut Nestlé Purina's Honesty campaign. Nestlé Purina has agreed to produce only "documents sufficient to indicate the amount of its expenditures related to social media posts that reference petfoodhonesty.com," and not the full scope of its campaign at issue here.[28]  Nestlé Purina should be required to produce all responsive documents.

### 3.    Nestlé Purina Management Communications

Nestlé Purina has refused to produce documents responsive to Blue Buffalo Request 79 (i)-(v), and (vii), which relate to meetings of management employees on topics addressed above, including Nestlé Purina ingredients, marketing and quality control.  Nestlé Purina only agrees to produce minutes on these topics from its Board of Directors.  These topics are relevant for the reasons discussed above, so documents relating to management group meetings about them should be produced.  Nestlé Purina provides no basis for agreeing to produce responsive documents from one source but not another.  And to the extent its claimed basis is burden, this document request is modeled on Nestlé Purina's own request to Blue Buffalo.  Moreover, Nestlé Purina has refused to afford Blue Buffalo the same scope limitation on this request— limiting it to documents from the Board of Directors—that it claims for itself.[29]

---

[27] *See* Ex. 1 (Nestlé Purina's Requests for Production, at Request 30).

[28] Ex. 8 (Letter from R. Assmus to A. Mangi, dated October 2, 2014).

[29] *See* Ex. 1 (Nestlé Purina Requests for Production, at Request 5); Ex. 10 (Letter from R. Assmus to A. Mangi, dated October 7, 2014 at 5).

## CONCLUSION

For the foregoing reasons, Blue Buffalo's motion to compel should be granted.

Dated:  October 10, 2014
New York, New York

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

By:     /s/ Steven A. Zalesin
Steven A. Zalesin, Lead Counsel (pro hac vice)
Adeel A. Mangi (pro hac vice)
Vivian Storm (pro hac vice)
Frank A. Cavanagh (pro hac vice)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: 212-336-2000
Facsimile: 212-336-2222

Martin Flumenbaum (pro hac vice)
Robert Atkins (pro hac vice)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: 212-373-3000
Fax: 212-757-3990

Gerard T. Carmody, # 24769
David H. Luce, # 36050
Sarah J. Bettag, # 60849
CARMODY MACDONALD P.C.
120 S. Central Avenue
Suite 1800
St. Louis, MO 63105
Telephone: 314-854-8600
Fax: 314-854-8660

Of counsel:

Richard MacLean, Esq.
Blue Buffalo Company Ltd.

*Attorneys for Defendant Blue Buffalo Company Ltd.*

16

## APPENDIX A

**Document Request No. 10**. All documents and communications, including but not limited to [Nestlé Purina's] internal communications and communications between [Nestlé Purina] and any consultant, agency, or other third-party, that describe, refer to, or otherwise relate to the launch of [Nestlé Purina's] Beyond product.

**Document Request No. 12**. True and accurate copies of Purina.com and any other websites used to promote the Nestlé Purina Brands as currently displayed and as displayed historically.

**Document Request 31.**  Documents sufficient to show Nestlé Purina's pricing for its dry food products, including price lists, price schedules, price changes, price announcements, and discounts from list prices.

**Document Request 45.**  Documents sufficient to show Nestlé Purina's advertising expenditures for its dry food products.

**Document Request No. 46**.  Documents sufficient to show the content of every final national television, print or internet advertisement or promotion for each of Nestlé Purina's dry food products.

**Document Request No. 47**.  All documents reflecting the development, formulation, advertising, marketing, promotion or sales of Nestlé Purina Pet Food Brands or Nestlé Purina Pet Food Products that are marketed as grain-free or by-product-free, including Beyond as well as products or brands that Nestlé Purina has discontinued such as Purina ONE Natural Blends, Pro Plan Selects, and Pet Promise.

**Document Request No. 59**.  All documents relating to any instances where Nestlé Purina has deviated from [its] manufacturing processes and procedures for [its] dry pet food products.

1

**Document Request 60**.  All documents concerning the use of heat during the manufacturing of Nestlé Purina's Pet Food Products.

