# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

NESTLE PURINA PETCARE COMPANY,

      Plaintiff,

      v.                              Case No. 4:14-cv-00859

THE BLUE BUFFALO COMPANY LTD.,

      Defendant.

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS TO THE BLUE BUFFALO COMPANY LTD.**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Nestle Purina PetCare Company ("Purina") hereby requests that Defendant The Blue Buffalo Company Ltd. ("Blue Buffalo" or "Defendant" or "You") produce for inspection and copying the following documents at the offices of Defendant's counsel, or by such other means and at such other time and place as may be agreed upon by the parties, and that said production be made within 30 days of the date of service of this request. These Requests for Production are deemed continuing in nature as permitted by Rule 26(e) of the Federal Rules of Civil Procedure and are to be supplemented promptly upon Defendant's acquisition of further or additional documents or things.

Plaintiff s requests for documents and things shall be responded to in accordance with the Definitions and Instructions attached hereto as Appendices A and B, respectively.

**REQUESTS FOR PRODUCTION**

**Request No. 1:** Documents sufficient to show all full and part-time employees of Blue Buffalo and contractors of Blue Buffalo since May 6, 2009, including: (i) the name of each employee or contractor; (ii) the title(s) of each employee or contractor; (iii) the dates between which each employee or contractor held their respective titles; (iv) whether each employee or

709410336

contractor is a current employee; and (v) contact information for all former employees and contractors, including but not limited to home address work address, telephone numbers (mobile and otherwise) and email addresses.

      **Request No. 2:**True and accurate copies of Your employee lists and organizational charts sufficient to show all of your employees since May 6, 2009.

      **Request No. 3:**True and accurate copies of Your annual financial statements for the years 2009 to present.

      **Request No. 4:**Documents sufficient to show the ownership and structure of Blue Buffalo, including, without limitation, business organization documents and other company records, the operating agreement, the certificate of formation and any amendments to the foregoing.

      **Request No. 5:**All minutes, recordings, summaries or reports of meetings, whether formal or informal, of the members of each board of directors of Blue Buffalo, each committee or subgroup of each board, the members of each committee and any group or subgroup of management employees of Blue Buffalo within the past ten (10) years discussing: (i) the Blue Buffalo Product ingredients or formulations; (ii) the marketing or advertising of the Blue Buffalo Products; (iii) any audits, quality control checks or other similar measures taken to evaluate the ingredient content and/or quality of the Blue Buffalo Products; (iv) any pending or threatened litigation, administrative actions (including NAD proceedings) or like claims related to the Blue Buffalo Products; (v) comparisons between the Blue Buffalo Products and any competitor products; (vi) any of Purina's products; (vii) any of Blue Buffalo's ingredient suppliers, distributors, co-packers, blenders or brokers; or (viii) Blue Buffalo's direct or indirect donations to any charitable organizations, including the Blue Buffalo Foundation for Pet Cancer Research.

Request No. 6:All documents and communications related to the pricing of the Blue Buffalo Products since May 6, 2009, including but not limited to price lists, price schedules, price changes, price announcements, price quotations, proposals or bids, rebate offers or programs or discount sheets.

Request No. 7:All documents and communications related to Your advertised claims that the Blue Buffalo Products provide pets with "superior nutrition" as compared to those of competitors, including those that You relied upon related to such claims.

Request No. 8:All documents and communications related to Your advertised claims (such as on Your website, in Your television commercials and the like) that Blue Buffalo's LifeSource Bits offer health benefits and specific nutritional values for pets (including those that You relied upon related to such claims), including:

(a)      "joint health";

(b)      "healthy heart and eyes";

(c)      aiding "growth and development";

(d)      "healthy bones and tissue";

(e)      "endurance and fat metabolism"; and

(f)      "healthy skin and coat."

Request No. 9:All documents and communications related to the quality, nutritional value, formulations and/or ingredient contents of any competitor products referenced in Blue Buffalo's advertising (whether by company name or generically), including any comparison of (i) any two or more competitor's products; or (ii) any competitor product with any Blue Buffalo Product.

