**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NESTLÉ PURINA PETCARE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-00859-RWS |
| | ) | |
| THE BLUE BUFFALO COMPANY LTD., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PURINA'S MOTION TO COMPEL**
**BLUE BUFFALO'S PRODUCTION OF DOCUMENTS**
**AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Fed. R. Civ. P. 37, Local Rule 37-3.04 and the Court's September 9, 2014 Order (Dkt. 62), Plaintiff Nestlé Purina PetCare Company ("Purina"), by and through its undersigned counsel, respectfully moves for an order compelling Blue Buffalo to produce certain categories of documents in response to Purina's document requests.

In the past week, there has been a dramatic development in this case directly relevant to these document requests: Purina has learned that an ingredient supplier to Blue Buffalo has been supplying Blue Buffalo with chicken by-product meal. See Exh. A ("[Wilbur Ellis's] current [Diversified Ingredients][1] contracts are for Chicken Meal Blend and Turkey Meal Blend and as you are aware, both contain some by-product meal."). As a Diversified Ingredients manager summed up the situation:

> I think if we work together, we can band-aid this situation. … If you are not going
> to fill these contracts for any reason, then I'm going to have to go to Blue to
> address the breach of contract and undoubtedly divulge the details of what was

---

[1]    Diversified Ingredients is an ingredient broker for Blue Buffalo.  There are now dozens of documents indicating that Wilbur Ellis supplied poultry meal blend containing by-products and feathers to Diversified Ingredients, who in turn supplied poultry meal blend to Blue Buffalo over at least a three year period.

1

shipped and the possibility that Rosser's material is the smoking gun for their problems.  That I do not want to do.  If the finger is pointed in that direction and then later verified to have been the cause, then Diversified and Wilbur will both have to answer to this in litigation with Blue.  The liabilities in this could be enormous.  You are talking about massive product recalls, potential market share loss, etc.  <u>That would undoubtedly be in the several million dollars range.</u>

Exh. B (emphasis added).

Remarkably, this revelation came <u>not</u> from Blue Buffalo itself—which dismissed the filing of Purina's lawsuit as based on "voodoo science" in less than 24 hours and which filed defamation claims only days later—but from a third party that produced documents in response to a Purina subpoena.  For its part, Blue Buffalo has not produced a single document in response to Purina's July 3rd document requests.[2]  Accordingly, the need is now acute for discovery from Blue Buffalo concerning the allegations in the First Amended Complaint to determine the extent of Blue Buffalo's false advertising and the extent of Blue Buffalo's knowledge—what did they know and when did they know it—regarding the true content of its products.

Despite the recent revelations, Blue Buffalo seeks to withhold broad swaths of information that are directly relevant to Purina's allegations, arguing that those allegations pertain solely to the presence of chicken/poultry by-product meal and corn in Blue Buffalo's dry food products and the presence of grains in Blue Buffalo's purportedly grain-free products. Even with respect to those topics, Blue Buffalo seeks to withhold documents, refusing for example to produce documents related to the National Advertising Division of the Council of Better Business Bureaus ("NAD") decisions that presaged Purina's lawsuit.

As the saying goes, "plaintiff is the master of its claims."  Purina's First Amended Complaint plainly puts at issue a much wider range of topics relating to Blue Buffalo's

---

[2]      Purina served its document requests on July 3, soon after discovery opened.  There are hundreds if not thousands of documents that are not in dispute that Blue Buffalo should have produced by now. Blue Buffalo has promised to begin a rolling production two days before the October 22nd hearing on this motion, over three and a half months since Purina issued its requests.

711490341

advertising than the presence of chicken by-product meal, including the company's history of deceptive advertising (¶¶ 4-6, 44-46), its claims that its products provide superior nutrition (¶¶ 20-22), and its claims that its "LifeSource" Bits deliver health benefits to pets (¶¶ 28-34). Purina is entitled to discovery on these allegations, which Blue Buffalo is stubbornly resisting.

