# EXHIBIT D

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

October 2, 2014

**Richard M. Assmus**
Direct Tel +1 312 701 8623
Direct Fax +1 312 706 9125
rassmus@mayerbrown.com

VIA ELECTRONIC MAIL

Adeel A. Mangi
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

Re:   *Nestlé Purina PetCare Co. v. Blue Buffalo Co. Ltd.*, No. 4:14-cv-00859 (RWS) (E.D. Mo)

Dear Adeel:

We write to follow up on the issues we discussed during our recent meet and confer regarding the parties' responses to written discovery requests.

As we reiterated during the meet and confer last week, many of Blue Buffalo's requests seek information that is broader in scope than either party's allegations in this lawsuit. Blue Buffalo's counterclaim in this matter is very narrow, tied only to Purina's statements related to this lawsuit and the website petfoodhonesty.com. The limited scope of Blue Buffalo's counterclaim does not entitle it to wide-ranging discovery from Purina into such irrelevant areas as Purina's manufacturing processes, inspection protocols and ingredient procurement practices. Nor is such wide-ranging discovery relevant to Blue Buffalo's defenses against Purina's allegations. While Purina has sought documents regarding Blue Buffalo's ingredient specifications, quality control processes and the like in order to explore the reasons for the presence of ingredients in Blue Buffalo's products that Blue Buffalo advertises their products never contain, how those practices measure up to Purina's has no bearing on the issues that are at the heart of this lawsuit. In sum, and as detailed further below, Purina is willing to produce documents in its possession, custody or control that are germane to the parties' allegations and defenses in this matter, but cannot agree to the expansive inquiry into all aspects of its business that Blue Buffalo proposes to conduct.

*Purina's Interrogatory Responses*

As we indicated during the meet and confer, Purina will provide a written narrative concerning any non-privileged testing performed on any Blue Buffalo products, as requested in Blue Buffalo's Interrogatory No. 3. We will confirm the timing of that supplemental response, and suggest we describe the proposed nature of that response further tomorrow.

In Interrogatory No. 4, Blue Buffalo seeks the identity of any person that informed Purina that certain companies supplied Blue Buffalo with poultry meal and/or poultry by-product meal or that payments were exchanged between Leonard Brennan and Blue Buffalo or Diversified

Mayer Brown LLP operates in combination with other Mayer Brown entities with offices in Europe and Asia and is associated with Tauil & Chequer Advogados, a Brazilian law partnership.

711338045

Adeel A. Mangi
October 2, 2014
Page 2

Ingredients. Purina objected to this interrogatory as calling for information protected from disclosure by the attorney-client and attorney work product privileges. In your September 12, 2014 letter to me you challenge Purina's privilege assertion. As we discussed during our meet and confer, Purina construes this request as one seeking the identity of individuals that Purina has interviewed during the course of its investigation in this matter and it therefore falls squarely within the work product and attorney-client privileges.

It is well-established that when an interrogatory calls for the identification of persons interviewed by counsel, as Interrogatory No. 4 does, the work product privilege is applicable. *See, e.g., Common. of Mass. v. First Nat'l Supermarkets,* 112 F.R.D. 149, 152 (D. Mass. 1986); *U.S. v. Dist. Council of New York City & Vicinity United Broth. Of Carpenters & Joiners of Am.,* 1992 WL 208284, at *4, 11 (S.D.N.Y. Aug. 18, 1992) (noting that "[h]ow a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled. … [A] party may not secure disclosure of an adversary's counsel's view of the case or trial preparation by seeking disclosure of those facts or sources of facts which counsel considers more significant than others and has devoted time to pursuing"). The rationale behind this protection is that "if the identity of interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy." *Ferruza v. MTI Tech.,* 2002 WL 32344347, at *3-4 (C.D. Cal. June 13, 2002) (finding that identities of witnesses linked to very specific factual contentions in plaintiff's complaint would necessarily reveal counsel's opinions regarding the relative importance of the witnesses, the highlights of their testimony/factual knowledge and would link any future factual statements by the witnesses with plaintiffs' counsel's legal theories and conclusion).

All of the authority you cite in your September 17th letter in support of your position address the question of whether the identities of unnamed witnesses discussed in a complaint and who are alleged to have firsthand knowledge of the facts underlying the allegations in the complaint itself are protected by the work product privilege. You cite no cases requiring disclosure of interviewed witnesses where the statements were not expressly relied upon in a plaintiff's complaint.

