# EXHIBIT F

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

August 18, 2014

**Richard M. Assmus**
Direct Tel +1 312 701 8623
Direct Fax +1 312 706 9125
rassmus@mayerbrown.com

BY ELECTRONIC MAIL

Steven A. Zalesin
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

Re: *Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.*, No. 4:14-cv-00859 (RWS) (E.D. Mo)

Dear Steve:

We write regarding Blue Buffalo's August 4, 2014 responses to Purina's First Set of Requests for the Production of Documents and Things. In general, those responses reflect an overly restrictive view as to Purina's allegations in this matter and the materials that are relevant to this lawsuit. Purina's specific objections to Blue Buffalo's responses are outlined below.

*First*, Blue Buffalo's General Objections raise a number of concerns:

- Paragraph No. 14 of Blue Buffalo's General Objections indicates that Blue Buffalo will only produce documents prepared, created, written, sent, dated or received before May 6, 2013, rather than documents dated on or after May 6, 2009 as Purina requested. There is no justification for this arbitrary and unduly narrow time period for discovery. Information dating back to 2009 is highly relevant for purposes of assessing Blue Buffalo's conduct, the reaction of consumers to it, the impact on the marketplace, and for calculating Purina's damages. In particular, although Purina only recently discovered that Blue Buffalo's products contain ingredients that Blue Buffalo expressly represents that they do not, it is entitled to explore how far back in the past that conduct occurred in order to determine what affect the conduct had on the relevant markets. As detailed in the NAD's July 31, 2008 decision, Blue Buffalo engaged in false advertising relating to by-products in its pet food as early as 2008. Blue Buffalo's naked denials then did not preclude an adverse finding, nor should they carry any weight now. The whole purpose of discovery is to put those denials to the test. Unless otherwise noted below, Purina requests that Blue Buffalo produce all responsive documents dated from May 6, 2009 to the present.

- Paragraph No. 7 of Blue Buffalo's General Objections states "Blue Buffalo expressly reserves the right to redact trade secret information from documents produced in response to these requests." As you know the protective order entered by the court on August 1, 2014 specifically protects the parties' trade secret information from use or disclosure outside of this lawsuit, and if designated "Confidential—Attorneys' Eyes Only," from

Steven A. Zalesin
August 18, 2014
Page 2

> disclosure to Purina employees, including Purina's in-house attorneys. There is no reason nor justification to redact trade secret information that is otherwise relevant and responsive to Purina's requests for production. Similarly, Blue Buffalo in its response to Request No. 13 refuses to produce documents and communications sufficient to describe the "cold formed" process used to formulate and manufacture [its] LifeSource Bits because, according to Blue Buffalo, they are irrelevant and call for the disclosure of trade secrets. As to the latter alleged concern, the protective order entered in this matter is sufficient to protect any purported trade secret information in Blue Buffalo's production. And these documents are directly relevant to Purina's claims in Paragraph 33 of the First Amended Complaint. Further, Adeel Mangi stated in his August 13, 2014 letter regarding Blue Buffalo's July 23, 2014 production of documents that Blue Buffalo redacted "the exact amount of the ingredients used in Blue Buffalo's products" because that information allegedly constitutes "critical trade secrets with no relevance to [Purina's] claims." Again, the protective order is sufficient to protect any purported trade secret information disclosed in this litigation. Further, Purina challenges Blue Buffalo's assertions that its products provide pets with superior nutrition as compared to those of competitor products. *See, e.g.,* First Amended Complaint at ¶¶ 20-22. The exact quantity of the ingredients in Blue Buffalo products is relevant to this allegation.

