## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

NESTLÉ PURINA PETCARE COMPANY,
      Plaintiff/ Counterclaim Defendant,

  v.

BLUE BUFFALO COMPANY LTD.
      Defendant/ Counterclaim Plaintiff.

Case No. 4:14-CV-00859 (RWS)

**FILED UNDER SEAL**

## BLUE BUFFALO COMPANY LTD.'S PRELIMINARY RESPONSE TO CERTAIN STATEMENTS BY NESTLÉ PURINA PETCARE COMPANY REGARDING <u>DOCUMENTS PRODUCED BY THIRD PARTY WILBUR-ELLIS</u>

Defendant/Counterclaim Plaintiff Blue Buffalo Company Ltd. ("Blue Buffalo") respectfully submits this preliminary response to certain statements made by Nestlé Purina Petcare Company ("Nestlé Purina") in its Motion to Compel Discovery from Blue Buffalo.[1]

### INTRODUCTION

At 9:45 p.m. on Friday, October 10, 2014, Nestlé Purina filed a routine motion to compel discovery of certain materials from Blue Buffalo.  In that motion, Nestlé Purina discussed and attached a number of documents that were recently produced by Wilbur-Ellis Company ("Wilbur-Ellis"), a major supplier of ingredients to pet food manufacturers (including Nestlé Purina), in response to a third-party subpoena.  The Wilbur-Ellis documents have little if any connection to Nestlé Purina's motion to compel.  Rather, Nestlé Purina apparently decided to use its motion as an excuse to tell the Court about the contents of those documents.  According to

---

[1] Blue Buffalo files this motion under seal because it discusses documents produced by a third party and designated by that third party as confidential pursuant to the Protective Order.

7386597v.1

Nestlé Purina, these materials represent a "dramatic development" that supposedly vindicates Nestlé Purina's position in this case, and undercuts Blue Buffalo's.  (*See* Nestlé Purina Br. at 1).

Nothing could be further from the truth.  In fact, what the documents show is that Blue Buffalo may have been the victim of a scheme perpetrated by one of its ingredient suppliers to secretly violate Blue Buffalo's requirements, and replace some of the high-quality chicken meal that Blue Buffalo ordered and paid for with cheaper chicken by-product meal.  The details of the scheme, and the extent (if any) to which it impacted Blue Buffalo, as opposed to other pet food manufacturers, are not yet known.  What is clear, however, is that Blue Buffalo had no knowledge whatsoever of this improper activity until it received the Wilbur-Ellis documents, which were produced in response to a subpoena in this case.  The documents themselves make this clear.  As such, the Wilbur-Ellis documents belie Nestlé Purina's claim in its complaint— and in its ongoing nationwide smear campaign—that Blue Buffalo is "dishonest" and lies to consumers about the contents of its pet foods.

## DISCUSSION

Nestlé Purina is currently running a widespread advertising campaign that accuses Blue Buffalo of a deliberate scheme to defraud consumers.  According to the campaign's allegations, which are repeated in Nestlé Purina's lawsuit, Blue Buffalo knowingly substitutes cheap ingredients such as chicken by-product meal for the more expensive ingredients listed on Blue Buffalo's labels and referenced in its advertising.  The campaign explicitly claims that Blue Buffalo is "dishonest" about the contents of its pet foods.  Indeed, the internet address for the website set up by Nestlé Purina to propagate its claims is www.**petfoodhonesty**.com.  Blue Buffalo vehemently denies these charges.

Recently, an industry supplier, Wilbur-Ellis, produced documents in response to a third-party subpoena in this case.  Disturbingly, the documents show that, at various points in the past,

2

a Wilbur-Ellis-owned facility located in Rosser, Texas knowingly made shipments of chicken meal that also contained other ingredients, including chicken by-product meal.  The documents indicate that Wilbur-Ellis' corporate management learned about and put a stop to this practice in April 2014.  They further suggest that Diversified Ingredients, an ingredient broker working with Wilbur-Ellis, had also become aware of some of Wilbur-Ellis' practices by May of this year.

