**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| NESTLÉ PURINA PETCARE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-00859-RWS |
| | ) | |
| THE BLUE BUFFALO COMPANY LTD., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PURINA'S MOTION FOR RECONSIDERATION OF THE COURT'S
DENIAL OF PURINA'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS RELATED TO THE 2014 NAD DECISION
AGAINST BLUE BUFFALO AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure 60(b), Plaintiff Nestlé Purina PetCare Company ("Purina") hereby respectfully moves the Court to reconsider its October 22, 2014 oral ruling (Dkt. 97 and Exh. A, 10/22/14 Tr. at 65-66) and October 23, 2014 Order (Dkt. 98) denying Purina's Motion to Compel Blue Buffalo's Production of Documents solely as it relates to Purina's Document Request Number 48, seeking Blue Buffalo's documents and communications relating to the National Advertising Division (NAD) of the Council of Better Business Bureaus' March 11, 2014 ruling in Case #5696 (the 2014 NAD Ruling). Appendix A contains the full text of Document Request Number 48 and Blue Buffalo's blanket objection thereto. Purina has voluntarily limited the scope of this motion to the 2014 NAD ruling and proceedings related to that ruling.[1]

The 2014 NAD Ruling found that Blue Buffalo falsely and misleadingly claimed in a massive comparative advertising campaign that "big name pet food manufacturers" actively

---

[1] Purina's First Set of Requests for the Production of Documents and Things also requested documents relating to the NAD's July 31, 2008 ruling against Blue Buffalo, which Blue Buffalo refused to produce. Purina does not seek the 2008 materials in this motion.

conceal the truth about the ingredients in their products, that by-product meal is not a high quality ingredient and is not nutritious for pets, and that products containing by-product meal are less nutritious than Blue Buffalo's products.  *See* NAD 2014 Ruling at Exh. B to 2d Am. Compl. (Dkt. 104).  The NAD also held that Blue Buffalo had "not provided any evidence that 'big name' pet food manufacturers … are actively concealing the truth about the ingredients in their products."  *Id.* at p. 10.

Blue Buffalo's same advertising messages that the NAD found false and disparaging are squarely at issue in this lawsuit.  Any doubt on that score was removed by Purina's recent filing of its Second Amended Complaint in this action (Dkt. 104).  Most significantly, Purina's Second Amended Complaint challenges and quotes verbatim Blue Buffalo's nationally-televised commercials that make identical claims to those at issue in the NAD proceedings—featuring pet owners who express outrage and allegedly "switch to Blue Buffalo" after learning the purported "truth about big name dog foods."  Dkt. 104 at ¶¶ 28-29.  A more co-extensive overlap would be difficult to conceive.

But the similarities do not end there.  The NAD also faulted Blue Buffalo's advertised claims of superiority over "big name pet foods."  NAD 2014 Ruling, p. 10 at Exh. B to 2d Am. Compl. (Dkt. 104) (Blue Buffalo "has not provided any evidence that meat by-product meal is *not* a high quality ingredient or that it is not nutritious, or that products which include meat by-product meal are less nutritious than Blue's … products.") (emphasis in original).  Similarly, Purina alleges here that "[f]undamental to Blue Buffalo's marketing are categorical assertions that Blue Buffalo products are allegedly superior to competitor brands" because Blue Buffalo products are "free from [poultry by-product meal and rice and/or corn].  2d Am. Compl. (Dkt. 104) at ¶ 5.  Further, Purina challenges other Blue Buffalo advertising claims at issue in the 2014

NAD Ruling, such as Blue Buffalo's "comparisons between Blue Buffalo products and those of its competitors" that "send[] message[s] to consumers that Blue Buffalo's products contain better ingredients and that Blue Buffalo is, unlike its competitors, honest about the ingredients that it uses." 2d Am. Compl. (Dkt. 104) at ¶ 27.  Finally, the operative Second Amended Complaint (and Purina's First Amended Complaint) extensively cites the 2014 NAD Ruling and attaches it as an exhibit. *See, e.g.,* 2d Am. Compl. (Dkt. 104) at ¶¶ 7-10, 25-26, Exh. B.

