# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION

NESTLE PURINA PETCARE COMPANY,      )
                                    )
     Plaintiff,                     )
                                    )
     v.                             )
                                    ) No 4:14-CV-859 RWS
BLUE BUFFALO COMPANY, LTD.,         )
                                    )
     Defendant.                     )

                          MOTION HEARING
               BEFORE THE HONORABLE RODNEY W. SIPPEL
                   UNITED STATES DISTRICT JUDGE
                         OCTOBER 22, 2014

APPEARANCES:
For Plaintiff:        Richard M. Assmus, Esq.
                      MAYER BROWN LLP
                      71 S. Wacker Drive
                      Chicago, IL  60606

                      David A. Roodman, Esq.
                      Emma C. Harty, Esq.
                      BRYAN CAVE LLP
                      211 North Broadway, Suite 3600
                      St. Louis, MO  63102

For Defendant:        Steven A. Zalesin, Esq.
                      Adeel  A. Mangi, Esq.
                      PATTERSON AND BELKNAP
                      1133 Avenue of the Americas
                      New York, NY  10036



(Appearances continued on Page 2)

REPORTED BY:          SHANNON L. WHITE, RMR, CRR, CSR, CCR
                      Official Court Reporter
                      United States District Court
                      111 South Tenth Street, Third Floor
                      St. Louis, MO  63102
                      (314) 244-7966



PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION
```

```
Appearances Cont'd:

For Defendant:        David H. Luce, Esq.
                      CARMODY MACDONALD P.C.
                      120 South Central, Suite 1800
                      Clayton, MO  63105


