# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NESTLÉ PURINA PETCARE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-00859 |
| | ) | |
| THE BLUE BUFFALO COMPANY LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS AND THINGS TO THE BLUE BUFFALO COMPANY LTD.**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Nestlé Purina PetCare Company ("Purina") hereby requests that Defendant The Blue Buffalo Company Ltd. ("Blue Buffalo" or "Defendant" or "You") produce for inspection and copying the following documents at the offices of Defendant's counsel, or by such other means and at such other time and place as may be agreed upon by the parties, and that said production be made within 30 days of the date of service of this request.  These Requests for Production are deemed continuing in nature as permitted by Rule 26(e) of the Federal Rules of Civil Procedure and are to be supplemented promptly upon Defendant's acquisition of further or additional documents or things.

Plaintiff's requests for documents and things shall be responded to in accordance with the Definitions and Instructions attached hereto as Appendices A and B, respectively.

**REQUESTS FOR PRODUCTION**

**Request No. 61:** All documents and communications sufficient to show the period of time over which each Blue Buffalo Product has been sold or offered for sale.

**Request No. 62:** All documents and communications sufficient to show new Blue Buffalo Products sold or offered to be sold since January 1, 2007, including, but not limited to, the SKUs for each such product.

**Request No. 63:** All documents and communications sufficient to show Your target market for each Blue Buffalo Product, including, but not limited to, documents and communications describing, identifying or relating to demographics of consumers targeted by your advertising plans, proposals, strategies or campaigns.

**Request No. 64:** All documents and communications, including without limitation, studies, tests, reports, summaries, surveys, polls, or investigations, whether formal or informal, that Blue Buffalo has commenced, completed, commissioned or has access to, related to or showing consumer purchasing trends or drivers of consumer purchasing of Blue Buffalo Products. By way of example (but not limitation), documents and communications related to why consumers of Blue Buffalo Products buy Blue Buffalo Products (e.g., ingredients, price, brand name, labels, packaging, advertisements, etc.).

**Request No. 65:** All documents and communications, since January 1, 2007, related to the intended, expected, potential or actual effects of Your Advertising, spending on Advertising, promotions, promotional spending, brand equity, product improvements or the introduction of new Blue Buffalo Products on sales, sales growth, profitability, market shares, market conditions, or projected market shares of Blue Buffalo.

**Request No. 66:** All documents and communications, including, but not limited to, all periodic sales reports (i.e., daily, weekly, monthly, quarterly and annual, etc.) sufficient to show, since January 1, 2007:

(a)     total dollar sales of all Blue Buffalo Products by region (e.g,. Northwest, Southwest, etc.);

(b)     total unit sales of all Blue Buffalo Products by region;

(c)     total dollar sales of all Blue Buffalo Products by sales channel (e.g., pet supply stores, grocery stores, mass merchandisers, etc.);

(d)     total unit sales of all Blue Buffalo Products by sales channel;

(e)     total dollar sales of all Blue Buffalo Products by retailer (e.g., PetSmart, Pet Supplies Plus, etc.); and

(f)     total unit sales of all Blue Buffalo Products by retailer.

**Request No. 67:** All documents and communications, including, but not limited to, all periodic reports (i.e., daily, weekly, monthly, quarterly and annual, etc.) sufficient to show for each Blue Buffalo Product, since January 1, 2007:

(a)     wholesale price information, including, but not limited to, any differences in wholesale prices across sales channels, regions or wholesalers, and any changes in wholesale prices over time, including the timing of and reasons for such changes;

(b)     retail prices information, including, but not limited to, any differences in wholesale prices across sales channels, regions or retailers, and any changes in retail prices over time, including the timing of and reasons for such changes; and

(c)     information regarding any and all promotions, discounts or coupons, including the timing, amount and redemption rates.

**Request No. 68:** Since January 1, 2007, any and all monthly, quarterly and annual profit and loss statements, including, but not limited to, statements showing revenues, cost of goods sold, gross profits, net profits, and operating expenses (including, but not limited to, advertising costs, marketing costs, other sales costs, general and administrative costs and other operating costs).  This request includes, but is not limited to, data for each Blue Buffalo Product by SKU. If data for each Blue Buffalo Product by SKU is not available, then produce the most detailed data available at the product level.

