IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NESTLÉ PURINA PETCARE COMPANY, | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| v. | ) |
| THE BLUE BUFFALO COMPANY LTD, | ) |
| Defendant/Counterclaim Plaintiffs, | ) Civil Action No. 4:14-cv-00859-RWS |
| v. | ) |
| BLUE STATE DIGITAL INC., et al., | ) |
| Counterclaim Defendants. | ) |

**MEMORANDUM IN SUPPORT OF BLUE STATE DIGITAL'S
MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM**

Counterclaim Defendant Blue State Digital Inc. ("BSD") submits this memorandum of law in support of its Rule 12(b)(6) motion to dismiss BSD from the Second Amended Counterclaim. To avoid duplication and excessive paperwork, BSD also adopts and incorporates the memorandum of law that Counterclaim Defendant PRCG/Haggerty LLL ("PRCG") submitted today in support of its 12(b)(6) motion to dismiss the Counterclaim.[1]

1. **THE HEIGHTENED PLEADING REQUIREMENT GOVERNING CLAIMS AGAINST BSD.**

The Counterclaim asserts nine claims for relief, each of which is premised upon the same allegedly false statements. As PRCG explains in its Memorandum (Doc. 142-1), Rule 9(b) of the Federal Rules of Procedures prescribes a heightened pleading requirement for all claims premised upon false statements. (*Id.* at 4-5; citations omitted.) Case law makes clear that Blue Buffalo must identify the time, place and contents of the purported false statements, as well as

---

[1] The term "Counterclaim" shall refer to Blue Buffalo's Second Amended Counterclaim (Doc. 113.)

the identity of the person making the false statement. "A complaint containing general allegations that does not state with particularity what representations each defendant made does not meet the Rule 9(b) requirement." (*Id.* at 5; citations omitted.)

Significantly, the Counterclaim does not mention BSD in any paragraph of any of the nine claims for relief; nor does it identify in those nine claims any act by BSD that would support its inclusion in that claim. Instead, it merely lumps BSD into an undifferentiated group of "Counterclaim Defendants" that allegedly "published false statements that are harmful to Blue Buffalo's commercial and reputational interests." (Doc. 113 at 47, ¶ 104.) Such "shotgun pleading" is contrary to Rule 9(b), which requires the claimant to differentiate each false statement allegation when suing more than one defendant. (*See* cases cited in PRCG Mem. at 5-6 (Doc 142-1 at 6-7).)

## 2. OVERVIEW OF THE COUNTERCLAIM.

As PRCG's review of the Counterclaim allegations makes clear, Blue Buffalo's claims are principally directed at Purina's alleged conduct and advertisements; indeed, most of the key paragraphs and even most of the headings in the Counterclaim identify Purina as the *sole* actor.

A detailed examination of the Counterclaim confirms as much: The pleading consists of 152 paragraphs of allegations, nine claims for relief, and more than 200 pages of exhibits. BSD is mentioned by name in just three of those 152 paragraphs, in none of those nine claims for relief, and nowhere in those 200+ pages of exhibits.

Each of the nine claims for relief is premised upon allegedly false statements of fact about Blue Buffalo, the "centerpiece" of which (according to Blue Buffalo) is the PetFoodHonesty.com website (the "Honesty Website").[2] There is no allegation that BSD had any

---

[2] "The centerpiece of Nestlé Purina's campaign is a website (the 'Honesty Website') . . ." (Doc. 113 at 26, ¶ 33.)

2

role whatsoever in the creation of the content of the Honesty Website, and as the exhibits make clear, BSD's name appears nowhere on the Honesty Website or in any of the other 200+-pages of exhibits that Blue Buffalo attaches to the Counterclaim in support of its allegations of "false statements" by "Counterclaim Defendants."

Each of the nine claims for relief (Doc. 113 at ¶¶ 90-152) is asserted generically against "Counterclaim Defendants" and comprises nothing more than conclusory allegations of the elements of each purported legal theory, all relying upon the same alleged vague conduct, *i.e.,* "false statements" in commercial advertising. Missing from each of those claims is an allegation identifying what, if anything, BSD supposedly did.

