UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NESTLÉ PURINA PETCARE COMPANY,<br><br>  Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>BLUE BUFFALO COMPANY LTD.,<br><br>  Defendant/Counterclaim Plaintiff<br><br>v.<br><br>BLUE STATE DIGITAL INC.,<br>PRCG/HAGGERTY LLC and JOHN DOES 1-8<br><br>  Counterclaim Defendants. | Case No. 4:14-cv-00859 RWS |

**PRCG/HAGGERTY LLC'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

PRCG/HAGGERTY LLC ("PRCG") by and through its undersigned attorneys moves this Court pursuant to Rule 12(b)(6), Fed.R.Civ.P., for an order dismissing the Second Amended Counterclaim against PRCG.

**PROCEDURAL BACKGROUND**

On May 6, 2014, Nestlé Purina PetCare Company ("Purina") filed suit in this Court against Blue Buffalo Company Ltd. ("Blue Buffalo") alleging false and misleading advertising by Blue Buffalo. Subsequently, on June 2, 2014 Blue Buffalo filed a Counterclaim against Purina. In its initial Counterclaim Blue Buffalo neither named PRCG as a defendant nor attempted to assert any claim against PRCG. On or about November 19, 2014 Blue Buffalo filed an Amended Counterclaim against Purina. In its Amended Counterclaim, Blue Buffalo merely

purported to assert the same claims against PRCG as it asserts against Purina. In neither its initial Counterclaim nor its Amended Counterclaim did Blue Buffalo make any specific allegations relating to alleged false statements by PRCG. Then, on or about December 5, 2014 Blue Buffalo filed its Second Amended Counterclaim (third counterclaim) in which it still failed to make any specific allegations as to PRCG.[1] In its Counterclaim Blue Buffalo indiscriminately defines "Counterclaim Defendants" as Nestlé Purina, Blue State Digital, Inc., PRCG Haggerty LLC and John Does 1–8.

## ARGUMENT

### A. The Counterclaims Against PRCG Fail to Satisfy the Federal Pleading Standards.

While it is obvious that Blue Buffalo is complaining about and focusing on the alleged conduct of Purina, it vaguely and ambiguously attempts to lump PRCG and Blue State Digital, as well as unidentified Defendants John Does 1–8, together with Purina by indiscriminately referring to all of them as "Defendants" and without describing the actual conduct of each of the new separate defendants PRCG and Blue State Digital.

Under Rule 8(a)(2), Fed.R.Civ.P., a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. quoting Twombly, 550 U.S. at 570). "A claim has special plausibility when the plaintiff pleads factual content that allows the court to

---

[1] Hereinafter, all references to "Counterclaim" refer to Blue Buffalo's Second Amended Counterclaim. (DKT #113)

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

### 1. Claims Involving Alleged False Statements Must Meet the Heightened Pleading Standard of Rule 9(b).

The crux of each claim in the Counterclaim are alleged false statements. Rule 9(b) prescribes a heightened pleading requirement for all claims of fraud including false statement claims. Accor Franchising North America, LLC, v. Gemini Hotels, No. 4:12CV541 HEA, 2012 WL 5258834, at *4 (E.D. Mo. Oct. 23, 2012) (counterclaim alleging false assertions dismissed for failure to satisfy Rule 9(b) particularity requirements). The Rule 9(b) particularity requirement applies to the sort of claims alleged in the Counterclaim. Monsanto Company v. E.I. DuPont DeNeumours and Company, No. 4:09CV00686 ERW, 2012 WL 3765059, at *3 (E.D. Mo. Aug. 30, 2012) (Lanham Act false advertising claim, common law unfair competition, fraudulent and negligent representation claims subject to Rule 9(b)); Dean v. Liberation Programs, Inc., No. FSTCV136018607S, 2013 WL 6510890, at *3 (Conn. Super. Ct. Nov. 13, 2013) (defamation must be pleaded with specificity); Marinos v. Poirot, 2011 No. HHDCV095029718S, 2011 WL 783607 (Conn. Super. Ct. Feb. 10, 2011) (unfair competition claim must be pleaded with particularity).

