UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NESTLÉ PURINA PETCARE COMPANY,

Plaintiff/Counterclaim Defendant,

v.

BLUE BUFFALO COMPANY LTD.,

Defendant/ Counterclaim Plaintiff,

v.

BLUE STATE DIGITAL INC.,
PRCG/HAGGERTY LLC and JOHN DOES 1-8

Counterclaim Defendants.

Case No. 4:14-CV-00859 (RWS)

**NONPARTY THE INVUS GROUP, LLC'S
MOTION TO QUASH SUBPOENA BY NESTLÉ PURINA AND
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

7686016v.1

Pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure, nonparty The Invus Group, LLC ("Invus") respectfully moves to quash the February 9, 2015 subpoena served upon it by Nestlé Purina PetCare Company ("Nestlé Purina").

## PRELIMINARY STATEMENT

Nestlé Purina's scorched-earth approach to discovery has reached new heights.  Not content with its 157 document requests to Blue Buffalo and 24 subpoenas to Blue Buffalo's vendors, co-manufacturers and ingredient suppliers, Nestlé Purina is now pursuing Blue Buffalo shareholders.  Specifically, Nestlé Purina has served a burdensome and wide-ranging third-party subpoena on Invus, a private equity firm and Blue Buffalo's majority shareholder.

Invus did not craft or disseminate the Blue Buffalo advertising at issue.  Nor does it run Blue Buffalo's procurement, manufacturing, quality control or any other aspect of Blue Buffalo's operations.  And Invus certainly had no knowledge of any alleged inclusion of by-product meal in Blue Buffalo products—intentional or otherwise—or of any of the other conduct alleged by Nestlé Purina.  Invus receives reports from Blue Buffalo, has employees who serve on its Board of Directors, and on occasion provides management with its strategic advice and input.  But Blue Buffalo management runs the company.  To the extent that Nestlé Purina seeks any non-privileged documents regarding relevant issues, it should obtain (or has already obtained) them from Blue Buffalo.  There is no basis for burdening a third party such as Invus to obtain documents that are equally available from a party.

To the extent that the subpoena seeks any documents that are in Invus's sole possession, they are irrelevant.  For example, Nestlé Purina seeks "all documents and communications related to [Invus's] competitive analysis," which includes other companies in other industries

7686016v.1

with no bearing on pet food at all.  And even insofar as they concern pet food, Invus's internal documents that were never sent to Blue Buffalo have no bearing on Blue Buffalo decision making or advertising, and are therefore irrelevant.  Nestlé Purina's subpoena to Invus should be quashed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Invus Is a Private Equity Firm That Has Invested in Blue Buffalo, But Does Not Manage Blue Buffalo's Operations

Invus is a private equity investment firm that makes strategic investments in a variety of industries.  Blue Buffalo Company Ltd. ("Blue Buffalo") is one of the companies in which Invus has invested.  Invus is presently a majority shareholder in Blue Buffalo.  By virtue of that shareholder position, Invus also has a majority of the seats on Blue Buffalo's Board of Directors (the "Board").  Facts concerning Invus's relationship with Blue Buffalo are detailed in the accompanying declaration of Evren Bilimer, who is a Managing Director at Invus with responsibility for Invus's investment in Blue Buffalo.  *See* Declaration of Evren Bilimer ("Bilimer Decl.") ¶¶ 2-3.  Invus receives reports on Blue Buffalo's business plans and performance and on occasion provides strategic opinions or advice to management.  But neither the Board nor Invus is involved in the day-to-day management of Blue Buffalo.  These operational matters are the responsibility of Blue Buffalo's management, none of whom are employees of Invus.  Bilimer Decl.  ¶ 5.

### B.    Nestlé Purina Has Refused to Withdraw its Subpoena to Invus

On February 9, 2015, Nestlé Purina issued a subpoena to Invus for the production of documents.  *See* Bilimer Decl. ¶ 4, Ex. A.  The subpoena is exceedingly broad in scope, seeking documents covering all aspects of Blue Buffalo's business including its finances, manufacturing, ingredient procurement, advertising, and legal matters.  More specifically, Request 1 seeks

2

documents concerning Invus's ownership interest in Blue Buffalo; Requests 2-4, 8-9 and 14 seek

documents regarding the ingredients in, and any investigations or recalls of, Blue Buffalo

products; Requests 5 and 6 seek documents related to Blue Buffalo's advertising; Requests 7, 8,

10 and 13 seek documents concerning this litigation and other legal issues; and Requests 11 and

12 seek documents regarding Blue Buffalo's financial performance and competition.  *Id.*

On February 12, 2015, counsel for Invus asked counsel for Nestlé Purina to withdraw the

subpoena and requested a pre-motion conferral.  See Declaration of Vivian Storm ("Storm

Decl.") Ex. 1.  The next day, counsel for Nestlé Purina responded and refused to withdraw the

subpoena.  Storm Decl. Ex. 2.  The parties subsequently conferred by telephone but were unable

to resolve their disagreement concerning the subpoena.  Storm Decl. ¶ 3.

