UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NESTLÉ PURINA PETCARE COMPANY,<br>Plaintiff/ Counterclaim Defendant,<br><br>v.<br><br>BLUE BUFFALO COMPANY LTD.<br>Defendant/ Counterclaim Plaintiff.<br><br>v.<br><br>BLUE STATE DIGITAL INC.,<br>PRCG/HAGGERTY LLC and JOHN DOES 1-8<br>Counterclaim Defendants | Case No. 4:14-CV-00859 (RWS) |

## DECLARATION OF EVREN BILIMER IN SUPPORT OF NONPARTY THE INVUS GROUP, LLC'S MOTION TO QUASH

I, Evren Bilimer, declare and state as follows:

1. I am a Managing Director with The Invus Group, LLC ("Invus"). I have been employed at Invus since 2002.

2. Invus is a private equity investment firm with headquarters in New York City that makes strategic investments in a variety of industries. Blue Buffalo Company Ltd. ("Blue Buffalo") is one of the companies in which Invus has invested. Invus is presently a majority shareholder in Blue Buffalo. As the majority shareholder, Invus has elected four of its employees to serve on Blue Buffalo's nine-member Board of Directors (the "Board").

3. I am one of the Invus employees with responsibility for the Invus investment in Blue Buffalo. I am also a member of Blue Buffalo's Board.

1

7685992v.1

### *The Subpoena*

4. Invus has received a subpoena from Nestlé Purina PetCare Company ("Nestlé Purina") in connection with the false advertising action pending in the United States District Court for the Eastern District of Missouri. (*See* Ex. A hereto). I have reviewed that Subpoena, which requests 14 independent categories of documents. As set forth in greater detail below, these demands generally seek documents that can be obtained from Blue Buffalo, that Invus does not have, or that are irrelevant or privileged in nature.

5. The subpoena appears premised on a misapprehension regarding Invus's role. Invus is a shareholder with representation on Blue Buffalo's Board. It therefore receives reports on Blue Buffalo's business plans and performance, attends quarterly Board meetings and on occasion provides strategic opinions or advice to management. Based on its financial expertise, Invus also works with the Chief Financial Officer and other senior managers of Blue Buffalo to assist in capital market activities and mergers & acquisitions the company considers from time to time. But neither the Board nor Invus is involved in the day-to-day management of Blue Buffalo. For example, Invus did not craft or disseminate the Blue Buffalo advertising at issue. Nor does it run Blue Buffalo's procurement, manufacturing, quality control or any other operations. These matters are the responsibility of Blue Buffalo's management, none of whom are employees of Invus.

### *Invus's Ownership Stake in Blue Buffalo*

### *(Request 1)*

6. I understand Blue Buffalo has already produced to Nestlé Purina documents showing Invus's ownership stake or interest in Blue Buffalo, which is the subject of Request 1. To the extent Nestlé Purina is entitled to any supplemental information regarding

Invus's share, it should seek such information from Blue Buffalo, which is certainly aware of what entities own shares in it.

### *Requests Concerning Blue Buffalo's Ingredients and Ingredient Procurement*
### *(Requests 2-4, 8-9 and 14)*

7. Neither the Board nor Invus select Blue Buffalo's ingredients or manage its ingredient procurement process. This is the responsibility of Blue Buffalo management.

8. To the best of my knowledge, Invus does not have any non-privileged "documents and communications reflecting or relating to the inclusion in any Blue Buffalo product of chicken by-product meal, poultry by-product, artificial preservatives, soy, corn or any other ingredients not reflected on the label of that Blue Buffalo product" that are not available from Blue Buffalo. (*See* Request 2 of the Subpoena). In fact, Invus had no knowledge regarding any actual or potential inclusion of such ingredients in Blue Buffalo products prior to this lawsuit. Its only knowledge thereafter is based on the allegations made in connection with this lawsuit or stemming from discovery from third parties in the lawsuit. To the extent any responsive non-privileged documents exist, Nestlé Purina should seek them from Blue Buffalo.

