UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NESTLÉ PURINA PETCARE COMPANY,<br><br>　　　　Plaintiff/ Counterclaim Defendant,<br><br>v.<br><br>BLUE BUFFALO COMPANY LTD.,<br><br>　　　　Defendant/ Counterclaim Plaintiff,<br><br>v.<br><br>BLUE STATE DIGITAL INC.,<br>PRCG/HAGGERTY LLC and JOHN DOES 1-8,<br><br>　　　　Counterclaim Defendants. | Case No. 4:14-cv-859-RWS |

**OPPOSITION OF BLUE BUFFALO COMPANY LTD. TO NESTLÉ PURINA
PETCARE COMPANY'S MOTION TO COMPEL**

Blue Buffalo Company Ltd. ("Blue Buffalo") respectfully submits this memorandum in opposition to Nestlé Purina PetCare Company's ("Nestlé Purina") motion to compel.

## PRELIMINARY STATEMENT

Nestlé Purina filed this motion prematurely. It did so even while the parties were still exchanging correspondence and considering potential resolutions. That process has continued and numerous issues have since been resolved. Accordingly, much of Nestlé Purina's motion to compel is now moot.

What remains are attempts by Nestlé Purina to seek documents far outside the proper scope of discovery. Despite the Court's admonitions to focus on core issues, Nestlé Purina has issued 155 separate document requests and 30 third party subpoenas. Notably, this epic fishing expedition has turned up nothing other than what was known six months ago: that a supplier, Wilbur-Ellis, may have engaged in ingredient fraud on the entire industry. Nestlé Purina has turned up zero evidence supporting its core claim of deliberate dishonesty by Blue Buffalo. Indeed, the deposition of Blue Buffalo's founder and chairman proved just the opposite: that Blue Buffalo has always been transparent and honest with consumers.

Nestlé Purina has responded to this record with spiraling attempts to burrow deeper and deeper into Blue Buffalo's files in the hopes of finding some conduct to challenge; but it has found nothing. It must now be restricted to discovery relevant to its claims in this case.

## STATUS OF BLUE BUFFALO'S PRODUCTIONS

Since this litigation began, Blue Buffalo has produced 178,229 pages of documents in response to Nestlé Purina's discovery demands. (Nestlé Purina has produced 169,237 pages.) Nestlé Purina has also had an opportunity to depose Blue Buffalo's founder and chairman, and additional depositions of Blue Buffalo personnel are scheduled.

7830724

On March 17, 2015, the parties conducted a telephonic conference, during which they discussed disputed issues in connection with their document requests. Following that conference, on March 18, 2015, the parties exchanged additional correspondence concerning the outstanding requests: Blue Buffalo agreed to produce additional documents responsive to Nestlé Purina's requests, and Nestlé Purina indicated that it would narrow several of its requests. (*See* Exs. 3, 4.) Nestlé Purina also revised several of its demands and made entirely new proposals. (Ex. 4.)

In the days that followed, Blue Buffalo responded to Nestlé Purina's revised demands. On Thursday, March 19, 2015, Blue Buffalo responded to substantial portions of Nestlé Purina's March 18 correspondence, but also explained that it was "continuing to look into several of [Nestlé Purina's] requests and [would] respond promptly." (Ex. 5.) Nestlé Purina, however, filed this motion on March 20, without waiting for those additional responses. On Monday, March 23, Blue Buffalo wrote Nestlé Purina and agreed to produce many additional categories of documents in response to the revised proposals received from Nestlé Purina in its March 18 letter. (Ex. 6.) On March 24, Blue Buffalo wrote Nestlé Purina seeking a response to a proposal in Blue Buffalo's March 17 correspondence to make certain documents available at Nestlé Purina's expense, to which Nestlé Purina had not responded. (Ex. 7.) Nestlé Purina responded to Blue Buffalo's letters on March 25. (Ex. 8.) Blue Buffalo addressed Nestlé Purina's March 25 letter and other outstanding discovery issues in March 27 correspondence. (Ex. 9.)

