# Exhibit 2

## Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

March 17, 2015

Adeel A. Mangi
Partner
(212) 336-2563
Direct Fax:  (212) 336-7947
aamangi@pbwt.com

By Email

Richard M. Assmus, Esq.
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

Re:   *Nestlé Purina PetCare Company v. Blue Buffalo Company Ltd.*,
      **4:14-cv-00859 (RWS)**

Dear Richard:

We write in response to Nestlé Purina's February 17, 2015 letter concerning Blue Buffalo's responses and objections to Nestlé Purina's Second and Third Sets of Requests for the Production of Documents and Things (the "Objections").

Nestlé Purina raises several general issues concerning Blue Buffalo's responses and objections before addressing individual requests.  First, Nestlé Purina asks about Blue Buffalo's production concerning Jolly Joints treats.  Blue Buffalo has already agreed to produce certain documents concerning the level of glucosamine in Blue Buffalo's Jolly Joints treats in connection with Nestlé Purina's Fourth Set of Requests for the Production of Documents and Things.  If there are non-duplicative requests in Nestlé Purina's Second and Third Set of Requests that you believe call for the production of additional documents concerning the quantity of glucosamine in Blue Buffalo's Jolly Joints treats, please identify them.

Second, Nestlé Purina contends that Blue Buffalo's agreement to produce responsive documents dated later than May 6, 2009 is insufficient, and asks Blue Buffalo to produce documents extending back to January 2007.  May 6, 2009, however, is the production start date that Nestlé Purina itself requested after Blue Buffalo initially limited its production to a more recent time period.  (*See* 8/18/14 Ltr. from R. Assmus to S. Zalesin (seeking production of "documents dated on or after May 6, 2009 as Purina requested" and arguing that "[i]nformation dating back to 2009 is highly relevant").)  Moreover, Nestlé Purina's own opening set of document requests—which provided the scope to govern our initial collections and productions—specified May 6, 2009 as the beginning of the relevant time period.  Nestlé Purina has not explained its apparent change of position.  Blue Buffalo's agreement to produce documents dating back to May 6, 2009 is already an accommodation that is greater than what is required given the nature of the allegations in this case.  Moreover, because the limitations period for Nestlé Purina's claims is, at longest, five years (*see Cynergy Ergonomics, Inc. v.*

7682811v.4

Richard M. Assmus
March 17, 2015
Page 2

*Ergonomic Partners, Inc.*, No. 08-CV-243, 2008 U.S. Dist. LEXIS 70995 (E.D. Mo. July 21, 1998); *Overlap, Inc. v. A.G. Edwards & Sons, Inc.*, 318 S.W.3d 219, 228 n.4 (Mo. 2010)), there is no basis for discovery of documents dated more than five years prior to the filing of Nestlé Purina's complaint.  It would be unduly burdensome for Blue Buffalo to produce documents from before May 6, 2009 given these facts.

Third, Nestlé Purina requests confirmation that Blue Buffalo is producing documents in the possession, custody, or control of Great Plains Leasing, LLC ("Great Plains"). On March 4, 2015, Nestlé Purina issued a separate subpoena to Great Plains.  We will respond to that subpoena in due course.  Regardless, Blue Buffalo has made a reasonable and good faith attempt to collect and product the documents Nestlé Purina seeks consistent with its written responses.

Nestlé Purina also seeks additional information concerning Blue Buffalo's pricing and sales information.  Blue Buffalo has already agreed to produce—and has produced— substantial data concerning its pricing and sales, including wholesale pricing and sales data for each of the relevant products.  Although Nestlé Purina contends that additional financial information is relevant to its damages calculation, it never explains how the additional material would meaningfully alter a damages calculation.  Moreover, Nestlé Purina's position is starkly inconsistent.  Nestlé Purina has refused to produce similar pricing, sales, and other financial information in response to Blue Buffalo's requests.  (*See, e.g.,* Nestlé Purina's objections to Blue Buffalo's Requests No. 31[1] & 65.)  Nestlé Purina cannot have it both ways by insisting that Blue Buffalo produce categories of documents that Nestlé Purina has itself refused to produce.  If Nestlé Purina believes additional pricing and sales information is necessary to damages calculations, then it must produce such data for its products as well.  Please let us know when we speak whether Nestlé Purina is willing to adopt a consistent position with regard to damages discovery.

