# Exhibit 3

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

Richard M. Assmus
Direct Tel +1 312 701 8623
Direct Fax +1 312 706 9125
rassmus@mayerbrown.com

March 18, 2015

VIA ELECTRONIC MAIL

Adeel A. Mangi
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

Re:   *Nestlé Purina PetCare Co. v. Blue Buffalo Co. Ltd.*,
      No. 4:14-cv-00859 (RWS) (E.D. Mo)

Dear Adeel:

We write in follow-up to yesterday's discovery conference. As discussed, we would appreciate your responses by the end of the day tomorrow.

**Blue Buffalo's Second Set of Requests for Production**

Request No. 90 sought all documents concerning Purina's use of agricultural or feed microscopy. Purina agreed to produce non-privileged documents in its possession located after a reasonable search that are responsive to this request related to Purina's allegations in this matter. During yesterday's telephone call, you agreed to narrow this request to documents that reflect Purina's policies and procedures for the use of microscopy, documents sufficient to show how Purina uses microscopy for its own internal purposes and Purina's communications with Dr. Makowski regarding microscopy from May 6, 2009 forward. Purina will agree to produce documents reflecting its policies and procedures for the use of microscopy, documents sufficient to show Purina's use of microscopy in connection with dry pet food products and Purina's non-privileged communications with Dr. Makowski regarding microscopy from May 6, 2009 forward.

**Blue Buffalo's Third Set of Requests for Production**

Request Nos. 109 and 111 sought all documents concerning the advertising, marketing or promotion of any Purina Pet Food Products as containing glucosamine or as promoting joint health, joint support, hip health or hip support. As discussed during yesterday's telephone call, we have reconsidered Purina's position on these requests and have decided that Purina will continue to object to producing documents responsive to these requests for the reasons stated in its responses and in my March 17, 2015 letter. Please note, however, that Purina has agreed to produce in response to Request No. 107 documents concerning the health or nutritional benefit of glucosamine, including research or testing concerning (i) the benefits of glucosamine and/or (ii) the quantity of glucosamine at which those benefits are achieved.

Mayer Brown LLP operates in combination with other Mayer Brown entities with offices in Europe and Asia
and is associated with Tauil & Chequer Advogados, a Brazilian law partnership.

715482704

Mayer Brown LLP

Adeel A. Mangi
March 18, 2015
Page 2

### Purina's First Set of Interrogatories

Thank you for sending the correct Bates numbers for the Contract Balance Reports, which are responsive to Interrogatory No. 1. We note that these reports cover only the years 2012-2014. Please confirm that no Contract Balance Reports exist for the years 2009-2011. If they do not exist, please confirm that we will be able to locate information sufficient to determine Blue Buffalo's monthly purchases of poultry meal for 2009-2011 in Blue Buffalo's November 26, 2014 production of documents from Leonard Brennan.

Please also confirm that Blue Buffalo will amend its answers to Purina's First Set of Interrogatories consistent with the additional information you provided in your December 4, 2014 and March 11, 2015 letters. As discussed, Purina asks that these amended answers be served promptly, and we suggest that the deadline be April 3, 2015.

### Purina's Second and Third Sets of Requests for Production

Blue Buffalo objected to providing documents responsive to Purina's Second and Third Sets of Requests for Production dating back to 2007. During our telephone call yesterday, you indicated that you would consider producing a more narrowly tailored set of financial-related documents dating back to 2007. Accordingly, following is a narrowed list of documents and information Purina seeks from January 1, 2007 forward:

- total unit sales of all Blue Buffalo Products, broken down (i) monthly, and (ii) by product type or product line;

- total dollar sales (sufficient to show wholesale revenue) of all Blue Buffalo Products, broken down (i) monthly, and (ii) by product type or product line; and

- advertising expenditures for all Blue Buffalo Products, broken down (i) monthly, (ii) by product type or product line, and (iii) by media type (*e.g.*, print, television, online).

We also discussed during yesterday's telephone call Blue Buffalo's position that Purina should provide reciprocal production of damages-related information. We indicated that we would consider this position and report back to you today. It is Purina's position that the parties' respective damages in this litigation are sufficiently different such that many of the documents that are necessary for Purina to calculate its damages for its claims are not relevant to Blue Buffalo's calculation of its own damages related to its counterclaims. By way of example only, Purina is claiming damage from years-long nationwide advertising campaigns whereas Blue Buffalo's counterclaims relate only to publicity connected to Purina's lawsuit over a narrow period of time. Accordingly, Purina will not agree to a completely reciprocal production of damages-related documents and information. Furthermore, we note that until Purina raised the

715482704

Adeel A. Mangi
March 18, 2015
Page 3

issues related to Blue Buffalo's production, you had not objected to the pricing and other financial data Purina has provided.

