# Exhibit 14

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION

NESTLE PURINA PETCARE COMPANY,     )
                                   )
      Plaintiff,                   )
                                   )
      v.                           )
                                   ) No 4:14-CV-859 RWS
BLUE BUFFALO COMPANY, LTD.,        )
                                   )
      Defendant.                   )

                         MOTION HEARING
               BEFORE THE HONORABLE RODNEY W. SIPPEL
                   UNITED STATES DISTRICT JUDGE
                         OCTOBER 22, 2014

APPEARANCES:
For Plaintiff:         Richard M. Assmus, Esq.
                       MAYER BROWN LLP
                       71 S. Wacker Drive
                       Chicago, IL  60606

                       David A. Roodman, Esq.
                       Emma C. Harty, Esq.
                       BRYAN CAVE LLP
                       211 North Broadway, Suite 3600
                       St. Louis, MO  63102

For Defendant:         Steven A. Zalesin, Esq.
                       Adeel  A. Mangi, Esq.
                       PATTERSON AND BELKNAP
                       1133 Avenue of the Americas
                       New York, NY  10036


(Appearances continued on Page 2)

REPORTED BY:           SHANNON L. WHITE, RMR, CRR, CSR, CCR
                       Official Court Reporter
                       United States District Court
                       111 South Tenth Street, Third Floor
                       St. Louis, MO  63102
                       (314) 244-7966


PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION
```

1  be at issue.  Purina has in a number of ways in its complaint
2  put their nutrient profile and their full formulation at
3  issue.
4          THE COURT:  Let's talk about LifeSource bits, and
5  then we'll come back to the --
6          MR. MANGI:  Sure.  Your Honor, with regard to
7  LifeSource bits, let's be clear about what it is we're talking
8  about here.  In the dog food there is -- there are two parts.
9  One is kibble, which are the various pieces, and then there
10 are particular dark-colored bits that are mixed in there that
11 are the LifeSource bits.  These contain particular nutrients.
12         Now, what they have alleged is that:  You say you
13 include certain nutrients in the bit, like lycopene or
14 taurine, and that those nutrients have a particular health
15 benefit associated with them.  It's good for the pets' eyes,
16 for example, things like that.
17         And we're saying, okay, if that's your allegation,
18 we'll give you documents about the nutrient profile and the
19 bits going to your claim that those nutrients that are in
20 there don't have particular benefits that you say they do.
21 And our General Objection 8, which is what is at issue here,
22 expressly says we'll give them the documents about the
23 nutrient profile.
24         So what they're seeking to do is take what is not the
25 tail on the dog, Your Honor, it's the flea on the tail of the

88

1   dog, and say that I'm going to stretch this to cover your
2   entire product range, and every one of the dozens of
3   ingredients that go in there I want to know about every
4   nutrient and every vitamin and every mineral.
5           This is absolutely nothing to do with the very, very
6   narrow allegation about bits.  That is essentially an
7   afterthought in their complaint, which is focused on the
8   by-product meal issue.
9           Then if I may return a moment to the preservative
10  issue, we've heard many repetitions today, Your Honor, of the
11  term "fishing expedition."  Well, this is the absolute
12  definition of a fishing expedition.  And my friend, Mr.
13  Assmus, basically admitted it by reading to you these sections
14  from the complaint, paragraphs 35 to 37, because all they say
15  is:  You say you have no artificial preservatives.  That's not
16  true because you have by-product meal.
17          And what he says is, well, you know, we included in
18  there this little phrase "among other things," and because we
19  were clever enough to include that phrase, now every
20  ingredient in every product that you sell is fair game.
21          There is no particularized allegation about that.
22  They have made no specific claim.  They have no basis for any
23  claim about any other ingredient.
24          So this is the definition of trying to get beyond
25  what they've alleged.  And the words "among other things,"

89

1  Your Honor, in our view, are far too slim of a read on which
2  to hang discovery that potentially dwarfs anything about
3  by-product meal because they want every document at the
4  company about every ingredient.
5       MR. ASSMUS:  Two things, Your Honor.  With respect to
6  the LifeSource bits, the LifeSource bits claims are pervasive
7  in Blue Buffalo's advertising.  All their dry dog food has
8  these LifeSource bits.  And so what we're asking for, based on
9  the claims that we're challenging with respect to the
10 LifeSource bits, is to know what they want their co-packers to
11 put in those LifeSource bits so that we can assess their
12 nutritional content.
13      They claim those LifeSource bits give superior
14 nutrition.  They claim those LifeSource bits have certain
15 levels of vitamins and minerals, and they further claim that
16 that leads to health benefits for pets.
17      THE COURT:  He told you they're going to provide you
18 the nutrition panel -- or what the exact word was -- for
19 LifeSource bits.
20      MR. MANGI:  Yes, Your Honor.  It's the nutrient
21 profile.  And that's the language we've used from the start in
22 the general objection that's at issue here.
23      THE COURT:  I'm condemning me and you to getting
24 together on a frequent basis, but they're going to produce
25 that information, and you'll see what we have.

90

1        Likewise, as I was listening, the more persuasive
2   thing to me was you've alleged that there's preservatives, and
3   you identify the chicken by-product meal as the source of
4   those preservatives, and so we're going to limit the scope of
5   that "ask" to the pleadings in the -- as pled.
6        If you have other information, I mean -- just by
7   doing that, you can't open up the whole world by saying there
8   might be preservatives somewhere else.  I mean, one of the
9   hard parts is the Twombly and Iqbal issue, and I -- but we're
10  just not going to go from zero to a hundred miles an hour.
11  We're going to see where it takes us.  And we're going to take
12  it in phases.  If it explodes on us, it explodes on us.  If
13  it's contained, it stays contained.  But this case has the
14  potential to spiral out of control if we don't take it in
15  stages and steps.
16       That means we get to get together more often than
17  most cases, but that's what we're going to do, and we'll see
18  where we are.  So granted in part and denied in part --
19       MR. ASSMUS:  Thank you, Your Honor.
20       THE COURT:  -- based on the focus on the chicken
21  by-product meal.
22       What else do we need to talk about today?  We have
23  some issues we can't reach because we are missing a lawyer,
24  right?
25       MR. ZALESIN:  Yes, Your Honor.  We agreed, the