UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NESTLÉ PURINA PETCARE COMPANY, | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| vs. | ) Case No. 4:14 CV 859 RWS |
| | ) |
| THE BLUE BUFFALO COMPANY LTD., | ) |
| | ) |
| Defendant/Counterclaim Plaintiff. | ) |
| | ) |
| vs. | ) |
| | ) |
| BLUE STATE DIGITAL, INC., | ) |
| PRCG/HAGGERTY LLC and JOHN DOES 1 – 8 | ) |
| Counterclaim Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before me on Counterclaim Defendants Blue State Digital, Inc. and

PRCG/Haggerty LLC's Motions to Dismiss Counterclaim Plaintiff Blue Buffalo Company Ltd.

("Blue Buffalo")'s Second Amended Counterclaim. Blue Buffalo opposes these motions and the

issues are fully briefed. For the reasons set forth below, I will grant in part and deny in part the

Counterclaim Defendants' motions to dismiss.

## Procedural Background

On May 6, 2014, Nestle Purina PetCare Company ("Purina") filed suit against Blue

Buffalo. Purina's complaint primarily alleges that Blue Buffalo has engaged in false and

misleading advertising because its dog food products, which are advertised as being "grain free"

and containing "no chicken by-product," actually do contain those ingredients. After it filed the

complaint, Purina issued press releases about the suit and launched a website,

www.PetFoodHonesty.com (the "Honesty website"), where it openly criticizes Blue Buffalo for

its alleged false advertising. Blue Buffalo denies that its products contain chicken by-product meal or grain, or otherwise fail to meet the expectations of its customers. Blue Buffalo also asserts that the "independent testing" Purina relies upon for its claims against Blue Buffalo is unreliable.

On May 14, 2014, Blue Buffalo filed an action against Purina, alleging that Purina has engaged in false advertising and defamed Blue Buffalo through the various public statements it made upon its filing of this suit. See Blue Buffalo v. Nestle Purina PetCare Company, et al., 4:14 cv 920 SNLJ. In addition to Purina, Blue Buffalo named as defendants John Does 1-10, the advertising agencies that assisted Purina with its challenged public statements and the Honesty website. On June 2, 2014, Blue Buffalo answered Purina's Amended Complaint in this action, and reasserted the same false advertising and defamation claims against Purina by reference to its Complaint in 4:14 cv 920 SNLJ. On June 4, 2014, I consolidated Blue Buffalo's related action with this case, and its claims against Purina and the John Doe advertising agencies became counterclaims. See Court Order of June 4, 2014 [#22].

On September 19, 2015, Blue Buffalo sought leave to amend its complaint and add as counterclaim defendants Blue State Digital and PRCG/Haggerty LLC ("Advertising Defendants"). On November 17, 2014, I granted Blue Buffalo's motion to amend its counterclaim and add the Advertising Defendants. Blue Buffalo filed a First Amended Counterclaim on November 19, 2014. A Second Amended Counterclaim ("SAC") was filed on December 4, 2014. See Answer to Second Amended Complaint and Second Amended Counterclaim [#113].

On January 16, 2015, PRCG/Haggerty and Blue State Digital each filed motions to dismiss Blue Buffalo's SAC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Blue State Digital incorporates and adopts PRCG/Haggerty's briefs in support of its own motion to dismiss, and both Advertising Defendants assert substantially similar arguments in their briefs. Accordingly, for purposes of this Memorandum and Order, I will address both motions together, distinguishing the counterclaim defendants where appropriate.

## Factual Background

Blue Buffalo's SAC alleges that Purina and the Advertising Defendants engaged in false and misleading advertising in violation of Section 43(a) of the Lanham Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1125(a). The SAC also alleges violations of several related state law claims.

Blue Buffalo's counterclaims are based on Purina's advertising campaign and public statements following the filing of this suit. Specifically, Blue Buffalo claims that Purina has launched a "false and disparaging advertising campaign" against Blue Buffalo. The SAC alleges that PRCG/Haggerty "designed and built the advertising campaign." SAC at ¶ 12. "The centerpiece of Nestle Purina's campaign is a website (the "Honesty website"), designed and built by PRCG/Haggerty, that was launched on or about May 6, 2014." Id. at ¶ 33. "The home page of the Honesty website is styled as an open letter to pet owners from Nestlé Purina, describing supposedly deceptive marketing practices by Blue Buffalo." Id. at ¶ 34.

