UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NESTLÉ PURINA PETCARE COMPANY, )<br>)<br>Plaintiff/Counterclaim Defendant, )<br>)<br>vs. )<br>)<br>THE BLUE BUFFALO COMPANY LTD., )<br>)<br>Defendant/Counterclaim Plaintiff, )<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯<br>AND RELATED ACTIONS )<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | Case No. 4:14 CV 859 RWS |

## **MEMORANDUM AND ORDER**

This matter is before me on third-party defendant Wilbur-Ellis' motion to dismiss the Blue Buffalo Company, Ltd.'s claims against. Blue Buffalo's third-party claims against Wilbur-Ellis arise out of an underlying action in which Nestle Purina Petcare Company alleges that Blue Buffalo falsely advertised its pet foods as free of poultry by-product meal in violation of the Lanham Act, 15 U.S.C. § 1125. Blue Buffalo now admits that poultry by-product was in some of its pet foods. However, it claims that its ingredient supplier, Wilbur-Ellis, and ingredient broker, Diversified Ingredients, deceived Blue Buffalo when they sold it by-product meal instead of chicken and turkey meal. Blue Buffalo brings third-party claims against Wilbur-Ellis and Diversified, alleging that the ingredient suppliers are liable to it for indemnity and contribution for any harm Blue Buffalo is found to have committed against Purina, as well as for additional damages under theories of breach of contract, breach of warranty, fraud, misrepresentation, negligence, unjust enrichment, unfair competition, and other statutory violations.

Wilbur-Ellis now moves to dismiss Claims 4 – 7 and 10 – 12 under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, I will grant in part and deny in part Wilbur-Ellis' motion to dismiss.

**Legal Standard**

In ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While a court must accept factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Carton v. Gen. Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (internal citations omitted).

**Discussion**

Wilbur-Ellis argues that I should dismiss certain of Blue Buffalo's third-party claims against it because a) the economic loss doctrine bars Blue Buffalo's tort claims arising out the parties' contractual relationship, b) Blue Buffalo's claims under California's Unfair Competition Law lack a sufficient nexus to California, and c) Blue Buffalo cannot seek indemnity or contribution for any Lanham Act liability as a matter of law.

A. Choice of Law and the Economic Loss Doctrine

Wilbur-Ellis argues that I should dismiss Blue Buffalo's third-party claims for intentional/fraudulent misrepresentation (Claim 4), negligent misrepresentation (Claim 5), fraud in the inducement (Claim 6), and negligence (Claim 7) because they are barred by the economic loss doctrine under Missouri law. Blue Buffalo contends that I should not dismiss these claims because there is a choice of laws issue that is not yet ripe for review. Blue Buffalo also argues that even if there were no choice of law issue, application of the economic loss doctrine is premature because I must determine the enforceability and scope of the contracts as a threshold issue, which is in dispute. Despite Wilbur-Ellis' arguments otherwise, I agree with Blue Buffalo that dismissal of these claims would be premature at this stage of the case and as a result I will deny Wilbur-Ellis' motion to dismiss these claims *without* prejudice.

As the forum state, Missouri's choice of law rules govern the determination of which state's laws apply. Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH, 495 F.3d 582, 585 (8th Cir. 2007). Under Missouri law, the first step in a choice of law analysis is to examine whether the different states' laws at issue actually conflict. Leisman v. Archway Med., Inc., 53 F. Supp. 3d 1144, 1147 (E.D. Mo. 2014). Blue Buffalo argues that Texas or California law, rather than Missouri law, likely applies to Blue Buffalo's claims against Wilbur-Ellis.