**Document Request No. 61**. (1) Specifications, purchase orders, invoices, contracts, bills of lading, certificates of origin, or certificates of analysis related to the purchase, delivery, receipt or cost of any poultry by-product meal or chicken meal or turkey meal, used in the Nestlé Purina's Pet Food Products.  (2) Documents sufficient to show the weight and price of poultry by-product meal, chicken meal or turkey meal [Nestlé Purina] purchased for use in [its] dry food products each year since May 6, 2009 and to identify the suppliers, distributors, brokers or blenders who supplied [Nestlé Purina] these ingredients.

**Document Request No. 63**. Documents sufficient to show the renderers, suppliers, brokers, distributors, or blenders who provide the chicken meal, turkey meal, or poultry by-product meal used in [Nestlé Purina's] dry food products, and all documents concerning any instances of contamination or mislabeling by those renderers, suppliers, brokers, distributors, or blenders.

**Document Request No. 64**. All contracts and agreements concerning any ingredients in Nestlé Purina pet foods regarding which Nestlé Purina contends Blue Buffalo makes false or misleading advertising claims.

**Document Request No. 65**. Documents sufficient to show the dates of purchase and the price that [Nestlé Purina] paid each supplier, distributer, broker, or blender for any ingredients in Nestlé Purina pet foods about which Nestlé Purina contends Blue Buffalo makes false or misleading advertising claims.

**Document Request No. 66**. (1) [Nestlé Purina's] specifications for the poultry by-product meal, chicken meal or turkey meal used in [Nestlé Purina's] dry food products; (2) all documents concerning deviations from these specifications; (3) [Nestlé Purina's] standards for

2

ingredients used in [its] dry food products; and (4) all documents concerning deviations from these standards.

**Document Request No. 67**. (1) Documents sufficient to show [Nestlé Purina's] procedures for inspecting, auditing or approving suppliers of poultry by-product meal, chicken meal or turkey meal used in [Nestlé Purina's] dry food products; (2) all documents concerning deviations from or modifications to these procedures; and (3) documents constituting or reflecting the results of any such inspection, audits, or approvals of ingredient suppliers.

**Document Request No. 68**. (1) Documents sufficient to show [Nestlé Purina's] procedures for inspecting, testing, auditing, sampling, assaying or approving deliveries of poultry by-product meal, chicken meal or turkey meal used in [Nestlé Purina's] dry food products; (2) all documents concerning deviations from or modifications to these procedures; and (3) documents constituting or reflecting the results of any such inspections, tests, audits, samples, or assays.

**Document Request No. 69**. Documents sufficient to show [Nestlé Purina's] quality control procedures, including at a minimum [Nestlé Purina's] quality control manuals, manufacturing controls, procedures for testing of finished product, all quality control analysis, and all quality control reports for Nestlé Purina's Pet Food Products.

**Document Request No. 70**. All documents that constitute or reflect any audit, tests, sampling, or assays of Nestlé Purina's Pet Food Products.

**Document Request No. 72**. All documents, including [Nestlé Purina's] internal communications and communications between [Nestlé Purina] and any consultant, agency, or other third-party, concerning (i) the presence of ingredients in [Nestlé Purina's] dry food products that do not appear on the ingredient label; (ii) the absence from [Nestlé Purina's] dry food products of ingredients that do appear on the ingredient label; or (iii) variations of

3

ingredients that appear on the ingredient labels such that [Nestlé Purina's] dry food products fall below the minimum nutrient profiles set forth in [Nestlé Purina's] formulas or recipes.

**Document Request 79 (i)-(v), and (vii).** All minutes, recordings, summaries or reports of meetings, whether formal or informal, of the board of directors of Nestlé Purina, each committee or subgroup of the board, each committee and any group or subgroup of management employees of Nestlé Purina within the past [five] years discussing: (i) ingredients or formulations of Nestlé Purina Products; (ii) the marketing or advertising of Nestlé Purina Products; (iii) any audits, quality control checks or other similar measures taken to evaluate the ingredient content and/or quality of Nestlé Purina Product Products; (iv) any pending or threatened litigation, administrative actions . . . or like claims related to the Nestlé Purina Product; (v) comparisons between Nestlé Purina Product and any competitor products; [and] (vii) any of Nestlé Purina Product's ingredient suppliers, distributors, co-packers, blenders or brokers.

**Document Request No. 81**.  True and accurate copies of all labels and packaging used on or in connection with Nestlé Purina Products.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of October, 2014, the forgoing was served on all parties by operation of this Court's Electronic Filing System.


/s/ Steven A. Zalesin

1