709410336

**Request No. 10:**All documents related to any audit, test, sampling or quality control procedures performed (including the results thereof) to test or monitor the quality of the Blue **Buffalo Products** and ingredient contents thereof, including, but not limited to: (i) the presence or absence of chicken/poultry by-product meal or other by-product meals; (ii) the presence or absence of grain; (iii) the vitamin, mineral or antioxidant content of the LifeSource Bits any special health benefits to pets derived therefrom; (iv) the use of "only the finest natural ingredients"; or (v) the presence or absence of artificial preservatives, colors or flavors.

**Request No. 11:All documents and communications related to**  the development, creation and maintenance of Blue Buffalo's "True Blue Test" that is accessible on Your website at (http://www.bluebuffalo.comidog-food-comparison/true-blue-test),including all documents and communications related to the information used to generate the test results.

**Request No. 12:**All documents and communications related to the formulations and/or ingredient content of the **Blue Buffalo Products, including the LifeSource Bits.**

**Request No. 13:**Documents and communications sufficient to describe the "cold formed" process used to formulate and manufacture Your LifeSource Bits.

**Request No. 14:All documents and communications related to**  any testing or studies performed related to the nutritional value or health benefits resulting from feeding animals the Blue Buffalo Products, including  **all**  documents and communications related to the results thereof.

**Request No. 15:**All documents and communications related to any testing or studies performed related to the nutritional value or health benefits resulting from feeding animals LifeSource Bits specifically, including all documents and communications related to the results thereof.

-4-

709410336

**Request No. 16:** All documents and communications between You and Your suppliers, manufacturers, distributors, co-packers, brokers and blenders related to the ingredients purchased for use in connection with and/or used in connection with the Blue Buffalo Products, including, but not limited to:

(a)     All agreements related to the process in which the Blue Buffalo Products (including the LifeSource Bits) are manufactured;

(b)     All agreements related to the ingredients used in connection with the manufacture of the Blue Buffalo Products;

(c)     All documents and communications between You and Pilgrim's Pride Corporation;

(d)     All documents and communications between You and Wilbur-Ellis and/or American By-Products, Inc.;

(e)     All documents and communications between You and Darling International Incorporated;

(f)     All documents and communications related to the purchase of poultry/chicken meal and/or poultry/chicken by-product meal; and

(g)     All documents and communications between Leonard Brennan or persons under his supervision and any supplier of any ingredient used in connection with any Blue Buffalo Product, including chicken/poultry meal, chicken/poultry by-product meal, grains (including rice and rice hulls), preservatives and any ingredient used to give any Blue Buffalo Product a specific color or flavor.

**Request No. 17:** All documents and communications sufficient to identify all of Your suppliers, manufacturers, distributors, co-packers, brokers and blenders.

**Request No. 18:** All documents and communications sufficient to identify any inspections, audits or the like that You performed, commissioned or received from any supplier, manufacturer, co-packer, broker or blender of the Blue Buffalo Products related to the ingredient content of the Blue Buffalo Products, including any policies and procedures related thereto.

**Request No. 19:**All documents and communications sufficient to show (i) the amount of chicken/poultry meal and/or chicken/poultry by-product meal used in the Blue Buffalo Products each year since May 6, 2009; and (ii) the price that Blue Buffalo paid for such chicken/poultry meal and/or chicken/poultry by-product meal.

**Request No. 20:**All documents sufficient to show the difference between the price of chicken/poultry meal and chicken/poultry by-product meal month over month since May 6, 2009, including, but not limited to, any documents provided to You by Wilbur-Ellis, American By-Products, Inc., and Darling International Corporation.

**Request No. 21:**All documents and communications related to: (i) any payments made by You to Diversified Ingredients; (ii) any payments that You have received from Diversified Ingredients; (iii) any payments that You have made to Leonard Brennan; (iv) any payments that You have received from Leonard Brennan; (v) any payments made by Diversified Ingredients to Leonard Brennan; and (vi) any payments made by Leonard Brennan to Diversified Ingredients.

**Request No. 22:**All documents and communications related to the following:

(a)     All invoices received and/or paid by You from/to any supplier, manufacturer, distributor, co-packer, broker or blender related to the Blue Buffalo Products; and

(b)     All certifications received and/or made to You by any supplier, manufacturer, distributor, co-packer, broker or blender related to the Blue Buffalo Products.

**Request No. 23:**Documents and communications sufficient to show from whom any chicken/poultry meal or chicken/poultry by-product meal contained within any Blue Buffalo Product was purchased, including the dates, quantity and price of the same.