## I.     BACKGROUND

Purina filed its First Amended Complaint on May 11, 2014, alleging that Blue Buffalo falsely advertised its dry pet food products.  Dkt. 9.  In particular, while Blue Buffalo claims that its products "NEVER" contain poultry by-product meal, corn and artificial preservatives and that its grain-free products do not contain grain.  Testing by an independent laboratory revealed that Blue Buffalo's products do in fact contain such ingredients.  *Id.* at ¶¶ 16-19, 38-41.  Purina further challenged Blue Buffalo's claims that its products are made from "only the finest natural ingredients," are nutritionally superior, and are fit for human consumption.  *Id.* at ¶¶ 20-27, 35-37, 42-43.  Additionally, Purina alleged that Blue Buffalo's "LifeSource" Bits do not contain enough nutrients to effectively deliver the claimed health benefits set forth in its advertising.  *Id.* at ¶¶ 28-34.  Finally, Purina alleged that Blue Buffalo's false advertising practices are part of a history of misleading advertising practices, as evidenced by two adverse decisions from the NAD dated as early as 2008 that found Blue Buffalo's advertising claims—ones that are nearly identical to those at issue in this lawsuit—were unsubstantiated and misleading.  *Id.* at ¶¶ 4-6, 44-45. A National Advertising Review Board (the NAD appellate board) decision as recent as July 9, 2014 confirms that Blue Buffalo's false advertising has continued to this day. Dkt. 64 at Exh. C.

Blue Buffalo filed counterclaims charging Purina with false advertising for its public statements in press releases, on its website petfoodhonesty.com, and on social media platforms regarding the filing of its lawsuit against Blue Buffalo and the allegations therein.  Dkt. 1 in Case

711490341

No. 14-CV-00920 at ¶¶ 30-40.  Blue Buffalo's counterclaims do not relate to Purina's products or the claims Purina makes regarding those products.

Purina issued its first set of document requests on July 3, 2014.  These requests were narrowly tailored to the allegations in Purina's First Amended Complaint, and in many instances sought only documents sufficient to reflect the information Purina seeks.  Blue Buffalo provided written responses to Purina's document requests on August 4, 2014, refusing to produce any documents at all with respect to many of Purina's requests.  Exh. C.  The parties exchanged three rounds of letters between mid-August 2014 and October 2, 2014 regarding each parties' written responses to the other's document requests.  Pursuant to the Court's September 9, 2014 Order and Local Rule 37-3.04, the parties also conducted two telephonic meet and confer sessions on September 23, 2014 and October 3, 2014 during which they made good faith and reasonable attempts to narrow the remaining issues in dispute with respect to document requests.[3]  The specific issues on which the parties were unable to reach accord with respect to Purina's document requests are outlined below.

## II.   ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible … if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Caldwell v. Morpho Detection, Inc.*, 4:10CV01537 AGF, 2011 WL

---

[3]     Adeel Mangi of Patterson Belknap Webb & Tyler LLP participated on behalf of Blue Buffalo. Richard Assmus of Mayer Brown LLP participated on behalf of Purina.  These calls were held at 12:00 p.m. on September 23rd and at 1:30 p.m. on October 3rd.

2784100 (E.D. Mo. July 15, 2011).  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

Blue Buffalo refuses to produce documents that are responsive to requests seeking categories of documents are tied directly to the allegations in Purina's First Amended Complaint. They therefore "are relevant to claim … of any party" and, as demonstrated below, have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probable."  Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401.

For ease of reference, Appendix A hereto contains the full text as narrowed of the various document requests on which Purina moves to compel.