Finally, Purina will, consistent with its ongoing obligations under Federal Rule of Civil Procedure 26, disclose the identity of any individual likely to have discoverable information that Purina may use to support its claims or defenses. However, not every person Purina interviews as part of its ongoing investigation in this matter falls within the required disclosure provision of Rule 26(a). If and when Purina identifies individuals at these suppliers that it might use as witnesses in this mater, it will thereafter supplement its Rule 26(a) disclosures.

Mayer Brown LLP

Adeel A. Mangi
October 2, 2014
Page 3

**Blue Buffalo's Responses to Purina's Requests for Production**

*General Objection No. 7*

Blue Buffalo continues to object to producing its product formulations. The formulations are relevant for three reasons. *First,* Blue Buffalo put these formulations in issue in its counterclaim by contending that none of its formulations call for the inclusion of by-product meal or corn. *See* Blue Buffalo Counterclaim ¶¶ 43, 49. *Second,* the product formulations for the Blue Buffalo products on which Purina performed microscopic and other tests are necessary for Purina's experts to interpret the results of those test. The formulations will provide a roadmap for what should be in the product, which can then be compared to what the test indicate is actually in the product. *Third,* the product formulations are relevant to Blue Buffalo's sweeping claims that its products are nutritionally superior to other products. Purina's allegations are not, as Blue Buffalo contends, limited to Blue Buffalo's advertising claims that its products are superior to competitors' products because they do not contain by-product meal. Purina's complaint references Blue Buffalo's alleged non-use of by-product meal as but one example of the ways in which Blue Buffalo claims nutritional superiority over other brands. The product formulations are directly relevant to these claims because they will establish the precise nutritional content of the products Blue Buffalo claims are nutritionally superior.

If we can reach an agreement, Purina will agree to produce product formulations for the four Purina products on which Dr. Makowski performed microscopic testing.

*Request No. 13*

In this request, Purina seeks documents sufficient to show Blue Buffalo's "cold formed process" for its LifeSource Bits. Blue Buffalo objected to this request and Purina agreed to narrow the request. Accordingly, Purina can limit Request No. 13 to seek documents sufficient to show whether and how heat is used during the cold formed process and all documents substantiating Blue Buffalo's claims that: (a) LifeSource Bits are "cold-formed" "to preserve nutritional potency of the ingredients" and (b) that "LifeSource Bits are manufactured separately at a lower temperature from the rest of the vitamins and antioxidants"; and (c) that LifeSource Bits provide a benefit to pets as a result of the "cold formed process."

*Request No. 16, 17, 22 and 24*

In these requests, Purina seeks all documents and communications between Blue Buffalo and its suppliers, manufacturers, distributors, co-packers, brokers and blenders related to the ingredients purchased for use in connection with and/or used in connection with Blue Buffalo's products, including communications between Blue Buffalo and Pilgrim's Pride Corporation, Wilbur-Ellis, American By-Products, Inc., Darling International Inc. and Diversified Ingredients. Blue Buffalo agreed to produce certain documents responsive to these requests related to its procurement of poultry meal and by-product meal and in some instances, corn and rice/rice hulls. During our meet and confer, we reiterated Purina's request for all responsive documents but

Adeel A. Mangi
October 2, 2014
Page 4

agreed to provide additional detail about the types of documents Purina seeks through these requests. In addition to what Blue Buffalo has already agreed to provide in response to these requests, Purina seeks:

- All documents and communications related to preservatives or any ingredient used to give any Blue Buffalo dry food product a specific color or flavor;

- All documents and communications related to Blue Buffalo's ingredient and product specifications for its dry pet food products;

- All documents and communications related to the availability of chicken or poultry meal or by-product meal for purchase by Blue Buffalo;

- All documents and communications related to any testing or other quality control measures performed or undertaken to ensure conformity with Blue Buffalo's ingredient and product specifications; and

- All documents sufficient to show the identity of Blue Buffalo's suppliers, distributors and brokers.

*Request No. 4*

Request No. 4 seeks documents sufficient to show the ownership and structure of Blue Buffalo. Blue Buffalo has only agreed to produce its certificate of incorporation. As we explained during our meet and confer, Blue Buffalo placed its ownership at issue in this matter by asserting that Blue Buffalo was "founded … by Bill Bishop and his two sons" (¶ 16) and was "launched as a family company" (¶ 3) and juxtaposing the company against "major companies" (¶16). Further, Purina is entitled to present information at trial to counter Blue Buffalo's assertions that it is a family-owned business.