- Paragraph No. 8 of Blue Buffalo's General Objections states that Blue Buffalo objects to the requests to the extent "that they seek documents about Blue Buffalo's ingredients other than the use or exclusion of poultry by-product meal or corn in Blue Buffalo's dry food products, the use or exclusion of rice or rice hulls in Blue Buffalo's grain-free dry food products, or the nutrient profile of LifeSource Bits … ." However, information concerning all of the ingredients in Blue Buffalo's products is directly relevant to Purina's allegations that Blue Buffalo's products contain ingredients that Blue Buffalo advertisements and marketing claim they do not contain. In order to properly analyze the results of its testing of Blue Buffalo products for these ingredients, we are entitled to discover and understand the total mix of ingredients going into the product. Blue Buffalo's proposed production of information related to only a handful of ingredients is improper and insufficient to accomplish this purpose. Our amended complaint in this action is broader than this. Purina challenges Blue Buffalo's assertions that its products provide pets with superior nutrition as compared to those of competitor products, contain "only the finest natural ingredients," and have "no artificial preservatives." *See, e.g.,* First Amended Complaint at ¶¶ 20-22, 35-37. In fact, these allegations have much greater weight than the typical case, given the NAD ruling against Blue Buffalo earlier this year. Documents pertaining to all Blue Buffalo ingredients are therefore highly relevant to the truthfulness of Blue Buffalo's advertising and the lawsuit.

- Paragraph No. 2 of Blue Buffalo's General Objections states that Blue Buffalo "will produce only documents that are stored at its headquarters in Wilton, Connecticut or that are in the possession of its employees." Please confirm that there are no other Blue Buffalo locations outside of Wilton, Connecticut, and that Blue Buffalo does not have

Steven A. Zalesin
August 18, 2014
Page 3

any other documents or responsive information in its possession, custody or control, in any other places or locations. To the extent that there are other locations, Blue Buffalo is obligated to produce responsive documents to the extent that they are within its possession, custody or control.

*Second,* Blue Buffalo seeks to limit its production of materials responsive to a number of requests to only those that relate to the presence or absence of chicken/poultry by-product meal or corn in its dry food products and rice or rice hulls in its grain-free dry food products, or the nutrient profile of its LifeSource Bits. While Purina will agree, at least for the time being, to limit its requests to those documents and communications pertaining to Blue Buffalo's dry food products, it cannot agree to the other limitations Blue Buffalo seeks to impose. Materials related to all ingredients in Blue Buffalo's dry food products are relevant to the allegations in Purina's First Amended Complaint. For example, Purina challenges the statements in Blue Buffalo advertising that Blue Buffalo's products: (i) are nutritionally superior to those of its competitors, (ii) contain only the finest natural ingredients and (iii) are free from artificial preservatives, colors or flavors. *See, e.g.,* First Amended Complaint, ¶¶ 20, 35-37. Furthermore, Purina challenges Blue Buffalo's comparative advertising in its "True Blue Test," which purports to compare Blue Buffalo's own products to those of its competitors across a broad spectrum of characteristics, including, for example, whether or not the product has real meat as the first ingredient, always includes veggies and fruit, has artificial colors, flavors or preservatives, or contains soy. *See, e.g.,* First Amended Complaint, ¶ 35. In addition to all Blue Buffalo responses that purport to limit production to the "Challenged Claims" (as defined in Blue Buffalo's General Objection No. 8), the following responses contain the unwarranted restrictions:

- Response to Request No. 7: Purina requested documents and communications related to Blue Buffalo's messages in its advertising that its products provide pets with superior nutrition compared to those of its competitors. Blue Buffalo states that its production of responsive documents will be limited to those documents related to the presence or absence of poultry by-product meal.

- Response to Request No. 9: Purina sought all documents and communications related to the quality, nutritional value, formulations and/or ingredient contents of any competitor products referenced in Blue Buffalo's advertising. Blue Buffalo agreed to produce only those documents that relate to the use or exclusion of poultry by-product meal, corn, grain, and the nutrients in LifeSource Bits. Blue Buffalo's response to Request No. 26 cross-references its response to Request No. 9. Purina takes the same position on Blue Buffalo's response to Request No. 26 as it does on Blue Buffalo's response to Request No. 9. Additionally, please confirm that Blue Buffalo will produce documents responsive to Request No. 26 that relate to testing or evaluations.

- Response to Request No. 10: Blue Buffalo seeks to limit its production of documents related to any audit, test, sampling or quality control procedures performed to test or monitor the quality of its products and ingredient contents thereof to testing for the

Steven A. Zalesin
August 18, 2014
Page 4

- presence or absence of chicken/poultry by-product meal in its dry dog food products, the presence or absence of grain in its grain-free dry food products and the vitamin, mineral or antioxidant content of LifeSource Bits.