Nowhere in the documents, however, is there any suggestion that Blue Buffalo knew anything about these practices.  To the contrary, as the documents quoted by Nestlé Purina themselves make plain, Wilbur-Ellis' acts were contrary to Blue Buffalo's contracts and ingredient specifications, and were undertaken in secret without any knowledge on Blue Buffalo's part.  As a Diversified Ingredient executive told Wilbur-Ellis in an email:

> The Rosser shipments could or could not be the reason for Nestle's claim that Blue's product was found to have Byproduct Meal in them. . . . **[I]f Chicken By and Feather were listed as even potential ingredients for the Chicken Meal and/or Turkey Meal, there's no way we would've bought it and/or Blue would've agreed to that.**

*See* Nestlé Purina Ex. B (emphasis added).  The same email contemplates that Blue Buffalo will take legal action against Diversified Ingredients and Wilbur-Ellis for mislabeling its ingredients.  "If the finger is pointed in that direction and then later verified to have been the cause, then **Diversified and Wilbur will both have to answer for this in litigation with Blue**.  **The liabilities in this could be enormous**."  *Id*. (emphasis added).  Not one word in the Wilbur-Ellis documents remotely suggests that Blue Buffalo was a willing participant in the scheme.

It is not possible to tell from the documents whether any of the mislabeled ingredients were actually sent to the manufacturing facilities that produce Blue Buffalo's dry food products, or were included in any Blue Buffalo pet foods.  *See id.* ("The Rosser shipments could or could not be the reason for Nestle's claim that Blue's product was found to have Byproduct Meal in them").  Wilbur-Ellis supplies chicken meal to many pet food companies, and Blue Buffalo

3

procures chicken meal from other sources.  In other words, there are likely many victims of this scheme, and Blue Buffalo's products may or may not have been affected.

Nevertheless, Blue Buffalo has halted shipments of any pet foods within its possession that even potentially contain any of the mislabeled ingredients supplied by Wilbur-Ellis.  Blue Buffalo has also issued a public statement apprising its customers of this information.  The statement makes clear that it considers the use of ingredients that do not meet Blue Buffalo's contracts and specifications to be "totally unacceptable."  It further assures consumers that there is no health, safety or nutrition issue with any Blue Buffalo products.  (*See* Mangi Decl. Ex. 1).

Blue Buffalo is continuing to investigate these issues, including the roles of both Wilbur-Ellis and Diversified Ingredients.  Further document productions from both are anticipated.  In the meantime, though it appears that the scheme ended months ago, Blue Buffalo has stopped accepting shipments of any ingredients produced by Wilbur-Ellis' Rosser facility.  (*See id.*)

In sum, the Wilbur-Ellis documents demonstrate that, contrary to Nestlé Purina's allegations, Blue Buffalo has contracted and paid for the higher-priced ingredients listed on its labels, and its specifications demand that only those ingredients be supplied to Blue Buffalo.  Blue Buffalo was not aware of Wilbur-Ellis' practices contravening Blue Buffalo's requirements until it received Wilbur-Ellis' documents in this case.  That Blue Buffalo may have been duped by an industry supplier does not make Blue Buffalo "dishonest" or prove the accuracy of Nestlé Purina's allegations, let alone justify Nestlé Purina's smear campaign.

## CONCLUSION

Blue Buffalo regrets that Nestlé Purina chose to utilize a routine and unrelated motion to compel discovery as a vehicle to bring the Wilbur-Ellis documents to the Court's attention.  Blue Buffalo has filed this preliminary response to Nestlé Purina's motion in order to promptly provide the Court with a fuller understanding of the information in those documents, and to

7386597v.1

dispel the notion that the information somehow vindicates Nestlé Purina's position and

undermines Blue Buffalo's.  Blue Buffalo will respond to the specific arguments in Nestlé

Purina's motion to compel discovery on the original court-ordered deadline of October 17, 2014.

Dated:  October 14, 2014
New York, New York

Respectfully submitted,

/s/ Steven A. Zalesin

Steven A. Zalesin, *Lead Counsel* (admitted *pro hac vice*)
Adeel A. Mangi (admitted *pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: 212-336-2000
Facsimile: 212-336-2222

Martin Flumenbaum (admitted *pro hac vice*)
Robert Atkins (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: 212-373-3000
Fax: 212-757-3990

Gerard T. Carmody, # 24769
David H. Luce, # 36050
Sarah J. Bettag, # 60849
CARMODY MACDONALD P.C.
120 S. Central Avenue
Suite 1800
St. Louis, MO 63105
Telephone: 314-854-8600
Fax: 314-854-8660

Of counsel:

Richard MacLean, Esq.
Blue Buffalo Company Ltd.

5

7386597v.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of October, 2014, the forgoing was served on all parties by operation of this Court's Electronic Filing System.

/s/ Steven A. Zalesin

7386597v.1