Given the substantial similarity between Purina's allegations in this lawsuit and the issues in the 2014 NAD proceeding, there can be no legitimate dispute that Blue Buffalo's documents and internal communications regarding the recent NAD proceeding, as well as Blue Buffalo's communications and submissions to the NAD are directly related to and will provide key evidence necessary for Purina to litigate its claims and defenses in this lawsuit and should be produced.

## I.    ARGUMENT

Motions for reconsideration are governed by Federal Rule of Civil Procedure 60(b) when directed at non-final orders, such as the oral ruling and subsequent written order at issue here. *ICL Performance Prods. v. Hawkins, Inc.*, 2012 WL 1414829, at *1 (E.D. Mo. April 24, 2012) (citing *Anderson v. Raymond Corp.*, 340 F.3d 520, 525 (8th Cir. 2003)).  "District courts have considerable discretion in deciding whether to reconsider an interlocutory order and 'may' relieve a party from such an order when, for example, the party demonstrates 'mistake, inadvertence, surprise, or excusable neglect' or 'any other reason justifying relief from the operation of the judgment.'" *Id.* (citing *Elder-Kepp v. Aksamit*, 460 F.3d 979, 984-85 (8th Cir. 2006)).  Motions for reconsideration should be granted if an order will deny the moving party a full and fair opportunity to litigate its claims and will prevent the moving party from receiving adequate redress. *Id.*

3

Additionally, the Court indicated at the hearing that it is amenable to revisiting its discovery rulings. Exh. A, 10/22/14 Tr. at 47 (THE COURT: "… I'm willing to be persuaded I should revisit an issue … .  [T]here may be a point in this case where this issue needs to be revisited, and I'm happy to revisit it. So it's never – until we go to trial, it's never permanently closed.").  Here, Purina respectfully suggests that the Court's denial of its motion to compel Blue Buffalo's production of documents related to the 2014 NAD proceeding should be reconsidered for a variety of reasons, including, among others, Purina's recent amendments to its Complaint in this action.

A.     **Blue Buffalo Has Consistently Strived To Misconstrue Purina's Allegations In This Litigation.**

Another basis for reconsideration is evident from the October 22nd hearing transcript. From the outset of this litigation, Blue Buffalo's counsel has strained to portray Purina's allegations as far narrower than they really are – claiming repeatedly that Purina's only alleged false advertising relates to the presence of poultry by-product meal in Blue Buffalo products. *See, e.g.,* Exh. B, 9/8/14 Tr. at 11 (counsel for Blue Buffalo characterized the presence or absence of poultry by-product meal as "the facts that lie at the core of this dispute").  In an attempt to differentiate the 2014 NAD proceeding from Purina's allegations in this lawsuit, Blue Buffalo's counsel more unequivocally mischaracterized the scope of Purina's case at the October 22nd hearing:

> MR. MANGI:  Your Honor, I'd like to make one introductory point that will relate not just to the NAD but in fact to every category on which Purina moves to compel.  When you read Nestlé Purina's complaint, its first amended complaint is what we're up to now, *it is absolutely clear and apparent that their case is about one issue:  They're alleging that our product had poultry by-product meal in it when, in fact, we said that it didn't.*
>
> And if you take an expansive view of their complaint, there are a few other claims that they particularize to some degree,

4

saying that there's also some corn in there that we say there isn't and they say Dr. Makowski found, and they say our grain-free products have some rice hulls in there that Dr. Makowski found, and then there's an allegation about these nutrients in the LifeSource bits.

> ***But the core and the heart of it is all about that by-product meal, and every other claim that they challenge ultimately comes down to and is based on and is derivative of that claim relating to by-product meal.***

Exh. A, 10/22/14 Tr. at 60-61 (emphasis added).  The foregoing arguments of Blue Buffalo's counsel were made in direct response to Purina's motion to compel production of NAD materials at the October 22nd motion to compel hearing.  Those arguments were incorrect and inaccurate as revealed by a careful review of any Purina complaint filed in this litigation to date.