                      Robert A. Atkins, Esq.
                      PAUL AND WEISS
                      1285 Avenue of the Americas
                      New York, NY  10019
```

say on this, maybe it opens that door, but we're not there, and it's my understanding that we won't be there.

THE COURT: Well, that's where I remain. Here's the -- since you don't come to St. Louis often and certainly haven't spent much time with me, the good news and the bad news about me is I'm willing to be persuaded I should revisit an issue.

And you all know judges who once they make up their mind, don't come back, but I think, you know, a better view is if you are persuaded that you should revisit an issue, you should revisit it. And there may be an occasion where this changes over the course of this lawsuit.

And it's kind of like even -- I'm not -- I never bifurcate discovery, but certainly the staging of discovery can have an impact on how well it's accomplished. And we may get there, but I don't think we're there now given the state of the pleadings in this case, which is what I was kind of telegraphing before.

So I don't want to encourage you to every month say, no, no, we need to talk about it again, that will be counterproductive, but there may be a point in this case where this issue needs to be revisited, and I'm happy to revisit it. So it's never -- until we go to trial, it's never permanently closed.

Yes, sir?

60

1  case.

2  Blue Buffalo argues on relevance maybe halfheartedly,
3  but they also raise an issue of admissibility under Federal
4  Rule of Evidence 404. In particular, they suggest that it's
5  inadmissible evidence of prior bad acts.

6  Your Honor, in our view, you can't apply Rule 404 to
7  an entire category of documents that we don't even know what
8  they are yet. If it applied at all, which we don't agree to,
9  it might apply to the decisions, but it certainly would not
10 apply to filings in the case that may have admissions that
11 would be valuable to Purina, internal communications about the
12 decision that likewise might have admissions.

13 So for those reasons, Your Honor, we think all the
14 documents that Purina requested with respect to the two NAD
15 decisions, both the 2008 one about the "feed them like family"
16 claim and 2014 one about the True Blue Test, and the very same
17 ads that are at issue here all should be produced.

18 Your Honor, I'm happy to pause there for --

19 THE COURT: Yeah. Why don't we take them up one at a
20 time.

21 MR. MANGI: Your Honor, I'd like to make one
22 introductory point that will relate not just to the NAD but in
23 fact to every category on which Purina moves to compel. When
24 you read Nestle Purina's complaint, its first amended
25 complaint is what we're up to now, it is absolutely clear and

61

1  apparent that their case is about one issue:  They're alleging
2  that our product had poultry by-product meal in it when, in
3  fact, we said that it didn't.
4      And if you take an expansive view of their complaint,
5  there are a few other claims that they particularize to some
6  degree, saying that there's also some corn in there that we
7  say there isn't and they say Dr. Makowski found, and they say
8  our grain-free products have some rice hulls in there that Dr.
9  Makowski found, and then there's an allegation about these
10 nutrients in the LifeSource bits.
11     But the core and the heart of it is all about that
12 by-product meal, and every other claim that they challenge
13 ultimately comes down to and is based on and is derivative of
14 that claim relating to by-product meal.
15     I'll give you just one example.  They have claims
16 that they say, well, look, we have challenged the fact that
17 Blue Buffalo says they have only the finest natural
18 ingredients and no artificial preservatives.  So we think
19 every ingredient that they have, every issue they've ever had
20 in the past at the NAD or otherwise, everything is fair game.
21     But when you go to the complaint, what do they
22 actually say about that issue?  They say, "Blue Buffalo's
23 statements and promises that its products contain only the
24 finest natural ingredients and have no artificial
25 preservatives are false and misleading because, among other

1  congruity on the issues where there is none.  It's simply not
2  about those topics, these fish meals and so on.
3       Now, the 2014 NAD proceeding again is not about these
4  issues.  There the main issue is whether competitors of Blue
5  Buffalo, the big pet food conglomerates, concealing their use
6  of by-product meal, whether they're concealing it in terms of
7  what they do and claims we are making about that.  That's not
8  at issue here.
9       And while there were aspects of the True Blue Test,
10 which is a comparison tool that appeared on our website that
11 were at issue there, it's completely different.  Again, here
12 they say your True Blue Test comparison -- it's false because
13 you say you don't have by-product meal and you actually do.
14      In the NAD proceeding, what they were saying is,
15 well, that claim is false because your disclaimer is unclear
16 enough, the color and the appearance of the check marks is not
17 clear enough, you're speaking in absolutes about things that
18 should be more qualified -- completely different conceptual
19 issues from an advertising perspective.
20      Now, that's relevance, and we think that ultimately
21 is dispositive, but it is worth noting that our other
22 arguments relating to Federal Rule of Evidence 404(b) and
23 indeed Rule 407 to the extent they try to get into changes
24 that were made after the NAD proceedings, our argument is not
25 that you should be making a decision about admissibility here.

65

1   Of course not. Our argument is simply that when you are
2   assessing whether or not their discovery is reasonably
3   designed to get to admissible evidence and reasonably
4   calculated to that end, what should factor in is not just
5   relevance but also the fact that then there is hurdle after
6   hurdle after hurdle that they cannot surmount to use even the
7   NAD decision itself let alone all documents talking about the
8   NAD proceedings, which is what they're seeking here.
9         Ultimately, their goal with all of this, Your Honor,
10  is clear from the complaint. It's clear from petfoodhonesty,
11  which is the smear website they set up accusing us of
12  dishonesty which we have sued them over. They talk about
13  these NAD proceedings because they're trying to say, well,
14  Blue Buffalo is a bad actor. They're serial false
15  advertisers. You shouldn't believe anything they say.
16        It's the definition of what's ultimately going to be
17  inadmissible, and the decisions themselves are hearsay.
18        So our view, Your Honor, is this is complete
19  irrelevant material, a frolic and detour; that if we're going
20  to stay focused on the issues in this case, by-product meal,
21  let's do that, and this should be excluded.
22        THE COURT: All right. It's my finding that there's
23  not sufficient overlap between the NAD proceedings and
24  documents and the claims as they're firmly stated in this case
25  to permit discovery of the background documents on those

66

1 proceedings, and I'm going to deny the motion to compel.

2 Then we have -- you have four more categories we need
3 to go over.

4 MR. ASSMUS: Yes. Thank you, Your Honor.

5 The next category is -- relates to Blue Buffalo's
6 ownership. It's the one I'd like to take next.

7 THE COURT: Okay.

8 MR. ASSMUS: And what we've asked here is a
9 relatively narrower request for documents sufficient to
10 reflect their ownership structure and their owners. And
11 they've put this at issue in a number of ways in the
12 advertising we challenge.

13 One of those ways is they talk about the big-name
14 companies; so they put Purina's size in contrast to their own
15 size. They've also done that in the many statements that Bill
16 Bishop has made -- that's their founder -- on its website in
17 response to this lawsuit, calling Purina a "bully," calling it
18 a "Goliath," et cetera. And for those reasons we asked for
19 relatively limited discovery into their owners: Who they are
20 and how much they own.

21 In addition, they have also used that in their
22 pleadings, talking about the motivation for the suit. And we
23 believe, Your Honor, that given the relatively narrow nature
24 of these requests for ownership information and the way that
25 they've put this at issue both in the challenge claims and in