**Request No. 69:** Since January 1, 2007, any and all documents showing gross profit margin and variable costs for the Blue Buffalo Products.  This request includes, but is not limited to, data for each Blue Buffalo Product by SKU.  If data for each Blue Buffalo Product by SKU is not available, then produce the most detailed data available at the product level.

**Request No. 70:** Since January 1, 2007, any and all documents showing incremental profit margin, contribution to profits and net profit margins for business units or product lines containing the Blue Buffalo Products.  This request includes, but is not limited to, data for each Blue Buffalo Product by SKU.  If data for each Blue Buffalo Product by SKU is not available, then produce the most detailed data available at the product level.

**Request No. 71:** Since January 1, 2007, any and all financial reports (i.e., daily, weekly, monthly, quarterly and annual, etc.) providing data related to the Blue Buffalo Products by region, sales channel or retailer.

**Request No. 72:** Since January 1, 2007, any and all financial reports (i.e., daily, weekly, monthly, quarterly and annual, etc.)  providing data related to the Blue Buffalo Products by business unit or product line.

**Request No. 73:** Since January 1, 2007, all audit opinions or accountant's reviews relating to Your financial statements or financial condition.

**Request No. 74:** Since January 1, 2007, all documents and communications related to communications between You and Your auditors related to Your Advertising or promotion of the Blue Buffalo Products.

**Request No. 75:** Since January 1, 2007, all documents and communications related to communications between You and Your accountants or other financial consultants related to Your Advertising or promotion of the Blue Buffalo Products.

**Request No. 76:** Since January 1, 2007, all documents that relate to Your requests for loans or credit of any kind that You sought or obtained in connection with spending on Advertising or promotion of the Blue Buffalo Products.

**Request No. 77:** All documents and communications sufficient to identify all products You deem, in any way, to be a competitor with respect to any Blue Buffalo Product.

**Request No. 78:** For each product You deem to compete with any Blue Buffalo Product, all documents and communications relating to:

    (a)     when such competitor products were introduced to the market;

    (b)     the characteristics of the competitor products, including, but not limited to, differentiating claims or features;

    (c)     the target consumer or target market of the competitor products;

    (d)     the sales channels and retailers that carry each competitor product;

    (e)     the package sizes and varieties of each competitor product; and

    (f)     pricing and sales data of the competitor products, including, but not limited to, by region, sales channel and retailer.

**Request No. 79:** All documents, communications, comparisons or presentations related to how the competitor products compare to any Blue Buffalo Product.

**Request No. 80:** All documents or communications sufficient to show competitor products You believe buyers of Blue Buffalo Products would consider purchasing.

**Request No. 81:** All documents or communications sufficient to show competitor products You believe buyers of Blue Buffalo Products would <u>not</u> consider purchasing.

**Request No. 82:**  All studies, tests, reports, summaries, surveys, polls, investigations, or promotional materials, whether formal or informal, that Blue Buffalo has commenced, completed, commissioned or has access to, that relates to any product that You deem to be a competitor or substitute for any Blue Buffalo Product.

**Request No. 83:**  All documents or communications related to market segmentation by price for any Blue Buffalo Product.

**Request No. 84:**  All internal documents or communications (e.g., memoranda, notes, logs, reports, minutes of meetings, etc.) that reflect discussions of products You deem to be a competitor or substitute for any Blue Buffalo Product.

**Request No. 85:**  All documents or communications related to SWOT analyses (Strengths, Weaknesses, Opportunities and Threats) of the Blue Buffalo Products.

**Request No. 86:**  All documents or communications related to SWOT analyses (Strengths, Weaknesses, Opportunities and Threats) of products You deem to be a competitor or substitute for any Blue Buffalo Product.