Thus, for example, the First Claim for Relief—which opens with a paragraph that repeats all of the preceding allegations—alleges that "Counterclaim Defendants have made false and misleading descriptions or representations of fact" about "the nature, characteristics, or qualities of Blue Buffalo's products, manufacturing processes, and/or marketing practices." (Doc. 113 at 45, ¶¶ 90-91.) The Rule 9(b) failure is obvious: missing is an allegation of *what* "false and misleading descriptions or representations of fact" BSD supposedly made about "the nature, characteristics, or qualities of Blue Buffalo's products, manufacturing processes, and/or marketing practices." Also missing are allegations as to *when* and *where* those unidentified statements were made.

In short, that First Claim for Relief and the other eight—all directed collectively against "Counterclaim Defendants"—offer no clue and make no attempt to meet Blue Buffalo's Rule 9(b) obligations to identify the time, place, and content of any purported false statement made by BSD.

Blue Buffalo presumably will respond by contending that it has provided the details

3

required by Rule 9(b) by generically re-alleging in the first paragraph of each Claim for Relief all of the 89 preceding paragraphs of the Counterclaim (along with the 200+ pages of exhibits referenced in those paragraphs). Any such contention, however, wilts upon examination.

### 3. THE SPECIFIC ALLEGATIONS AGAINST BSD FAIL UNDER RULE 9(B).

As noted above, the Counterclaim refers BSD in just three paragraphs. The first mention is a pro forma paragraph 13 in the "Parties" section of the Counterclaim, where Blue Buffalo introduces BSD as a Delaware corporation, a digital marketing agency, the developer "with Nestlé Purina" of "the content of the advertisements challenged herein," and the entity that "arranged for them to be disseminated to consumers throughout the United States." (Doc 113 at 17, ¶ 13.) None of that advertising "content," much less the advertisements themselves or the facts regarding their dissemination to consumers, is identified in that paragraph.

#### a. Paragraph 39 of the Counterclaim

The second mention of BSD is in paragraph 39, which immediately follows two paragraphs concerning Purina's promotion of its Honesty Website on Facebook (as evidenced by Exhibit L (Doc. 113-12)) and on Twitter (as evidenced by Exhibit M (Doc 113-13)).

Paragraph 39 alleges that BSD "developed the content for these advertisements on Nestlé Purina's Facebook and Twitter accounts and arranged for social media posts relating to PetFoodHonesty.com to be directed to the social media pages of pet food consumers on Facebook and Twitter." (Doc 113 at 28, ¶ 39.)

Thus: what is that "content"? As Exhibit L shows, the Purina Facebook page—and it is undeniably *Purina's* page—consists of the Purina trademarks (*i.e.*, the name and the checkerboard logo), a link to the Honesty Website (with the tagline "Learn more at PetFoodHonesty.com"), and one of the following four headline slogans:

> PURINA: WHERE OUR FIRST INGREDIENT IS HONESTY.
>
> AT PURINA, WHAT GOES IN THE BAG GOES ON THE LABEL.
>
> HOW HONEST IS YOUR PET FOOD COMPANY?
>
> HONESTY HAS BEEN OUR FIRST INGREDIENT FOR 85 YEARS.

There is nothing on Purina's Facebook page that is actionable, much less actionable against BSD. The Facebook page makes no mention of Blue Buffalo, and thus no false statement regarding Blue Buffalo. At most, Blue Buffalo can argue that Purina's Facebook page provides a link to its Honesty Website—the content of which BSD is not alleged to have created. Even if Blue Buffalo had alleged (which it doesn't) that BSD helped create that link (*i.e.*, typed the URL at the bottom of the page), that act would not come close to satisfying the requirements of any of the nine claims. Indeed, it would be the equivalent in a newspaper defamation lawsuit of adding as a defendant the delivery boy who tossed the newspaper onto the front lawn.

The Twitter claim is similarly deficient. The "content" at issue? As Exhibit M shows, the Purina Twitter page—and, again, it is undeniably *Purina's* page—consists of the Purina trademarks (*i.e.*, the name and the checkerboard logo), a link to the Honesty Website (with the tagline "Learn more at PetFoodHonesty.com"), and a message of 140 characters or less. Those messages displayed range from the mild ("Our promise: Honesty in every bag. Integrity in every bowl. Trust in every bite.") to the more provocative ("We're taking action to ensure pet owners understand what is in the pet food they buy. Learn more at PetFoodHonesty.com").