Rule 9(b) governs both state-law and federal-law claims, including false advertising claims. Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1122 (C.D. Cal. 2010) ("It is well settled that Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'" (internal citation omitted)); Pom Wonderful LLC v. Ocean Spray Cranberries, Inc., 642 F. Supp. 2d 1112, 1124 (C.D. Cal. 2009) ("[T]his Court agrees that Plaintiff's false

3

advertising Claims were 'grounded in fraud'" (citing Vess v. Ciba – Geigy Corp., USA, 317 F.3d 1097, 1103–04 (9th Cir. 2003)).

### 2. All of Blue Buffalo's Counterclaims Are Premised On Alleged False Statements.

Because the lynchpin of the Blue Buffalo's Counterclaim are alleged false statements, in order to state a claim under Rule 9(b) Blue Buffalo is required to state the time, place and contents of the purported false statements as well as the identity of the particular person making the false statement. A complaint containing general allegations that does not state with particularity what representations each defendant made does not meet the Rule 9(b) requirement. In U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (False Claims Act case dismissed for failure to satisfy Rule 9(b)), the Court explained:

> Under Rule 9(b), 'the circumstances constituting fraud … shall be stated with particularity.' Rule 9(b)'s 'particularity requirement demands a higher degree of notice than that required for other claims,' and 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.' [Internal citations omitted]. To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place and context of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. [Internal citations omitted]. Put another way, the complaint must identify the "who, what, where, when and how of the alleged fraud."');

See also Accor Franchising North America, LLC, 2012 WL 5258834, at *3. As explained below, Blue Buffalo plainly fails to meet the Rule 9(b) requirement in its effort to plead a claim against PRCG.

### 3. All of Blue Buffalo's Counterclaims Fail to Specify the Specific Conduct of Each Individual Defendant.

Blue Buffalo makes no effort to single out PRCG for any individual claim. The only focus of the allegations in the Counterclaim is Purina's advertisements, press releases and emails. The Counterclaim does not allege anywhere that the advertisements, press releases and

4

emails are the advertisements, press releases or emails of PRCG or were published by PRCG. Indeed, the advertisements that Blue Buffalo attaches as exhibits to its Counterclaim and about which Blue Buffalo complains on their face are *Purina's advertisements*, not PRCG's. Significantly, "Rule 9(b) 'does not allow a complaint to ... lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011) (internal citation omitted) (Court affirmed dismissal in case in which plaintiffs lumped several defendants together in their "shotgun pleading" that alleged "everyone did everything."); Jepson v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994) (dismissal upheld for failure to satisfy 9(b) requirement, holding: "[W]hen the complaint accuses multiple defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud."); Viacom v. Harbridge Merchant Services, Inc., 20 F.3d 771, 778 (7th Cir. 1994) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants,'" (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)); In re Hydroxycut Marketing and Sales Practices Litigation, 801 F. Supp. 2d 993, 1002 (S.D. Cal. 2011) ("Rule 9(b) does not permit a complaint to 'lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'") (internal citation omitted); Fortaleza v. PNC Financial Services Group, Inc., 642 F. Supp. 2d 1012, 1019–1020 (N.D. Cal. 2009) (dismissing case where "plaintiff generally allege[d] all claims against 'all defendants,' without identifying which defendant [wa]s responsible for her alleged injuries," holding it was "an impermissible attempt to sweep multiple defendants into the lawsuit without making specific allegations as to any."); Hanning v. Homecomings Financial Networks, Inc., 436 F. Supp. 2d 865, 870 (W.D. Mich. 2006) (dismissing case for failure to

satisfy Rule 9(b), holding that "where there are multiple defendants, such as here, a claim must identify who made the alleged misrepresentations.") (internal citation omitted); see also Silverstein v. Percudani, 422 F. Supp. 2d 468 (N.D. Pa.). Blue Buffalo's pleading does not comport with these requirements. The Counterclaim plainly fails to plead with particularity what specific false statement PRCG is alleged to have made.