### C.        Nestlé Purina's Subpoena to Invus Caps an Extensive Discovery Campaign

To date, Nestlé Purina has served a total of 157 document requests on Blue Buffalo.

Storm. Decl. Exs. 3-7.  Nestlé Purina's approach has been notably unrestrained despite the

Court's prior guidance.  For example, at the October 2014 motions hearing in this case, the Court

denied the majority of Nestlé Purina's motion to compel relating to its original set of 60

document requests and cautioned the parties to focus on the core issues in the case.  Nestlé

Purina's response was to serve Blue Buffalo with 63 additional document requests within days of

the Court's order, and many more thereafter.  Most of these requests simply extend Nestlé

Purina's pursuit of irrelevant documents.  Storm Decl. Exs. 4-7.

Nestlé Purina has taken the same approach to third party discovery.  Between August and

December 2014, Nestlé Purina served 21 subpoenas on Blue Buffalo's ingredient suppliers and

co-manufacturers seeking a wide range of documents, including obviously irrelevant documents

such as those concerning ingredients that are not even at issue in this litigation.  Storm Decl. ¶ 4.

7686016v.1

In February 2015, Nestlé Purina served two additional subpoenas on agencies that assist Blue Buffalo with the placement of its advertisements and implementation of its website.  Storm Decl. ¶ 5.  To date, Nestlé Purina has issued more than two dozen third-party subpoenas in this case. *Id*.

## ARGUMENT

Invus is based in New York City, but voluntarily submits this dispute to this Court for resolution.  Nestlé Purina has also confirmed that it has no objection to this Court resolving this dispute.  *See* Storm Decl. Ex. 2.

The legal standards governing this motion are straightforward.  A court "must quash or modify a subpoena that[] … subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  Where, as here, a subpoena is directed to a nonparty, courts are "'particularly mindful' of Rule 45's undue burden and expense cautions."  *ABC, Inc. v. Aereo, Inc.*, No. 13-MC-0059, 2013 U.S. Dist. LEXIS 133636, at *22 (N.D. Iowa Sept. 17, 2013) (citation omitted).  "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs[.]"  *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999); *see also ABC, Inc.*, 2013 U.S. Dist. LEXIS 133636, at *20 ("In considering motions to quash, courts routinely give special consideration to nonparties.").  In particular, a nonparty subpoena should be quashed where "there is no indication the discoverable information to which [the requesting party] is entitled cannot be produced by [a party]."  *EnviroPak Corp. v. Zenfinity Capital, LLC*, No. 4:14CV00754 ERW, 2014 U.S. Dist. LEXIS 132499, at *8-11 (E.D. Mo. Sept. 22, 2014) (compiling cases and quashing subpoena where "Defendant [could] seemingly obtain the same or similar information

7686016v.1

from Plaintiff . . .").[1]

## I.    The Subpoena Seeks Documents that Invus Either Does Not Have or Are Equally Available from Blue Buffalo

The subpoena to Invus seeks documents that generally fall into three broad categories: (1) Blue Buffalo's ownership, (2) its ingredients and ingredient procurement, and (3) its advertising.  Invus has no non-privileged documents responsive to these requests that are not available from Blue Buffalo itself.

### A.    Documents Concerning Blue Buffalo's Ownership (Document Request 1)

Document Request 1 seeks "Documents sufficient to show the ownership stake or interest You have in Blue Buffalo and any changes in your ownership stake or interest."  This information is equally available from Blue Buffalo.  Indeed, the Court has already issued a ruling regarding the appropriate scope of production regarding ownership information, and Blue Buffalo has already produced that information.  *See* 10/22/2014 Tr. 69:13-15.  To the extent Nestlé Purina has any concerns regarding those disclosures, it should address its concerns to Blue Buffalo or the Court, not to Invus.

### B.    Documents Concerning Blue Buffalo's Ingredients and Ingredient Procurement (Document Requests 2-4, 8-9, and 14)

Document requests 2-4, 8-9 and 14 seek a wide range of documents related to Blue

---

[1] *See also Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena."); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (quashing a nonparty subpoena where "plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from [a] nonparty."); *see also Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) ("[T]he district court could properly require [the defendant] to seek discovery from its party opponent before burdening the nonparty … with this ancillary proceeding."); *Cantrell v. US Bioservices Corp.*, No. 09-mc-0158-CV-W-GAF, 2009 U.S. Dist. LEXIS 37344, at *4 (W.D. Mo. Apr. 21, 2009) (quashing the subpoena served on a nonparty because the documents requested could be first sought from the party defendants).