9. To the best of my knowledge, Invus does not have any non-privileged "documents and communications reflecting or relating to any agreement regarding the content of any product sold to Blue Buffalo, or ingredient specifications provided by Blue Buffalo" that are not available from Blue Buffalo. (*See* Request 3 of the Subpoena). As stated above, such agreements and specifications are the responsibility of Blue Buffalo management and Nestlé Purina should seek them from Blue Buffalo

10. To the best of my knowledge, Invus does not have any non-privileged "documents and communications reflecting or relating to any investigation or inquiry relating to

the inclusion in any Blue Buffalo product of chicken by-product meal, poultry by-product, artificial preservatives, soy, corn or any other ingredients not reflected on the label of that Blue Buffalo product" that are not available from Blue Buffalo. (*See* Request 4 of the Subpoena). To the extent any such investigations took place and are not subject to legal privilege, they would have been conducted by Blue Buffalo management. To the extent any responsive non-privileged documents exist, Nestlé Purina should seek them from Blue Buffalo.

    11. To the best of my knowledge, Invus does not have any non-privileged "documents and communications pertaining to any communication between Buffalo Blue [sic] and any governmental or regulatory agency, administration or entity (including, but not limited to, the United States Food and Drug Administration) related to: (a) The inclusion of chicken by-product meal, poultry by-product, artificial preservatives, soy, corn or any other ingredients not reflected on any Blue Buffalo Product labels in ingredients shipped to any of Blue Buffalo's Co-Packers by any Blue Buffalo's Distributor; (b) and the resulting governmental or regulatory agency, administration or entity (including, but not limited, the United States Food and Drug Administration) action or response, if any[,]" that are not available from Blue Buffalo. (*See* Request 8 of the Subpoena). To the extent any responsive non-privileged documents exist, Nestlé Purina should seek them from Blue Buffalo.

    12. To the best of my knowledge, Invus does not have "documents and communications related to or referring to Wilbur Ellis or Diversified Ingredients" sought in Request 9 of the Subpoena from the period prior to May 6, 2014, when Nestlé Purina filed its first complaint in this action, that are not available from Blue Buffalo. (*See* Request 9 of the Subpoena). And any such documents in Invus's possession from the period after May 6, 2014 would have involved discussions between the Board and legal counsel to Blue Buffalo and Invus

4

and would reflect attorney-client communications. To the extent any responsive non-privileged documents exist, Nestlé Purina should seek them from Blue Buffalo.

13. To the best of my knowledge, Invus does not have "documents and communications related to any recalls involving the Blue Buffalo Products or the ingredient content thereof since January 1, 2006, including all documents and communications related to Blue Buffalo's response or reaction to such recalls" that are not available from Blue Buffalo. (*See* Request 14 of the Subpoena). To the extent any responsive non-privileged documents exist, Nestlé Purina should seek them from Blue Buffalo.

### *Requests Concerning Blue Buffalo's Advertising (Requests 5 and 6)*

14. In the ordinary course of business, Invus has no role in reviewing or approving Blue Buffalo's advertising. While Blue Buffalo's Board is kept aware of Blue Buffalo's general advertising strategy, Blue Buffalo's advertising is generally independently developed and vetted by Blue Buffalo's management. Indeed, Blue Buffalo's Board does not typically even see new Blue Buffalo advertisements until they are disseminated.

15. Invus has not commissioned or conducted its own research or third-party analysis on Blue Buffalo's advertisements or market share.

16. To the best of my knowledge, Invus does not have non-privileged "documents and communications related to any Blue Buffalo Advertisement including, but not limited to, Your review, approval, disapproval, or any other comments pertaining to any Blue Buffalo Advertisement," that are not available from Blue Buffalo. (*See* Request 5 of the Subpoena). To the extent any responsive non-privileged documents exist, Nestlé Purina should seek them from Blue Buffalo.

17. To the best of my knowledge, Invus does not have "documents and communications related to the effectiveness of Blue Buffalo's Advertisements and any gains in market share over Competitors" that are not available from Blue Buffalo. (*See* Request 6 of the Subpoena). To the extent any responsive non-privileged documents exist, Nestlé Purina should seek them from Blue Buffalo.