As detailed below, Blue Buffalo has already agreed to produce many of the materials that are the subject of this motion (and also agreed to produce other documents in connection with the meet and confer process), and those productions are forthcoming.

7830724

**ARGUMENT**

Federal Rule of Civil Procedure 26 permits discovery concerning matters that are "relevant to the claim or defense of any party." Fed R. Civ. P. 26(b)(1). However, "this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Relevance must be shown "before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* Even relevant discovery must be limited if it is "unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2).

**I.    Blue Buffalo Has Already Agreed to Produce Relevant Documents Concerning the Substantiation for and Accuracy of its Advertising Claims (Requests No. 107 & 128)**

Nestlé Purina claims that Request No. 107 seeks documents substantiating the advertising claims at issue in Nestlé Purina's complaint. To the extent that is what Nestlé Purina seeks, its motion to compel is moot: Blue Buffalo has already agreed to produce documents concerning the substantiation for and accuracy of its advertising claims cited in Nestlé Purina's complaint, including claims concerning whether Blue Buffalo or its competitors' dry food products contain poultry by-products; the use or exclusion of rice or rice hulls in Blue Buffalo's grain-free dry food products; the nutrient profile of LifeSource Bits; claims concerning the cold-formed process for LifeSource Bits; claims that big-name pet food companies are concealing or not forthcoming about the ingredients in their products; and advertising claims that Jolly Joints pet treats contain glucosamine and promote healthy joints and hips. (*See* Ex. 2 at 8; Ex. 6 at 3.)

To the extent Request No. 107 seeks documents *beyond* substantiation for those claims, however, it is overbroad and calls for the production of irrelevant material. For example,

3

Request No. 107 demands the production of documents concerning whether the Blue Buffalo Products contain soy. Nestlé Purina's Second Amended Complaint ("SAC"), however, does not allege that Blue Buffalo's products *do* contain soy or pursue any claims relating to the inclusion of soy.[1] There is no basis to require Blue Buffalo to search for, collect, review, and produce documents concerning whether its dry food products contain soy when that claim is not at issue.

In the same vein, Request No. 107 purports to call for documents substantiating "claims that . . . the Blue Buffalo Products are human grade[.]" But Blue Buffalo does not claim in advertising that its products are human grade. It cannot be required to produce substantiation for a claim that it does not make. Moreover, Nestlé Purina's SAC challenges the advertisements it characterizes as claiming human-grade ingredients only on the basis of the alleged inclusion of poultry by-product meal.[2] Blue Buffalo has already agreed to produce documents substantiating its claims that it does not utilize poultry by-product meal.

Nestlé Purina also seeks documents concerning the "substantiation" of Blue Buffalo's claims that its products use "the finest natural ingredients" and provide "superior nutrition." Blue Buffalo's advertisements that its products provide superior nutrition are "statements of general superiority" that "are mere 'puffery' and are not actionable under the Lanham Act." *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1124 (8th Cir. 1999). *See also Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)

---

[1] On March 17, 2015, Blue Buffalo wrote to Nestlé Purina explaining that "the presence of soy in any of Blue Buffalo's products is not relevant to any claims raised in Nestlé Purina's complaint." (Ex. 2 at 12.) Blue Buffalo further asked Nestlé Purina, to the extent it disagreed, to "identify the portions of [its] complaint making allegations relating to the inclusion of soy." (*Id.*) Nestlé Purina has not responded to that request.

[2] *See*, *e.g.*, SAC at ¶ 51 ("Blue Buffalo' statements that its products are human-grade and/or fit for human consumption are materially false because Blue Buffalo's products contain ingredients such as chicken/poultry by-product meals that are not human grade.").

4

7830724

(advertising that "states in general terms that one product is superior is not actionable."); *Smith-Victor Corp. v. Sylvania Electric Products, Inc.*, 242 F. Supp. 302, 308 (N.D. Ill. 1965) (same). Moreover, the Court has already denied Nestlé Purina's attempts to "open up the whole world" in discovery by citing broad and derivative allegations. (Ex. 14 at 90:7.) Nestlé Purina cannot use a non-actionable and generalized allegation concerning "superior nutrition" to seek discovery of every document Blue Buffalo has ever created concerning every ingredient in its products.