We address Nestlé Purina's individual requests as follows:

**Request No. 65**

Request No. 65 seeks documents and communications related to the intended, expected, potential or actual effects of Blue Buffalo's advertising, advertising spending, promotions, promotional spending, brand equity, product improvements or the introduction of new Blue Buffalo products on sales, sales growth, profitability, market shares, market conditions, or projected market shares of Blue Buffalo.

---

[1] Purina has agreed to produce only "basic pricing information" in response to this request and other information on which Purina's damages experts rely.  *See* 10/7/14 & 10/17/14 Ltrs. from R. Assmus to A. Mangi.

7682811v.4

Richard M. Assmus
March 17, 2015
Page 3

Blue Buffalo has already agreed to produce responsive and non-privileged consumer research studies and consumer research surveys dated after May 6, 2009 and related to Blue Buffalo dry food products.  *See, e.g.,* BB000120440-467; BB000120469-501; BB000172810-889.  In addition, in response to Request No. 30, Blue Buffalo has agreed to produce documents sufficient to show Blue Buffalo's advertising expenditures for dry food products.  To the extent it seeks additional information, Request No. 65 is overbroad, and it is unduly burdensome to expect Blue Buffalo to search for *all* documents and communications related to the intended, expected, potential or actual effects of its advertising, spending on advertising, promotions, promotional spending, brand equity, product improvements, or the introduction of new Blue Buffalo Products on sales, sales growth, profitability, market shares, market conditions, or projected market shares.  To the extent Nestlé Purina seeks any particular documents through this request, we will consider a more targeted request.

**Request No. 66**

Request No. 66 seeks documents and communications sufficient to show dollar sales and total unit sales for Blue Buffalo products broken down by region, sales channel, and retailer.  Blue Buffalo has already agreed to produce documents sufficient to show the net dollar sales by SKU for Blue Buffalo dry food products.  Nestlé Purina contends sales broken down by region, sales channel, and retailer are "necessary for Purina's analysis of whether and how the effect of the advertising at issue varied by region, sales channel or retailer" in connection with Nestlé Purina's damages analysis.  It is unclear, however, *why* regional and retailer level data, rather than aggregate data would meaningfully alter Nestlé Purina's damages analysis.  It would be unduly burdensome for Blue Buffalo to produce such information; and this burden is especially inappropriate given the irrelevance of regional and retailer level data and the overbreadth of this request.  This request represents an improper attempt to seek Blue Buffalo's proprietary sales information despite its irrelevance to the claims and defenses at issue in the litigation.  To the extent Nestlé Purina stands by this request for purposes of damages analyses, please let us know if Nestlé Purina is willing to produce the same documents itself.

**Request No. 67**

Request No. 67 seeks documents sufficient to show wholesale and retail pricing for each Blue Buffalo product, as well as information regarding promotions, discounts or coupons.  To be clear:  Blue Buffalo has already agreed to produce documents sufficient to show wholesale pricing for Blue Buffalo dry food products.

Nestlé Purina asserts that the information covered by Request No. 67 bears on Nestlé Purina's damages.  It is unclear, however, *why* retail pricing or promotions information is relevant to a damages analysis.  Indeed, Nestlé Purina has repeatedly refused to produce similar pricing information for its own products.  (*See, e.g.,* Nestlé Purina's objections to Blue Buffalo's Requests No. 31.)  This request is an improper attempt to seek Blue Buffalo's proprietary sales information despite the irrelevance of additional such information to the claims and defenses at

Richard M. Assmus
March 17, 2015
Page 4

issue in the litigation.  Nonetheless, in addition to the pricing information that Blue Buffalo has already produced, Blue Buffalo will also agree to produce any other information on which its damages experts rely.  *Cf.* 10/17/14 Ltr. from R. Assmus to A. Mangi.  To the extent Nestlé Purina stands by this request for purposes of damages analyses, please let us know if Nestlé Purina is willing to produce the same documents itself.