Purina proposes to limit the information it seeks in certain document requests to which Blue Buffalo raised objections as follows:

- Request No. 65: This request sought all documents and communications related to the intended, expected, potential or actual effects of Blue Buffalo's advertising, spending on advertising, promotions, promotional spending, brand equity, product improvements or the introduction of new Blue Buffalo Products on sales, sales growth, profitability, market shares, market conditions, or projected market shares of Blue Buffalo. We propose to limit this request to documents and communications related to any studies about Blue Buffalo's advertising messages, its advertising objectives, any advertising tests Blue Buffalo conducted to pretest or obtain feedback on its advertising, or any other studies that track the effectiveness of Blue Buffalo's advertising.

- Request No. 97: This request sought all documents and communications related to the number of times Blue Buffalo's True Blue Test has been viewed. We propose to narrow the portions of this request to which you objected to seek only documents and communications sufficient to reflect: (i) the number of times each competing product listed in the True Blue Test (including Purina's products) were selected for comparison to Blue Buffalo Products, and (ii) the number of times visitors comparing a Purina product in the True Blue Test clicked the "Get My Coupons" button on the results page of the True Blue Test.

- Request 111: This request sought all documents that constitute or relate to communications of or to Joe Conti related to a number of topics. We propose to limit this request to topics (d) (documents or communications related to the Feed and Pet Food Joint Conference that took place in Omaha, Nebraska from October 7-9, 2014) and (e) (documents or communications related any conversations between Mr. Conti and any representative of Wilbur-Ellis, Pilgrim's Pride, Darling International Incorporated, American By-Products and/or Diversified Ingredients related to the ingredients purchased for use in connection with and/or used in connection with the Blue Buffalo Products).

- Request No. 114: This request sought all documents and communications related to the "Pet Parent Resource Center" referenced on Blue Buffalo's website. We propose to narrow this request to documents related to the Challenged Claims, as that term is defined in Blue Buffalo's responses to Purina's Second and Third Sets of Requests for the Production of Documents and Things, Blue Buffalo's advertising statement that its products provide "the finest natural ingredients for superior nutrition," Blue Buffalo's advertising slogan "Love them like family.

715482704

Mayer Brown LLP

Adeel A. Mangi
March 18, 2015
Page 4

> Feed them like family" or Blue Buffalo's products as being fit for human consumption.
>
> - Request No. 120: This request sought documents and communications between Blue Buffalo and any governmental or regulatory agency related to a number of topics. We propose to narrow this request to documents and communications related to the Challenged Claims as that term is defined in Blue Buffalo's responses to Purina's Second and Third Sets of Requests for the Production of Documents and Things, Blue Buffalo's advertising statement that its products provide "the finest natural ingredients for superior nutrition," Blue Buffalo's advertising slogan "Love them like family. Feed them like family" or Blue Buffalo's products as being fit for human consumption.

Please let us know if Blue Buffalo will agree to produce documents responsive to these requests as narrowed.

Finally, we seek clarification of Blue Buffalo's response to Request No. 107, which sought documents and communications substantiating the results of Blue Buffalo's True Blue Test as well as nine of Blue Buffalo's advertised claims. Your March 17, 2015 letter indicates that Blue Buffalo has already agreed to produce documents related to the substantiation for or accuracy of the advertising claims cited in Purina's complaint or amended complaint. Please confirm which of the nine advertising claims listed in Request No. 107 for which Blue Buffalo will provide responsive documents and to which of those nine claims Blue Buffalo objects and will not produce responsive documents. In our view, all are cited in the operative complaint.

**Purina's Fourth Set of Document Requests**

Purina proposes to limit the information it seeks in certain document requests to which Blue Buffalo raised objections as follows.

> - Requests 140 & 141: Request 140, as narrowed by my February 25, 2015 letter, sought all documents and communications related to the marketing or sales strategies, market shares or projected market shares, market conditions or the profitability of Blue Buffalo since May 6, 2009 that also relate to the Healthy Joint Claims or the claims that Jolly Joints pet treats are recommended for intermittent or supplemental feeding. Request 141, as narrowed by my February 25, 2015 letter, sought all documents and communications since May 6, 2009 related to Blue Buffalo's marketing and advertising plans to promote or sell the Jolly Joints pet treats based on the Healthy Joint Claims or the claims that Jolly Joints pet treats are recommended for intermittent or supplemental feeding. We propose to narrow these two requests to responsive documents that relate to the Healthy Joint Claims.

715482704

Adeel A. Mangi
March 18, 2015
Page 5

- Request No. 155: This request sought all documents and communications that relate to any veterinarians or animal nutritionists that Blue Buffalo or any member of the Bishop family communicated with or consulted to develop Blue Buffalo pet food. We propose to narrow this request to all documents and communications with Dr. Robert Goldstein.

Please let us know if Blue Buffalo will agree to produce documents responsive to these requests as narrowed.

Finally, please confirm whether in response to Document Request Nos. 153 and 154 Blue Buffalo will produce responsive documents related to the October 14, 2014 letter from Bill Bishop entitled "Regarding the Issue Pertaining to Wilbur Ellis' Texas Plant."

Sincerely,

Richard M. Assmus

cc: Carmine Zarlenga
Lori Zahalka
David Roodman

715482704