For example, Blue Buffalo alleges that the following statements on the home page of the Honesty website are false or misleading statements regarding Blue Buffalo's products and marketing practices:

> (a) "[T]esting conducted by an independent laboratory revealed that several of Blue Buffalo's top-selling 'Life Protection' pet food products actually contain substantial amounts of poultry by-product meal."
> (b) "Independent testing also shows that Blue Buffalo's 'LifeSource Bits' contain poultry by-product meal and corn."
> (c) "[S]everal Blue Buffalo products promoted as 'grain-free' actually contain

rice hulls, despite Blue Buffalo stating on its website that its 'grain-free' products will 'free your pet from the grains and glutens that cause allergic reactions in some dogs.'"
(d) "Blue Buffalo is not being honest about the ingredients in its pet food."
(e) "99% of Purina pet food sold in the United States is manufactured at Purina's own plants in the United States. By contrast, 100% of Blue Buffalo pet foods is outsourced and made by third-party manufacturers."

Id.

Blue Buffalo also alleges that Purina promoted the Honesty website on its facebook page and on Twitter.  On Purina's facebook page, for example, Purina allegedly posted links to the Honesty website accompanied by statements such as, "Not all pet food companies are honest about the ingredients they use. Get the facts at www.Puri.na.Honesty."  Id. at ¶ 37 (hyperlink truncated).  On Purina's Twitter account, Purina allegedly tweeted links to the Honesty website with text such as, "Is your pet food company being honest about its ingredients?  Find out at Puri.na.Honesty."  Id. at ¶ 38. (hyperlink truncated).  According to the SAC, Blue State Digital "developed the content for these advertisements on Nestlé Purina's Facebook and Twitter accounts and arranged for social media posts relating to PetFoodHonesty.com to be directed to the social media pages of pet food consumers on Facebook and Twitter."  Id. at ¶ 39.

Blue Buffalo alleges that Purina also promotes the Honesty website through certain Google advertisements, and that Blue State Digital "developed the content of advertisements challenged herein" and "arranged for these links to PetFoodHonesty.com to appear when Google.com users search for terms related to Blue Buffalo."  Id. at ¶ 13, 43.  Blue Buffalo claims that the Google links to the Honesty website were accompanied by text such as, "A dog food company is lying about its ingredients.  Learn the facts."  Id. at 43.  The SAC pleads that "[b]ecause these statements appear alongside the search results for Blue Buffalo and its products, they assert that Blue Buffalo is lying about the ingredients in its products."  Id.

## Legal standard

In ruling on a motion to dismiss, I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Fed. R. Civ. P. (12)(b)(6); Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Unlike state courts which often require detailed statements of fact in a petition, the federal rules require only notice pleading. Under Fed. R. Civ. P. 8(a):

> [A] complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.

Romine v. Acxiom Corp., 296 F.3d 701, 711 (8th Cir. 2002).

## Discussion

In their motions to dismiss, the Advertising Defendants argue that (1) Blue Buffalo improperly lumps all counterclaim defendants together, failing the notice pleading standards of Fed. R. Civ. P. 8(a); (2) Blue Buffalo fails to allege that the Advertising Defendants, as opposed to Purina, made the allegedly false or misleading statements; (3) Fed. R. Civ. P. 9(b) applies to Blue Buffalo's counterclaims and requires Blue Buffalo to plead its allegations of fraud with particularity, which it has not done; (4) Under the Lanham Act, advertising agencies are only liable if they were active participants in the preparation of the advertisement and they knew or

had reason to know it was false or deceptive, which Blue Buffalo has not alleged; and finally, (5) Regarding defendant PRCG Haggerty only, it is immune from liability under the Communication Decency Act, 47 U.S.C. § 230 et seq., because it is merely alleged to have built the website, not created the content of the ads. The Advertising Defendants also bring individualized arguments for dismissal of each of the state law claims.