1. *Conflict of Law Analysis*

   a. Intentional Tort Claims

Here, there is a conflict between how Missouri courts and California and Texas courts apply the economic loss doctrine to intentional torts. In Missouri, the economic loss doctrine bars fraud-related claims that seek to recover for economic losses unless the claims are based on

3

misrepresentations that are independent of the contract. AKA Distrib. v. Whirlpool Corp., 137 F.3d 1083, 1086 (8th Cir. 1998). By contrast, Texas courts have held that intentional fraud claims, even when only seeking "purely economic losses identical to those recoverable under a breach of contract theory" and based on misrepresentations covered by the contract are not barred because "there is an independent legal duty not to commit the *intentional* tort of fraud." Eastman Chem. Co. v. Niro, Inc., 80 F. Supp. 2d 712, 717 (S.D. Tex. 2000) (emphasis in original). Likewise, California courts will not bar tort claims for economic losses based on alleged misrepresentation of contract terms for fraud claims that are independent actions based in tort. See Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 993 (2004). As a result, the states' different treatment of the economic loss doctrine creates a choice of law issue impacting Blue Buffalo's claims for intentional/fraudulent misrepresentation (Claim 4) and fraud in the inducement (Claim 6) against Wilbur-Ellis.

      b. Negligence Claims

Blue Buffalo has alleged its negligence claims under two theories: first, that Wilbur-Ellis was negligent in connection with representations made regarding its contracts with Wilbur-Ellis, and second (and in the alternative), that Wilbur-Ellis was negligent in connection with representations made regarding Wilbur-Ellis' contracts with Diversifed, to which Blue Buffalo was an alleged third-party beneficiary.

To the extent that Blue Buffalo's claims for negligent misrepresentation and negligence are based on representations around the formation of and in the text of the contracts between Blue Buffalo and Wilbur-Ellis, there is no choice of law issue. Missouri, California, and Texas all bar recovery for negligence claims when the claims are based in contract and there is no economic injury independent of contract damages. See D.S.A., Inc. v. Hillsboro Indep. Sch.

4

Dist., 973 S.W.2d 662, 663 (Tex. 1998); Dubinsky v. Mermart, LLC, 595 F.3d 812, 819 (8th Cir. 2010); Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 993 (Cal. 2004). As a result, if, upon review of the contracts, I determine that Blue Buffalo's negligence claims are based in contract and there is no economic injury independent of contract damages, they will be barred.

To the extent Blue Buffalo's negligence claims are based on the theory that it was a third-party beneficiary to Wilbur-Ellis' and Diversified's contracts, there is a choice of law issue. As discussed above, all three states bar recovery for negligence claims when the claims are based in contract and there is no economic injury independent of contract damages. See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist., 973 S.W.2d 662, 663 (Tex. 1998); Dubinsky v. Mermart, LLC, 595 F.3d 812, 819 (8th Cir. 2010). However, California recognizes an exception to the economic loss doctrine when there is a "special relationship" present. See Platte Anchor Bolt, Inc. v. IHI, Inc., 352 F. Supp. 2d 1048, 1056 (N.D. Cal. 2004). Under California's special relationship exception, "a defendant's negligent performance of a contractual obligation resulting in damage to the property or economic interests of a person *not in privity* [can] support recovery if the defendant was under a duty to protect those interests." Id. at 1052 (citing Aas v. San Diego Cty. Superior Ct., 24 Cal.4th 627, 643–44 (2000)) (internal citations omitted) (emphasis added). As a result, there is a choice of law issue regarding Blue Buffalo's negligence claims brought under its alternative theory.

*2. Choice of Law Analysis*

Ordinarily, once it is established that there is a choice of law issue, the next step is to determine which state's law applies. When tort claims are at issue, the applicable law is "the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties." Thompson by Thompson v. Crawford, 833 S.W.2d 868, 870 (Mo.

5

1992) (citing Restatement (Second) of Conflict of Laws § 145, (1971)). To determine which state has the most significant relationship, Missouri courts must consider: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Id. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." Id.

Here, Blue Buffalo alleges that Wilbur-Ellis defrauded it by representing that it had quality control expertise and by providing Blue Buffalo with non-conforming product during contract negotiations and performance of the contract. Thus, the contacts to be evaluated are those surrounding the parties' behavior during contract negotiation and during performance of the contract. The relevant currently-known facts, as alleged by the parties, are that Wilbur-Ellis' plant is located in Rosser, Texas; Wilbur-Ellis is incorporated and headquartered in California; Wilbur-Ellis' contract documents with Diversified contain a purported California choice of law clause; Diversified is a Missouri company; and Blue Buffalo alleges that it suffered injury due to, among other things, its being subject to potential liability in this action and the multi-district litigation actions brought by consumers, which have been consolidated for common pre-trial discovery in this Court in the Eastern District of Missouri.