**Request No. 24:**All documents and communications between You and Diversified Ingredients related to any ingredient used in the Blue Buffalo Products, including

-6-

chicken/poultry meal, chicken/poultry by-product meal and any artificial colors, flavors or preservatives.

Request No. 25:All documents sufficient to support the contention in Your counterclaim that any of Purina's allegations of false advertising in the above-captioned matter are false.

Request No. 26:All documents and communications related to testing or evaluations that You have performed related to the nutritional value or ingredient content of competitor products, including all documents and communications related to the results thereof

Request No. 27:True and accurate copies of all labels and packaging used on or in connection with the Blue Buffalo Products since May 6, 2009.

Request No. 28:True and accurate copies of Your website <bluebuffalo.com> and any blogs or social media pages through which You promote Blue Buffalo and the Blue Buffalo Products as currently displayed and as displayed historically since May 6, 2009, including all documents related to changes in Your website.

Request No. 29:True and accurate copies of all Advertisements for the Blue Buffalo Products within the past seven (7) years promoting or advertising the Blue Buffalo Products as either: (i) containing no chicken/poultry or animal by-products; (ii) containing no chicken/poultry or animal by-product meals; (iii) containing no artificial colors, flavors or preservatives; (iv) being grain free; (v) being nutritionally superior to any competitors' products; (vi) being fit for human consumption, including using the slogan "Love them like family, feed them like family" or similar slogans; (vii) containing no corn, wheat or soy; or (viii) containing only the "finest natural ingredients".

**Request No. 30:** All documents **and communications reflecting** Your advertising expenditures since May 6, 2009, including, but not limited to, documents and communications sufficient to show (i) **any amounts paid by You to any person or entity; (ii) the** person or entity to whom such payment was made; and (iii) the services received.

**Request No. 31:** All documents and communications between You and any advertising agencies or **the like related to any of the topics referenced in Purina's complaint or amended** complaint.

**Request No. 32:** All documents and communications related to the marketing or sales strategies (including all strategic plans, long-range plans and business plans), market shares or projected market shares, market conditions or the profitability of Blue Buffalo since May 6, 2009 **that also reference the advertising** and promotion of the Blue Buffalo Products as either: (i) containing no chicken/poultry by-products; (ii) containing no chicken/poultry by-product meals; (iii) containing no artificial colors, **flavors or preservatives; (iv) being grain free; (v) being** nutritionally superior to any competitors' products; (vi) being fit for human consumption, including **using the slogan "Love them like family, feed them** like family" **or similar slogans;** (vii) containing no **corn, wheat** or soy; or (viii) containing only the "finest natural ingredients".

**Request No. 33:** All documents and communications related to Your marketing and **advertising plans, proposals, strategies or campaigns to promote and sell the Blue** Buffalo Products (regardless of whether such plans, proposals strategies or campaigns were **implemented) based on or including Your claims that the Blue Buffalo** Products: (i) contain no chicken/poultry by-products; (ii) contain no chicken/poultry by-product meals; (iii) contain no artificial colors, flavors or preservatives; (iv) are grain free; (v) are nutritionally superior to any competitors' products; (vi) are fit for **human consumption, including using the slogan "Love**

-8-

them like family, feed them like family" or similar slogans; (vii) contain no corn, wheat or soy; or (viii) contain only the "finest natural ingredients".

**Request No. 34:** All documents and communications related to strategic plans, long-range plans and business plans that also reference Purina and/or any of Purina's products.

**Request No. 35: All documents sufficient to show separately** by year:

(a)      total dollar sales of all Blue Buffalo Products;

(b)      total dollar sales of all Blue Buffalo Products by SKU; and

(c)      total **unit sales of all Blue Buffalo Products by SKU.**

**Request No. 36: All** documents and communications related to Your advertised claims (including those that You relied upon related to such claims) that the Blue Buffalo Products contain:

(a)      "NO chicken/poultry by-product meals";

(b)      "NO artificial preservatives, colors or flavors"; and

(c)      "Only the **Finest Natural Ingredients."**

**Request No. 37: All** documents and communications related to Your training and education of employees and contractors, including, but not limited to, Pet Detectives, related to **the Blue Buffalo Products and the marketing and advertising messages to be conveyed to** consumers about the Blue Buffalo Products, including any messages that the Blue Buffalo Products: (i) contain no chicken/poultry by-products; (ii) contain no chicken/poultry by-product meals; (iii) contain no artificial colors, flavors or preservatives; (iv) are grain free; (v) are nutritionally superior to any competitors' products; (vi) are fit for human consumption, including using the slogan "Love them like family, feed them like family" or similar slogans; (vii) contain no corn, wheat or soy; or (viii) contain only the "finest natural ingredients". This request includes specifically, but is not limited to, all documents and communications related to the

-9-

training and education of employees and contractors who advertise and market the Blue Buffalo Products on location at retail stores such as PetSmart.