### *Purina Requests 5(iv), 48 & 49 (NAD Decisions)*

These requests seek documents and communications related to the NAD's 2008 and 2014 decisions criticizing Blue Buffalo's advertising as misleading.  The NAD decisions directed Blue Buffalo to implement changes to its advertising in order to ameliorate these misleading statements.  Blue Buffalo refuses to produce any responsive documents.  Purina's Request 48 seeks:

> All documents and communications related to or referencing the ruling of the National Advertising Division (NAD) of the Council of Better Business Bureaus (hereinafter the "NAD") in Case #5696, decided on March 11, 2014, including, but not limited to: (i) any documents that You submitted to the NAD in connection with this proceeding; and (ii) any documents related to Your decision to modify or not to modify Your advertising practices as a result of the ruling.

Purina's Request 49 seeks the same information for the NAD's 2008 ruling against Blue Buffalo.

Blue Buffalo's response to both of these requests is as follows:

> Blue Buffalo objects to this Request as overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Blue Buffalo further objects to this Request on the grounds that materials submitted to NAD are confidential,

pursuant to Policies and Procedures by the Advertising Self-Regulatory Counsel (2012) Rules 2.1(e) and 5.5.

In an attempt to address Blue Buffalo's objections, Purina clarified during the parties' discussions that it only sought non-privileged Blue Buffalo internal communications related to the NAD proceedings as well as all filings submitted to the NAD.   Exh. D.   Blue Buffalo continues to object to these requests and flatly refuses to produce responsive documents.

Documents related to the NAD proceedings are directly relevant to Purina's claims in this matter.   The issues in the NAD proceedings are substantially similar to the issues raised in Purina's First Amended Complaint and the rulings are incorporated into Purina's First Amended Complaint by reference.   The 2014 NAD decision found that Blue Buffalo misled consumers about the ingredients in competing products.   *See* First Am. Compl., Dkt. 9 at Exh. A.   This is a prime example of advertising that violates the Lanham Act.   *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014).   It also sharply criticized Blue Buffalo's "superior nutrition" claims. First Am. Compl., Dkt. 9 at Exh. A.   These findings are nearly identical to certain of Purina's allegations in this lawsuit.   For example, Purina challenges Blue Buffalo's claim that its products provide superior nutrition.   *See, e.g., id.* at ¶¶ 20-22.   Purina also challenges Blue Buffalo's use of the True Blue Test on its website to "send[] a message to consumers that Blue Buffalo's products contain better ingredients and that Blue Buffalo is, unlike its competitors, honest about the ingredients that it uses."   *Id.* at ¶ 23.   The 2008 NAD decision criticized Blue Buffalo's claims that its products contained no animal by-products as well as its slogan "Love them like family.   Feed them like family" because of its misleading implication that Blue Buffalo products were fit for human consumption.   *Id.* at Exh. G.

In this lawsuit, Purina similarly challenges Blue Buffalo's claim that its products do not contain by-products as well as its use of the very same slogan at issue in the NAD proceedings.

711490341

*See, e.g., id.* at ¶¶ 16-19, 42-43.  Given the similarity between the advertising at issue in the NAD proceedings and the advertising at issue in this lawsuit, the positions that Blue Buffalo took during the NAD proceedings as well as its analysis of whether and how to comply with the NAD's decisions are directly relevant to Purina's allegations.

Additionally, Purina intends to prove that Blue Buffalo changed certain of its advertising in response to the NAD's rulings, but failed to make the NAD's recommended changes to other pieces of its advertising.  For example, in response to the NAD's 2008 recommendations related to its "no animal by-products" claims, Blue Buffalo switched to the equally untrue claim that its products "NEVER have Chicken (or Poultry) By-Product Meals."  *Id.* at ¶ 44.  And Blue Buffalo made no material changes to its slogan in response to the NAD's 2008 recommendation that it discontinue the "feed them like family" portion of that slogan.  *Id.* at ¶ 45.  At a minimum, Blue Buffalo's internal communications relating to the NAD decisions will inform what role those decisions played in the advertising changes or lack thereof and bears on the willfulness of Blue Buffalo's conduct.  *See, e.g., Bakhtiari Corp. v. Register Tapes Unlimited Inc.*, 2013 WL 2253182 (N.D. Cal. May 22, 2013) (compelling response to document requests seeking communications between defendant and Better Business Bureau, finding such information relevant to defendant's knowledge of complaints regarding claims similar to plaintiff's, which plaintiff planned to use to rebut defendant's claim of a good faith mistake); *U.S. v. Dish Network, L.L.C.*, 2011 WL 98951, at *8 (C.D. Ill. Jan. 10, 2011) (in case alleging violations of telemarketing laws, granting motion to compel defendant's production of documents relating to interactions with any consumer protection agency, such as the Better Business Bureau, regarding any previously alleged violations of telemarketing laws by defendant).