*Request No. 19*

This request seeks documents and communications sufficient to show the amount of chicken/poultry meal and/or chicken/poultry by-product meal used in Blue Buffalo's products and the price that Blue Buffalo paid for those ingredients. Blue Buffalo has agreed to produce the amount of these ingredients purchased and the price it paid for them. However, the amount of such product *used* in Blue Buffalo's products is relevant and should be produced. A significant gap between the amount of chicken/poultry meal purchased and the amount that Blue Buffalo purported to use might indicate that other ingredients, including by-product meal, were used in Blue Buffalo's products in the place of chicken/poultry meal.

711338045

Adeel A. Mangi
October 2, 2014
Page 5

*Request No. 29*

This request seeks copies of all Blue Buffalo advertisements containing certain enumerated claims. Purina agrees to limit this request to final copies of all responsive national television, Internet and print advertisements.

*Request Nos. 5, 48 & 49*

These requests seek documents related to the 2008 and 2014 NAD decisions relating to Blue Buffalo's advertising practices. Blue Buffalo has refused to produce responsive documents. During our meet and confer, Purina explained that it was seeking non-privileged Blue Buffalo internal communications related to the proceedings as well as all filings submitted to the NAD. These documents are relevant to Purina's allegations that Blue Buffalo has a history of misleading consumers. Specifically, the 2014 NAD decision found that Blue Buffalo was misleading consumers about the ingredients in competing products. The NAD decision also sharply criticized Blue Buffalo's "superior nutrition" claims. These findings are nearly identical to certain of Purina's allegations in this lawsuit. For example, Purina challenges Blue Buffalo's claim that its product provide superior nutrition. *See, e.g.,* First Am. Compl. ¶¶ 20-22. Purina also challenges Blue Buffalo's use of the True Blue Test to "send[] a message to consumers that Blue Buffalo's products contain better ingredients and that Blue Buffalo is, unlike its competitors, honest about the ingredients that it uses." *Id.* at ¶ 23. The 2008 NAD decision criticized Blue Buffalo's claims that its products contained no animal by-products as well as its slogan "Love them like family. Feed them like family" because of its misleading implication that Blue Buffalo products were fit for human consumption. In this lawsuit, Purina similarly challenges Blue Buffalo's claim that its products do not contain by-products as well as its use of the very same slogan at issue in the NAD proceedings. Given the similarity between the advertising at issue in the NAD proceedings and the advertising at issue in this lawsuit, the positions that Blue Buffalo took during the NAD proceedings and the substantiation it used for its claims as well its analysis of whether and how to comply with the NAD's decisions are relevant to Purina' allegations in this matter.

Furthermore, we intend to prove that Blue Buffalo changed its advertising because it was false. At a minimum, Blue Buffalo's internal communications relating to the NAD decisions will inform what role those decisions played in the advertising changes.

*Request No. 21*

This request seeks information regarding payments exchanged between Blue Buffalo and Diversified Ingredients or Leonard Brennan or between Diversified Ingredients and Leonard Brennan. Blue Buffalo refuses to produce information regarding payments exchanged between it and Mr. Brennan and between Diversified Ingredients. This information is relevant to whether or not Mr. Brennan and/or Blue Buffalo were incentivized to ensure that Diversified Ingredients provided pure chicken or poultry meal to Blue Buffalo as opposed to chicken or poultry by-product meal.

711338045

Adeel A. Mangi
October 2, 2014
Page 6

*Request No. 34*

This request seeks all document and communications related to strategic plans, long-range plans and business plans that also reference Purina and/or Purina's products. Blue Buffalo agreed to produce only documents that relate to Blue Buffalo's dry food products and the substantiation for or accuracy of the advertising claims cited in Purina's complaint and amended complaint. During our meet and confer we indicated that Purina has agreed to a reciprocal production obligation and accordingly would produce relevant documents that mentioned Blue Buffalo. The requested documents are directly relevant to Purina's claims that Blue Buffalo has made false and misleading statements that "big name" pet food manufacturers (including Purina) are not being honest with consumers. The requested documents may demonstrate that Blue Buffalo had no basis for making those claims.