- Response to Request No. 11: Blue Buffalo seeks to limit its production of documents responsive to Purina's request for all documents and communications related to Blue Buffalo's "True Blue Test" to those documents related to its claims in that test about whether its own products or competitor products contain poultry by-products, corn, or wheat. However, the "True Blue Test" purports to compare Blue Buffalo's products with its competitors' products across a number of additional qualities, including whether or not the product has real meat as the first ingredient, always includes veggies and fruit, has artificial colors, flavors or preservatives, or contains soy. Responsive documents related to these qualities are relevant to Purina's allegations in this lawsuit, including for example Purina's allegation that "Blue Buffalo's advertising features comparisons between Blue Buffalo products and those of its competitors, which represents and sends a message to consumers that Blue Buffalo's products contain better ingredients... ." First Amended Complaint, ¶ 23.

- Response to Request No. 16: Blue Buffalo objects to producing the documents sought in Requests 16(b) and 16(g) except to the extent they relate to poultry meal, poultry by-product meal or corn used in Blue Buffalo's dry food products or rice or rice hulls used in Blue Buffalo's grain-free dry food products. Blue Buffalo also seeks to limit its responses to the documents sought in Requests 16(c)-(e) to documents and communications sufficient to show Blue Buffalo's procurement of poultry meal from Pilgrim's Pride, Wilbur-Ellis, American By-Products and Darling Ingredients and documents related to whether or not Blue Buffalo purchase poultry by-product meal from these companies. This limitation is unwarranted. Not only do Purina's allegations extend beyond Blue Buffalo's use of by-product meal, communications between Blue Buffalo and these companies may reflect communications about the poultry meal and poultry by-product meal market in general, such as the availability of such products and/or shortages of such products that bear on the likely truth or falsity of Blue Buffalo's advertising claims that its products do not contain poultry by-product meal.

- Response to Request No. 17: Blue Buffalo refuses to produce documents and communications sufficient to identify all of its distributors, suppliers or brokers. It instead proposes to produce only documents sufficient to show whether or not Blue Buffalo distributors, suppliers or brokers provide poultry by-product meal or corn for use in Blue Buffalo's dry food products or rice or rice hulls for use in Blue Buffalo's grain-free dry food products. However, the identities of <u>all</u> Blue Buffalo distributors, suppliers and brokers of Blue Buffalo's dry food products are relevant to Purina's allegations in this matter because those allegations go beyond Blue Buffalo's use of poultry by-product meal, corn and rice or rice hulls. Rather, they extend to Blue Buffalo's claims in its advertisements that its products contain only the finest natural ingredients, that its

Steven A. Zalesin
August 18, 2014
Page 5

products are nutritionally superior to its competitors' products and that its products contain sufficient amounts of vitamins at sufficient levels of potency to deliver the health benefits to pets that Blue Buffalo touts in its advertisements. Purina is thus entitled to pursue discovery related to the individuals and entities, such as distributors, suppliers and brokers, that assist Blue Buffalo in procuring its ingredients.

- Response to Request No. 22: In its response to Request 22(a), Blue Buffalo seeks to limit its production of invoices it received from or invoices it paid to any supplier, manufacturer, distributor, co-packer, broker or blender related to Blue Buffalo's products to invoices for poultry meal, poultry by-product meal or corn for use in its dry food products, related to rice for use in Blue Buffalo's grain-free dry food products, or related to the nutrients used in LifeSource Bits.

- Response to Request No. 24: Blue Buffalo refuses to produce all documents and communications between it and Diversified except to the extent that they relate to whether or not Blue Buffalo purchased chicken/poultry by-product meal for Blue Buffalo's dry food products.