Unfortunately, the mischaracterizations did not stop there.  Blue Buffalo's counsel then attempted to argue specifically that the 2014 NAD proceeding bore no relationship to Purina's First Amended Complaint:

> MR. MANGI:  … Now, the 2014 NAD proceeding again is not about these issues.  There the main issue is whether competitors of Blue Buffalo, the big pet food conglomerates, concealing their use of by-product meal, whether they're concealing it in terms of what they do and claims we are making about that.  That's not at issue here.

*Id.* at 64.  But the issues raised in the NAD proceeding have always been at issue in this litigation.  Most significantly, they are even more plainly and directly raised in Purina's latest operative Complaint:

> Another hallmark of Blue Buffalo's advertising is a vicious and false attack on all "big name pet foods."  Among these, the biggest falsehood is Blue Buffalo's lengthy national advertising campaign claiming that "big name pet food manufacturers" are concealing the truth about the ingredients in their products.  Blue Buffalo has spent millions on television commercials touting this theme— which is false and unsubstantiated.  Purina brings this lawsuit to stop Blue Buffalo's wrongdoing and to set the record straight.

Dkt. 104 at ¶ 6.[2]

**B.    The Same Advertising That The NAD Found Misleading Is Actionable And At Issue In This Case.**

In light of Blue Buffalo's continuing effort to misconstrue the scope of Purina's claims, Purina believes that it is important for the Court to review one of Blue Buffalo's many attack commercials which was and is at the heart of both the 2014 NAD proceeding and Purina's allegations in this litigation.   The Blue Buffalo attack commercials essentially led to this litigation as they ran pervasively before Purina confirmed the presence of poultry by-product meal, corn and rice hulls in Blue Buffalo's products.   The hyperlink to one of Blue Buffalo's many attack commercials is here:   http://www.ispot.tv/ad/7bSB/blue-buffalo-mad.   This same commercial was the focus of the Hill's Pet Nutrition complaint against Blue Buffalo in the 2014 NAD proceeding.   The script of the commercial is restated verbatim in the NAD's March 11, 2014 ruling.[3]   Exh. B to 2d Am. Compl. (Dkt. 104) at 9.   It is likewise quoted in Purina's Second Amended Complaint.   Dkt. 104 at ¶ 28.   The commercial (or others like it) ran so pervasively on national television that it was parodied on *Saturday Night Live.*[4]

Commercials of the sort that Blue Buffalo created and disseminated targeting Hill's Pet Nutrition, Purina, and other "big name pet food manufacturers" are a quintessential form of false advertising in violation of the Lanham Act.   *See Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1182-83 (8th Cir. 2011) (stating that "Lanham Act false advertising cases involve[] a false statement of fact by the defendant in a commercial advertisement about its own *or another's*

---

[2]  Purina's First Amended Complaint made a similar allegation (*see* Dkt. 9 at ¶ 2), as did its original Complaint (*see* Dkt. 1 at ¶ 2).  All of Purina's complaints in this litigation attached the March 11, 2014 NAD decision and made numerous references to it.

[3]  Blue Buffalo appealed the March 11, 2014 NAD decision to the National Advertising Review Board ("NARB").  On July 9, 2014, a four-member panel of the NARB rendered a unanimous decision affirming the NAD's ruling in all respects.

[4]  The parody can be found at: www.youtube.com/watch?v=bkbiJYU4CNI.

*product*") (emphasis added).  Purina expressly relied upon the NAD's findings in the 2014 proceeding when drafting its complaints, also rendering that proceeding directly relevant to Purina's defense of Blue Buffalo's defamation counterclaims (both the truth and the absence of malice defenses).  It is understandable why Blue Buffalo would so strenuously seek to avoid discovery relating to the allegations about its false and misleading attack commercials, but discovery is fully warranted under the circumstances.  Blue Buffalo's refusal to produce documents related to the 2014 NAD proceeding will deny Purina "a full and fair opportunity to litigate its claims" and prevent Purina "from receiving adequate redress" because Purina will be without information that bears directly upon both its affirmative claims against Blue Buffalo and its defenses against Blue Buffalo's defamation counterclaims.