**Request No. 87:**  All documents and communications indicating the market shares, by product type, region or sales channels, of Blue Buffalo Products since January 1, 2007 that also reference other products You deem to compete with any Blue Buffalo Products (including, at a minimum, the products referenced on Your comparison websites http://bluebuffalo.com/true-blue-test/compare-dog-food/  and  <http://bluebuffalo.com/true-blue-test/compare-cat-food/>). This request includes specifically, but is not limited to, all documents and communications internally or externally generated market share analyses, industry research articles, industry analyses or forecasts, trade journals, analyst reports, and documents related to new entries of competitors or competing products into the market.

711399371

**Request No. 88:** With respect to all Advertisements for the Blue Buffalo Products appearing on <u>television</u> since January 1, 2007 promoting or advertising the Blue Buffalo Products as either: (i) containing no chicken/poultry or animal by-products; (ii) containing no chicken/poultry or animal by-product meals; (iii) containing no artificial colors, flavors or preservatives; (iv) being grain free; (v) being nutritionally superior to any competitors' products; (vi) being fit for human consumption, including using the slogan "Love them like family, feed them like family" or similar slogans; (vii) containing no corn, wheat or soy; or (viii) containing only the "finest natural ingredients," all documents and communications sufficient to show:

    (a)    the full content of the actual television advertisements;

    (b)    the target consumer or target market of the television advertisements; and

    (c)    information detailing each and every time the television advertisements aired, including, but not limited to:

        (i)    the day and time each television advertisement aired;

        (ii)    the name and location of each television station that aired the television advertisements;

        (iii)    whether the television advertisements aired locally or nationally;

        (iv)    the expected or actual geographic reach of the television advertisements; and

        (v)    the expected or estimated number of gross rating points ("GRPs").

**Request No. 89:** With respect to all Advertisements for the Blue Buffalo Products appearing in <u>print</u> (e.g., magazines, newspapers, etc.) since January 1, 2007 promoting or advertising the Blue Buffalo Products as either: (i) containing no chicken/poultry or animal by-products; (ii) containing no chicken/poultry or animal by-product meals; (iii) containing no artificial colors, flavors or preservatives; (iv) being grain free; (v) being nutritionally superior to any competitors' products; (vi) being fit for human consumption, including using the slogan

"Love them like family, feed them like family" or similar slogans; (vii) containing no corn, wheat or soy; or (viii) containing only the "finest natural ingredients," all documents and communications sufficient to show:

    (a)    the full content of the actual print advertisements;

    (b)    the target consumer or target market of the print advertisements; and

    (c)    information detailing each and every time the print advertisements were printed, including, but not limited to:

        (i)    the name of the magazine, newspaper or other print publication;

        (ii)    the date or edition of the publication;

        (iii)    the expected or actual geographic reach of the publication;

        (iv)    the expected or estimated number of subscribers or advertisement impressions; and

        (v)    whether the print advertisement contained coupons, promotions or discounts (and estimated redemption rates).

**Request No. 90:** With respect to all Advertisements for the Blue Buffalo Products appearing online (i.e., on the internet, including websites, blogs and social media pages) since January 1, 2007 promoting or advertising the Blue Buffalo Products as either: (i) containing no chicken/poultry or animal by-products; (ii) containing no chicken/poultry or animal by-product meals; (iii) containing no artificial colors, flavors or preservatives; (iv) being grain free; (v) being nutritionally superior to any competitors' products; (vi) being fit for human consumption, including using the slogan "Love them like family, feed them like family" or similar slogans; (vii) containing no corn, wheat or soy; or (viii) containing only the "finest natural ingredients," all documents and communications sufficient to show:

    (a)    the full content of the actual online advertisements;

    (b)    the target consumer or target market of the online advertisements;

    (c)      any and all web analytics data (i.e., number of page views, unique visitors, and clicks on a daily basis since January 1, 2007; and

    (d)      information detailing each and every time the online advertisements were shown (i.e., each impression), including, but not limited to:

        (i)      the date and time of day;

        (ii)      the name of the website or application showing the online advertisement;

        (iii)      whether the online advertisement was clicked (or otherwise interacted with) by the viewer; and

        (iv)      whether the online advertisement contained coupons, promotions or discounts (and estimated redemption rates).