Again, the Twitter posts themselves—excluding the link to the Honesty Website—satisfy none of the elements of any of the nine claims against any defendant. Indeed, neither Blue Buffalo nor its products are mentioned. If a Twitter user should decide to click on the link, it will take him or her to the Honesty Website, where, as even the more provocative Twitter post

*accurately and truthfully* states, the viewer can learn what "action" Purina claims to have taken "to ensure pet owners understand what is in the pet food they buy." While Blue Buffalo may dispute the accuracy of the contents of the Honesty Website—content that BSD did not create— it cannot dispute the accuracy of that Twitter post.

In short, paragraph 39 not only fails to satisfy the requirements of Rule 9(b) but fails to allege facts sufficient to satisfy any of the elements of any of the nine claims.

### b. Paragraph 43 of the Counterclaim

The final mention of BSD is at the end of a lengthy paragraph 43 about certain Google ads that "Defendants" purchased, and on which "Defendants have spent heavily." That paragraph ends with the following sentence: "[BSD] arranged for these links to PetFoodHonesty.com to appear when Google.com users search for terms related to Blue Buffalo." (Doc. 113 at 30, ¶ 43.)

This allegation against BSD is even thinner than the one in paragraph 39 of the Counterclaim. Blue Buffalo does not allege that BSD created the content for the Google advertisements or purchased that advertising space. Instead, it alleges that BSD arranged for a link to the Honesty Website "to appear when Google.com users search for terms related to Blue Buffalo." As Exhibit R to the Counterclaim (Doc. 113-18) appears to show, that link to the Honesty Website is within the contested ad in the paid advertisement section of the search results, which also includes at least one advertisement purchased by Blue Buffalo (that has a link to the Blue Buffalo website).

Even if this Court assumes that BSD arranged for the link to the Honesty Website to appear in the contested Purina ads, that fact alone is not the basis for a cause of action against BSD. Again, the issue in dispute is the truth of the Honesty Website, which Blue Buffalo alleges to be the "centerpiece" of the lawsuit. Blue Buffalo does not allege that BSD created *any* of the

content of the Honesty Website. In the context of the Google.com ads, therefore, BSD is not even the newspaper delivery boy; instead, it is more akin to the supplier of the delivery boy's bicycle.

### 4. THE NINE INDEPENDENT "CLAIMS FOR RELIEF" FAIL TO STATE A CLAIM.

On pages 13 to 16 of its Memorandum, PRCG explains additional reasons why the various claims for relief fail to state a claim against PRCG. (Doc. 142-1 at 14-17.) Those reasons apply fully to BSD as well, and are hereby adopted in their entirety.

In short, when one combs through those first 89 paragraphs of the Counterclaim in search of any alleged action by BSD that could satisfy the strict pleading requirements for any of the nine claims, all one finds are vague allegations that BSD provided an Internet link from within certain Purina social media sites to a Purina website containing allegedly inaccurate content created by someone other than BSD. To paraphrase Marc Antony from Shakespeare's *Julius Caesar*: a fraud accusation should be made of sterner—and more specific—stuff.

### CONCLUSION

For the foregoing reasons and those set forth in PRCG's Rule 9(b)(6) Memorandum, this Court should dismiss Blue State Digital from the Counterclaim with prejudice.

Respectfully submitted,

/s/ Michael A. Kahn
Michael A. Kahn (#35411MO)
kahn@capessokol.com
Amy L. Fehr (#60033MO)
fehr@capessokol.com
Capes Sokol Goodman & Sarachan PC
7701 Forsyth Blvd., 12th Floor
St. Louis, Missouri 63105
Tel:  (314) 505-5406

Attorneys for Blue State Digital Inc.

## CERTIFICATE OF SERVICE

      I hereby certify that on January 16, 2015, the foregoing was served on all counsel of record via this Court's electronic filing system.

                                                                           /s/ Michael A. Kahn