        (a)    *The Specific Conduct Alleged is Only Directed to Purina.*

In the Counterclaim's Introductory Paragraphs, Blue Buffalo makes it clear that its claims are directed at *Purina's alleged conduct* and *Purina's advertisements*, and not any advertisements of PRCG or Blue State. In Paragraph 1 of the Introduction, Blue Buffalo expressly asserts that "*Nestlé Purina* has blanketed the media with ads that claim Blue Buffalo uses certain low-cost and unappealing ingredients . . .," and that "In fact, it is *Nestlé Purina's* fabricated claims about Blue Buffalo's products and malicious attacks on Blue Buffalo's integrity that are blatantly false." In Paragraph 5 of the Introduction in the Counterclaim, Blue Buffalo continues to assert that it is *Nestlé Purina* that "has decided to wage a nation-wide advertising smear campaign against Blue Buffalo;" and that "*Nestlé Purina* has set up a website at www.petfoodhonesty.com that accuses Blue Buffalo of 'not being honest about the ingredients in their pet food'"; and that it is *Nestlé Purina* that "has promoted that site and repeated its attacks on Blue Buffalo's honesty and press releases, on social media platforms and honest brand-specific websites, in search-engine ads and through direct emails to consumers and retailers."

In Paragraph 7 of the Introduction, Blue Buffalo asserts that it is *Purina* that "has employed a systematic advertising and public relations campaign to widely dissimilate its false claims and press statements, emails and social media and internal websites to consumers in Missouri and throughout the United States." Without mentioning PRCG or Blue State anywhere

6

in the Introduction in the Counterclaim, Blue Buffalo in the summary paragraph in its Introduction asserts that "*Nestlé Purina's*" smear campaign will cause irreparable injury to the value of Blue Buffalo's brand. Leaving no doubt that its false advertising claims are directed at Purina, the Counterclaim includes a heading entitled "**Nestlé Purina's False and Misleading Advertising Campaign**" immediately preceding Paragraphs 32–60. Thus, without question, the Counterclaim focuses on Purina and its ads.

In paragraph 34, Blue Buffalo avers that the website contains a *letter from Purina* describing supposedly deceptive marketing practices of Blue Buffalo, and then Blue Buffalo refers generally and broadly to "Defendants" which under its definition lumps together Purina, Blue State Digital, PRCG and unidentified John Does 1–8, and then asserts that "Defendants" make a variety of false or misleading statements. The Paragraph does not identify which Defendant made any alleged specific statement, and the Paragraph does not assert what, if anything, is false about any of the purported statements. Paragraph 35 refers *only to Purina*. In paragraph 36, Blue Buffalo again indiscriminately refers to Defendants and alleges that Defendants issued a press release, which it attaches as Exhibit K, announcing the filing of the Purina Complaint that it asserts reiterated many of *Purina's* false and misleading claims from the website. Exhibit K, tellingly, bears the Purina logo and does not reference any of the other individuals defendants. In paragraphs 37, 38, 39, 40 and 41 Blue Buffalo directs its allegations specifically to *Purina*, except Paragraph 39 mentions Blue State. They do not in any way refer to PRCG.

In paragraph 42, Blue Buffalo asserts that "on information and belief"[2/] "Defendants sent out a mass e-mailing ('the direct E-mails') to consumers and pet food retailers nationwide," and

---

[2/]     It is generally held that Rule 9(b) allegations cannot be based on "information and belief." The rule is sometimes relaxed for matters peculiarly within the adverse party's knowledge, in which case the

7

attached Exhibit P as an example of these emails. Exhibit P, however, is on the letterhead of Purina and expressly states that it is a promotion from Purina and contains the address of Purina, Office of Consumer Affairs at 901 Chouteau, St. Louis. There is no reference or any other indication that PRCG published or distributed this mass emailing. Further, there is no averment as to what is false or misleading in the emails.

Similarly, in paragraph 43 Blue Buffalo indiscriminately asserts that "Defendants" have also purchased false and misleading advertisements on "Google.com," citing Exhibit Q as an example, and asserts that "upon information and belief, Defendants have spent heavily to insure that these advertisements appear above the Google search results for common terms relating to Blue Buffalo." Exhibit Q, however, is simply a tutorial by Google as to how a particular ad is positioned on a Google page. There is no reference specifically to PRCG. There is no exhibit attached to the Counterclaim which represents an ad placed by any of the Defendants on Google. There is no averment as to what is false or misleading in any of the purported advertisements.

Paragraph 44 avers in conclusory fashion that the statements made on the website and reiterated in the press release, in Facebook and Twitter posts, direct emails and in the Google ads are false and misleading, without specifically identifying any alleged false statement, or when it was made, or by whom.