5

Buffalo's ingredients and ingredient procurement.  Specifically, these requests seek documents concerning:  (1) "the inclusion in any Blue Buffalo product of chicken by-product meal, poultry by-product, artificial preservatives, soy, corn or any other ingredients not reflected on the label of that Blue Buffalo product" or "any investigation or inquiry" or communication between Blue Buffalo and any government entities concerning such ingredients (Requests 2, 4 and 8); (2) "any agreement regarding the content of any product sold to Blue Buffalo, or ingredient specifications provided by Blue Buffalo" (Request 3); (3) "Wilbur Ellis or Diversified Ingredients" (Request 9); and (4) "recalls involving the Blue Buffalo Products or the ingredient content thereof since January 1, 2006" (Request 14).

As detailed in Mr. Bilimer's accompanying declaration, these requests all appear premised on a fundamental misunderstanding of Invus's role in Blue Buffalo.  Neither the Board nor Invus select Blue Buffalo's ingredients, manage its ingredient procurement process or manage any recalls.  These operational matters are the responsibility of Blue Buffalo management.  Accordingly, as Mr. Bilimer attests, Invus has no non-privileged documents responsive to any of these requests that are not available from Blue Buffalo.

Indeed, Invus likely has no documents at all that are responsive to most of these demands.  For example, Invus had no knowledge regarding any actual or potential inclusion of "chicken by-product meal, poultry by-product, artificial preservatives, soy, corn or any other ingredients not reflected on the label of [any] Blue Buffalo product" prior to this lawsuit.  The only knowledge it has is based on allegations made or discovery obtained from third parties in this action.  Invus should not be required to dig through its documents in search of stray responsive materials that have already been requested from, and produced by, Blue Buffalo.  *See, e.g.,* Storm Decl. Exs. 3, 5 (Nestlé Purina Document Requests to Blue Buffalo Nos. 12, 16, 20-

6

24, 50, 108, 112, 113, 117, 121).

Nestlé Purina's demands to Invus should also be quashed for an additional reason: they represent an apparent attempt to evade the Court's prior rulings. At the October 22, 2014 hearing on Nestlé Purina's motion to compel the production of documents from Blue Buffalo, Nestlé Purina argued extensively that it was entitled to discovery related to a host of ingredients that were not the subject of the allegations in its pleadings. 10/22/2014 Tr. 74-89. But the Court rejected these arguments and ruled that discovery concerning Blue Buffalo's ingredients should be limited to the allegations in Nestlé Purina's amended complaint. *See* 10/22/2014 Tr. 89:23-90:21 ("we're going to limit the scope of that 'ask' to the pleadings in the—as pled."). Nestlé Purina's present requests to Invus for documents concerning "artificial preservatives, soy . . . or any other ingredients not reflected on the label of that Blue Buffalo product" or "any product sold to Blue Buffalo, or ingredient specifications provided by Blue Buffalo" shirk those limitations and are therefore improper.[2]

**C.      Documents Concerning Blue Buffalo's Advertising (Document Requests 5 and 6)**

Requests 5 and 6 seek all documents and communications related "to any Blue Buffalo Advertisement including, but not limited to, Your review, approval, disapproval, or any other comments pertaining to any Blue Buffalo Advertisement" (Request 5) and "to the effectiveness of Blue Buffalo's Advertisements and any gains in market share over Competitors" (Request 6).

As Mr. Bilimer has confirmed, however, Invus does not have a role in the ordinary course

---

[2] Indeed, Nestlé Purina's request for "all documents" concerning "any agreement regarding the content of **any product** sold to Blue Buffalo" (Request 3) goes far beyond even the broad scope of Nestlé Purina's original requests to Blue Buffalo. This request would sweep in agreements concerning, *e.g.*, the content of Blue Buffalo's packaging materials or office supplies—subjects that obviously have no bearing whatsoever on the issues in this litigation.

7686016v.1

of business in reviewing or approving Blue Buffalo's advertising.  While the Board is kept aware

of Blue Buffalo's general advertising strategy, Blue Buffalo's advertising is generally

independently developed and vetted by Blue Buffalo's management.  Indeed, Blue Buffalo's

Board does not typically even see new Blue Buffalo advertisements until they are disseminated.

Nor has Invus commissioned or conducted its own research or third-party analysis of Blue

Buffalo's advertisements or market share.  As such, Invus has no non-privileged documents

responsive to these requests that are not available from Blue Buffalo.

Pointing to a single document produced by Blue Buffalo, Nestlé Purina speculates that

Invus "appears to be involved in Blue Buffalo's marketing and advertising activities."  *See* Storm

Decl. Ex. 2.  The document in question is an email from Chris Bishop, Blue Buffalo's Senior

Vice President of Advertising, to 11 Blue Buffalo employees and a single employee of Invus

(Mr. Bilimer).  Storm Decl. Ex. 8. The email simply attaches and discusses highlights from Blue

Buffalo's "Brand Health Dog and Cat Studies."  At most, this suggests that a Blue Buffalo

employee kept Mr. Bilimer informed by copying him on an email regarding a marketing study.