*Requests for Documents Concerning Legal Matters*

*(Requests 7, 10 and 13)*

18. To the best of my knowledge, Invus does not have non-privileged "(a) communications with Blue Buffalo or any third party pertaining to any public or media responses to the Litigation or to any allegation contained in the corresponding complaints; … [and] (d) emails exchanged between Blue Buffalo and [Invus], including, but not limited to, emails to or from Roderick Hood, Evren Bilimer, Philippe Amouyal, Aflalo Guimaraes, and Raymond Debbane" that are not available from Blue Buffalo. (*See* Requests 7(a) and (d) of the Subpoena). Such communications either included Blue Buffalo executives as recipients or were forwarded to them. Further, many of these documents would involve counsel for Blue Buffalo and Invus and reflect attorney-client communications between counsel and Blue Buffalo's Board. To the extent any responsive non-privileged documents exist, Nestlé Purina should seek them from Blue Buffalo.

19. To the best of my knowledge, Invus does not have any responsive non-privileged "documents and communications referring or relating to the Litigation or to any allegation contained in the corresponding complaints[,] including, but not limited to: (b) communications with current or former investors" or "(e) Your criticism, disapproval, or any other comments on the quality or effectiveness of Blue Buffalo's management, quality control,

and/or legal compliance as related in any way to the Litigation or any of the issues raised by the Litigation" that are not available from Blue Buffalo. (*See* Requests 7(b) and (e) of the Subpoena). To the extent any responsive non-privileged documents exist, Nestlé Purina should seek them from Blue Buffalo.

20. To the best of my knowledge, Invus does not have any responsive non-privileged "communications with any current or former officers, directors, employees, or agents and all persons purporting to act on behalf of any banking or investment banking entity" concerning the litigation that are not available from Blue Buffalo. (*See* Requests 7(c) of the Subpoena). To the extent any responsive non-privileged documents exist, Nestlé Purina should seek them from Blue Buffalo.

21. To the best of my knowledge any documents responsive to Request 7(f), which seeks documents concerning "Blue Buffalo's exposure in the Litigation, including, but not limited to, any evaluation of loss contingencies or establishment of financial reserves" involved legal counsel to Blue Buffalo and Invus and reflect attorney-client communications between Blue Buffalo's Board and counsel.

22. To the best of my knowledge, any documents in Invus's possession responsive to Request 10 for "documents and communications related to or referring to the October 14, 2014 letter from Bill Bishop entitled 'Regarding the Issue Pertaining to Wilbur Ellis' Texas Plant" would involve counsel for Blue Buffalo and Invus and reflect attorney-client communications between Blue Buffalo's Board and counsel.

23. To the best of my knowledge, any documents in Invus's possession responsive to Request 13 for "documents and communications referring or relating to any claims, lawsuits, counterclaims, or potential claims against Nestlé Purina PetCare Company" would

involve counsel to Blue Buffalo and Invus and reflect attorney-client communications between Blue Buffalo's Board and counsel.

## *Competitive Analysis and Financial Performance*
## *(Requests 11 and 12)*

24. Request 11 seeks "All documents and communications related to competitive analysis, including, but not limited to, studies, reports, summaries, surveys, polls, investigations, or any other competitive intelligence pertaining to Nestlé Purina PetCare Company or any of its products."

25. As a private equity firm, Invus conducts competitive analysis concerning many companies and industries in order to evaluate its current and prospective investments. Only a small portion of this analysis concerns the pet food industry. Invus considers this analysis to be highly sensitive, trade secret information.

26. Any competitive analysis Invus conducted in order to give advice or directions to Blue Buffalo would have been communicated to Blue Buffalo and would therefore be available from Blue Buffalo. To the extent Invus has any internal communications on this topic that were not communicated to Blue Buffalo, by definition they could play no role in Blue Buffalo's decision making.

27. Request 12 seeks "All documents and communications sufficient to show the financial performance of Blue Buffalo since January 1, 2010."

28. Blue Buffalo is certainly in possession of documents relating to its financial performance and if Nestlé Purina is entitled to such documents it should obtain them from Blue Buffalo. As a private equity firm, Invus engages in extensive financial analyses of its own. Again, to the extent Invus has any internal analyses or communications on this topic that

were not communicated to Blue Buffalo, by definition they could play no role in Blue Buffalo's decision making.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 23, 2015.

*Evren Bilimer*
Evren Bilimer

7685992v.1