As to Nestlé Purina's Request No. 128, that request seeks documents and communications related to the quality, nutritional value, formulations and/or ingredient content of any competitor products referenced in Blue Buffalo's advertising. The bulk of Nestlé Purina's motion to compel with respect to this request is moot as well: Blue Buffalo has already agreed to produce documents that concern the substantiation of its claims at issue, including substantiation of the claims that Blue Buffalo makes about other products in the True Blue Test. The remaining documents sought by this request—those related to the quality, nutritional value, formulations and/or ingredient contents of *any competitor products referenced in* Blue Buffalo's advertising—is grossly overbroad. The mere fact that a product sold by a third party was referenced in one of Blue Buffalo's advertisements does not open the door to discovery on every scrap of paper that Blue Buffalo has ever generated concerning that product.

## II. Blue Buffalo Has Already Produced Relevant Pet Resource Center Documents (Request No. 114)

Request No. 114 seeks documents concerning Blue Buffalo's Pet Parent Resource Center, a telephone number to which Blue Buffalo customers can direct inquiries. This portion of Nestlé Purina's motion to compel is moot.[3]

---

[3] Blue Buffalo had previously agreed to produce responsive documents containing, reflecting, summarizing, or analyzing consumer reactions, interpretations, responses, questions, or comments to any

5

7830724

### III. Blue Buffalo Has Agreed to Produce Relevant Documents Related to Regulatory Matters (Requests No. 111 & 120)

Request No. 111 seeks certain documents pertaining to Joe Conti, Blue Buffalo's Director of Regulatory Affairs.  This portion of Nestlé Purina's motion to compel is moot, as Blue Buffalo has already agreed to produce these documents.  (Exs. 6, 8.)

Request No. 120 seeks documents and communications between Blue Buffalo and any governmental or regulatory agency, administration, or entity related to a wide swath of overbroad categories.  Blue Buffalo has already agreed to produce many documents responsive to this request, however, because it has *already agreed* to produce documents related to the substantiation for *or accuracy of* the advertising claims in Nestlé Purina's amended complaint. (Ex. 2 at 12.)  Nestlé Purina's argument that Blue Buffalo's communications with governmental or regulatory agencies are relevant to "the veracity of Blue Buffalo's advertising claims" is therefore beside the point:  Blue Buffalo has already agreed to produce the subset of its communications concerning those issues.  There is no basis for discovery concerning Blue Buffalo's communications with regulatory agencies on other issues.

In the interests of resolving its dispute with Nestlé Purina, Blue Buffalo also offered to produce communications between Blue Buffalo and any governmental or regulatory agency, administration, or entity related to Wilbur-Ellis or Nestlé Purina *if* Nestlé Purina also agreed to produce communications between Nestlé Purina and any governmental or regulatory agency,

---

Blue Buffalo advertising referenced in Nestlé Purina's complaint and related to the use or exclusion of poultry by-product meal or corn in Blue Buffalo's dry food products; the use or exclusion of rice or rice hulls in Blue Buffalo's grain-free dry food products; the nutrient profile of LifeSource Bits; and claims that Jolly Joints treats contain glucosamine and promote healthy joints and hips. (Ex. 2 at 11.)  By letter dated March 25, 2015, Nestlé Purina acknowledged that the only additional documents it seeks are those that relate to Blue Buffalo's alleged advertising statements that its products are human grade or fit for human consumption, and that Blue Buffalo's products are nutritionally superior.  (Ex. 8 at 4-5.)  While Blue Buffalo disputes Nestlé Purina's characterizations, in the interests of resolving this dispute, Blue Buffalo agreed to search for and produce these documents responsive to Request No. 114 as well.  (Ex. 9 at 3.)