**Requests No. 68-70**

        Requests No. 68-70 seek documents showing profit and loss statements, profit margin information, and variable costs for Blue Buffalo's Products.  Blue Buffalo has already agreed to produce documents sufficient to show wholesale pricing for Blue Buffalo dry food products.  This information is responsive to the portion of Request No. 68 that calls for the production of statements showing revenues.  Blue Buffalo has also produced summary spreadsheets showing invoices from the co-manufacturers for its dry food products, and has produced documents sufficient to show the net dollar sales by SKU for Blue Buffalo dry food products.

        To the extent Requests No. 68-70 call for an additional production, these requests are overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Nonetheless, in addition to the financial information that Blue Buffalo has already produced, Blue Buffalo will also agree to produce any other information on which its damages experts rely.  *Cf.* 10/17/14 Ltr. from R. Assmus to A. Mangi.  To the extent Nestlé Purina stands by this request for purposes of damages analyses, please let us know if Nestlé Purina is willing to produce the same documents itself.

**Requests No. 71-72**

        Requests No. 71 and 72 seek additional financial information related to Blue Buffalo's products.  Blue Buffalo has already agreed to produce its audited financial statements for Fiscal Years 2009-2014.  Blue Buffalo has also already agreed to produce data showing net sales for each product by SKU.

        To the extent Requests No. 71-72 call for financial reports that are broken down by region, sales channel, retailer, business unit, or product line the requests are overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Nestlé Purina does not explain why data that is broken down by region, sales channel, retailer, or business unit is relevant to its calculation of damages.  To the extent data pertaining to individual products is relevant, Blue Buffalo has already agreed to produce data showing net sales for each relevant product by SKU.  No further information is necessary, and this request represents an improper attempt to seek Blue Buffalo's proprietary sales information despite its irrelevance to the claims and defenses at issue in the litigation.  Nonetheless, in addition to the financial information that Blue Buffalo has already produced, Blue Buffalo will also agree to produce any other information on which its

Richard M. Assmus
March 17, 2015
Page 5

damages experts rely.  *Cf.* 10/17/14 Ltr. from R. Assmus to A. Mangi.  To the extent Nestlé
Purina stands by this request for purposes of damages analyses, please let us know if Nestlé
Purina is willing to produce the same documents itself.

**<u>Requests No. 74-75</u>**

Requests No. 74-75 seek documents related to communications between Blue
Buffalo and its auditors, accountants or other financial consultants related to Blue Buffalo's
advertising or promotions.  Blue Buffalo has already stated that it has no non-privileged
documents responsive to these requests.  To the extent privilege is asserted over any responsive
documents, they will be logged as required by the Federal Rules and the parties' agreements.

**<u>Requests No. 77, 80-81</u>**

Requests No. 77, 80, and 81 seek documents sufficient to identify products Blue
Buffalo deems to be a competitor with Blue Buffalo products and products Blue Buffalo believes
buyers of Blue Buffalo products would or would not consider purchasing.  Blue Buffalo has
already agreed to produce documents sufficient to show the products tested in connection with its
"True Blue Test" and any products about which it has conducted consumer research since May 6,
2009.

To the extent these requests seek additional documents, they are overbroad,
unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably
calculated to lead to the discovery of admissible evidence.  Documents concerning the products
Blue Buffalo deems to be a competitor of Blue Buffalo products are not relevant to any claim or
defense in this litigation.  These requests are also improper because they seek via document
request information that is more properly addressed at a deposition.

**<u>Requests No. 78, 79, 82, 84-87</u>**

Requests No. 78, 79, 82, and 84-87 seek documents relating to products Blue
Buffalo believes compete with its products, and how those products compare to Blue Buffalo's
products.  Blue Buffalo has already agreed to produce certain meeting minutes related to the
differentiation between Nestlé Purina's products and Blue Buffalo's products; certain documents
concerning Blue Buffalo's strategic plans, long-range plans, and business plans that relate to
Nestlé Purina's premium products or Blue Buffalo's dry food products, and the substantiation for
or accuracy of the advertising claims cited in Nestlé Purina's complaint and amended complaint.
Blue Buffalo has further agreed to produce documents sufficient to show the products tested in
connection with its "True Blue Test" and any Nestlé Purina products about which it has
conducted consumer research since May 6, 2009.