Blue Buffalo opposes the Advertising Defendants' arguments, arguing that (1) Grouping the counterclaim defendants in the SAC is not improper here because the SAC gives the counterclaim defendants sufficient notice of who is alleged to have done what; (2) Advertising agencies may be liable under the Lanham Act if they actively participate in the creation of false or misleading ads for another, so the fact that Purina's name is on the ads is not fatal; (3) There is no "knowing" element in the Lanham Act following the 1988 amendment of the Act, and the cases that suggest there is one were based on older versions of the Act; (4) Rule 9(b) does not apply to the Lanham Act in general, nor should it here because fraud is not an element of a Lanham Act violation; and even if it does apply, there is sufficient detail in the SAC to meet the requirements of Rule 9(b); and finally (5) Immunity under the Communication Decency Act is an affirmative defense that Blue Buffalo is not required to plead around, and, even it were, PRCG/Haggerty is an unprotected "information content provider" under the Act.

A.    The Lanham Act (Count I)

Section 43(a) of the Lanham Act provides:

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The language of the Act creates a cause of action against any person who engages in false advertising. Liability is not limited to direct competitors. <u>See</u> <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1392 (2014) ("It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors.") (emphasis in original). Nor is liability limited to competitors who commission false advertisements. Rather, those who work with competitors to produce false advertisements may also be liable under the Lanham Act. <u>See</u> <u>Noone v. Banner Talent Associates, Inc.</u>, 398 F.Supp. 260, 263 (S.D.N.Y. 1975) (finding that liability could attach to a booking agent co-defendant if he profited from transactions with the principal defendants and knowingly participated in the false advertising).

Unfortunately, there is not much case law discussing the liability of advertising and public relations agencies for Lanham Act false advertising violations. However, a handful of district courts around the county have addressed this issue, and these courts have held that advertising agencies may be liable under the Lanham Act. <u>See</u> <u>Gillette v. Wilkinson Sword, Inc.</u>, 795 F. Supp. 662, 663-64 (S.D.N.Y. 1992) ("The analysis of <u>Noone</u> is sound, and should apply generally to non-principal co-defendants who knowingly participate in false advertising. Thus, advertising agencies are liable under § 43(a) at least where they knowingly participate in the

false advertising.") (citing <u>Noone</u>, 398 F.Supp. at 263); and <u>In re Century 21-RE/MAX Real Estate Adver. Claims Litig.</u>, 882 F. Supp. 915, 924-25 (C.D. Cal. 1994) (holding that "[j]oint tortfeasor liability is available only when the defendant has 'knowingly participated in the creation, development and propagation of the . . . false advertising campaign'") (quoting <u>Gillette</u>, 795 F. Supp. at 664). <u>See also</u> <u>Maybelline Co. v. Noxell Corp.</u>, 813 F.2d 901 (8th Cir. 1987) (reviewing a false advertising claim under the Lanham Act which included advertising agency co-defendants who had carried out the challenged advertising campaign on behalf of Maybelline).

The Advertising Defendants concede that advertising agencies may be liable under the Lanham Act, but argue that such is not the case here because liability will only be found where the agency "was an active participant in the preparation of the ad" *and* "knew or had reason to know that it was false or deceptive." PRCG/Haggerty's Reply Brief at 9 (quoting <u>Gillette</u>, 795 F. Supp. at 664). The Advertising Defendants argue that Blue Buffalo has failed to sufficiently allege either of these elements. Blue Buffalo disagrees that the Lanham Act imposes a scienter or "knowing" requirement.

Although an older version of the Lanham Act included a "knowing" element, Congress amended the Act in 1988 to remove that element. <u>Compare</u> 15 U.S.C. § 1125(a) (1970) ("[A]ny person who shall *with knowledge of the falsity* of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action.") (emphasis added), <u>with</u> 15 U.S.C. § 1125(a) (1988) ("Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce . . . [any] false or misleading representation of fact . . . shall be liable in a civil action . . . .") (effective as of Nov. 1989).

Indeed, courts agree that the elements of a false advertising claim under the current version of the Lanham Act are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

Buetow v. A.L.S. Enterprises, Inc., 650 F.3d 1178, 1182-83 (8th Cir. 2011) (citing United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir.1998).