The existing factual record is insufficient to resolve a choice of law issue. In particular, I am unable to determine the place where the injury occurred and the place where the conduct causing the injury occurred. As a result, a choice of law determination would be premature.

    *3. Economic Loss Doctrine Analysis*

Additionally, even if I were to find that a choice of law analysis was appropriate at this time, resolution of the ultimate question of whether Blue Buffalo's claims should be dismissed

based on the economic loss doctrine would also be premature. As discussed above, application of the economic loss doctrine depends on whether the tort claims are independent from the bargains the parties struck in their contracts. Accordingly, a threshold issue in any analysis concerning the economic loss doctrine is whether the parties entered into an enforceable contract, and if so, what the contract terms provide. See, e.g., Tension Envelope Corp. v. JBM Envelope Co., No. 14-567-CV-W-FJG, 2015 WL 893242, at *14 (W.D. Mo. Mar. 3, 2015).

The enforceability and scope of Blue Buffalo's contracts with Wilbur-Ellis are in dispute. Blue Buffalo alleges that it had a direct contractual relationship with Wilbur-Ellis because Wilbur-Ellis signed Blue Buffalo's specifications and other documents concerning Blue Buffalo's ingredients. These contracts, however, are not before me. Therefore, I cannot determine whether they are enforceable and if so, what the scope of the contract is.

Blue Buffalo also alleges that it is a third-party beneficiary of Diversified's contracts with Wilbur-Ellis. Blue Buffalo argues that Wilbur-Ellis and Diversified each prepared their own contracts for every shipment of ingredients, and therefore it is unclear which version governs. Blue Buffalo attached an example of two of these contracts (one prepared by Wilbur-Ellis, one by Diversified) to its brief. See [#411] Exs. 1-2. A review of these two sample contracts reveals that there are conflicting terms in the contracts. For example, while Diversified's contract is silent on the issue of exposure to damages, Wilbur-Ellis' contract purports to limit Wilbur-Ellis's exposure to damages. And while Diversified's contracts state that Missouri law applies, Wilbur-Ellis's contracts specify that they are governed by the law of California.

Although Blue Buffalo's negligence claims, and possibly its intentional tort claims, might ultimately be barred by the economic loss doctrine, I cannot determine the threshold issue of enforceability and scope of the contracts at issue as a matter of law at this stage of the case.

7

Under the appropriate standards, I find that Blue Buffalo has stated a plausible claim for relief.[1] As a result, I will deny *without* prejudice Wilbur-Ellis' motion to dismiss as it relates to Blue Buffalo's third-party claims for intentional/fraudulent misrepresentation (Claim 4), negligent misrepresentation (Claim 5), fraud in the inducement (Claim 6), and negligence (Claim 7) against Wilbur-Ellis.

B. <u>California's Unfair Competition Law</u>

Section 17200, California's Unfair Competition Law, California Business & Professions Code ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 *et seq*.)]." Cal. Bus. & Prof. Code § 17200. Wilbur-Ellis argues that Blue Buffalo's claim under the UCL should be dismissed because Blue Buffalo, an out-of-state party, only alleges conduct and injury occurring outside of California.

The UCL allows non-California plaintiffs to bring a claim under the UCL when the alleged misconduct or injuries occurred in California. <u>Gross v. Symantec Corp.</u>, No. C 12-00154 CRB, 2012 WL 3116158, at *6 (N.D. Cal. July 31, 2012). However, "[a]pplication of California state law is impermissible where the alleged misconduct 'simply has no connection to California.'" <u>Id.</u> (citing <u>Safjr v. BBG Commc'ns, Inc.</u>, No. 10–2341, 2012 WL 398991, at *4 (S.D. Cal. Jan.10, 2012)).

A review of the complaint reveals that Blue Buffalo has failed to allege any conduct or specific injury in California. The only allegation Blue Buffalo makes about California in the complaint is that Wilbur-Ellis is incorporated and headquartered in California. <u>See</u> Compl. ¶ 141

---

[1] Wilbur-Ellis briefly argues that Fed. R. Civ. P. 9(b) applies to Blue Buffalo's fraud and negligent misrepresentation claims. Rule 9(b) requires a party alleging fraud to plead "such facts as the time, place, and content of the defendant's false representations." Even under the heightened standard of Rule 9(b), I find that Blue Buffalo has stated a claim.