Request No. 38:All documents sufficient to show the vitamin, mineral, antioxidant, and nutrient content of Blue Buffalo's LifeSource Bits, including, but not limited to, the precise quality of each of the following contained in the LifeSource Bits:

(a)     Omega 3 fatty acids;

(b)     Omega 6 fatty acids;

(c)     Yucca schidigera extract;

(d)     Taurine;

(e)     L-Lysine;

(f)     Vitamin D;

(g)     Vitamin B12;

(h)     L-Carnitine;

(i)     Kelp;

(j)     Vitamin E;

(k)     Vitamin C;

(l)     Beta Carotene;

(m)     Vitamin A;

(n)     Blueberries; and

(o)     Barley Grass.

Request No. 39:All documents that support Blue Buffalo's claim that "LifeSource Bits contain ingredients that help support a pet's immune system, including, but not limited to, the identity and quantity of each such ingredient as well as any scientific basis for the claim of immune system support.

-10-

709410336

Request No. 40: Documents sufficient to show the source of each of the ingredients listed in Request No. 37 above, including, but not limited to the supplier's name, the account representative(s) for each supplier, and the quantity supplied by year.

**Request No. 41:** All documents that support or substantiate Blue Buffalo's advertising claims that "[o]ther manufacturers process their foods with heat as high as 350°. High heat can destroy the potency of many of the vitamins, minerals, antioxidants, and important enzymes," including, but not limited to, the names of each "other manufacturer" and all testing or other scientific data showing that any pet food manufacturer's products have reduced potency as a result of heat processing.

**Request No. 42:** Documents sufficient to show the heat processing protocols applied to Blue Buffalo products.

**Request No. 43:** All documents that refer or relate to the identity or actual name of all companies that produce "big name dog food" or use a "big name brand."

**Request No. 44:** All documents supporting or substantiating the contention that corn, corn meal, or gluten is not good for dogs to consume.

**Request No. 45:** All documents containing, reflecting, summarizing, or analyzing consumer reactions, interpretations, responses, questions, or comments to any Blue Buffalo advertising referenced in Purina's complaint.

Request No. **46:** All documents and communications that You have provided to any retailer related to the Blue Buffalo Products promoting the nutritional quality and/or ingredient content of the Blue Buffalo Products, including any documents containing, promoting or discussing Your claims that the Blue Buffalo Products: (i) contain no chicken/poultry by-

709410336

products; (ii) contain no chicken/poultry by-product meals; (iii) contain no artificial colors, flavors or preservatives; (iv) are grain free; (v) are nutritionally superior to any competitors' products; (vi) are fit for human consumption, including using the slogan "Love them like family, feed them like family" or similar slogans; (vii) contain no corn, wheat or soy; or (viii) contain only the "finest natural ingredients".

**Request No. 47:** All documents and communications related to any on-site education and training programs that You have provided or offered to retailers of the Blue Buffalo Products related to the ingredient content or nutritional value of the Blue Buffalo Products.

**Request No. 48:** All documents and communications related to or referencing the ruling of the National Advertising Division (NAD) of the Council of Better Business Bureaus (hereinafter the "NAD") in Case #5696, decided on March 11, 2014, including, but not limited to: (i) any documents that You submitted to the NAD in connection with this proceeding; and (ii) any documents related to Your decision to modify or not to modify Your advertising practices as a result of the ruling.

**Request No. 49:** All documents and communications related to or referencing the ruling of the NAD in Case #4892, decided July 31, 2008, including, but not limited to: (i) any documents that You submitted to the NAD in connection with this proceeding; and (ii) any documents related to Your decision to modify or not to modify Your advertising practices as a result of the ruling.