The documents related to the NAD proceedings are highly relevant to Purina's defenses

711490341

to Blue Buffalo's defamation and false advertising claims.  Purina had the NAD decisions in hand when it filed its complaint and can rely on those decisions (and the underlying proceedings) as providing a good faith basis for many of Purina's allegations.

In sum, Purina requests that the Court order Blue Buffalo to produce all non-privileged Blue Buffalo internal communications related to the 2008 and 2014 NAD proceedings referenced in the First Amended Complaint as well as all filings submitted to the NAD in connection with those proceedings and all summaries or reports of meetings regarding those proceedings held among: (a) the members of Blue Buffalo's board of directors, (b) each committee or subgroup of the board or (c) any group or subgroup of management employees.

### *Purina's Request 21 (Brennan Payments)*

This request seeks information regarding payments exchanged by and among Blue Buffalo and its internal ingredient buyer, Leonard Brennan, and its ingredient broker, Diversified Ingredients.  Request 21 specifically asks Blue Buffalo to produce:

> All documents and communications related to: (i) any payments made by You to Diversified Ingredients; (ii) any payments that You have received from Diversified Ingredients; (iii) any payments that You have made to Leonard Brennan; (iv) any payments that You have received from Leonard Brennan; (v) any payments made by Diversified Ingredients to Leonard Brennan; and (vi) any payments made by Leonard Brennan to Diversified Ingredients.

Blue Buffalo objected in part to this request because the First Amended Complaint does not make any allegations about Mr. Brennan.[4]  *See* Exh. C.

The requested documents, however, are relevant to Purina's allegations that Blue Buffalo's products contain ingredients—including  chicken by-product meal—not indicated on its label. *See, e.g.,* First Am. Cmpl., Dkt. 9 at ¶¶ 16-19.  These allegations entitle Purina to

---

[4]      Blue Buffalo agreed to produce responsive documents sufficient to show payments made to or received from Diversified Ingredients related to Blue Buffalo's procurement of poultry meal, and any documents and communications related to whether Blue Buffalo made payments to or received payments from Diversified Ingredients in connection with any procurement of poultry by-product meal.  Exh. C.

711490341

explore the reasons for the presence of these ingredients in Blue Buffalo's products, and the extent of Blue Buffalo's knowledge about their presence.  Information about payments to and from Mr. Brennan—who Purina understands was responsible for Blue Buffalo's ingredient procurement—directly bears on the issue of whether or not he or Blue Buffalo were incentivized to ensure that Diversified Ingredients provided pure poultry meal to Blue Buffalo as opposed to less expensive poultry by-product meal.  This information is all the more relevant given Purina's recent discovery that one of the ingredient suppliers who provided supposed chicken and poultry meal to Diversified Ingredients for sale to Blue Buffalo actually provided Diversified with a blended product containing by-product meal.  *See, e.g.,* Exh. A.  Accordingly, Purina requests that the Court order Blue Buffalo produce all documents responsive to Request 21.