*Request No. 50*

This request seeks documents and communications involving Blue Buffalo's products or the ingredient content thereof. Blue Buffalo agreed to produce responsive documents only to the extent that they relate to product recalls based on the presence of poultry by-product meal or corn in its dry food products, or based on the presence of rice in its grain-free dry food products. Although we explored during our meet and confer developing a proposal for the reciprocal exchange of documents related to recalls, Purina's position remains that documents responsive to this request (including any scientific evidence located in Blue Buffalo's Connecticut headquarters) are relevant to the allegations in this lawsuit and should be produced for the reasons articulated in my August 18th letter to Mr. Zalesin.

**Purina's Responses to Blue Buffalo's Document Requests**

*Request No. 10*

This request seeks documents related to the launch of Purina Beyond. Purina continues to object to this request for the reasons stated in Purina's response to this request and my subsequent letters. The launch of Beyond has no relevance to either party's allegations in this matter. Beyond is not mentioned in Blue Buffalo's counterclaims. Indeed, the Beyond product line was not in the marketplace at the time this lawsuit began. Accordingly, Purina will not produce documents responsive to this request.

*Request No. 11*

This request seeks copies of Petfoodhonesty.com and any blogs or social media pages through which Purina promotes Petfoodhonesty.com. During our meet and confer you requested clarification regarding content that was removed from Purina's social media pages due to violation of Purina's community guidelines. Purina will produce the material that was removed to the extent that it still exists.

Mayer Brown LLP

Adeel A. Mangi
October 2, 2014
Page 7

*Request No. 12*

This request seeks copies or Purina.com and any other websites used to promote Purina products. Purina has agreed to produce responsive documents to the extent that they are not publically available and reference Blue Buffalo or the allegations in this lawsuit. The remaining documents responsive to this request are irrelevant and Purina will not produce them.

*Request No. 31*

This request seeks all documents that describe, set forth or refer to the pricing of Purina's products. Purina continues to object to this request for the reasons stated in Purina's response to this request and my subsequent letters. However, Purina will agree to produce basic pricing information for its ProPlan products, which competes with Blue Buffalo in the pet specialty channel. Please also note that Purina uses a "service pricing" model it communicates to its customers based on the products and services the customers buy. At an appropriate time, Purina can provide a written explanation or witness testimony regarding how its products are priced.

*Request No. 45*

This request seeks information regarding Purina's advertising expenditures. Purina continues to object to this request for the reasons stated in its response to this request and in my subsequent letters. This information is irrelevant to the allegations in this lawsuit. However, Purina will agree to produce documents sufficient to indicate the amount of its expenditures related to social media posts that reference petfoodhonesty.com.

*Request No. 46*

Request No. 46 seeks documents sufficient to show the content of every advertisement or promotion for each of Purina's products. Purina continues to object to this request for the reasons stated in Purina's response to this request and my subsequent letters. The content of each and every Purina advertisement is irrelevant to the parties' allegations in this lawsuit. Indeed, there are no operative allegations in Blue Buffalo's counterclaims about Purina's advertisements and statements other than petfoodhonesty.com and related social media posts. Purina will not produce documents responsive to this request.

*Request No. 60*

This request seeks documents concerning the use of heat during the manufacturing of Purina's products. Purina continues to object to this request for the reasons stated in Purina's response to this request and my subsequent letter. Documents responsive to this request are not relevant to the parties' allegations in this lawsuit. Purina will not produce responsive documents.

711338045

Adeel A. Mangi
October 2, 2014
Page 8

*Request Nos. 67 & 68*

These requests seek documents related to Purina's procedures for inspecting, auditing or approving ingredient suppliers and ingredient deliveries. Purina continues to object to this request for the reasons stated in Purina's response to this request and my subsequent letters. These documents are not relevant to either party's allegations in this lawsuit. Purina will not produce responsive documents.

*Request No. 79*

This request seeks Board of Directors meeting minutes regarding ingredients/formulations, audits/quality control, pending/threatened litigation, administrative actions, comparisons between Purina's products and competitors' products, ingredient suppliers/distributors/co-packers/blenders/brokers, and recalls. Purina can agree to produce its responsive Board of Directors minutes.

\*   \*   \*

We look forward to discussing these matters tomorrow.

Sincerely,

*[signature]*

Richard M. Assmus

cc: Carmine Zarlenga
    David Roodman

711338045