- Response to Request No. 50: Blue Buffalo limits the documents it will produce in response to this request to those related to product recalls based on the presence of poultry by-product meal or corn in its dry food products, or based on the presence of rice in its grain-free dry food products from May 6, 2013 to the present. This limitation is unwarranted. Documents responsive to this request are relevant to Blue Buffalo's quality control processes or lack thereof and Blue Buffalo's diligence in ensuring that its suppliers, manufacturers and co-packers are following Blue Buffalo's specifications, regardless of whether the recall involved poultry by-product meal, corn or rice. Further, documents dating back to January 1, 2006 are necessary to capture the lead up to Blue Buffalo's April 2007 recall of products due to its supplier using tainted rice protein concentrate in those products, a fact that Blue Buffalo claims was unknown to it.

*Third*, the following responses contain other impermissible restrictions on Blue Buffalo's production of materials or unwarranted refusals to responsive materials:

- Response to Request Nos. 1 & 2: These requests seek information regarding Blue Buffalo's full and part-time employees and contractors. Blue Buffalo has agreed to produce only information about employees who work or worked in product formulation, quality control, marketing, procurement, or product supply and contractors "engaged to perform work in areas relevant to the advertising claims at issue in this litigation." The identities of all employees in all Blue Buffalo departments are relevant as Purina is entitled to test the knowledge of those individuals with respect to the allegations in this lawsuit. The identity of any contractor working for Blue Buffalo in any capacity is relevant for the same reasons. Please provide documents sufficient to show all full-time and part-time employees of Blue Buffalo and contractors of Blue Buffalo since May 6, 2009, as requested in Request No. 1, and employee lists and organizational charts

Steven A. Zalesin
August 18, 2014
Page 6

- Response to Request No. 4: This request seeks documents sufficient to show the ownership and structure of Blue Buffalo, including business organization documents and other company records, the operating agreement and the certificate of formation. Blue Buffalo objects to the extent the request seeks to identify the owners of shares of Blue Buffalo, business organization documents and other company records and the operating agreement. These documents are relevant because they may identify additional individuals with information relevant to the allegations in this lawsuit, including but not limited to decisionmakers with respect to the ingredients contained in Blue Buffalo's pet food products and the content of advertisements for those products.

- Response to Request No. 5: This request seeks minutes, recordings, summaries or reports of meetings of Blue Buffalo's board of directors and each committee or subgroup thereof or any group or subgroup of Blue Buffalo management employees within the past ten years discussing eight enumerated topics. One of Blue Buffalo's objections is to the time period of the request. Blue Buffalo states that it will produce responsive documents dated from May 6, 2013 to the present. Purina hereby agrees to modify its request to seek only those responsive documents that are dated from May 6, 2009 forward, except with respect to category (iv), which requests "any pending or threatened litigation, administrative action (including NAD proceedings) or like claims related to Blue Buffalo's products. For that particular category of documents, Purina requests that Blue Buffalo also produce responsive documents related to the 2008 proceedings before the National Advertising Division (NAD) of the Council of Better Business Bureaus referenced in Paragraphs 44 and 45 of Purina's First Amended Complaint in this matter. As explained above, documents dating back to 2009 are relevant to the issues in this litigation. The 2008 NAD proceedings are relevant because they address allegations similar to Purina's allegation in this matter regarding Blue Buffalo's misleading statement about the use of animal by-products in its products and the use of a slogan that implies its produce are made from human-edible ingredients. Finally, Blue Buffalo objects to category (viii), which seeks documents regarding Blue Buffalo's direct or indirect donations to any charitable organizations, on relevancy grounds. Such documents are relevant to Purina's damages.

- Response to Request No. 8: Purina requested all documents and communications related to Blue Buffalo's advertised claims that its LifeSource Bits offer health benefits and specific nutritional values for pets. Blue Buffalo, without further objection or explanation, states that it will only produce documents related to the substantiation of the claims made in the excerpt of Blue Buffalo's website in Paragraph 33 of the First Amended Complaint. This limitation is not warranted. For example, as indicated in Purina's First Amended Complaint, there are other places in Blue Buffalo's advertising where it makes claims regarding the benefits of LifeSource bits (see ¶¶ 28, 32 and 34).