Given the direct similarity between the advertising at issue in the 2014 NAD proceeding and the advertising at issue in this lawsuit, documents related to that proceeding are unequivocally relevant to Purina's allegations.  For example, those documents will provide evidence and information relating to Blue Buffalo's advertising substantiation (or lack thereof) for the challenged advertising claims, the message that the advertising at issue conveys to consumers, and Blue Buffalo's contemporaneous analysis of whether and how to comply with the NAD's decision. Furthermore, Blue Buffalo's documents relating to the NAD case bear on the willfulness of Blue Buffalo's conduct in continuing to make advertising claims that are substantially similar to those that the NAD determined over six months ago to be false and misleading.

### C. There Are Good Practical Reasons To Compel Production Of The NAD Materials.

Blue Buffalo's submissions in the 2014 NAD proceeding are not only likely to lead to the discovery of relevant evidence, they are very likely to contain Blue Buffalo admissions that will

aid Purina in the prosecution of its false advertising claims.   The admissions of a party-opponent—such as the statements made in Blue Buffalo's NAD submissions—are of such importance that they garner special treatment under the Federal Rules of Evidence.   As the Seventh Circuit Court of Appeals explained:

> Treating party admissions as nonhearsay is rooted in the nature of the adversarial system, and trustworthiness is not a requirement of admission.   There is less concern about trustworthiness, especially in civil cases, because the party against whom the statements are offered generally can take the stand and explain, deny, or rebut the statements. … ***There are only two requirements for admissibility under FRE 801(d)(2)(A): a statement was made by a party, and the statement was offered against that party.***

*Jordan v. Binns*, 712 F.3d 1123, 1128-29 (7th Cir. 2013) (emphasis added).   Under NAD procedures, Blue Buffalo had the opportunity to produce "substantiation" for the advertising claims at issue in the NAD proceeding.[5]   Given that the NAD found that Blue Buffalo was not able to substantiate several of its core advertising claims, it is likely that Blue Buffalo's substantiation is either non-existent or deficient.   Clearly it will be highly relevant and useful to Purina to see Blue Buffalo's purported substantiation for the attack ads and the other Blue Buffalo advertising claims at issue in the NAD proceeding.

Furthermore, it is very unlikely that there is any burden associated with the production of the NAD materials in Blue Buffalo's control.   Those materials were likely recently compiled by the company and submitted to the NAD in an organized fashion.   The relative ease and speed with which the responsive documents could be compiled and produced in this litigation is a factor here.

By any reasonable measure, Blue Buffalo is stonewalling Purina on the document

---

[5]   *See*   NAD/CARU/NARB   Rule   2.5,   available   at   http://www.asrcreviews.org/wp-content/uploads/2012/04/NAD-CARU-NARB-Procedures-revised-1.-1.-141.pdf (allowing advertisers to submit a written response that provides substantiation for any advertising claims or representations challenged).

requests that Purina served in this litigation five months ago on July 3, 2014. As of this date, Blue Buffalo still has not produced core e-mails and internal documents relating to Purina's allegations. Purina has no e-mails, notes, internal memos or other documents from Blue Buffalo Chairman Bill Bishop – who placed himself front and center in this litigation with his letters to "pet parents" vehemently denying all of Purina's allegations (and then, more recently, doing an "about-face" in response to the Wilbur-Ellis revelations).[6] *See* Exh. C, Portner Decl. at ¶ 6 (noting that Bill Bishop was not identified as the custodian for a single document in Blue Buffalo's document production to date). Nor has Blue Buffalo produced a single document from 11 of the 12 individuals that Blue Buffalo identified in its Rule 26(a)(1) Initial Disclosures as likely to have discoverable information and its interrogatories as primarily responsible for the advertising content Purina challenges. *Id.* at ¶¶ 6-7. These individuals include Blue Buffalo's Director of Quality Assurance, Director of Quality Control, Manager of Dry Products, Vice President of Product Supply, and Senior Vice President of Research and Development. *Id.* at ¶ 6. Blue Buffalo even failed to produce certain of the documents this Court ordered it to produce by November 13th in connection with Purina's motion to compel, including documents related to payments between Blue Buffalo's ingredient buyer and Blue Buffalo's ingredient brokers and documents sufficient to show the nutrient profile of LifeSource Bits. (Dkt. 98). Blue Buffalo's November 13th document production did not contain a single document related to these topics. Purina requested that Blue Buffalo immediately produce these documents. *See* Exh. C, Portner Decl. at ¶ 8 & Exh. 1. To date, Blue Buffalo has not responded or produced additional