**Request No. 91:** All documents or communications including, but not limited to, Advertisements, reflecting or related to free samples of Blue Buffalo Products distributed through any outlet (e.g., retailers and veterinary care facilities), including, but not limited to, all documents showing the dates the free samples were distributed and the names and addresses of the outlets through which they were distributed.

**Request No. 92:** All documents and communications reflecting Your monthly advertising expenditures since January 1, 2007 related to Blue Buffalo Products by type of advertisement (e.g., television, print and online).

**Request No. 93:** All documents and communications reflecting Your monthly advertising expenditures since January 1, 2007 related to any advertisement or promotion of the Blue Buffalo Products by type of advertisement (e.g., television, print and online).

**Request No. 94:** All internal documents or communications (e.g., memoranda, notes, logs, reports, minutes of meetings, etc.) related to the effectiveness of Your advertising of Blue Buffalo Products, including any gain in market share over competitors, including, but not limited to, Purina.

711399371

**Request No. 95:** All documents and communications reflecting or related to the actual or anticipated effect of Your advertising of Blue Buffalo Products on competitor products (including, but not limited to, Purina's products) including with respect to market share, revenue, profit gain for Blue Buffalo or profit loss for Purina.

**Request No. 96:** All documents and communications containing, reflecting, summarizing, or analyzing reactions, interpretations, responses, questions, or comments from any buyers or former buyers of Purina's products relating to any Blue Buffalo Advertising.  This request also includes all documents and communications related to any of Blue Buffalo's responses thereto.

**Request No. 97:** All documents and communications reflecting or related to the number of times Blue Buffalo's "True Blue Test" (accessible on Your websites, including at (http://www.bluebuffalo.com/true-blue-test/compare-dog-food                                             and http://www.bluebuffalo.com/true-blue-test/compare-cat-food) have been viewed, including (i) the number of times each competing product (including Purina's products) were selected for comparison to Blue Buffalo Products, (ii) the number of times visitors comparing a Purina product clicked the "Get My Coupons" button on the results page of the "True Blue Test," and (iii) all documents and communications related to the information used to generate all of the foregoing test results.

**Request No. 98:** All documents and communications related to research conducted by or on behalf of Blue Buffalo to determine the target consumer or target market for  Advertisements of the Blue Buffalo Products, including, but not limited to:

    (a)      documents, analyses or reports related to focus groups, questionnaires, surveys, perception studies or pre-awareness studies concerning Blue Buffalo Products or competitor products;

(b)     reports, surveys, focus group results or other documents that provided Blue Buffalo with an understanding of how customers make purchasing decisions;

(c)     reports, surveys, focus group results or other documents that Blue Buffalo used as an input into generating Advertisements of the Blue Buffalo Products;

(d)     any documents measuring the effectiveness of pilot advertisements of Blue Buffalo Products; and

(e)     any documents or information related to whether Blue Buffalo developed versions of advertisements (used or not) that did not advertise the Blue Buffalo Products as:  (i) containing no chicken/poultry or animal by-products; (ii) containing no chicken/poultry or animal by-product meals; (iii) containing no artificial colors, flavors or preservatives; (iv) being grain free; (v) being nutritionally superior to any competitors' products; (vi) being fit for human consumption, including using the slogan "Love them like family, feed them like family" or similar slogans; (vii) containing no corn, wheat or soy; or (viii) containing only the "finest natural ingredients." This request includes specifically, but is not limited to, all documents and communications comparing the relative effectiveness of those advertisements.

**Request No. 99:** All documents and communications reflecting or related to marketing performance metrics gathered by or on behalf of Blue Buffalo to determine the effectiveness of its Advertisements of the Blue Buffalo Products, including, but not limited to:

(a)     reports, studies or other documents related to the return on investment from Blue Buffalo's advertisements.  By way of example (but not limitation), presentations justifying the advertising expenses and indicating expected advertising returns;

(b)     reports, studies or other documents measuring or monitoring the effectiveness of Blue Buffalo's advertisements or indicating how such effectiveness is measured, including, but not limited to:

     (i)     analyses relating to the impact of Blue Buffalo's  advertisements on consumers' intent to buy the Blue Buffalo Products or competitors' products; and