In paragraph 45 Blue Buffalo alleges that "Defendants" make certain claims on the Honesty Website and in direct emails. There is again no reference specifically to PRCG. Paragraph 46 simply alleges that the Association of American Feed Officials establishes definitions and descriptions of ingredients that are listed in pet foods. In paragraph 47 Blue

---

> allegations must then be accompanied by a statement of the facts upon which the belief is founded. Here, there is no assertion that such matter is peculiarly within the adverse party's knowledge and the underlying allegations, in any event, fails to satisfy Rule 9(b). Woodruff v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. CV88–L–314, 1990 WL 124996, at *4 (D. Neb. Jan. 22, 1990).

Buffalo generally alleges that "*Nestlé Purina's* claims are false," without stating which claims are false. Blue Buffalo then asserts that it does not "knowingly" use poultry by-product as an ingredient, *but it does not expressly deny that its product contains poultry by-product.*[3/] Again, there is no specific reference to PRCG in the paragraph. Similarly, paragraphs 48 and 49 *refer only to Purina* and not to any of the other Defendants.

Counterclaim paragraphs 50–51 are preceded by a subheading asserting: **Nestlé Purina's False Claim that Blue Buffalo's "Grain-Free" Products Contain Grains.** While the heading in bold type expressly and specifically asserts that it is *Nestlé Purina's false claim*, Paragraph 50 contradictorily asserts that "Defendants" state in their advertising that several Blue Buffalo products promoted as 'grain-free'" actually contain quantities of "rice hulls," and that the necessary implication that the products contain grain is false. Paragraph 51, which *references only Purina*, asserts that a rice hull is not a grain but rather is a hard covering that is left over after the rice grain has been removed. At best, the allegation is that Purina truthfully stated that Blue Buffalo's product contains "rice hulls" which Blue Buffalo admits in Paragraph 51 are contained in its product. The Paragraph does not allege any actionable claim against PRCG.

Paragraphs 52–53 of the Counterclaim are directly preceded by a subheading that asserts: **"Nestlé Purina's False Claim that Blue Buffalo's LifeSource Bits Contain Corn."** While the subheading refers only to Purina, Paragraph 52 which follows, in contradictory fashion, indiscriminately alleges that all Defendants "state in ads including the Honesty Website and in the direct E-mails that independent testing shows that Blue Buffalo's LifeSource Bits' Contain . .

---

[3/]   The heading on page 30 of the Counterclaim is entitled "Nestlé Purina's False Claim that Blue Buffalo's Products Contain Poultry By-Product Meal." But there is no way that Blue Buffalo's premise is correct – even their CEO admits that the company does not know if its products contain poultry by-product meal. *See* Mot. For Recons. Of Purina's Mot. To Compel, Dkt. 112-5. Moreover, documents produced in the litigation by Blue Buffalo ingredient supplier Wilbur-Ellis leave little doubt on this issue. *See* Mot. To Compel, Dkt. 77-1 ("[Wilbur-Ellis'] current contracts are for Chicken Meal Blend and Turkey Meal Blend and as you are aware, both of these contain some by-product meal.").

. corn.'" The paragraph alleges that Defendants repeat similar claims in the "Press Release," and that "These claims are false." Paragraph 53 does not reference any Defendant, but rather self-servingly asserts that Blue Buffalo does not use corn in any of its products. It states that the formula or specifications it provides to its manufacturers do not include corn as an ingredient. Importantly, Blue Buffalo does not state categorically that its LifeSource bits do not contain corn.

Similarly, immediately above Paragraph 54 in the Counterclaim Blue Buffalo in a subheading states: **"Nestlé Purina's False Claim that Blue Buffalo's Products Are Subject to Quality Control Problems Because They Are 'Outsourced'"**. Then, in Paragraph 54 immediately below the heading, again in contradictory fashion, Blue Buffalo, alleges that all "Defendants" state on the Honesty Website and in the Press Release that 99% of Purina pet food sold in the United States is manufactured by Purina's own plant in the United States. By contrast, 100% of Blue Buffalo pet foods is outsourced and made by third party manufacturers." Significantly, Blue Buffalo does not deny that this allegation is untrue. Rather, Blue Buffalo asserts that this statement means something other than what it says. See Paragraphs 54–57.