Nothing in the email suggests that Invus was involved in creating, approving or implementing

Blue Buffalo's advertising.  In fact, it was not.  In any event, Blue Buffalo's production of this

email proves that Nestlé Purina can readily obtain the information it seeks directly from Blue

Buffalo, without burdening Invus.

## II.     The Subpoena Seeks Documents that are Privileged

Document Requests 7 and 13 seek documents concerning this litigation or other actual or

potential litigation with Nestlé Purina.  These requests include various subcategories such as

communications with Blue Buffalo, investors, and banks.  Document Request 10 seeks

documents relating to the October 14, 2014 letter from Blue Buffalo Chairman Bill Bishop to

7686016v.1

consumers entitled "Regarding the Issue Pertaining to Wilbur Ellis' Texas Plant."  These requests should be quashed because, as detailed in Mr. Bilimer's declaration, Invus does not have any non-privileged documents that are not equally available from Blue Buffalo.

Nestlé Purina points to an email from Mr. Bilimer to argue that Invus "took a keen interest in Purina's lawsuit and Blue Buffalo's response thereto."  Storm Decl. Ex. 2.  However, this email simply forwarded Blue Buffalo's press release and Facebook posts by Nestlé Purina and Blue Buffalo to investment bankers, copying five Blue Buffalo employees.  Storm Decl. Ex. 9.  This email does not remotely suggest that Invus has in its possession any unique, non-privileged documents that are relevant to the issues in this case.  To the contrary, it confirms Mr. Bilimer's statement that any relevant, non-privileged documents responsive to the requests are also in the possession of Blue Buffalo.

Request 13 seeks documents concerning other litigation with Nestlé Purina.  Any such documents would not be relevant to the issues in *this* litigation.  In any event, Invus has no non-privileged documents responsive to this request.  Bilimer Decl. ¶ 23.

## III.     To the Extent that Invus Has Sole Possession of any Responsive Documents, Those Documents Are Irrelevant

Document Request 11 seeks "All documents and communications related to competitive analysis," "including but not limited to" a number of subcategories.  Request 12 seeks "All documents and communications sufficient to show the financial performance of Blue Buffalo since January 1, 2010, including the calendar year of 2014."

Invus has some documents responsive to Request 11 that are not in Blue Buffalo's files. This is because Nestlé Purina's request is not limited to "competitive analyses" relating to Nestlé Purina, or even pet food generally.  Rather, Nestlé Purina seeks *all* "competitive analyses" in Invus's files.  Invus invests in a variety of companies in a variety of industries.  While Nestlé

9

Purina doubtless wishes to learn everything it can about Invus, this litigation does not provide it with a basis to go trawling through Invus's confidential files relating to its investments.

To the extent that Invus has any internal competitive analyses relating to the pet food industry, these analyses have no bearing on Blue Buffalo advertising.  Nestlé Purina does not explain, nor can it, how analyses that were not shared with Blue Buffalo have had any bearing on the operational decisions of Blue Buffalo's management.  And to the extent that analyses were shared with Blue Buffalo management they are available from Blue Buffalo.

Request 12 raises similar issues.  As a threshold matter, the request is unclear, in that it simultaneously asks for "all documents" and documents "sufficient to show."  Beyond that, the request suffers from the same flaws as the requests discussed above:  it is redundant in that it seeks documents that can readily be obtained directly from Blue Buffalo.  *See* Storm Decl. Exs. 3, 4 (Document requests 5, 9, 26, 77-82, 84-87).

## CONCLUSION

For the reasons set forth above, Invus's motion to quash should be granted.


Dated: February 23, 2015
       New York, New York


                            Respectfully submitted,


                            By:  /s/ Steven A. Zalesin
                            Steven A. Zalesin, Lead Counsel (pro hac vice)
                            Adeel A. Mangi (pro hac vice)
                            Vivian Storm (pro hac vice)
                            PATTERSON BELKNAP WEBB & TYLER LLP
                            1133 Avenue of the Americas
                            New York, NY 10036-6710
                            Telephone: 212-336-2000
                            Facsimile: 212-336-2222

7686016v.1

Gerard T. Carmody, # 24769
David H. Luce, # 36050
Sarah J. Bettag, # 60849
CARMODY MACDONALD P.C.
120 S. Central Avenue
Suite 1800
St. Louis, MO 63105
Telephone:  314-854-8600
Fax:  314-854-8660

Attorneys for Nonparty The Invus Group, LLC

11

7686016v.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of February, 2015, the forgoing was

served on all counsel of record by operation of this Court's Electronic Filing System.


By: /s/ Vivian Storm

7686016v.1