6

administration, or entity related to Wilbur-Ellis or Blue Buffalo. (Ex. 6 at 4.) Nestlé Purina, however, has inexplicably refused. Instead, it asserted that "Blue Buffalo's statements to the FDA" are "directly relevant to [Nestlé Purina's] claims," but that "we don't see the relevance" of Nestlé Purina's own regulatory communications "to any claims in this case." (Ex. 10.) Nestlé Purina cannot have it both ways. If communications with the government concerning Wilbur-Ellis or the parties to this litigation are relevant, then they are equally relevant regardless of which party wrote the letter.

Requests No. 88-90 and 101

Requests 88-90 and 101 seek the full content of all Blue Buffalo television, print and online advertisements promoting or advertising the relevant Blue Buffalo products; information about the advertisements' target consumers; and information about when, where, and how often the advertisements ran.

Most of Nestlé Purina's motion to compel with respect to these requests is moot. Blue Buffalo has already agreed to produce copies of the final advertisements relevant to this litigation. It has agreed to produce relevant and responsive consumer research studies and consumer research surveys. It has agreed to produce market research concerning consumers' reactions to claims that Blue Buffalo's dry food products exclude poultry by-product meal or corn, that Blue Buffalo's grain-free dry food products exclude rice or rice hulls, and concerning the nutrient profile of LifeSource Bits.

The only category of these requests that remains in dispute concerns voluminous invoices showing when and where Blue Buffalo's advertisements aired or were printed. Blue Buffalo estimates that the documents showing when and where each of its advertisements printed or aired for the relevant time period constitute approximately 60-90 bankers boxes of material. (Ex. 9 at

7

7830724

2.) Blue Buffalo understands that it is reasonable to estimate that 60 bankers boxes would include approximately 180,000 pages of material and cost approximately $21,000 to scan. (*Id.*) These documents alone are likely more than the volume of the total productions made to date by either party. In addition, the documents showing the air and print dates of Blue Buffalo's advertisements are primarily stored off-site at a secure storage facility, and there would be additional costs associated with collecting the documents. (*Id.*) Given these burdens and the tangential relevance of these materials, Blue Buffalo agreed to make these documents available to Nestlé Purina for inspection, copying, or scanning at Nestlé Purina's expense. (Ex. 7.) Nestlé Purina inexplicably declined.[4] (Ex. 8 at 3.)

Nestlé Purina has provided no logical explanation for this refusal or for making this motion instead of just inspecting the documents. Nor can it. Nothing in the Federal Rules requires Blue Buffalo to absorb the costs of copying or scanning documents; once it makes them available for inspection, its responsibilities have been completed. Fed. R. Civ. P. 34(a) (a party may serve a request "to produce and permit the requesting party or its representative to inspect, copy, test, or sample…"); *Kirschenman v. Auto-Owners Ins.*, No. 09-cv-4190, 2012 U.S. Dist. LEXIS 64659, at *11 (D.S.D. Apr. 18, 2012) (shifting costs of shipping and copying to requesting party and explaining that "the propounding party is responsible for the expense of copying the documents after the responding party has made the discovery available."). Indeed, making these documents available for inspection is what Nestlé Purina itself asked Blue Buffalo to do. *See* Nestlé Purina's Second Set of Requests for Production (demanding that Blue Buffalo "produce for inspection and copying"). (Ex. 13.) In addition, even for costs that would normally

---

[4] Notably, while seeking these documents from Blue Buffalo, Nestlé Purina has refused to produce documents showing when and where its own advertisements ran. (Ex. 8 at 3.)

8

7830724

fall on the producing party, the court "can shift costs to the propounding party to avoid undue expense and burden." *Kirschenman*, 2012 U.S. Dist. LEXIS 64659, at *11; *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284-89 (S.D.N.Y. 2003) (shifting portion of costs to requesting party).

Blue Buffalo has already produced documents concerning the scope of its advertisements, including its monthly advertising expenditures. If Nestlé Purina believes it needs these additional voluminous documents, it should bear the costs of their production.