In seeking additional documents, these requests are overbroad, unduly
burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated
to lead to the discovery of admissible evidence.  Documents relating to products Blue Buffalo

Richard M. Assmus
March 17, 2015
Page 6

believes compete with its own products and how those products compare to Blue Buffalo's products are not relevant to any claim or defense in this litigation, nor is it relevant to a damages analysis.  Moreover, as discussed *supra*, questions concerning what products Blue Buffalo believes to be a competitor are better suited for deposition than document requests.  To the extent Nestlé Purina seeks any particular documents through this request, we will consider a more targeted request.

## Requests No. 88-90, 101

Requests No. 88-90 and 101 seek additional information concerning Blue Buffalo's advertising.  Blue Buffalo has already agreed to produce copies of final Advertisements related to Blue Buffalo's dry food products since May 6, 2009.

To the extent these requests seek additional information such as the advertisements' target consumer or target market, additional information concerning when the advertisement ran, and web analytics data, these requests are overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Nestlé Purina contends that it needs these documents for "a determination of the reach and impact of the Blue Buffalo advertising claims," but documents concerning an advertisement's target consumer or target market do not actually provide such information.  Further, the production of documents showing the air dates and print dates of Blue Buffalo's advertisements is unduly burdensome; these documents consist of thousands of pages of hard copy documents that are not easily produced.  Because Blue Buffalo has already agreed to produce final copies of the Advertisements and monthly advertising expenditures for dry food products, any tangential relevance to these materials is outweighed by the substantial burden.

To the extent Nestlé Purina stands by this request for purposes of damages analyses, please let us know if Nestlé Purina is willing to produce the same documents itself.  Additionally, please let us know whether Nestlé Purina is willing to assume the cost of locating, reviewing and producing these documents, which we anticipate will be substantial.

## Requests No. 92-93

Requests No. 92 and 93 seek documents concerning Blue Buffalo's advertising expenditures.  Blue Buffalo has already agreed to produce documents sufficient to show Blue Buffalo's monthly advertising expenditures for dry food products since May 6, 2009.

To the extent Nestlé Purina seeks such information to be broken down by type of advertisement, these requests are overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.  It is unclear why information concerning the volume of expenditures by type of advertisement would be indicative of the impact on customers and sales of each type of advertisement. The irrelevance of this type of data is further underscored by Nestlé Purina's

Richard M. Assmus
March 17, 2015
Page 7

refusal to produce documents showing even its monthly advertising expenditures in response to Blue Buffalo's Request No. 45.  Nestlé Purina cannot seek far more detailed and burdensome information concerning Blue Buffalo's expenditures than Nestlé Purina itself is willing to produce.  To the extent Nestlé Purina stands by this request for purposes of damages analyses, please let us know if Nestlé Purina is willing to produce the same documents itself.

**Requests No. 94-95, 98-99**

Request Nos. 94, 95, 98, and 99 seek additional documents relating to the effectiveness of Blue Buffalo's advertising, the actual or anticipated effects of Blue Buffalo's advertising on competitor products, research to determine the target consumer or target market for advertisements of Blue Buffalo products, and marketing performance metrics gathered by or on behalf of Blue Buffalo to determine the effectiveness of its advertisements.

Blue Buffalo has already agreed to produce relevant and responsive consumer research studies and consumer research surveys.  In addition, in response to Request No. 30, Blue Buffalo has agreed to produce documents sufficient to show Blue Buffalo's advertising expenditures for dry food products.  To the extent Requests No. 94, 95, 98, and 99 call for the production of additional material, they are overbroad, and it is unduly burdensome to expect Blue Buffalo to search for *all* documents and communications related to the actual and anticipated effect of Blue Buffalo's advertising, including any gain in market share over competitors, the effect of Blue Buffalo's advertising on competitor products, and marketing performance metrics gathered to determine the effectiveness of Blue Buffalo's advertisements.  To the extent Nestlé Purina seeks documents concerning the actual or anticipated effect of Blue Buffalo's advertising, Blue Buffalo's consumer research studies and consumer research surveys are the best source of that information.  To the extent Nestlé Purina seeks any particular additional documents through this request, we will consider a more targeted request.

**Request No. 96**

Request No. 96 seeks documents and communications containing, reflecting, summarizing, or analyzing reactions, interpretations, responses, questions, or comments from any buyers or former buyers of Nestlé Purina's products relating to Blue Buffalo's advertising.