Despite the clear language of the Lanham Act, the Advertising Defendants argue that the Lanham Act silently imposes a scienter requirement in actions against advertising agencies. The Advertising Defendants cite to Gillette Co. v. Wilkinson Sword, Inc., 795 F. Supp. 662, 663 (S.D.N.Y. 1992), to support their argument. Indeed, the Gillette court held that, "advertising agencies are liable under § 43(a) at least where they knowingly participate in the false advertising." Id. It appears, however, that the Gillette court reached this holding by applying the pre-amendment version of the Lanham Act, which contained the scienter requirement. Although the Gillette court did not explicitly state which version of statute it was applying, it discussed whether the Act should be applied retroactively in an earlier opinion in the same case, and reasoned that there were several reasons not to apply the amendments retroactively to conduct that predated their effective date. Gillette Co. v. Wilkinson Sword, Inc., No. 89 CV 3586, 1992 U.S. Dist. LEXIS 1265, at *10 & n.5, *11 n.6 (S.D.N.Y. Feb. 3, 1992). Thus, it is likely that the language of the holding that limits advertising agency liability to agencies who "knowingly participate in the false advertising," was only included because the pre-amendment version of the

Lanham Act required proof of knowledge for all false advertising claims.  Gillette, 795 F. Supp. at 663.

Advertising Defendants also rely on Century 21 Real Estate Corp. v. RE/MAX S. County for the proposition that there is still a "knowing" requirement for Lanham Act claims against advertising agencies.  882 F. Supp. 915 (C.D. Cal 1994).  Century 21 Real Estate Corp. was decided after Gillette and the 1988 amendment.  In discussing advertising agency liability, the Century 21 Real Estate Corp. court quoted Gillette, holding "[j]oint tortfeasor liability is available only when the defendant has 'knowingly participated in the creation, development and propagation of the . . . false advertising campaign'" Id. at 925 (quoting Gillette, 795 F. Supp. at 664).  The court did not explain its basis for including the "knowing" requirement.  However, since the "knowingly" language came from Gillette, it is likely that this portion of the Century 21 holding is also based on the old version of the Lanham Act.

Congress expressly removed the "knowing" element from the Lanham Act in the 1988 amendment, and the sparse case law cited by the parties has not convinced me that there is still a silent "knowing" requirement for claims against advertising agencies.  As a result, I will not dismiss the complaint against the Advertising Defendants for failure to allege that the Advertising Defendants knew the advertisements they allegedly created were misleading or false.

B.       The Heightened Pleading Requirements of Rule 9(b)

The Advertising Defendants also argue that Blue Buffalo has failed to allege that they actively participated in the creation of any alleged false representation.  Blue Buffalo argues that it has done so by pleading that PRCG Haggerty "designed and built" the Honesty website, and that Blue State Digital "developed the content" of the ads on Purina's facebook & Twitter accounts, arranged for social media posts relating to the Honesty website to be directed to pet

food consumers' facebook & Twitter pages, and "arranged for these links to PetFoodHonesty.com to appear when Google.com users search for terms related to Blue Buffalo."  SAC at ¶ 33-44.

Whether these allegations are sufficient to survive the motion to dismiss depends on the standard under which they must be plead.  The Advertising Defendants contend that Fed. R. Civ. P. 9(b) applies to Blue Buffalo's Lanham Act claim, as well as its state law claims.

Allegations of fraud are subject to a heightened pleading requirement under Federal Rule of Civil Procedure 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To meet Rule 9(b) requirements, a pleading must include "such matters as the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001).  That said, "[t]he special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). Furthermore, the overarching principles of notice pleading dictate that a plaintiff does not need to plead fraud "with complete insight before discovery is complete." Gunderson v. ADM Investor Servs., Inc., 230 F.3d 1363, at *3 (8th Cir. 2000).  As a result, Rule 9(b) does not require a plaintiff to set out specific facts concerning matters that are likely solely known by the defendant.  See, e.g., Abels, 259 F.3d at 921.  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. at 920.  Likewise, courts have recognized that "in cases involving multiple defendants participating in such a systematic scheme to defraud,"

Rule 9(b) is met by "inform[ing] each defendant of the nature of his alleged participation in the fraud." Garrett v. Cassity, No. 4:09CV01252 ERW, 2010 WL 5392767, at *17 (E.D. Mo. Dec. 21, 2010) (citing Vicom, Inc. v. Harbridge Merch. Servs., 20 F.3d 771, 778 (7th Cir.1994)).