8

[#271]. Other courts have held that this type of allegation does not plausibly allege "that the unlawful conduct emanated from that location." Gross, No. C 12-00154 CRB, 2012 WL 3116158 at *7. I agree.

The remainder of Blue Buffalo's allegations about Wilbur-Ellis describe conduct occurring at Wilbur-Ellis' plant in Rosser, Texas, and injuries occurring in Missouri and Connecticut. Blue Buffalo argues in its opposition brief that its UCL claim should not be dismissed because it is unclear how much of the allegedly fraudulent scheme was conceived or carried out at Wilbur-Ellis headquarters in California. However, to state a plausible claim under the UCL, Blue Buffalo must allege *in its complaint* that there was a sufficient nexus to California.[2] This it has not done. As a result, Blue Buffalo has failed to state a plausible claim for relief under the UCL, and this claim will be dismissed *without* prejudice.

C. Indemnity and Contribution Claims

Wilbur-Ellis argues that there is no right to indemnity or contribution for Lanham Act claims. Despite Blue Buffalo's policy argument otherwise, I agree with Wilbur-Ellis that Blue Buffalo's claims for indemnity and contribution for its alleged violation of the Lanham Act are barred as a matter of law. There is no federal common law right to indemnity or contribution under which Blue Buffalo can assert claims for its potential Lanham Act liability. Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d 10, 16 (2d Cir. 1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989). Additionally, there is no express right of contribution or indemnity under the Lanham Act. See id. at 16; 15 U.S.C. § 1117. Other courts have addressed the question of whether a right to contribution is impliedly permitted by the Lanham Act and have held that they are not. See, e.g., Wagner v. Circle W. Mastiffs, No. 2:08-

---

[2] Because I determine that Blue Buffalo has failed to plausibly allege a violation of the UCL, I need not, and therefore will not, address the other arguments Wilbur-Ellis advances for the dismissal of this claim.

9

CV-00431, 2010 WL 1009904, at *9 (S.D. Ohio Mar. 12, 2010) (compiling cases); Getty Petroleum Corp., 862 F.2d 10, 16 (2d Cir. 1988), cert. denied, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989); Santana Products, Inc. v. Bobrick Washroom Equip., Inc., 69 F. Supp. 2d 678, 684, 687 (M.D. Pa. 1999). I agree with the reasoning in these cases and will also decline to imply a right to indemnity or contribution with respect to Purina's Lanham Act claim against Blue Buffalo.

Wilbur-Ellis also argues that Blue Buffalo may not obtain indemnity or contribution for any liability it is found to have under Purina's claims for unjust enrichment and unfair competition under Missouri common law because they are intentional torts. Under what is sometimes called the "intentional misconduct rule," Missouri courts prohibit claims for contribution or indemnity among willful joint tortfeasors. Missouri Pac. R. Co. v. Whitehead & Kales Co., 566 S.W.2d 466, 469 (Mo. 1978). However, when the underlying causes of action are "broad enough to encompass both intentional and negligent conduct," the intentional misconduct rule might not apply. See Charter Express, Inc. v. United S. Assur. Co., 1990 US. Dist. LEXIS 10301, at *4 (W.D. Mo. July 30, 1990).

Here, Purina's claims against Blue Buffalo for unjust enrichment and unfair competition are pleaded broadly enough to encompass both intentional and negligent conduct. Moreover, at this stage of the case, I must accept Blue Buffalo's factual allegations as true, including its allegation that that the byproduct was in its food without its knowledge or intent. Additionally, the extent or basis of Blue Buffalo's potential liability on these claims is yet to be determined. As a result, I cannot say that Blue Buffalo has failed to state a claim for indemnity or contribution for Purina's unjust enrichment and unfair competition claims.

Accordingly,

**IT IS HEREBY ORDERED** that Wilbur-Ellis' motion to dismiss [392] is **GRANTED** in part and **DENIED** in part. Blue Buffalo shall file an amended third-party complaint no later than **September 25, 2015** in accordance with the terms of this Order.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of September, 2015.