**Request No. 50:** All documents and communications related to any recalls involving the Blue Buffalo Products or the ingredient content thereof since January 1, 2006, including all documents and communications related to Blue Buffalo's response or reaction to such recalls.

**Request No. 51:** All documents and communications related to any consumer comments, feedback or complaints regarding the Blue Buffalo Products and Blue Buffalo's claims that that the Blue Buffalo Products: (i) contain no chicken/poultry by-products; (ii) contain no chicken/poultry by-product meals; (iii) contain no artificial colors, flavors  or preservatives; (iv) are grain free; (v) are nutritionally superior to any competitors' products; (vi) are fit for human consumption, including using the slogan "Love them like family, feed them like family" or similar slogans; (vii) contain no corn, wheat or soy; or (viii) contain only the "finest natural ingredients". This request also includes all documents and communications related to any of Blue Buffalo's responses to any such consumer comments, feedback or complaints.

**Request No. 52: All** documents and communications sufficient to show any donations or contributions that You made to any charitable organizations or foundations, including the Blue Buffalo Foundation for Pet Cancer Research, including: (i) the amount of each donation; and (ii) **the date on which each donation** was made.

**Request No. 53:** All documents and communications sufficient to show: (i) the arrangement between Blue Buffalo and any other person or entity, including PetSmart and PetCo, related to any joint efforts or campaigns to raise money for any charitable purposes, including to raise money for pet cancer awareness; (ii) the amount of money raised as a result of such joint efforts each month since May 6, 2009; (iii) the ways in which any money raised as a result of such joint efforts was used; and (iv) each and every public advertisement or statement made by Blue Buffalo related to such joint efforts.

**Request No. 54:** True and accurate copies sufficient to show the retail locations at which the Blue Buffalo Products are sold or have been sold since May 6, 2009.

-13-

**Request No. 55:** All non-privileged documents related to any lawsuits, administrative actions or other claims that have been filed, made or threatened by any person or entity related to the ingredient content, nutritional quality or health benefits of the Blue Buffalo Products, including any settlement agreements reached to resolve such matters.

**Request No. 56:** Any and all other documents that relate to or support, or that You intend to rely upon, to establish Your position that Purina's claims in the above-captioned matter are false and/or defamatory.

**Request No. 57:** All documents which in any way support or relate to Your answers to any interrogatories propounded by Purina.

**Request No. 58:** All documents that constitute, reflect or otherwise relate to the communications of Bill Bishop on May 6, 2014 after 10:00 a.m. EDT concerning any of the allegations of Purina's complaint filed on that day, including, but not limited to, telephone records, emails (including drafts thereof), notes, memoranda (including drafts thereof), calendar entries and the like.

Request **No. 59:** All documents relating to Bill Bishop's letter to "Pet Parents" dated May 6, 2014, including, but not limited to the substantiation for all statements contained therein, as well as all drafts, revisions, input and sources relied upon.

Request No. 60: All documents relating to internal or external investigations conducted by Blue Buffalo concerning any allegations in Purina's complaint or its amended complaint.

Dated: July 3, 2014

NFLTLE EURINA P        RE COMPANY

Carmine R. Zarlenga, 386244DC *(Lead attorney)*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3227
Facsimile: (202) 263-5227
czarlenga@maverbrown.com

Richard M. Assmus *(pro hac vice)*
Kristine M. Young *(pro hac vice)*
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
rassmus@mayerbrown.com
kyoung@mayerbrown.com

David A. Roodman, 38109M0
BRYAN CAVE LLP
211 North Broadway #3600
St. Louis, Missouri 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
daroodman@bryancave.com

*Counsel for Nestle Purina PetCare Company*

709410336

APPENDIX A

**DEFINITIONS**

A.      "Advertisements" means any advertising or promotional material, including

without limitation advertising plans or strategies, in-store point-of-sale materials, product labels,

radio or television commercials, billboards, print advertising, television and movie product

placement, direct mail and e-mail, and all online, internet, native, social media or other electronic

content, whether generated by Blue Buffalo or by any party with Blue Buffalo's sponsorship or

support.

B.      "Blender" means any person or entity, including Wilbur-Ellis and American By-

Products, Inc., who is responsible for combining any two or more ingredients to create any

mixture, such as poultry/chicken meal and poultry/chicken by-product meal, that has been used

or is currently used in any Blue Buffalo Product.