### *General Objection 8 (Limitation on Ingredients)*

Blue Buffalo lodged a general objection to all of Purina's document requests "to the extent that they seek documents about Blue Buffalo's ingredients other than the use or exclusion of poultry by-product meal or corn in Blue Buffalo's dry food product; or the use or exclusion of rice or rice hulls in Blue Buffalo's grain-free dry food products; or the nutrient profile of LifeSource Bits."  *See* Exh. C.  In particular, this objection implicates the following Purina Document Requests:

- *Request 7*: This request seeks documents and communications related to Blue Buffalo's message in its advertising that its products provide pets with superior nutrition compared to those of its competitors.

- *Request 9*: This request seeks all documents and communications related to the quality, nutritional value, formulations and/or ingredient contents of any competitor products referenced in Blue Buffalo's advertising.

- *Request 10*: This request seeks documents related to any audit, test, sampling or quality control procedures performed to test or monitor the quality of Blue Buffalo products and ingredient contents thereof.

711490341

- *Request 11*: This request seeks all documents and communications related to Blue Buffalo's "True Blue Test."

- *Request 50*: This request seeks all documents and communications related to any recalls involving Blue Buffalo products or the ingredient content thereof since January 1, 2006, including all documents and communications related to Blue Buffalo's response or reaction to such recalls.

Purina's Requests 16, 17, 22 and 24 also fall within this category:

- *Request 16:* This request seeks documents and communications between Blue Buffalo and its suppliers, manufacturers, distributors, co-packers, brokers and blenders related to the ingredients purchased for use in connection with and/or used in connection with Blue Buffalo's dry food products.

- *Request 17:* This request seeks documents and communications sufficient to identify all of Blue Buffalo's suppliers, manufacturers, distributors, co-packers, brokers and blenders.

- *Request 22:* This request seeks all documents and communications related to invoices or attestations/certifications that ingredients met the requisite specifications Blue Buffalo received from any supplier, manufacturer, distributor, co-packer, broker or blender related to Blue Buffalo's products.

- *Request 24:* This request seeks all documents and communications between Blue Buffalo and its ingredient broker Diversified Ingredients related to any ingredient used in Blue Buffalo's products.

During the meet and confer process, Purina proposed to narrow these requests to seek the following categories of documents:

1. All documents and communications related to preservatives or any ingredient used to give any Blue Buffalo dry food product a specific color or flavor;

2. All documents and communications related to Blue Buffalo's ingredient and product specifications for its dry pet food products;

3. All documents and communications related to the availability of chicken or poultry meal or by-product meal for purchase by Blue Buffalo;

4. All documents and communications related to any testing or other quality control measures performed or undertaken to ensure conformity with Blue Buffalo's ingredient and product specifications; and

5. All documents sufficient to show the identity of Blue Buffalo's suppliers, distributors and brokers.

711490341

*See* Exh. D at 4.  Blue Buffalo agreed to produce documents responsive to the second and third categories above, but objected to the remaining narrowed requests and agreed to produce only those documents that concern the topics outlined in General Objection 8.

Blue Buffalo claims that its refusal to produce relevant and responsive information about all of the ingredients in its dry pet food products is justified because Purina's false advertising claims only implicate poultry by-product meal, corn, rice/rice hulls and the nutrient profile of "LifeSource" Bits.  *See* Exh. C.

Blue Buffalo misreads Purina's allegations.  In addition to Purina's challenge to Blue Buffalo's claims regarding poultry by-product meal, corn and grains, Purina challenges Blue Buffalo's claims that its products provide superior nutrition and that its products are human-grade and fit for human consumption.  *See, e.g.,* First Am. Cmpl., Dkt. 9 at ¶¶ 20-22, 42-43. These claims are not tied solely to the presence or absence of by-product meal or corn in Blue Buffalo's products.  Rather, the presence of chicken by-product meal is but one example of the ways in which Blue Buffalo's statements are false and misleading.  Accordingly, Purina requests that the Court order Blue Buffalo to produce all documents responsive to the requests at issue to the extent those document relate to Blue Buffalo's dry food products.