Steven A. Zalesin
August 18, 2014
Page 7

> Purina has put squarely at issue the nutritional claims Blue Buffalo makes regarding its LifeSource Bits. Accordingly, all documents and communications regarding those claims—and not just those highlighted in Paragraph 33—are relevant to this litigation and must be produced.

- <u>Response to Request No. 19</u>: In Request No. 19, Purina requested, among other things, documents sufficient to show the amount of chicken/poultry meal and/or chicken/poultry by-product meal <u>used</u> in Blue Buffalo's products each year since May 6, 2009. In response to this request, Blue Buffalo agreed to produce documents sufficient to show the amount of chicken/poultry meal and/or chicken/poultry by-product meal <u>purchased</u> by or on behalf of Blue Buffalo since May 6, 2013. Purina's objection to the timeframe limitation of this response is addressed above. The amount of chicken/poultry meal and/or chicken/poultry by-product meal actually used in Blue Buffalo's products is relevant to Purina's analysis of how Blue Buffalo's output of chicken/poultry meal and/or chicken/poultry by-product meal compares to the amount of those products that it purchased. To the extent that those documents contain trade secrets, the protective order in this matter adequately protects those trade secrets from unlawful disclosure.

- <u>Response to Request No. 21</u>: Blue Buffalo refuses to produce documents sufficient to show: (i) payments that it has made to or received from Leonard Brennan and (ii) payments that Diversified Ingredients has made to or received from Leonard Brennan, who Purina understands is Blue Buffalo's internal ingredient buyer. Information about payments to and from Mr. Brennan are relevant to whether or not he or Blue Buffalo had an incentive to ensure that Diversified Ingredients supplied only chicken or poultry meal to Blue Buffalo.

- <u>Response to Request No. 29</u>: This request seeks copies of all Blue Buffalo advertisements. Blue Buffalo seeks to limit its production of responsive documents to those created since May 6, 2013 instead of those created within the past seven years, as requested. It is Purina's understanding that Blue Buffalo began making statements and advertisements similar to those at issue in its First Amended Complaint approximately seven years ago. Documents responsive to this request therefore will establish when Blue Buffalo's false advertising campaign began and are relevant to Purina's calculation of its damages. Please produce all documents responsive to this request.

- <u>Response to Request No. 34</u>: This request seeks all documents and communications related to strategic plans, long-range plans and business plans that also reference Purina and/or any of Purina's products. Blue Buffalo seeks to limit its response to this request to documents that substantiate or support the accuracy of the advertising claims cited in Purina's complaint or amended complaint. This limitation is not warranted. The information sought is relevant to Purina's allegation that Blue Buffalo engages in false and misleading comparative advertising in connection with its "True Blue Test", website and TV commercials. *See, e.g.*, First Amended Complaint at ¶¶ 23-27. Moreover, Blue Buffalo makes no objection to this request other than to object because the request seeks

Steven A. Zalesin
August 18, 2014
Page 8

- information related to Blue Buffalo products other than its dry food products. Please produce all responsive documents related to Blue Buffalo's dry food products.

- Response to Request No. 35: Blue Buffalo refuses to produce documents sufficient to show separately by year total dollar sales of Blue Buffalo products by SKU and total unit sales of all Blue Buffalo products by SKU. These documents are relevant to Purina's damages claim. Moreover, Blue Buffalo makes no objection to this request other than to object because the request seeks information related to Blue Buffalo products other than its dry food products. Please produce all responsive documents related to Blue Buffalo's dry food products.

- Response to Request No. 40: This request seeks documents sufficient to show the source of each ingredient list in Request No. 38. Blue Buffalo refuses to produce documents responsive to this request. The source of the ingredients listed in Purina's Request No. 38 are relevant to Purina's allegations that LifeSource Bits contain poultry by-product meal, rice and/or corn. See, e.g., First Amended Complaint ¶¶ 2, 29. Purina therefore is entitled to know the identities of the Blue Buffalo's LifeSource Bits ingredients suppliers to explore their provision of product to Blue Buffalo.