---

[6] *Compare* Exh. D, 5/6/14 Bishop letter ("[W]e look forward to disproving the voodoo science that Nestlé Purina relied on to support their outrageous allegations.") *with* Exh. E, 10/14/14 Bishop letter ("Blue Buffalo has recently learned from Wilbur-Ellis, a major U.S. Company that supplies ingredients to us …, that a Texas pet food ingredient processing plant they own had mislabeled some of the ingredients they shipped to their customers. So while their customers were ordering and paying for 100% chicken meal, at times they were receiving shipments that contained poultry by-product meal. … [T]he fact that any Blue Buffalo food could include a mislabeled ingredient is totally unacceptable.").

responsive documents.

Conversely, Blue Buffalo has found the time to file a separate lawsuit against Purina in Connecticut, take the deposition of Purina's microscopist, hire its own microscopists, and pursue its own discovery – but has yet to comply with Purina's longstanding document requests. Remarkably, third parties such as Wilbur-Ellis and Diversified Ingredients have provided more documents to Purina than Blue Buffalo and in a much shorter timeframe.  Exh. C, Portner Decl. at ¶¶ 2, 4-5 (noting that third-party Diversified Ingredients produced over 48,000 pages in less than three months and that third-party Wilbur-Ellis produced responsive documents in approximately two and a half months whereas party defendant Blue Buffalo has produced less than 30,000 pages of documents in five months).

Likewise, Blue Buffalo is stalling on Purina's request for deposition dates for Blue Buffalo's Chairman, Bill Bishop, which Purina has requested repeatedly since October 10th.  It may well be that Blue Buffalo has reasons for stalling its responses to discovery, but this only underscores Purina's need for easily compiled responses to discrete and self-contained discovery topics such as the 2014 NAD proceeding that will assist Purina in the prosecution of its claims and the defense of Blue Buffalo's counterclaims.

## II.    CONCLUSION

For the reasons set forth above, Purina respectfully requests that the Court reconsider its October 22, 2014 ruling and October 23, 2014 order denying Purina's Motion to Compel Blue Buffalo's Production of Documents and order Blue Buffalo to produce all documents responsive to Purina's Document Request Number 48.

Dated: December 3, 2014                    Respectfully submitted,

                                           NESTLÉ PURINA PETCARE COMPANY

                                           /s/ Carmine R. Zarlenga

Carmine R. Zarlenga 386244DC *(Lead attorney)*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3227
Facsimile: (202) 263-5227
czarlenga@mayerbrown.com

Richard M. Assmus *(pro hac vice)*
Kristine M. Young *(pro hac vice)*
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
rassmus@mayerbrown.com
kyoung@mayerbrown.com

David A. Roodman, 38109MO
BRYAN CAVE LLP
211 North Broadway #3600
St. Louis, Missouri 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
daroodman@bryancave.com

## APPENDIX A

**<u>Document Request 48:</u>**  All documents and communications related to or referencing the ruling of the National Advertising Division (NAD) of the Council of Better Business Bureaus (hereinafter the "NAD") in Case #5696, decided on March 11, 2014, including, but not limited to: (i) any documents that You submitted to the NAD in connection with this proceeding; and (ii) any documents related to Your decision to modify or not to modify Your advertising practices as a result of the ruling.

**<u>Response to Document Request 48:</u>** Blue Buffalo objects to this Request as overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Blue Buffalo further objects to this Request on the grounds that materials submitted to NAD are confidential, pursuant to Policies and Procedures by the Advertising Self-Regulatory Counsel (2012) Rules 2.1(e) and 5.5.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he caused a true and correct copy of the foregoing to be served on all counsel of record who are deemed to have consented to electronic service on this day of December 3, 2014 via the Court's CM/ECF system.


/s/ Carmine R. Zarlenga