     (ii)    analyses relating to the impact of Blue Buffalo's  advertisements on consumers' actual purchases of the Blue Buffalo Products or competitors' products;

(c)     reports, studies or other documents measuring or monitoring the effectiveness of advertisements not referenced in the second amended complaint;

(d)     reports, studies or other documents measuring or evaluating the persistency of the impact of Blue Buffalo's advertisements over time;

(e)     return on marketing investment (ROMI) and marketing ROI measures related to (i) Blue Buffalo's advertisements in the second amended complaint, and (ii) Blue Buffalo's advertisements not referenced in the second amended complaint; and

(f)     web analytics data gathered for purposes of understanding and optimizing internet advertisements of the Blue Buffalo Products (e.g., measurements of web traffic reports, page views, visits, etc.).

**Request No. 100:** All documents and communications reflecting or related to Advertisement-tracking studies conducted by or on behalf of Blue Buffalo, including, but not limited to:

(a)     reports or studies conducted before the advertisements referenced in the second amended complaint appeared in the market, and then after those advertisements appeared in the market for any period of time;

(b)     reports or other documents related to any sales analysis conducted at the time the advertisements referenced in the second amended complaint commenced; and

(c)     post-testing or tracking studies conducted after advertisements referenced in the second amended complaint commenced, including, but not limited to:

(i)     any statistical analyses performed isolating the impact of the advertisements referenced in the second amended complaint on sales of the Blue Buffalo Products or on competitors' products;

(ii)    any statistical analyses performed to determine the correlation of advertising expenses and brand awareness or perception; and

(iii)   any statistical analyses performed to determine the correlation of advertising expenses and consumer purchases.

**Request No. 101:** All documents and communications sufficient to show when each Advertisement referenced in the second amended complaint started; i.e., first entered the marketplace.

**Request No. 102:** All documents relating to internal or external investigations conducted by Blue Buffalo concerning any allegation in Purina's second amended complaint.

711399371

**Request No. 103:** All documents reflecting or related to all of Your claimed damages in your counterclaim.

**Request No. 104:** All documents that reflect, relate, support or contradict Your affirmative defenses in this litigation.

**Request No. 105:** All documents which in any way support or relate to Your answers to any interrogatories propounded by Purina.

Dated: October 31, 2014

NESTLÉ PURINA PETCARE COMPANY

_(signature)_

Carmine R. Zarlenga, 386244DC *(Lead attorney)*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3227
Facsimile: (202) 263-5227
czarlenga@mayerbrown.com

Richard M. Assmus *(pro hac vice)*
Kristine M. Young *(pro hac vice)*
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
rassmus@mayerbrown.com
kyoung@mayerbrown.com

David A. Roodman, 38109MO
BRYAN CAVE LLP
211 North Broadway #3600
St. Louis, Missouri 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
daroodman@bryancave.com

*Counsel for Nestlé Purina PetCare Company*

711399371

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he/she caused a true and correct copy of the foregoing Plaintiff's Second Set of Requests for Production of Documents and Things to The Blue Buffalo Company Ltd. to be served upon counsel of record on October 31, 2014 by electronic mail to the addresses indicated below.

Patterson Belknap Webb & Tyler LLP
Attn: Steven A. Zalesin
1133 Avenue of the Americas
New York, NY 10036-6710
Email: sazalesin@pbwt.com

Patterson Belknap Webb & Tyler LLP
Attn: Adeel A. Mangi
1133 Avenue of the Americas
New York, NY 10036-6710
Email: aamangi@pbwt.com

Patterson Belknap Webb & Tyler LLP
Attn: Sean H. Murray
1133 Avenue of the Americas
New York, NY 10036-6710
Email: smurray@pbwt.com

Patterson Belknap Webb & Tyler LLP
Attn: Vivian Storm
1133 Avenue of the Americas
New York, NY 10036-6710
Email: vstorm@pbwt.com

Paul, Weiss, Rifkind, Wharton & Garrison LLP
Attn: Martin Flumenbaum
1285 Avenue of the Americas
New York, NY 10019-6064
Email: mflumenbaum@paulweiss.com