Importantly, in Paragraph 56, Blue Buffalo alleges this *is Purina's statement*, not a statement of PRCG or any other Defendant. Blue Buffalo claims that the statement "necessarily implies" that Blue Buffalo's pet foods are not made in the United States and further that it is likely to be understood by consumers that Blue Buffalo's pet foods are subject to highly publicized quality control problems. In Paragraph 55, Blue Buffalo asserts that all of its products are made in the United States. As noted above, in Paragraph 56, Blue Buffalo asserts that *"Nestlé Purina's"* statement is false, contradicting its assertion in Paragraph 54 that this was a statement of *all* Defendants. Blue Buffalo does not deny that its pet foods are outsourced and made by third

party manufacturers. There is no assertion that any of the Defendants ever stated that Blue Buffalo's products are manufactured outside the United States or that Blue Buffalo's product is subject to highly publicized quality control problems. As a matter of law, the allegations in paragraphs 54, 55, 56 and 57 do not state a claim against PRCG, or any other Defendant, based upon any false or misleading statement.

Immediately preceding Paragraph 58, the Counterclaim asserts in a subheading **"Nestlé Purina's False Claim That Blue Buffalo is Dishonest About Its Ingredients."** Paragraphs 58 and 59 allege that the Honesty Website and Direct E-mails state that Blue Buffalo "is not being honest about the ingredients in its pet food." Blue Buffalo also refers to unidentified Google ads and asserts that these and similar statements are false. However, all of the ads which Blue Buffalo claims are examples that are attached as exhibits to its Counterclaim are on the logo or letterhead of *Purina*. No statement or advertisement or e-mail is specifically alleged to have been published or circulated by any of the Defendants *other than Purina* and, of course, the heading under which these allegations are being made refer *only to Purina*. Paragraph 60 refers *only to Purina*.

        (b)    *Blue Buffalo Only Makes Passing Allegations Specifically Directed Toward PRCG.*

Of the 152 paragraphs in its Counterclaim, Blue Buffalo mentions PRCG specifically by name only in paragraphs 12 and 33. The first time the Counterclaim mentions PRCG Haggerty is in Paragraph 12, the section of the Counterclaim identifying the parties, which alleges that PRCG is a New York limited liability company with headquarters in New York, and that "it is a public relations and communications firm that designed and built the advertising campaign challenged herein." In paragraph 33, Blue Buffalo simply alleges that the www.petfoodhonesty.com website was "designed and built by PRCG/Haggerty." Blue Buffalo attaches as Exhibit J screen shots of

the contents of the Honesty Website. All of those screen shots bear a *logo of Purina*. Generally, averring that a party designed and built a website is woefully insufficient to state a claim for false advertising or false statements against the party. Other than specifically referencing PRCG in Paragraphs 12 and 33, as discussed above, the only allegations that could include PRCG are the allegations that indiscriminately refer to all "Defendants."

        (c)     *The allegations relating to the conduct of Dr. Makowski similarly are not directed at PRCG.*

The allegations in Paragraphs 61 through 86 of this Counterclaim focus exclusively on the testing of Dr. James Makowski and not on PRCG or any of the Defendants other than Purina. Paragraphs 87 through 89 in summary and conclusory fashion discuss alleged injury suffered by Blue Buffalo.

        (d)     *The remainder of the Counterclaim discusses various legal theories for relief without any specificity.*

The allegations set forth under each of the Nine Claims for Relief, Paragraphs 90–152 are merely bare conclusory allegations, with no effort to set forth any alleged facts. They simply incorporate preceding allegations. Each of those nine claims or counts of the Counterclaim rests on the same alleged conduct, i.e., alleged false and misleading statements in commercial advertising. The nine separate claims are simply different purported legal theories for recovery premised on the same alleged conduct. However, as explained above, the Counterclaim does not allege with particularity any false statement specifically made by PRCG upon which any of the nine Claims for Relief is premised. It does not specifically allege any particular statement of PRCG, or when it was made, or how it is false, or that it was published by PRCG in a commercial advertisement.