Requests No. 92 & 93

Requests No. 92 and 93 seek documents reflecting Blue Buffalo's monthly advertising expenditures by type of advertisement. This portion of Nestlé Purina's motion to compel is moot: Blue Buffalo has agreed to produce, to the extent located after a reasonable search, documents sufficient to show Blue Buffalo's monthly advertising expenditures broken down by type of advertisement (*e.g.,* television, print and online).

Requests No. 98 & 99

Requests No. 98 and 99 seek documents related to research conducted by or on behalf of Blue Buffalo to determine the target consumer or target market for Blue Buffalo's products, as well as any performance metrics gathered to determine the effectiveness of Blue Buffalo's advertisements.

The bulk of this request is also moot. Blue Buffalo has already agreed to produce consumer research studies, consumer research surveys, and market research concerning consumers' reactions to claims that Blue Buffalo's dry food products exclude poultry by-product meal or corn; that Blue Buffalo's grain-free dry food products exclude rice or rice hulls; and concerning the nutrient profile of LifeSource Bits. Blue Buffalo has also agreed to produce its

9

7830724

actual advertisements and actual advertising expenditures.  (Ex. 2 at 7.)  Additional discovery on these subjects—Nestlé Purina's grossly overbroad requests seek "all documents and communications" relating to vastly overbroad topics—is cumulative and duplicative of what Blue Buffalo has already produced.

The additional documents sought by these requests are irrelevant and overbroad, insofar as they concern market research and marketing performance metrics concerning advertisements other than those at issue in the amended complaint.  Blue Buffalo is prepared to produce, to the extent such documents are located after a reasonable search, market research concerning the target consumer or target market and marketing performance metrics that are related to the claims at issue in the amended complaint (*i.e.,* the use or exclusion of poultry by-product meal or corn in Blue Buffalo's dry food products; the use or exclusion of rice or rice hulls in Blue Buffalo's grain free dry food products; the nutrient profile of LifeSource Bits; claims that Jolly Joints pet treats contain glucosamine and promote healthy joints and hips; and advertising claims concerning the cold-formed process).  Any additional market research or marketing performance metrics are irrelevant to the claims at issue in this litigation.

Request No. 97

Request No. 97 seeks documents sufficient to reflect (i) the number of times each competing product listed in the True Blue Test was selected for comparison to Blue Buffalo product, and (ii) the number of times visitors comparing a Nestlé Purina product in the True Blue Test clicked the "Get My Coupon" button on the results page of the True Blue Test.  This portion of Nestlé Purina's motion to compel is moot:  Blue Buffalo has agreed to produce such documents to the extent they are located after a reasonable search.

10

### IV. Blue Buffalo Has Agreed to Produce Substantial Documents Concerning Sales (Requests No. 66-70)

Requests No. 66-70 seek documents concerning Blue Buffalo's sales, Blue Buffalo's pricing, and Blue Buffalo's profit and loss statements. Blue Buffalo has already agreed to produce the bulk of the documents called for by these requests.

Request No. 66

Request No. 66 calls for documents sufficient to show total dollar and unit sales for all Blue Buffalo products broken down by region, by sales channel and by retailer. Blue Buffalo has agreed to produce documents sufficient to show total dollar and unit sales for its dry food products and Jolly Joints pet treats, and will also produce that data broken down by customer. (Ex. 2 at 3; Ex. 9.) Accordingly, this request is also moot.[5]

Request No. 67

Request No. 67 seeks documents sufficient to show wholesale and retail pricing for each Blue Buffalo product as well as information regarding discounts or coupons. Blue Buffalo has already produced documents sufficient to show its wholesale pricing for the relevant products. (Ex. 2 at 3.)

The disputed portion of the request concerns Nestlé Purina's demands that Blue Buffalo produce "all documents" relating to "retail prices" "including but not limited to, any differences in wholesale prices across sales channels, regions or retailers, and any changes in retail prices over time, including the timing of and reasons for such changes; and information regarding any and all promotions, discounts or coupons, including the timing, amount and redemption rates." This calls for massive swaths of documents with no relevance to the claims at issue. Nestlé

---

[5] To the extent Nestlé Purina seeks sales data broken down by region or sales channel, Blue Buffalo does not maintain data in that format. Blue Buffalo has agreed to produce the data it does maintain.