Blue Buffalo has already agreed to produce reports summarizing or analyzing reactions, interpretations, responses, questions, or comments from any buyers or former buyers of Nestlé Purina's products relating to any Blue Buffalo Advertising since May 6, 2009.  In addition, in response to Request No. 45, Blue Buffalo has agreed to produce documents containing, reflecting, summarizing, or analyzing consumer reactions, interpretations, responses, questions, or comments to any Blue Buffalo advertising referenced in Nestlé Purina's complaint and related to the Challenged Claims.  To the extent Nestlé Purina seeks further documents in response to Request No. 96, such discovery is overbroad, unduly burdensome, and neither

Richard M. Assmus
March 17, 2015
Page 8

relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

### Request No. 97

Nestlé Purina contends that Request No. 97 seeks documents and communications reflecting or related to the number of times Blue Buffalo's "True Blue Test" has been viewed. Request No. 97, however, purports to seek far more than the number of times Blue Buffalo's "True Blue Test" has been viewed, and such discovery is overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence. Please clarify whether Nestlé Purina now narrows its request to seek only the number of times Blue Buffalo's "True Blue Test" has been viewed.

### Request No. 107

Request No. 107 seeks documents substantiating the results of Blue Buffalo's "True Blue Test" and other advertising claims. Blue Buffalo has already agreed to produce certain documents relating to the substantiation for or accuracy of the "True Blue Test" as it relates to its claims about whether Blue Buffalo's dry food products and competitors' dry food products contain poultry by-products, corn, or wheat. Blue Buffalo has also already agreed to produce documents sufficient to describe the cold-formed process.

In addition, in response to Request No. 31, Blue Buffalo has agreed to produce documents related to the substantiation for or accuracy of the advertising claims cited in Nestlé Purina's complaint or amended complaint. To the extent Nestlé Purina seeks further documents in response to Request No. 107, such discovery is overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence. To the extent Nestlé Purina seeks any particular additional documents through this request, we will consider a more targeted request.

### Request No. 108

Request No. 108 seeks documents and communications related to the ingredients, manufacturing specifications and/or other instructions and/or guidelines that Blue Buffalo provides to any party that plays a role in the formulation, manufacture, and/or creation of Blue Buffalo products.

Blue Buffalo has already agreed to produce documents sufficient to identify the ingredients used in its dry food products. In addition, in response to Request No. 16, Blue Buffalo has agreed to produce contracts related to the process in which Blue Buffalo's dry food products are manufactured; contracts related to agreements concerning poultry by-product meal or corn for use in Blue Buffalo's dry food products, or rice or rice hulls for use in Blue Buffalo's grain-free dry food products; documents and communications sufficient to show Blue Buffalo's procurement of poultry meal from Pilgrim's Pride Corporation, and any documents and

Richard M. Assmus
March 17, 2015
Page 9

communications related to whether or not Blue Buffalo purchased poultry by-product meal from Pilgrim's Pride Corporation; documents and communications sufficient to show Blue Buffalo's procurement of poultry meal from Wilbur-Ellis and/or American By-Products, and any documents and communications related to whether or not Blue Buffalo purchased poultry by-product meal from Wilbur-Ellis and/or American By-Products; documents and communications sufficient to show Blue Buffalo's procurement of poultry meal from Darling Ingredients, and any documents and communications related to whether or not Blue Buffalo purchased poultry by-product meal from Darling Ingredients; documents and communications sufficient to show Blue Buffalo's procurement of poultry meal, and any documents and communications related to whether or not Blue Buffalo purchased poultry by-product meal; and documents sufficient to show Blue Buffalo's procurement of poultry meal, and any communications between Leonard Brennan or persons under his supervision and any supplier of any ingredient used in connection with any Blue Buffalo dry food products related to whether or not Blue Buffalo purchased poultry by-product meal or corn for Blue Buffalo's dry food products or rice or rice hulls for Blue Buffalo's grain-free dry food products.

In response to Request No. 18, Blue Buffalo has agreed to produce documents and communications sufficient to identify inspections or audits that Blue Buffalo performed, commissioned, or received from any supplier, manufacturer, co-packer, broker or blender of the Blue Buffalo Products related to the ingredient content of the Blue Buffalo products, including any policies and procedures related thereto that are related to the Challenged Claims.  In response to Request No. 24, Blue Buffalo has agreed to produce documents and communications between Blue Buffalo and Diversified Ingredients related to whether or not Blue Buffalo purchased chicken/poultry by-product meal.