It is undisputed that Rule 9(b) does not necessarily apply to Lanham Act claims for false advertising because the elements of a false advertising claim under the Act do not require proof of fraud or mistake. However, the Advertising Defendants argue that Rule 9(b) focuses on and applies to "allegations and averments," rather than "claims." See Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507 (7th Cir. 2007). The Advertising Defendants claim that the allegations and averments in the SAC are so "grounded in fraud," that Rule 9(b) applies. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

There is a split in authority over whether 9(b) applies to Lanham Act claims that are grounded in fraud. See Monsanto Co. v. E. I. DuPont de Nemours & Co., No. 4:09-CV-686, 2012 U.S. Dist. LEXIS 123456, at *15 (E.D. Mo. Aug. 30, 2012) (noting that "courts are divided as to whether Lanham Act False Advertising claims must meet the Rule 9(b) specificity requirement."). The parties cite dozens of authorities demonstrating such a split. Of all the cases cited, however, this Court is only bound by one: In re NationsMart Corp. Sec. Litig., 130 F.3d 309, 314 (8th Cir. 1997). In In re NationsMart Corp. Securities Litigation, the Eighth Circuit held that Rule 9(b) does not apply to §11 Securities Act claims for false statements and misrepresentations because proof of fraud is "not a prerequisite to establishing liability," and it would be unjust to dismiss a case because plaintiffs alleged more than was necessary to recover under the law. Id. at 314-15 ("a pleading standard which requires a party to plead particular facts to support a cause of action that does not include fraud or mistake as an element comports

neither with Supreme Court precedent nor with the liberal system of "notice pleading" embodied in the Federal Rules of Civil Procedure").

These same reasons suggest that Rule 9(b) should not apply here. Proof of fraud is not a prerequisite to establishing liability under the Lanham Act. While Blue Buffalo does include allegations of fraud in its claims against the counter-claim defendants, successful resolution of those claims does not depend on those allegations. As a result, Rule 9(b) does not apply to Blue Buffalo's Lanham Act claim and the claim should not be dismissed for lack of particularity.

Construing the factual allegations in the light most favorable to Blue Buffalo, as I must, I find that Blue Buffalo's Lanham Act claim meets the notice pleading standards of Rule 8(a). Blue Buffalo pleads that there were false and misleading advertisements and statements made about their own products and Purina's products, and attaches or cites to several examples of such statements and advertisements from Purina's Honesty website, facebook page, Twitter account, and Google search results. Blue Buffalo further alleges that the Advertising Defendants participated in the design and creation of those ads. While Blue Buffalo's allegations against the Advertising Defendants are not particularly robust, it would be difficult for Blue Buffalo to plead many additional facts at this time without the benefit of discovery. As noted above, "this simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Romine v. Acxiom Corp., 296 F.3d 701, 711 (8th Cir. 2002).

Furthermore, even if Rule 9(b) did apply to Blue Buffalo's Lanham Act claim, Blue Buffalo has alleged sufficient details to notify the Advertising Defendants of the nature of the claims against them by citing to several specific ads, quoting language from those ads, and noting the dates on which those ads ran.

C.   <u>Grouping the Counterclaim Defendants</u>

The Advertising Defendants argue that Blue Buffalo improperly groups the counterclaim defendants together in the SAC, referring to them collectively as "counterclaim defendants." The Advertising Defendants claim that grouping these separate entities together is contrary to the requirement of Fed. R. Civ. P. 8(a)(2) that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and to the particularity requirements of Fed. R. Civ. P. 9(b).

While there are some circumstances where grouping defendants together in a complaint would deprive the defendants of fair notice of the nature of the claims against it, such is not the case here. <u>See</u> <u>Hudak v. Berkley Group, Inc.</u>, No. 3:13CV89 WWE, 2014 WL 354676 at *4 (D. Conn. Jan. 23, 2014) (holding that, "prior to discovery, plaintiff need not explain the details of each defendant's role" in the alleged joint scheme, and noting that "nothing in Rule 8 prohibits collectively referring to multiple defendants where the Petition alerts defendants that identical claims are asserted against each defendant"). Here, Blue Buffalo brings each of its claims against each of the defendants. As a result, Blue Buffalo has alerted the defendants to the claims against them. Furthermore, because the Advertising Defendants' liability hinges upon work they allegedly did with and on behalf of Purina, there is a basis for bringing each claim against each counterclaim defendant. The SAC provides the Advertising Defendants with sufficient notice of the acts they are alleged to have done, namely, creating and designing the Honesty website (PRCG/Haggerty) as well as the Twitter, facebook, and Google ads (Blue State Digital). As a result, grouping the "counterclaim defendants" together in the SAC does not deprive the Advertising Defendants of notice under Rule 8(a). Additionally, because I have already determined that Rule 9(b) does not apply to the Lanham Act claim, the Advertising Defendants'

arguments based on Rule 9(b) fail.  The extent to which Rule 9(b) applies to any of the state law claims, if at all, will be discussed below.