C.      "Blue Buffalo," "Defendant," "You" and "Your" means defendant The Blue

Buffalo Company Ltd., including without limitation any divisions, departments, parents,

predecessors, successors, subsidiaries, affiliates, and other organizational or operating units and

present or former officers, directors, employees, or agents and all persons acting or purporting to

act on Blue Buffalo's behalf.

D.      "Blue Buffalo Products" means any and all pet food products, pet treat products,

litter products and the like sold or offered for sale by Blue Buffalo currently or since May 6,

2009.

E.      "Broker" means any person or entity responsible for purchasing or otherwise

procuring any ingredient that has been or is currently being used in any Blue Buffalo Product.

F.      "Communication" means any exchange or transmission of words or ideas to

another person or an entity, including without limitation conversations, discussions, letters,

correspondence, memoranda, meetings, notes, speeches, cable, facsimile, telex, telephone call, electronic mail message or other transfer of information, whether written, oral or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests, transcribes or records any such communication.

G.     "Competitor" means any person or entity other than Blue Buffalo that manufactures, distributes, offers for sale or sells pet food, pet treats, pet products or any products related to the same, including Purina.

H.     "Co-packer" means any person or entity that is currently or in the past has been responsible for compiling and/or packaging Blue Buffalo Products for sale.

I.     "Distributor" means any person or entity who supplies any ingredient included in the Blue Buffalo Products to any manufacturer or any other person or entity or any person or entity who supplies the Blue Buffalo Products to any retailer or other point-of-sale.

J.     "Document" is defined as having the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation all handwritten, typed, printed, graphic, digital, and/or computer-stored matter such as correspondence, memoranda, notes, desk calendars, logs, drafts, work papers, blueprints, drawings or sketches, minutes or recordings of meetings, speeches, presentations, conversations or telephone calls (whether recorded in writing, mechanically or electronically), records, studies, analyses, reports, forecasts, schedules, surveys, invoices, receipts, check stubs, CD-ROMs, computer data, any retrievable data, computer printouts, financial statements, balance sheets, profit and loss statements, statements of earnings, statements of net worth, credit reports, statements of operations, audit reports, financial summaries, statements of lists or assets, figures, statistics, agreements, government filings, inquires, reports, contracts, expense reports, photographs, slides,

videos, communications (**including without** limitation **electronic mail and web site information),** **and information or statistics contained on any** memory device **or other information storage and** **retrieval systems (whether stored, encoded, taped, or coded electrostatically, electromagnetically,** **optically, digitally or otherwise). "Document" also means an authentic copy where the original** **is not in Blue Buffalo's possession, custody or control and** every copy of a document where the **copy is not an identical duplicate of the original.**

K.      **"Entity" means legal or business entity of any**  kind and  **includes, without** **limitation, corporations, partnerships, trusts, associations and organizations, or any other form of** **business or any legal, governmental or business unit.**

L.      **"Identify" when used with reference to a natural person means to give,** to  **the** extent known, the person's **full name, present or last-known** address,  **and the present or last** known place of employment.  **"Identify" when used with** reference **to any other type of** person, means to give the person's **full name (including** any assumed or business name), address(es) and form of organization (i.e.,  **corporation, partnership, unincorporated association, etc.). Once a** **person has been identified in accordance with this subparagraph, only the name of that person** **need be listed** in response **to subsequent discovery requesting the identification of that person.**

M.      **"Manufacturer" means any person or entity who is responsible for creating any** **Blue Buffalo** Product and/or assembling any Blue Buffalo Product into the form in which it is **sold to** consumers.

N.      "Person" means any natural person or any business, legal or governmental entity or association.

O.      "Purina" means plaintiff Nestle Purina PetCare Company, including all of its officers, directors, employees, agents, consultants, attorneys, predecessors, subsidiaries and affiliates.

P.      "Supplier" means any person or entity from whom Blue Buffalo purchases or has purchased any of the ingredients used in the Blue Buffalo Products, including Diversified Ingredients and Darling International Incorporated.

Q.      "Things" means all physical items that are not considered documents and shall have the broadest interpretation of that term in Rule 34(a) of the Federal Rules of Civil Procedure.