Furthermore, it now appears that Blue Buffalo suppliers included soy in their ingredients, yet another item that Blue Buffalo claims is never in its pet food.  *See* Exh. E (in which Wilbur Ellis admits that its chicken meal, which ultimately is sold to Blue Buffalo, contains soy).  Purina is entitled to explore just how far Blue Buffalo's mislabeling goes, especially in light of such evidence.

### *Blue Buffalo's General Objection 7*

Blue Buffalo lodged another general objection to all of Purina's document requests to the extent that they called for the production of documents containing trade secrets.  Blue Buffalo expressly reserved the right to redact trade secret information from any documents it produced.  *See* Exh. C.   Consistent with this objection, Blue Buffalo redacted its product formula information from the documents it produced on July 23, 2014.  Exh. F at 2.  However, Blue Buffalo's product formulations are relevant for three reasons.  *First*, Blue Buffalo put these formulations in issue in its counterclaim by contending that none of its formulations call for the inclusion of by-product meal or corn.  *See* Blue Buffalo Ctrclm., Dkt. 1 in Case No. 14-cv00920 at ¶¶ 43, 49.  Then Blue Buffalo issued a harsh attach on Dr. Makowski's estimates of the by-product content of Blue Buffalo pet foods.  The formulas will definitely provide insight into the legitimacy of Dr. Makowski's analysis as well as Blue Buffalo's criticisms.[5]  *Second*, the product formulations for the Blue Buffalo products on which Purina performed microscopic and other tests are necessary for Purina's experts to interpret the results of those tests.  The formulations will provide a roadmap for what should be in the product, which can then be compared to what the tests indicate is actually in the product.  *Third*, the product formulations are relevant to Blue Buffalo's sweeping claims that its products are nutritionally superior to other products.  The product formulations will establish the precise nutritional content of the products Blue Buffalo claims are nutritionally superior.

During the meet and confer process, Blue Buffalo proposed to produce the amount of each ingredient used in its formulas expressed in ranges of <1%, 1-3%; 3-5%; 5-10%; 10-15%;

---

[5]      For example, it appears that Blue Buffalo's ingredient supplier "blended" chicken meal with chicken by-product meal.  This means that all chicken meal content became by-product meal by virtue of the blending under governing ingredient definitions.  Thus, what Blue Buffalo claims is chicken meal is important for one form of verification; the balance of ingredients is also important for a second form of verification.

711490341

and 15-30% subject to reciprocal production.  This proposal is insufficient because it would not allow Purina to adequately analyze the nutritional content of the formulas.   Further, it is contingent upon Purina providing the same information for its own formulas, which are totally irrelevant to any of the parties' allegations.  Accordingly, Purina requests that the Court order Blue Buffalo to produce the formulae for each of its dry food products Purina has tested.

### *Purina's Request 4 (Blue Buffalo Ownership)*

This request seeks information relating to Blue Buffalo's ownership and corporate structure.  Purina's Request 4 asks Blue Buffalo to produce:

> Documents sufficient to show the ownership and structure of Blue Buffalo, including, without limitation, business organization documents and other company records, the operating agreement, the certificate of formation and any amendments to the foregoing.

These documents are directly relevant to Blue Buffalo's allegations that Blue Buffalo was "founded … by Bill Bishop and his two sons" and was "launched as a family company," which Blue Buffalo contrasts—in its counterclaims and in its advertising—against "major" and "big name" companies.  Blue Buffalo Ctrclm., Dkt. 1 in Case No. 14-cv00920 at ¶¶ 3, 16.  Finally, this request is narrowly drafted to require only that Blue Buffalo produced documents *sufficient to show* its ownership and structure, as opposed to all documents related to those subjects.