- Response to Request No. 42: Blue Buffalo refuses to produce documents sufficient to show the heat processing protocols applied to Blue Buffalo products because, it claims, such documents are not relevant. The requested documents, however, are directly relevant to Purina's allegation that "Blue Buffalo also makes false and misleading statements implying that the 'cold formed' process that it purportedly uses to create its LifeSource Bits is the only way to preserve the vitamins, minerals, antioxidants and enzymes contained in pet food and falsely asserts that its competitors do not take steps to similarly preserve the nutritional qualities of their products. Blue Buffalo also makes statements that 'other manufacturers process their foods with heat as high as 350 [degrees] ... while failing to disclose ... that, in fact, most of Blue Buffalo's products are processed using the same high heat methods.'" First Amended Complaint, ¶ 32.

- Response to Request Nos. 48 & 49: These requests seek documents related to the 2008 and 2014 NAD proceedings against Blue Buffalo. Blue Buffalo refuses to produce documents responsive to these requests because they are irrelevant and because materials submitted to the NAD are confidential. But Purina's request goes beyond documents that Blue Buffalo submitted to the NAD. Rather, the request encompasses documents related to or referencing the NAD's ruling in Case # 4892, decided on July 31, 2008, and Case #5696, decided on March 11, 2014, including documents related to Blue Buffalo's decision to modify or not modify its advertising practices as a result of the ruling. These documents are relevant to Purina's allegations because the ads at issue in those cases are substantially similar to the Purina's comparative advertising allegations in this litigation. Further, Blue Buffalo's decision to modify or not modify advertising that the NAD criticized in these cases is relevant to its knowledge of the truth or falsity of the advertising at issue in this litigation, including but not limited to, Blue Buffalo's

statements that its products are nutritionally superior to those of its competitors and its message that Blue Buffalo's products contain better ingredients and that Blue Buffalo is, unlike its competitors, honest about the ingredients it uses. *See, e.g*, First Amended Complaint ¶¶ 20, 23-27.

- <u>Response to Request No. 52</u>: This request seeks documents and communications sufficient to show any donations or contributions Blue Buffalo made to any charitable organizations or foundations. Blue Buffalo refuses to produce responsive documents, claiming that they are not relevant. However, as noted above in the discussion of Request No. 5, documents sufficient to show the date and amount of Blue Buffalo's charitable contributions are relevant to Purina's damages.

- <u>Response to Request No. 54</u>: Blue Buffalo indicates that it will only produce documents sufficient to show the <u>types</u> of retail stores to which Blue Buffalo has directly shipped dry food products. However, the request seeks documents "sufficient to show the retail locations" at which Blue Buffalo's products are sold or have been sold since May 6, 2009. This information is relevant to determining the amount of product Blue Buffalo produced in each year and how much chicken/poultry meal Blue Buffalo purports to use on an annual basis.

*Finally*, Blue Buffalo states that a number of Purina's requests are vague, ambiguous or unintelligible. Purina provides the following clarifications:

- <u>Response to Request No. 6</u>: Blue Buffalo objects that Purina's request for "price quotations, proposals, or bids" is vague and that it will not produce documents responsive to that particular request. While we disagree with your objection, to clarify, Purina seeks all documents and communications related to the pricing of Blue Buffalo's products since May 6, 2009. The phrase to which Blue Buffalo objects is intended to capture any pricing quotes Blue Buffalo made to any third party during the relevant time period, any proposals made to any third party in which Blue Buffalo offered to sell its products at a particular price to the third party and any Blue Buffalo bid made in response to an offer to purchase Blue Buffalo's products that contains the price of those products. Please produce responsive documents.

- <u>Response to Request No. 22(b)</u>: Blue Buffalo objects to this request as vague, ambiguous and unintelligible. While we disagree with your objections, as clarification, Purina seeks any documents or communications related to statements made to Blue Buffalo by any supplier, manufacturer, distributor, co-packer, broker or blender regarding attesting to or certifying that the ingredients or products provided to Blue Buffalo met Blue Buffalo's specifications for such ingredients or products.

Mayer Brown LLP

Steven A. Zalesin
August 18, 2014
Page 10

Please contact me at your earliest convenience to address these issues.

Sincerely,

*Richard M. Assmus*

Richard M. Assmus

cc:   Carmine Zarlenga
      David Roodman