Paul, Weiss, Rifkind, Wharton & Garrison LLP
Attn: Robert Atkins
1285 Avenue of the Americas
New York, NY 10019-6064
Email: ratkins@paulweiss.com

Carmody MacDonald P.C.
Attn: David H. Luce
120 S. Central Avenue, Suite 1800
St. Louis, MO 63105
Email:  dhl@carmodymacdonald.com

Carmody MacDonald P.C.
Attn: Gerard T. Carmody
120 S. Central Avenue, Suite 1800
St. Louis, MO 63105
Email:  gtc@carmodymacdonald.com

Carmody MacDonald P.C.
Attn: Sarah J. Bettag
120 S. Central Avenue, Suite 1800
St. Louis, MO 63105
Email: sjb@carmodymacdonald.com

By: _____

711399371

## APPENDIX A

## DEFINITIONS

A.      "Advertisements" means any advertising or promotional material, including without limitation advertising plans or strategies, in-store point-of-sale materials, product labels, radio or television commercials, billboards, print advertising, television and movie product placement, direct mail and e-mail, and all online, internet, native, social media or other electronic content, whether generated by Blue Buffalo or by any party with Blue Buffalo's sponsorship or support.

B.      "Blender" means any person or entity, including Wilbur-Ellis and American By-Products, Inc., who is responsible for combining any two or more ingredients to create any mixture, such as poultry/chicken meal and poultry/chicken by-product meal, that has been used or is currently used in any Blue Buffalo Product.

C.      "Blue Buffalo," "Defendant," "You" and "Your" means defendant The Blue Buffalo Company Ltd., including without limitation any divisions, departments, parents, predecessors, successors, subsidiaries, affiliates, and other organizational or operating units and present or former officers, directors, employees, or agents and all persons acting or purporting to act on Blue Buffalo's behalf.

D.      "Blue Buffalo Products" means any and all pet food products, pet treat products, litter products and the like, sold or offered for sale by Blue Buffalo currently or since January 1, 2007.

E.      "Broker" means any person or entity responsible for purchasing or otherwise procuring any ingredient that has been or is currently being used in any Blue Buffalo Product.

F.      "Communication" means any exchange or transmission of words or ideas to another person or an entity, including without limitation conversations, discussions, letters,

711399371

correspondence, memoranda, meetings, notes, speeches, cable, facsimile, telex, telephone call, electronic mail message or other transfer of information, whether written, oral or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests, transcribes or records any such communication.

G.      "Competitor" means any person or entity other than Blue Buffalo that manufactures, distributes, offers for sale or sells pet food, pet treats, pet products or any products related to the same, including Purina.

H.      "Co-packer" means any person or entity that is currently or in the past has been responsible for compiling and/or packaging Blue Buffalo Products for sale.

I.      "Declaration" means the declaration of Dr. Vinayak P. Dravid that was filed under seal with the Court in the above-captioned matter (Case No. 4:14-cv-859-RWS) in support of Blue Buffalo's Reply Memorandum of Blue Buffalo Company Ltd. In Support of its Cross-Motion to Compel Dr. Makowski's Deposition by Defendant The Blue Buffalo Company Ltd. on September 6, 2014 at Dkt. No. 60 and the Exhibit thereto.

J.      "Distributor" means any person or entity who supplies any ingredient included in the Blue Buffalo Products to any manufacturer or any other person or entity or any person or entity who supplies the Blue Buffalo Products to any retailer or other point-of-sale.

K.      "Document" is defined as having the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation all handwritten, typed, printed, graphic, digital, and/or computer-stored matter such as correspondence, memoranda, notes, desk calendars, logs, drafts, work papers, blueprints, drawings or sketches, minutes or recordings of meetings, speeches, presentations, conversations or telephone calls (whether recorded in writing, mechanically or electronically), records, studies, analyses, reports,

forecasts, schedules, surveys, invoices, receipts, check stubs, CD-ROMs, computer data, any retrievable data, computer printouts, financial statements, balance sheets, profit and loss statements, statements of earnings, statements of net worth, credit reports, statements of operations, audit reports, financial summaries, statements of lists or assets, figures, statistics, agreements, government filings, inquires, reports, contracts, expense reports, photographs, slides, videos, communications (including without limitation electronic mail and web site information), and information or statistics contained on any memory device or other information storage and retrieval systems (whether stored, encoded, taped, or coded electrostatically, electromagnetically, optically, digitally or otherwise).  "Document" also means an authentic copy where the original is not in Blue Buffalo's possession, custody or control and every copy of a document where the copy is not an identical duplicate of the original.