Overall, as demonstrated above, the Counterclaim fails to satisfy Rule 9(b) in alleging claims based on false representations against PRCG. As the plethora of cases cited above hold,

12

where there are multiple defendants, such as here, a claim must identify who made the alleged misrepresentation. Rule 9(b) is not satisfied where a complaint or counterclaim identifies relationships between various defendants and vaguely alleges misrepresentations without sufficiently identifying which defendants made them. See, e.g., Hoover v. Langston Equipment Assoc. Inc., 958 F.2d 742, 745 (6th Cir. 1992). As explained by Fortaleza, 642 F. Supp. 2d at 1019–1020, by lumping "all defendants" together without identifying which defendant made which statement, Blue Buffalo has engaged in "an impermissible attempt to sweep multiple defendants into the lawsuit" without making specific allegations against PRCG. The Counterclaim in attempting to assert claims against PRCG runs afoul of the admonition that "Rule 9(b) does not permit a complaint to 'lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" In Re Hydroxycut Marketing, 801 F. Supp. 2d at 1002.

Because the Counterclaim fails to sufficiently allege a claim for relief against PRCG that PRCG made false and misleading statements in commercial advertisements against Blue Buffalo, each of the nine claims fails and should be dismissed.

### B. Individual "Claims for Relief" Should be Dismissed as They Fail to State a Claim.

Each of the nine claims for relief should be dismissed for failure to state a claim under Rule 9(b) for the reasons outlined above, as well as additional bases for the claims discussed below.

### First Claim for Relief

Because the Counterclaim fails to satisfy Rule 9(b) in alleging claims based on false representations against PRCG, the Complaint fails to properly allege a violation of Section 43(a) of the Lanham Act. See Monsanto Company, 2012 WL 3765059, at *3.

13

### Second Claim for Relief

We are unaware of any separate claim for false advertising under Missouri common law. Of course, a claim of fraud is a recognized claim under Missouri common law, but there appears to be no separate recognized common law claim for false advertising. Accordingly, the Second Claim for Relief should be dismissed for this additional reason.

### Fourth and Fifth Claims for Relief

Although injurious falsehood and defamation are recognized claims under Missouri law, plaintiff Blue Buffalo has failed to sufficiently plead such claims for relief under Missouri law. Among the requisite elements of injurious falsehood are (1) publication of a false statement; (2) the statement is harmful to the interests of another if he intends for publications of the statement to result in harm to the interests of the other; (3) the declarant has a pecuniary value or recognizes that it is likely to do so; (4) he knows that the statement is false or acts in reckless disregard of its truth or falsity; and (5) plaintiff can establish proof of pecuniary loss. <u>State ex rel. BP Products North America, Inc. v. Hon. John A. Ross</u>, 163 S.W.3d 922, 928 (Mo. 2005) (en banc) (citing <u>Annbar Assoc. v. Am. Express Co.</u>, 565 S.W.2d 701, 706 (Mo. App. 1978)). Under Missouri common law, the elements of a defamation claim are (1) publication, (2) of a defamatory statement, (3) that identifies a plaintiff, (4) that is false, (5) that is published with the requisite degree of fault and (6) damages the plaintiff's reputation. <u>State ex rel. BP Products North America, Inc. v. Hon. John A. Ross</u>, <u>supra</u>.

Not only has Blue Buffalo failed to identify any allegedly false statement made by PRCG, but it has also failed to allege any facts that PRCG, specifically, has published any purported statement or that PRCG, specifically, had the requisite intent. For this additional reason, the Fourth and Fifth Claims for Relief in the Counterclaim should be dismissed.

**Seventh Claim for Relief**

Plaintiff has also failed to state a claim against PRCG for unfair competition under Connecticut common law. In order for a plaintiff to sustain a cause of action for unfair competition under Connecticut common law, there must be evidence that the defendant misappropriated a commercial or business advantage. See, e.g., QSP, Inc. v. Aetna Casualty & Surety Co., 256 Conn. 343, 371, 373 A.2d 906 (Conn. 2001); Baer v. New England Home Delivery Services, LLC, 2007 Conn. Super. LEXIS 2696 (Conn. Super. Ct. 2007). Here, there are no factual allegations against PRCG that it has misappropriated anything from Blue Buffalo, much less any commercial or business advantage (PRCG is not even a competitor of Blue Buffalo), and for this additional reason, the Seventh Claim for Relief should be dismissed.