11

7830724

Purina contends that it requires this information to calculate "the profits Blue Buffalo realized from the false advertising at issue." However, as explained below, Blue Buffalo has already agreed to produce documents relating to its profits. There is simply no relevance to the additional burdensome collection that Nestlé Purina requests.

<u>Requests No. 68-70</u>

Requests No. 68-70 seek documents showing profit and loss statements, profit margin, and variable cost information. This portion of Nestlé Purina's motion to compel is also moot: Blue Buffalo has agreed to produce profit and loss, profit margin, and variable cost information for its dry food products and Jolly Joints pet treats to the extent such metrics are calculated in the ordinary course of business and located after a reasonable search. (Ex. 9.)

**V.      Relevant Time Period of Production**

Nestlé Purina asks this Court to compel Blue Buffalo to produce certain documents dating back to January 1, 2007. Blue Buffalo has already agreed to produce documents dating back to May 6, 2009. (Ex. 2 at 1-2.) There is no basis for the Court to require discovery over the expanded time period now proposed by Nestlé Purina.

As a preliminary matter, May 6, 2009 is the production start date that Nestlé Purina itself requested after Blue Buffalo originally limited its production to a more recent time period. (*See* Ex. 11, 8/18/14 Ltr. from R. Assmus to S. Zalesin (seeking production of "documents dated on or after May 6, 2009 as Purina requested" and arguing that "[i]nformation dating back to 2009 is highly relevant").) Moreover, Nestlé Purina's own opening set of document requests—which provided the scope to govern Blue Buffalo's initial collections and productions—specified May 6, 2009 as the beginning of the relevant time period. (Ex. 12.) It is improper to require Blue Buffalo to collect additional documents for an expanded time period now.

Nestlé Purina has failed to provide an adequate explanation for why it requires discovery extending back to 2007. The statute of limitations for Nestlé Purina's claims is, at longest, five years. *See Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, No. 08-CV-243, 2008 U.S. Dist. LEXIS 70995 (E.D. Mo. July 21, 1998); *Overlap, Inc. v. A.G. Edwards & Sons, Inc.*, 318 S.W.3d 219, 228 n.4 (Mo. 2010). Nestlé Purina argues that it is entitled to discovery from before the limitations period in order to conduct a "baseline analysis" so it can use the "before and after" method of calculating damages. But Nestlé Purina never argues that the time period from 2007 to May 6, 2009 is *before* any of Blue Buffalo's alleged false advertising claims, and so additional discovery from this time period will not meaningfully impact its damages calculations.

In addition, Nestlé Purina has refused to produce its own damages related information dating back to 2007. (*See* Ex. 8 at 2-3.) Blue Buffalo asked whether Nestlé Purina would be willing to engage in reciprocal damages discovery, and Nestlé Purina refused. If Nestlé Purina believes that discovery extending back to 2007 is relevant, then Nestlé Purina should be willing to produce its own documents from this time period.

**VI.    Leonard Brennan's Personnel File (Request No. 123)**

Request No. 123 seeks Mr. Brennan's personnel file. Nestlé Purina claims that there are "industry rumors" that Mr. Brennan received gifts from and may have been improperly influenced by Diversified Ingredients, a company that is involved with the procurement of ingredients for Blue Buffalo's dry food products. Blue Buffalo can represent, however, that Mr. Brennan's personnel file contains no information relating to any allegations of wrongdoing, bribery or receipt of improper gifts. Nestlé Purina should not be permitted to trawl through an individual's confidential human resources files, and even question witnesses at their depositions about their contents, when those files have no bearing on relevant issues. Blue Buffalo has

13

7830724

already agreed to produce the documents that will actually provide evidence concerning whether Mr. Brennan received gifts from or was improperly influenced by Diversified Ingredients.[6] Any additional discovery is irrelevant and overbroad.