To the extent Nestlé Purina seeks further documents in response to Request No. 108, such discovery is overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence. To the extent Nestlé Purina seeks any particular additional documents through this request, we will consider a more targeted request.

**Request No. 110**

Request No. 110 seeks documents supporting Blue Buffalo's contention that there is no established bright-line test for identifying the presence or absence of by-products in pet food products.  Blue Buffalo maintains its objections to this Request.  Further, Blue Buffalo states that it does not possess any existing unproduced non-privileged documents concerning whether there is a bright-line test for identifying the presence or absence of by-products in pet food products.

**Request No. 111**

Richard M. Assmus
March 17, 2015
Page 10

Request No. 111 seeks documents that constitute or relate to communications of or to Joe Conti.  Nestlé Purina contends that this material is "relevant to a determination of the truth or falsity of Blue Buffalo's advertising[.]"  However, Blue Buffalo has already agreed to produce documents concerning the substantiation for or accuracy of the advertising claims cited in Nestlé Purina's complaint and amended complaint.  To the extent Nestlé Purina seeks further documents in response to Request No. 111, such discovery is overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.  To the extent Nestlé Purina seeks any particular additional documents through this request, we will consider a more targeted request.

## Request No. 112

Request No. 112 seeks documents and communications between Blue Buffalo and its manufacturers, blenders, brokers, co-packers, distributors, and/or suppliers related to Blue Buffalo's advertising or promotion of Blue Buffalo products, labels or packaging used in connection with Blue Buffalo products, and the formulations and/or ingredient content of Blue Buffalo's products.

Blue Buffalo has already agreed to produce color images of labels and packaging used on the container for or to otherwise identify Blue Buffalo's dry food products, copies of its website, and documents and communications between Blue Buffalo and Blue Buffalo's Manufacturers, Blenders, Brokers, Co-Packers, Distributors and Suppliers relating to the inclusion of poultry byproduct in any of its dry food products formulae.  Blue Buffalo has already agreed to produce documents concerning the substantiation for or accuracy of the advertising claims cited in Nestlé Purina's complaint and amended complaint.

In addition, in response to Request No. 16, Blue Buffalo has agreed to produce contracts related to the process in which Blue Buffalo's dry food products are manufactured; contracts related to agreements concerning poultry by-product meal or corn for use in Blue Buffalo's dry food products, or rice or rice hulls for use in Blue Buffalo's grain-free dry food products; documents and communications sufficient to show Blue Buffalo's procurement of poultry meal from Pilgrim's Pride Corporation, and any documents and communications related to whether or not Blue Buffalo purchased poultry by-product meal from Pilgrim's Pride Corporation; documents and communications sufficient to show Blue Buffalo's procurement of poultry meal from Wilbur-Ellis and/or American By-Products, and any documents and communications related to whether or not Blue Buffalo purchased poultry by-product meal from Wilbur-Ellis and/or American By-Products; documents and communications sufficient to show Blue Buffalo's procurement of poultry meal from Darling Ingredients, and any documents and communications related to whether or not Blue Buffalo purchased poultry by-product meal from Darling Ingredients; documents and communications sufficient to show Blue Buffalo's procurement of poultry meal, and any documents and communications related to whether or not Blue Buffalo purchased poultry by-product meal; and documents sufficient to show Blue Buffalo's procurement of poultry meal, and any communications between Leonard Brennan or

Richard M. Assmus
March 17, 2015
Page 11

persons under his supervision and any supplier of any ingredient used in connection with any Blue Buffalo Product dry food product related to whether or not Blue Buffalo purchased poultry by-product meal or corn for Blue Buffalo's dry food products or rice or rice hulls for Blue Buffalo's grain-free dry food products.