       D.        <u>Communication Decency Act</u>

PRCG/Haggerty briefly argues that it is immune from liability under the Communication Decency Act ("CDA"), 47 U.S.C. § 230 et seq., because Congress "made the legislative judgment to effectively immunize providers of interactive computer services from liability in tort with respect to material disseminated by them but created by others."  <u>See</u> <u>Blumenthal v. Drudge</u>, 992 F.Supp. 44, 49 (D.D.C. 1998).  PRCG/Haggerty argues that under the CDA, it cannot be liable for the content Purina or anyone else provided for the website.  Blue Buffalo responds that PRCG/Haggerty's argument fails because (1) CDA immunity is an affirmative defense that a plaintiff is not required to plead around, and (2) PRCG/Haggerty is an "information content provider" and accountable under the CDA for the content it created for the Honesty website.

Under the CDA, "the term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).  The CDA does not protect internet "content providers" from responsibility for the content they transmit through the web.  <u>See, e.g.,</u> <u>Hy Cite Corp. v. Badbusinessbureau.com</u>, 418 F. Supp. 2d 1142, 1146, 1148-49 (D. Ariz. 2005) (allegations that defendant produced original content and editorials and created titles to the defamatory reports posted by users of the website were sufficient to survive motion to dismiss).  Blue Buffalo is correct that it is not required to plead around affirmative defenses, and PRCG/Haggerty's defense of immunity is such an affirmative defense.  <u>See, e.g.,</u> <u>Doe v. GTE Corp.</u>, 347 F.3d 655, 657 (7th Cir. 2003).  Furthermore, even if

Blue Buffalo were required to plead around this defense, it has sufficiently alleged that PRCG/Haggerty "designed and built" the advertising campaign challenged in the SAC. SAC at ¶ 12, 33.

E.     <u>State Law Claims</u>

In addition to the Lanham Act claim (Count I), Blue Buffalo brings several related state law claims. Under Missouri common law, Blue Buffalo bring claims for False Advertising (Count II); Unfair Competition (Count III); Injurious Falsehood (Count IV); Defamation (Count V); and Unjust Enrichment (Count VI). Additionally, Blue Buffalo bring claims for Unfair Competition (Count VII) and Defamation (Count VIII) under Connecticut common law. Blue Buffalo also brings a claim for "Violations of Trade Practice Statutes of the Several States" (Count IX).

*False Advertising under Missouri Common Law (Count II)*

The Advertising Defendants argue that Blue Buffalo's claim for false advertising under Missouri common law should be dismissed because Missouri courts have not adopted or recognized such a claim. Although Blue Buffalo argues that this is a recognized claim, a search by this Court has found no case law to support that conclusion.[1] Accordingly, I will dismiss this claim because it is not recognized under Missouri common law.

*Unfair Competition (Count III) and Unjust Enrichment (Count VI) under Missouri Common Law*

The Advertising Defendants argue that Blue Buffalo's claims for unfair competition and unjust enrichment under Missouri common law should be dismissed because Blue Buffalo has failed to plead them with particularity under Rule 9(b). The Advertising Defendants argue that

---

[1] Blue Buffalo cites to a decision from this court to support its argument that courts recognize a claim for false advertising under Missouri common law. <u>See Corizon, Inc. v. Wexford Health Sources, Inc.</u>, No. 4:10 CV 2430 DDN, 2013 WL 3821268 (E.D. Mo. July 23, 2013). However, a review of that opinion and its case file reveals that there were never any claims for false advertising under Missouri common law brought in that case.

these claims are subject to Rule 9(b) because they are "premised upon the same alleged fraudulent conduct as all of the other claims." However, for the reasons stated above, Rule 9(b) does not apply to either of these claims because neither claim requires proof of fraud. See Restatement 3d of Unfair Competition § 1 (unfair competition requires proof that defendant caused harm to plaintiff's commercial relations and that the harm resulted from acts or practices relating to deceptive marketing); Myers v. Sander, No. 4:13CV2192 CDP, 2014 WL 409081, at *8 (E.D. Mo. Feb. 3, 2014) (the elements of unjust enrichment are "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable or unjust circumstances."). As a result, these claims will not be dismissed for lack of particularity.