R.      The terms "relate," "refer," "reflect," "concern," and "pertain" mean discussing, evidencing, mentioning, memorializing, describing, constituting, containing, analyzing, studying, reporting on, commenting on, recommending, concerning, reflecting, summarizing, referring to, pertaining to, supporting, refuting, and/or purporting to evidence, mention, memorialize, describe, constitute, contain, concern, reflect, summarize, refer to, support, refute, and/or in any way be relevant, in whole or in part.

S.      The term "any" shall be understood in either its most or least inclusive sense as it will bring within the scope of discovery requests all responses that might otherwise be construed to be out of its scope.

T.      The use of a singular form of any word includes the plural and vice versa.

U.      The connectives "and" and "or" shall be construed both disjunctively and conjunctively so as not to exclude any information otherwise within the scope of any discovery request.

# APPENDIX B

## INSTRUCTIONS

A.      Unless otherwise noted, these requests require production of documents and things that were prepared, created, written, sent, dated, or received on or after May 6, 2009.

B.      The following requests are intended to be construed as broadly as their language permits. They are to be construed independently, except when such construction limits their scope. Any ambiguity should be resolved by selecting the broadest construction possible. If any request or term in these requests is ambiguous or unclear to you, please contact the undersigned counsel as soon as possible so the request can be clarified so as to avoid unnecessary delay in discovery. If an objection is made to part of a request, then that part shall be specified and an answer or production given for the remaining parts.

C.      If any responsive document has been lost or destroyed, identify: (i) the author; (ii) the date of loss or destruction; (iii) the reason for loss or destruction; (iv) the identity of those directing the destruction, if any; and (v) the substance of the document.

D.      If Blue Buffalo objects to the scope or breadth of any request, Blue Buffalo is directed to (i) respond within the scope or breadth of production that Blue Buffalo contends is proper and (ii) define the scope or breadth in which Blue Buffalo has responded. Any limited response does not preclude Plaintiff from seeking additional discovery of the full scope or breadth of the request.

E.      Produce all documents which exist or have **been** maintained in electronic form in the electronic media required to be accessed and read by appropriate electronic equipment or, if necessary, written identification of the electronic equipment or software needed to access the electronic data.

709410336

F.      These requests seek all documents, objects, or other tangible things described in the categories below which are in Blue Buffalo's possession, custody or control.

CERTIFICATE OF SERVICE

The undersigned hereby certifies that he/she caused a true and correct copy of the

foregoing Plaintiff's First Set of Requests for Production of Documents and Things to The Blue

Buffalo Company Ltd. to be served upon counsel of record on July 3, 2014 by electronic mail

and by U.S. First Class Mail to the addresses indicated below.

Patterson Belknap Webb & Tyler LLP
Attn: Steven A. Zalesin
1133 Avenue of the Americas
New York, NY 10036-6710
Email: sazalesin@pbwt.com

Patterson Belknap Webb & Tyler LLP
Attn: Adeel A. Mangi
1133 Avenue of the Americas
New York, NY 10036-6710
Email: aamangi@pbwt.com

Patterson Belknap Webb & Tyler LLP
Attn: Sean H. Murray
1133 Avenue of the Americas
New York, NY 10036-6710
Email: smurray@pbwt.com

Patterson Belknap Webb & Tyler LLP
Attn: Vivian Storm
1133 Avenue of the Americas
New York, NY 10036-6710
Email: vstorm@pbwt.com

Paul, Weiss, Rifkind, Wharton & Garrison LLP
Attn: Martin Flumenbaum
1285 Avenue of the Americas
New York, NY 10019-6064
Email: mflumenbaum@naulweiss.com

Paul, Weiss, Rifkind, Wharton & Garrison LLP
Attn: Robert Atkins
1285 Avenue of the Americas
New York, NY 10019-6064
Email: ratkins@paulweiss.com

Carmody MacDonald P.C.
Attn: David H. Luce
120 S. Central Avenue, Suite 1800
St. Louis, MO 63105
Email: dhl@carmodymacdonald.com

Carmody MacDonald P.C.
Attn: Gerard T. Carmody
120 S. Central Avenue, Suite 1800
St. Louis, MO 63105
Email: gtc@carmodymacdonald.com

Carmody MacDonald P.C.
Attn: Sarah J. Bettag
120 S. Central Avenue, Suite 1800
St. Louis, MO 63105
Email: sjb@carmodymacdonald.com

By: _____

709410336