Blue Buffalo originally objected to this request as calling for irrelevant information but agreed to produce Blue Buffalo's certificate of incorporation.   During the meet and confer process, Blue Buffalo proposed to additionally produce ranked lists of its top three shareholders at inception and in 2014.  Exh. G at 3-4.  This proposal, however, does not provide Purina with enough relevant information to adequately respond to Blue Buffalo's allegations regarding its ownership and relative size as compared to its competitors.  For example, Purina also needs the identities and ownership percentages of all shareholders as well as Blue Buffalo's operating

agreement in order to determine the shareholders' financial and management rights, both of which directly bear on whether Blue Buffalo truly is a family-owned and operated business, as Blue Buffalo implies in its Counterclaim.  *See, e.g.,* Blue Buffalo Ctrclm., Dkt. 1 in Case No. 14-CV-00920 at ¶¶ 3, 16.   Accordingly, Purina requests that the Court order Blue Buffalo to produce all documents responsive to this request.

### *Purina's Request 34 (Blue Buffalo Business Plans Referencing Purina)*

This request seeks all documents and communications related to Blue Buffalo's strategic plans, long-range plans and business plans that also reference Purina and/or any of Purina's products.  Blue Buffalo refuses to produce responsive documents, except for such documents that relate to the substantiation for or accuracy of the Blue Buffalo advertising claims at issue in Purina's First Amended Complaint.  *See* Exh. C.  This is far too narrow a restriction in a case of this nature.

The information sought in this request is relevant to Purina's allegation that Blue Buffalo engages in false and misleading comparative advertising in connection with its "True Blue Test", website and TV commercials.  *See, e.g.,* First Am. Compl., Dkt. 9 at ¶¶ 23-27.   Additionally, responsive documents may demonstrate that Blue Buffalo had no basis for making the advertising claims that "big name" pet food manufacturers (including Purina) are not being honest with consumers.   Such documents can be especially relevant to the impact of the advertising (both intended and actual) and to damages.

During the parties' meet and confer process, Blue Buffalo agreed to produce responsive documents if Purina would agree that Blue Buffalo could redact material from the documents that is not related to and does not reference Purina or the issues in this litigation.  *See* Exh. G at 5.  This proposal is not acceptable to Purina because it does not allow for a full analysis of the

references to Purina in the context of the entire documents.   Further, such redactions are unnecessary in light of the Protective Order entered in this matter, which permits Blue Buffalo to designate sensitive and proprietary information as "Confidential—Attorneys' Eyes Only" to prevent such material from being seen by anyone at Purina.  Blue Buffalo has taken an extremely narrow view of what is confidential in pursuing the de-designation of Purina documents and now should receive equal treatment.  Purina requests that the Court order Blue Buffalo to produce all documents responsive to this request in unredacted form.

**IV.    CONCLUSION**

For the reasons set forth above, Purina respectfully requests that the Court order Blue Buffalo to produce all documents responsive to Purina's Document Request Numbers 4, 5(iv), 7, 9, 10, 11, 16 (as narrowed), 17 (as narrowed), 21, 22 (as narrowed), 24 (as narrowed), 34, 48, 49 and 50.

Dated: October 10, 2014                     Respectfully submitted,

NESTLÉ PURINA PETCARE COMPANY

/s/ Carmine R. Zarlenga

Carmine R. Zarlenga 386244DC *(Lead attorney)*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3227
Facsimile: (202) 263-5227
czarlenga@mayerbrown.com

Richard M. Assmus *(pro hac vice)*
Kristine M. Young *(pro hac vice)*
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

711490341

rassmus@mayerbrown.com
kyoung@mayerbrown.com

David A. Roodman, 38109MO
BRYAN CAVE LLP
211 North Broadway #3600
St. Louis, Missouri 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
daroodman@bryancave.com

16

**APPENDIX A**

**Document Request 4:**   Documents sufficient to show the ownership and structure of Blue Buffalo, including, without limitation, business organization documents and other company records, the operating agreement, the certificate of formation and any amendments to the foregoing.

**Document Request 5(iv):** All minutes, recordings, summaries or reports of meetings, whether formal or informal, of the members of each board of directors of Blue Buffalo, each committee or subgroup of each board, the members of each committee and any group or subgroup of management employees of Blue Buffalo within the past ten (10) years discussing any pending or threatened litigation, administrative actions (including NAD proceedings) or like claims related to the Blue Buffalo Products.