      L.    "Entity" means legal or business entity of any kind and includes, without limitation, corporations, partnerships, trusts, associations and organizations, or any other form of business or any legal, governmental or business unit.

      M.    "Identify" when used with reference to a natural person means to give, to the extent known, the person's full name, present or last-known address, and the present or last known place of employment.  "Identify" when used with reference to any other type of person, means to give the person's full name (including any assumed or business name), address(es) and form of organization (i.e., corporation, partnership, unincorporated association, etc.).  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

N.      "Manufacturer" means any person or entity who is responsible for creating any Blue Buffalo Product and/or assembling any Blue Buffalo Product into the form in which it is sold to consumers.

O.      "Person" means any natural person or any business, legal or governmental entity or association.

P.      "Purina" means plaintiff Nestlé Purina PetCare Company, including all of its officers, directors, employees, agents, consultants, attorneys, predecessors, subsidiaries and affiliates.

Q.      "Supplier" means any person or entity from whom Blue Buffalo purchases or has purchased any of the ingredients used in the Blue Buffalo Products, including Diversified Ingredients and Darling International Incorporated.

R.      "Things" means all physical items that are not considered documents and shall have the broadest interpretation of that term in Rule 34(a) of the Federal Rules of Civil Procedure.

S.      The terms "relate," "refer," "reflect," "concern," and "pertain" mean discussing, evidencing, mentioning, memorializing, describing, constituting, containing, analyzing, studying, reporting on, commenting on, recommending, concerning, reflecting, summarizing, referring to, pertaining to, supporting, refuting, and/or purporting to evidence, mention, memorialize, describe, constitute, contain, concern, reflect, summarize, refer to, support, refute, and/or in any way be relevant, in whole or in part.

T.      The term "any" shall be understood in either its most or least inclusive sense as it will bring within the scope of discovery requests all responses that might otherwise be construed to be out of its scope.

711399371

U.      The use of a singular form of any word includes the plural and vice versa.

V.      The connectives "and" and "or" shall be construed both disjunctively and conjunctively so as not to exclude any information otherwise within the scope of any discovery request.

## APPENDIX B

### INSTRUCTIONS

A.     Unless otherwise noted, these requests require production of documents and things that were prepared, created, written, sent, dated, or received on or after January 1, 2007.

B.     The following requests are intended to be construed as broadly as their language permits.  They are to be construed independently, except when such construction limits their scope.  Any ambiguity should be resolved by selecting the broadest construction possible.  If any request or term in these requests is ambiguous or unclear to you, please contact the undersigned counsel as soon as possible so the request can be clarified so as to avoid unnecessary delay in discovery.  If an objection is made to part of a request, then that part shall be specified and an answer or production given for the remaining parts.

C.     If any responsive document has been lost or destroyed, identify: (i) the author; (ii) the date of loss or destruction; (iii) the reason for loss or destruction; (iv) the identity of those directing the destruction, if any; and (v) the substance of the document.

D.     If Blue Buffalo objects to the scope or breadth of any request, Blue Buffalo is directed to (i) respond within the scope or breadth of production that Blue Buffalo contends is proper and (ii) define the scope or breadth in which Blue Buffalo has responded.  Any limited response does not preclude Plaintiff from seeking additional discovery of the full scope or breadth of the request.

E.     Produce all documents which exist or have been maintained in electronic form in the electronic media required to be accessed and read by appropriate electronic equipment or, if necessary, written identification of the electronic equipment or software needed to access the electronic data.

711399371

F.     These requests seek all documents, objects, or other tangible things described in the categories below which are in Blue Buffalo's possession, custody or control.

711399371