**Eighth Claim for Relief**

Plaintiff has also failed to allege the necessary elements or facts required for stating a claim against PRCG for defamation under Connecticut common law. The Counterclaim fails to contain any factual allegations that PRCG, specifically, allegedly made and published a defamatory statement against Blue Buffalo which identified Blue Buffalo to a third person. There are no factual allegations as to what specific defamatory statement allegedly PRCG made, or when such a statement was made and published. For this additional reason the Eighth Claim for Relief should be dismissed.

**Ninth Claim for Relief**

For its purported Ninth Claim for Relief, Blue Buffalo incorporates its preceding allegations and in an inappropriate and wholly conclusory and wholesale fashion asserts that PRCG has violated various statutes of 26 states. Blue Buffalo simply lists a statutory cite for each state, and for each statute it only, summarily and conclusorily avers that "Counterclaim Defendants" "have engaged in misleading, unfair or deceptive acts or practices in violation" of

15

the 26 statutes. Blue Buffalo makes absolutely no effort whatsoever to allege what particular conduct of PRCG allegedly violates any specific statute, nor does it recite and compare the requisite elements of each statute to any purported factual allegations. This is precisely the type of amorphous, vague and ambiguous pleading that *Iqbal, Twombly* and Rule 9(b) is intended to preclude. Blue Buffalo's Ninth Claim for Relief plainly fails to sufficiently state a claim for relief against PRCG and therefore should be dismissed.

C.   **Blue Buffalo Should Not Be Allowed to Amend For a Fourth Time.**

As explained above, the Counterclaim against PRCG fails to state a viable claim and should be dismissed with prejudice. Moreover, should Blue Buffalo seek leave to cure its pleading deficiencies, it should not be permitted to do so by amending its Counterclaim a *fourth* time. The deadline for filing amendments under the Court's current scheduling order has passed. Blue Buffalo has already filed its third version of its counterclaim (Second Amended Counterclaim). Under such circumstances, the Court would act well within its discretion to not allow Blue Buffalo to amend yet again its Counterclaim. As the Ninth Circuit explained in Destfino, 630 F.3d at 958–59: "The district court dismissed with prejudice because it found the pleadings would 'lead to broad discovery and other pretrial problems' and 'create an undue burden on the Court.' Plaintiffs had three bites at the apple, and the court acted well within its discretion in disallowing a fourth." See also United States ex rel. Joshi, 441 F.3d at 558–59 (8th Circuit affirms Judge Sippel's denial of plaintiff's motion for leave to amend); Monsanto Company, 2012 WL 3765059, at *2 (Judge Webber denied Monsanto leave to file amended counterclaims after time to amend pleadings under the scheduling order had passed); Woodruff, 1990 WL 124996, at *6 (trial court denied plaintiff's motion to amend second amended complaint).

Here, Blue Buffalo has already had three bites at the apple and the deadline for filing an amended pleading has passed. As in this country's favorite pastime, three strikes and the batter is out. Blue Buffalo has had its allotted strikes and should be out of chances to amend.

## CONCLUSION

PRCG is lumped together with Purina, Blue State and unidentified John Does 1–8 under the reference to "Defendants" without describing any specific actionable conduct of PRCG. Although, there is a reference that "Defendants" engaged in advertising, e-mails, and press releases, all of the examples attached as exhibits to the Counterclaim are ads or press releases or e-mails solely of Purina, not of PRCG or any of the other Defendants.

It is obvious that Blue Buffalo in its Counterclaim simply added PRCG, along with Blue State, hoping to gain some leverage in the suit. It is equally obvious that to the extent Blue Buffalo has a viable claim at all, it is and should remain directed solely at Purina.

As demonstrated above, the Counterclaim is insufficient to state a claim for relief against PRCG and should be dismissed with prejudice in its entirety as to PRCG.

Respectfully submitted,

Dated: January 16, 2015      BRYAN CAVE LLP

/s/ *Charles A. Weiss*
Charles A. Weiss, 20299MO
David A. Roodman, 38109MO
Bryan Cave LLP
211 North Broadway #3600
St. Louis, Missouri 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
caweiss@bryancave.com
daroodman@bryancave.com
Attorneys for PRCG/Haggerty LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2015, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Charles A. Weiss