### VII. Blue Buffalo Has Agreed to Produce Substantial Documents Related to Jolly Joints (Requests No. 140-141, 146-148, 150)

Requests No. 140 and 141

Request No. 140, as limited by Nestlé Purina in a March 18, 2015 letter, seeks "documents and communications related to the marketing or sales strategies, market shares or projected market shares, market conditions, or the profitability of Blue Buffalo since May 6, 2009 that also relate to [Blue Buffalo's advertisements that Jolly Joints pet treats contain glucosamine and promote healthy joints and hips]." (Ex. 3 at 4.) Request No. 141, as limited by Nestlé Purina, seeks "marketing and advertising plans to promote or sell the Jolly Joints pet treats based on [Blue Buffalo's advertisements that Jolly Joints pet treats contain glucosamine and promote healthy joints and hips]." (*Id*.) This portion of Nestlé Purina's motion to compel is moot, as Blue Buffalo has agreed to produce these documents to the extent located after a reasonable search.

Requests No. 146-148, 150

Requests No. 146-148 and 150 seek documents and communications related to consumer reactions, feedback or comments to advertising for Jolly Joints pet treats, documents and communication that Blue Buffalo has provided to any retailer related to Jolly Joints pet treats

---

[6] Specifically, Blue Buffalo has already agreed to produce communications between Leonard Brennan and any supplier of ingredients used in connection with Blue Buffalo dry food products related to whether Blue Buffalo purchased poultry by-product meal. Blue Buffalo has also agreed to produce communications between Blue Buffalo and Michael Peterson concerning allegations that Leonard Brennan engaged in improper conduct. (Ex. 4.) In addition, Blue Buffalo will produce copies of its policies and procedures concerning the receipt of gifts from manufacturers, blenders, brokers, co-packers, distributors, and/or suppliers. (*Id*.)

promoting the nutritional quality and/or ingredient content of the treats, and documents and communications related to any on-site education and training programs that Blue Buffalo has provided or offered to retailers of the Jolly Joints pet treats related to the treats' ingredient content or nutritional value.  Blue Buffalo has already agreed to produce documents responsive to these requests to the extent they relate to Blue Buffalo's claims that Jolly Joints pet treats contain glucosamine and promote healthy joints or hips.  (Ex. 1 at 4.)

In its motion to compel, Nestlé Purina contends that it also seeks documents related to Blue Buffalo's statements that the treats are recommended for intermittent or supplemental feeding.  Blue Buffalo has agreed to produce documents otherwise responsive to these requests and related to Blue Buffalo's statements that Jolly Joints pet treats are recommended for intermittent or supplemental feeding.  (Ex. 9 at 4.)  This portion of Nestlé Purina's motion to compel is therefore moot.

## CONCLUSION

For the foregoing reasons, Blue Buffalo respectfully requests that the Court deny Nestlé Purina's motion to compel.

Dated:  March 27, 2015

/s/ Steven A. Zalesin
_____

Steven A. Zalesin *Lead Counsel* (pro hac vice)
Adeel A. Mangi (pro hac vice)
Vivian Storm (pro hac vice)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: 212-336-2000
Facsimile: 212-336-2222

Martin Flumenbaum (pro hac vice)
Robert Atkins (pro hac vice)

15

7830724

                                                            PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                                                            1285 Avenue of the Americas
                                                            New York, NY  10019-6064
                                                            Telephone: 212-373-3000
                                                            Fax: 212-757-3990

                                                            Gerard T. Carmody, # 24769
                                                            David H. Luce, # 36050
                                                            Sarah J. Bettag, # 60849
                                                            CARMODY MACDONALD P.C.
                                                            120 S. Central Avenue
                                                            Suite 1800
                                                            St. Louis, MO 63105
                                                           Telephone: 314-854-8600
                                                           Fax: 314-854-8660

Of counsel:

    Richard MacLean, Esq.
    Blue Buffalo Company Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2015, the forgoing was served on all counsel of record by operation of this Court's Electronic Filing System.

By: /s/ Steven A. Zalesin

7830724