There is no relevance to additional communications between Blue Buffalo and its manufacturers, blenders, brokers, co-packers, distributors and suppliers concerning Blue Buffalo's advertising or promotion of Blue Buffalo products, or labels or packaging used on or in connection with Blue Buffalo products.  Likewise, there is no relevance to additional communications between Blue Buffalo and its Manufacturers, Blenders, Brokers, Co-Packers, Distributors and Suppliers concerning the formulations and ingredient content of Blue Buffalo products.  To the extent Nestlé Purina seeks further documents in response to Request No. 112, such discovery is overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

## Request No. 113

Request No. 113 seeks documents and communications related to shipments Blue Buffalo received from its manufacturers, blenders, brokers, co-packers, distributors, and/or suppliers related to the ingredients purchased for use in connection with and/or used in connection with Blue Buffalo's products.  Blue Buffalo has already agreed to produce documents related to the purchase of poultry by-product meal for use in Blue Buffalo's dry food products.  There is no further relevance to documents related to shipments of all ingredient shipments Blue Buffalo received.  To the extent Nestlé Purina seeks further documents in response to Request No. 113, such discovery is overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

## Request No. 114

Request No. 114 seeks documents and communications related to the "Pet Parent Resource Center" on its website.  In response to Request No. 28, Blue Buffalo has already agreed to produce certain copies of its website.  In response to Request No. 45, Blue Buffalo has already agreed to produce documents containing, reflecting, summarizing, or analyzing consumer reactions, interpretations, responses, questions, or comments to any Blue Buffalo advertising referenced in Nestlé Purina's complaint and related to the Challenged Claims.  In addition, in response to Request No. 146, Blue Buffalo has agreed to produce documents and communications containing, reflecting, summarizing, or analyzing consumer reactions, interpretations, responses, questions, or comments related to the Healthy Joints Claims.

To the extent Nestlé Purina seeks further documents in response to Request No. 114, such discovery is overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

Richard M. Assmus
March 17, 2015
Page 12

**Request No. 120**

      Request No. 120 seeks documents and communications between Blue Buffalo and any governmental or regulatory agency, administration, or entity related to Blue Buffalo's advertising or promotion of its products, the labels or packaging used on or in connection with its products, and the formulations and/or ingredient content of its products.  Blue Buffalo has already agreed to produce documents related to the substantiation for or accuracy of the advertising claims cited in Nestlé Purina's complaint or amended complaint and disputes the relevance of any additional documents.  We further note that Nestlé Purina has itself refused to produce similar documents and its position is therefore entirely inconsistent.  Please clarify whether Nestlé Purina is amending its own position on producing similar documents.

**Request No. 121**

      Request No. 121 seeks documents related to any Naturox or Lecithin used in the Blue Buffalo products.  However, the presence of soy in any of Blue Buffalo's products is not relevant to any claims raised in Nestlé Purina's complaint.  This request is overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.  To the extent you disagree, please identify the portions of your complaint making allegations relating to the inclusion of soy.

**Request No. 122**

      Request No. 122 seeks documents and communications related to Blue Buffalo's policies or procedures related to receiving gifts from manufacturers, blenders, brokers, co-packers, distributors, and/or suppliers.  Nestlé Purina states this material is relevant based on Nestlé Purina's allegations that "Brennan received certain gifts from and therefore may have been improperly influenced by Diversified ingredients[.]"  Nestlé Purina does not explain, however, how there is any relevance to Blue Buffalo's policies or procedures regarding the receipt of gifts.  This request is overbroad, unduly burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

**Requests No. 115 & 123**

      Requests No. 115 and 123 seek documents concerning communications between Blue Buffalo and Michael Peterson concerning Blue Buffalo or Leonard Brennan, and Mr. Brennan's personnel file.  Nestlé Purina contends that this information is relevant to Nestlé Purina's "exploration" of gifts given to Mr. Brennan "and their possible connection to the existence [of by-product meal] in Blue Buffalo's dry food products[.]"  Mr. Brennan' personnel file, however, has no plausible relevance to any gifts allegedly received by Mr. Brennan or to the alleged presence of by-product meal in Blue Buffalo's dry food products.  Likewise, Nestlé Purina's request for all documents concerning communications between Blue Buffalo and Michael Peterson concerning Blue Buffalo or Leonard Brennan is overbroad, unduly

7682811v.4

Richard M. Assmus
March 17, 2015
Page 13

burdensome, and neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.  To the extent Nestlé Purina is willing to articulate the bases for its allegations with regard to Mr. Brennan or Mr. Peterson, we will consider these requests further.

* * * * *

We look forward to discussing these issues with you.

Sincerely,

Adeel A. Mangi