Furthermore, although the claims against the Advertising Defendants are not as detailed as might be desired, because Blue Buffalo has alleged that the Advertising Defendants designed and created the challenged statements and advertisements, and that these advertisements were used for commercial benefit, they have stated claims for unfair competition and unjust enrichment. See Myers v. Sander, 2014 WL 409081, at *8 (citing Brown v. Kerkhoff, 504 F.Supp.2d 464, 544-45 (S.D. Iowa 2007) (plaintiffs' claim for unjust enrichment was sufficient to withstand 12(b)(6) motion where they alleged they paid chiropractor for unnecessary services)).

*Injurious Falsehood (Count IV) and Defamation (Count V) under Missouri Common Law*

The Advertising Defendants argue that Blue Buffalo's claims for injurious falsehood and defamation under Missouri common law should be dismissed because Blue Buffalo has failed to allege that the Advertising Defendants made any false statements, published such statements, or that they had the requisite intent. They also argue that Rule 9(b) applies to these claims and that they have not been plead with the requisite level of particularity.

Under Missouri common law, a defendant's liability for injurious falsehood is established if "(a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity." State ex rel. BP Products N. Am. Inc. v. Ross, 163 S.W.3d 922, 928 (Mo. 2005) (citing Annbar Assocs. v. Am. Express Co., 565 S.W.2d 701, 706 (Mo. App. 1978).

The elements of a defamation claim under Missouri common law are "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." State ex rel. BP Products N. Am. Inc., 163 S.W.3d at 929 (citing Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 70 (Mo. banc 2000)).

The Advertising Defendants correctly argue that both of these claims include a scienter element. However, Blue Buffalo properly alleges that the counterclaim defendants "knew that their published statements were false, or acted in reckless disregard [or negligence] of the truth or falsity of the statements." SAC ¶ 106, 111. While these allegations are quite general, even under Rule 9(b), "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Additionally, for the same reasons stated in my discussion of the Lanham Act claim, and construing the factual allegations in the light most favorable to Blue Buffalo, I also find that the SAC sufficiently alleges that the Advertising Defendants made the allegedly false statements through their participation in the creation of the Honesty website and social media posts. It is also clear that publication is alleged. The SAC states that "Counterclaim Defendants have published false statements identifying Blue Buffalo," and that they "intended for the publication

of these false statements to result in reputational harm," or "pecuniary harm" to Blue Buffalo. SAC at ¶ 105-6; 109-110. Additionally, throughout the SAC, Blue Buffalo alleges that the challenged statements and advertisements were published on Purina's Honesty website, and on facebook, Twitter, and Google.

*Unfair Competition under Connecticut Common Law (Count VII)*

The Advertising Defendants argue that Blue Buffalo's claim for unfair competition under Connecticut common law should be dismissed because Blue Buffalo has failed to allege that they have misappropriated a commercial or business advantage. The Advertising Defendants base this contention upon Connecticut cases that have held that unfair competition claims must be brought by a "competitor." Since the Advertising Defendants do not compete with Blue Buffalo, they argue that Blue Buffalo's claim against them fails as a matter of law. Blue Buffalo argues that unfair competition under Connecticut common law is based on the same elements of a Lanham Act claim, citing to <u>TYR Sport, Inc. v. TYR Natural Spring Water, Inc.</u>, No. 3:12-CV-761 SRU, 2013 WL 2455925, at *3 (D. Conn. June 5, 2013), and that therefore the claim should not be dismissed for the same reasons argued above.

Under Connecticut common law, "the word 'competition' as used in 'unfair competition' limits coverage to claims by competitors of the insured." <u>QSP, Inc. v. Aetna Cas. & Sur. Co.</u>, 256 Conn. 343, 372 (2001). While direct competition may not be required, "there must be some evidence in the record that the defendant misappropriated a commercial or business advantage." <u>Id.</u> at 371. The Supreme Court of Connecticut has explained that "'competition' connotes an insured's relationship with other persons or entities supplying similar goods or services." <u>Id.</u> at 372.