**Document Request 7:**   All documents and communications related to Your advertised claims that the Blue Buffalo Products provide pets with "superior nutrition" as compared to those of competitors, including those that You relied upon related to such claims.

**Document Request 9:**   All documents and communications related to the quality, nutritional value, formulations and/or ingredient contents of any competitor products referenced in Blue Buffalo's advertising (whether by company name or generically), including any comparison of (i) any two or more competitor's products; or (ii) any competitor product with any Blue Buffalo Product.

**Document Request 10:**   All documents related to any audit, test, sampling or quality control procedures performed (including the results thereof) to test or monitor the quality of the Blue Buffalo Products and ingredient contents thereof, including, but not limited to: (i) the presence or absence of chicken/poultry by-product meal or other by-product meals; (ii) the presence or

1

absence of grain; (iii) the vitamin, mineral or antioxidant content of the LifeSource Bits any special health benefits to pets derived therefrom; (iv) the use of "only the finest natural ingredients"; or (v) the presence or absence of artificial preservatives, colors or flavors.

**Document Request 11:**   All documents and communications related to the development, creation and maintenance of Blue Buffalo's "True Blue Test" that is accessible on Your website at (http://www.bluebuffalo.com/dog-food-comparison/true-blue-test), including all documents and communications related to the information used to generate the test results.

**Document Requests 16, 17, 22 and 24 (as narrowed):**

1. All documents and communications related to preservatives or any ingredient used to give any Blue Buffalo dry food product a specific color or flavor;

2. All documents and communications related to Blue Buffalo's ingredient and product specifications for its dry pet food products;

3. All documents and communications related to the availability of chicken or poultry meal or by-product meal for purchase by Blue Buffalo;

4. All documents and communications related to any testing or other quality control measures performed or undertaken to ensure conformity with Blue Buffalo's ingredient and product specifications; and

5. All documents sufficient to show the identity of Blue Buffalo's suppliers, distributors and brokers.

**Document Request 21:**   All documents and communications related to: (i) any payments made by You to Diversified Ingredients; (ii) any payments that You have received from Diversified Ingredients; (iii) any payments that You have made to Leonard Brennan; (iv) any payments that You have received from Leonard Brennan; (v) any payments made by Diversified Ingredients to Leonard Brennan; and (vi) any payments made by Leonard Brennan to Diversified Ingredients.

**Document Request 34:**   All documents and communications related to strategic plans, long-range plans and business plans that also reference Purina and/or any of Purina's products.

711490341

**Document Request 48:**  All documents and communications related to or referencing the ruling of the National Advertising Division (NAD) of the Council of Better Business Bureaus (hereinafter the "NAD") in Case #5696, decided on March 11, 2014, including, but not limited to: (i) any documents that You submitted to the NAD in connection with this proceeding; and (ii) any documents related to Your decision to modify or not to modify Your advertising practices as a result of the ruling.

**Document Request 49:**  All documents and communications related to or referencing the ruling of the NAD in Case #4892, decided July 31, 2008, including, but not limited to: (i) any documents that You submitted to the NAD in connection with this proceeding; and (ii) any documents related to Your decision to modify or not to modify Your advertising practices as a result of the ruling.

**Document Request 50:**  All documents and communications related to any recalls involving the Blue Buffalo Products or the ingredient content thereof since January 1, 2006, including all documents and communications related to Blue Buffalo's response or reaction to such recalls.

3

711490341

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he caused a true and correct copy of the foregoing Motion to Compel Blue Buffalo's Production of Certain Documents and Memorandum in Support Thereof to be served on all counsel of record who are deemed to have consented to electronic service on this day of October 10, 2014 via the Court's CM/ECF system and via electronic mail.


/s/ Carmine R. Zarlenga

711490341