Because the Advertising Defendants, as advertising and public relations agencies, do not supply "similar goods or services" or compete with Blue Buffalo, a pet food company, they could not have "misappropriated a commercial or business advantage" from Blue Buffalo. The case cited by Blue Buffalo is not to the contrary. In TYR Sport, Inc. v. TYR Natural Spring Water, Inc., No. 3:12-CV-761 SRU, 2013 WL 2455925, at *3 (D. Conn. June 5, 2013), the court considered claims for trademark infringement under the Lanham Act and Connecticut common law. The court summarily stated that, "[t]he test for trademark infringement and unfair competition under Connecticut law is identical to the test under the Lanham Act." Id. There was no allegation or discussion of unfair competition based on false advertising. It is clear that the court's discussion was directed to the trademark infringement context, which is based on a different set of elements than false advertising claims. As a result, I will dismiss Blue Buffalo's counterclaim for unfair competition against the Advertising Defendants.

_Defamation under Connecticut Common Law (Count VIII)_

The Advertising Defendants argue that Blue Buffalo's claim for defamation under Connecticut common law should be dismissed because Blue Buffalo has not alleged that they made and published defamatory statements against Blue Buffalo which identified Blue Buffalo to a third person.

Under Connecticut common law, "[t]o establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." Cweklinsky v. Mobil Chem. Co., 267 Conn. 210, 217, 837 A.2d 759, 763-64 (2004). For the same reasons stated above in my discussion of the defamation claim brought under

Missouri common law, I find that the SAC sufficiently alleges that the Advertising Defendants made and published defamatory statements against Blue Buffalo.

Blue State Digital argues that the First Amendment requires Blue Buffalo to prove that there was "actual malice" in making the allegedly defamatory statements because the subject matter at issue here is a matter of public controversy involving a public company. See New York Times v. Sullivan, 376 U.S. 254 (1964). Blue Buffalo does not dispute that the First Amendment actual malice standard would apply to this context, and Blue Buffalo has not alleged actual malice under this claim. As a result, this claim will be dismissed for failure to allege actual malice. However, I will grant Blue Buffalo leave to amend its claim to allege the requisite actual malice, if it wishes to do so.

### Violations of Trade Practice Statutes of the Several States (Count IX)

In Count IX, Blue Buffalo alleges that the counterclaim defendants "have engaged in misleading, unfair or deceptive acts or practices in the conduct of trade or commerce throughout the United States." Blue Buffalo then summarily lists citations to statutes of twenty-six different states. It is not clear, on the face of the complaint, which violations the counterclaim defendants are alleged to have committed, what the elements of those violations are, or how any of the factual allegations in the SAC constitute a violation under those state statutes. As a result, I cannot say that the claims are plausible or provide the counterclaim defendants with notice of the claims against them. This type of vague pleading is surely insufficient under the standards of Iqbal and Twombly. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570 (2007). As this claim is brought against all the counterclaim defendants, and the pleading defects apply equally to all counterclaim defendants, I will dismiss it as to all counterclaim defendants.

## Conclusion

For the reasons stated above, I will grant in part and deny in part the Advertising Defendants' motions to dismiss. Blue Buffalo's counterclaims in Counts I, III, IV, V, and VI meet the notice pleading standards of Fed. R. Civ. P. 8(a). However, because Blue Buffalo's allegations as to Counts II, VII, VIII, and IX do not state claims upon which relief can be granted, I will dismiss them from the counterclaim as they relate to the Advertising Defendants. Additionally, Count IX is dismissed as to all counterclaim defendants. However, pursuant to Fed. R. Civ. P. 15(a)(2), I will grant Blue Buffalo leave to amend its counterclaim within twenty (20) days of this Order to bring it into conformity with the pleading requirements of Rule 8(a) and the terms of this Order.

Accordingly,

**IT IS HEREBY ORDERED that** PRCG/Haggerty's Motion to Dismiss #[141] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED that** Blue State Digital's Motion to Dismiss #[143] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED that** Blue Buffalo shall file an amended counterclaim within twenty (20) days of this Order to bring it into conformity with the terms of this Order and the pleading requirements of Rule 8(a).


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 20th day of April, 2015.