UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NESTLÉ PURINA PETCARE COMPANY, | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| vs. | ) Case No. 4:14 CV 859 RWS |
| | ) |
| THE BLUE BUFFALO COMPANY LTD., | ) |
| | ) |
| Defendant/Counterclaim Plaintiff, | ) |
| | |
| AND RELATED ACTIONS | ) |

## MEMORANDUM AND ORDER

This false advertising pet food case is before me on two motions to dismiss: Diversified Ingredients' motion to dismiss the third-party complaint of Wilbur-Ellis Company, and David Dressel, Dean H. Hiller and Edward J. Wanner (the "Individual Defendants")'s motion to dismiss the third-party complaint of Wilbur-Ellis. The Individual Defendants are Diversified's owners, officers, and directors, and are being sued on a piercing the veil theory. The issues are fully briefed and ready for review.[1] For the reasons that follow, I will grant in part and deny in part Diversified's motion to dismiss, and I will grant the Individual Defendants' motion to dismiss.

## Background

Plaintiff Nestle Purina Petcare Company brought this case against The Blue Buffalo Company, alleging that Blue Buffalo falsely advertises its pet foods as free of poultry byproduct

---

[1] On September 15, 2016, I granted in part Wilbur-Ellis, Diversified Ingredients, and the Individual Defendants' consent motion to give effect to pleadings and motions affected by Diversified Ingredients' renewed third-amended crossclaim. *See* Order #[1014]. As a result, while Blue Buffalo and Diversified have filed amended answers/complaints since these motions were filed, because the substance of the claims at issue have not changed, my rulings in this Memorandum and Order will apply to the current, operative pleadings.

meal and meeting other nutritional claims in violation of the Lanham Act, 15 U.S.C. § 1125. Blue Buffalo has since admitted that poultry byproduct was in some of its pet foods. However, Blue Buffalo claims that its ingredient supplier, Wilbur-Ellis, and ingredient broker, Diversified Ingredients, deceived Blue Buffalo when they sold it byproduct meal instead of high quality chicken and turkey meal. Blue Buffalo has brought several third-party claims against Diversified and Wilbur-Ellis, and alleges that they are liable for Blue Buffalo's damages, among other things.

After being joined in the case, Diversified brought crossclaims against Wilbur-Ellis, alleging that it was unknowingly defrauded by Wilbur-Ellis, and that Diversified believed it had been procuring and delivering byproduct-free poultry meal to Blue Buffalo. Wilbur-Ellis has since filed its own crossclaims against Diversified, arguing that Wilbur-Ellis provided poultry "blends" in accordance with its contracts, and alleging that Diversified did and should have known Wilbur-Ellis was providing it with product that contained byproduct. Wilbur-Ellis further alleges that Diversified mislabeled the byproduct meal as poultry meal when it re-sold it to Blue Buffalo. Wilbur-Ellis seeks indemnity and contribution from Blue Buffalo for any liability it is found to owe to Blue Buffalo.

Wilbur-Ellis has also brought third-party claims against the Individual Defendants, arguing that they are the alter ego of Diversified, and piercing the corporate veil is warranted so that Wilbur-Ellis may collect against the Individual Defendants for any judgment for which Diversified may be found liable.

## Legal Standard

In ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to the

plaintiff. *Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While a court must accept factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citations omitted). Unlike state courts which often require detailed statements of fact in a petition, however, the federal rules require only notice pleading. Under Fed. R. Civ. P. 8(a):

> [A] complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.

*Romine v. Acxiom Corp.*, 296 F.3d 701, 711 (8th Cir. 2002).

## Discussion

A. <u>Intentional Tortfeasor Rule</u>

In Counts 1 and 2, Wilbur-Ellis seeks contribution and equitable indemnity from Diversified for any harms to Blue Buffalo for which Wilbur-Ellis is found liable and for which Diversified is also at fault.

Diversified argues that Wilbur-Ellis is not entitled to contribution or equitable indemnity for any underlying intentional conduct because such recovery is barred by the intentional

3

misconduct rule. Under the "intentional misconduct rule," Missouri courts prohibit claims for contribution or indemnity among willful joint tortfeasors. *Missouri Pac. R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 469 (Mo. 1978). As a result, Diversified argues that Wilbur-Ellis' claims for contribution and indemnity that stem from Blue Buffalo's underlying claims of intentional/fraudulent misrepresentation and fraud in the inducement should be dismissed. Diversified also seeks dismissal of Wilbur-Ellis' contribution claim to the extent it seeks contribution for any intentional conduct Wilbur-Ellis is found to have committed under the Connecticut Unfair Trade Practices Act ("CUPTA").[2]

Wilbur-Ellis argues that there is a choice of law issue making a decision on this question premature because it is not yet decided whether Missouri or California law should apply to this dispute, and while it is undisputed that Missouri courts apply the intentional misconduct rule, Wilbur-Ellis argues that California courts do not. Wilbur-Ellis is correct that there is a difference between California and Missouri law because California permits intentional tortfeasors to recover in *equitable indemnity* against other intentional tortfeasors. *Baird v. Jones*, 21 Cal. App. 4th 684, 691 (1993). Wilbur-Ellis has not provided any authority, however, and I have not found any, to suggest that California courts allow intentional tortfeasors to recover *contribution* from other intentional tortfeasors. In fact, the opposite is true – in California, there is no right to contribution in favor of any tortfeasor who has committed an intentional tort. Cal. Civ. Proc. Code § 875 (West).

As a result, there is no conflict or choice of law issue regarding Wilbur-Ellis' claim for contribution. Because both Missouri and California law provide that intentional tortfeasors may not recover contribution from other intentional tortfeasors, Wilbur-Ellis' claims for contribution

---

[2] Diversified does not challenge Wilbur-Ellis' contribution claim to the extent it seeks contribution for negligent conduct. *See* Diversified's Reply [#979] at 3.

for any underlying intentional torts it is found to have committed are barred as a matter of law and will be dismissed. This includes the CUPTA claim to the extent a finding of liability under CUPTA is based on intentional conduct.

As Wilbur-Ellis argues, however, when the underlying causes of action are "broad enough to encompass both intentional and negligent conduct," the intentional misconduct rule might not apply. *See Charter Express, Inc. v. United S. Assur. Co.*, 1990 US. Dist. LEXIS 10301, at *4 (W.D. Mo. July 30, 1990). In keeping with this principle, my ruling is limited as follows. To the extent the claims encompass negligent conduct, they will remain. To the extent they are based on intentional conduct, which is clearly the case for the underlying intentional torts discussed above, they will be dismissed.

As discussed above, there is a conflict in the laws of Missouri and California on whether an intentional tortfeasor may recover *equitable indemnity* from another tortfeasor, as Missouri courts do not and California courts do allow such recovery.[3] *Missouri Pac. R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 469 (Mo. 1978); *Baird v. Jones*, 21 Cal. App. 4th 684, 691 (1993). Determining which state's law applies to these disputes depends upon which state has "the most significant relationship to the occurrence and the parties," which requires factual determinations. *Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. 1992) (citing Restatement (Second) of Conflict of Laws § 145, (1971)). For the same reasons stated in the Court's Memorandum and Order of September 8, 2016, [#450] at 5-6, I am unable to determine, based on the existing factual record, whether Missouri or California law should apply to this claim. As

---

[3] While Blue Buffalo has never brought claims for intentional misconduct against Diversified, Wilbur-Ellis has alleged that Diversified acted intentionally to mislabel the byproduct meal as poultry meal, which is sufficient at this stage to support its claim for equitable indemnity.

a result, a choice of law determination would be premature and I will not dismiss Wilbur-Ellis' equitable indemnity claim based on the intentional tortfeasor rule at this time.

B. Sufficiency of the Pleadings (Counts 2 and 3 against Diversified)

*1. Contribution*

Diversified also briefly argues that Wilbur-Ellis' claims for contribution should be dismissed because Wilbur-Ellis has not sufficiently pleaded that Diversified is originally liable to Blue Buffalo. To support this argument, Diversified cites to three paragraphs under Count 1 (Contribution) in Wilbur-Ellis' crossclaim. A review of the crossclaim as a whole, however, shows that Wilbur-Ellis has alleged that Diversified is originally liable to Blue Buffalo for alleged negligent conduct and misrepresentations to Blue Buffalo. *See* Wilbur-Ellis Compl., [#849] at ¶¶ 216-17, 254. This is sufficient to state a claim for contribution under federal notice pleading standards. *Romine v. Acxiom Corp.*, 296 F.3d 701, 711 (8th Cir. 2002).

*2. Equitable Indemnity*

Diversified also argues that Wilbur-Ellis' equitable indemnity claim should be dismissed as insufficiently pleaded. Diversified argues that Wilbur-Ellis has failed to allege that Diversified and Wilbur-Ellis owed identical obligations to Blue Buffalo or the existence of a special relationship or circumstances justifying equitable indemnity. Diversified also contends that because a contract exists between the parties, any claim for equitable indemnity is barred. Finally, Diversified argues that Wilbur-Ellis cannot recover equitable indemnity because it has unclean hands.

"[I]ndemnity is a right which inures to a person who has discharged a duty which is owed by him, but which, as between himself and another, should have been discharged by the other, so

that if the second does not reimburse the first, the second is unjustly enriched to the extent that his liability has been discharged.*" Glob. Petromarine v. G.T. Sales & Mfg., Inc.*, 577 F.3d 839, 846 (8th Cir. 2009) (quoting *State ex rel. Manchester Ins. & Indem. Co. v. Moss,* 522 S.W.2d 772, 774 (Mo.1975) (en banc)). To establish a claim for equitable indemnity, a plaintiff must prove:

> (1) the discharge of an obligation by the plaintiff; (2) the obligation discharged by the plaintiff is identical to an obligation owed by the defendant; and (3) the discharge of the obligation by the plaintiff is under such circumstances that the obligation should have been discharged by the defendant, and defendant will be unjustly enriched if the defendant does not reimburse the plaintiff to the extent that the defendant's liability has been discharged.

*Beeler v. Martin*, 306 S.W.3d 108, 111 (Mo. Ct. App. 2010) (internal quotations and citations omitted).

After reviewing Wilbur-Ellis' crossclaim as a whole, I find that Wilbur-Ellis has stated a claim for equitable indemnity under federal notice pleading standards. First, Wilbur-Ellis has pleaded identical obligations based on the parties' potential obligations to Blue Buffalo for its overlapping claims against Wilbur-Ellis and Diversified, alleging that both parties promised to provide Blue Buffalo with high quality poultry meal, that both failed to do so, Blue Buffalo was harmed by these failures, and Blue Buffalo seeks indemnity from both parties for these harms. Second, Wilbur-Ellis' claim also sufficiently alleges the existence of special circumstances, both based on the nature of the case as a whole and because it alleges that Wilbur-Ellis was dependent upon Diversified, as the ingredient broker, to make sure its product was not mislabeled once it left Wilbur-Ellis' facilities.

Diversified's other arguments for dismissal of the claim for equitable indemnity also fail at this stage of the case. Diversified argues that the existence of a contract between Diversified and Wilbur-Ellis bars the claim for equitable relief. As Wilbur-Ellis argues, however, the duty

7

Diversified allegedly breached, as pleaded, does not stem from the contract Diversified is alleged to have with Wilbur-Ellis – it is the duty Diversified allegedly owed to Blue Buffalo to provide it with conforming and accurately labeled ingredients. Likewise, Diversified's argument that Wilbur-Ellis' unclean hands bars any claim to equitable indemnity must fail because such a finding would require me to assume that Blue Buffalo's and Diversified's allegations are true, an entirely inappropriate assumption given that in reviewing Wilbur-Ellis' motion to dismiss I must take Wilbur-Ellis' factual allegations to be true.

As a result, I find that Wilbur-Ellis has sufficiently pleaded its claim for equitable indemnity under federal notice pleading standards and I will not dismiss it for failure to state a claim.

### C. Piercing the Corporate Veil (Count 3 against the Individual Defendants)

Wilbur-Ellis' sole claim against the Individual Defendants is one for piercing the corporate veil. Wilbur-Ellis alleges that the Individual Defendants, as Diversified's owners and operators, have kept Diversified on the brink of insolvency to protect Diversified's assets from the reach of its potential creditors. Accordingly, Wilbur-Ellis argues that it should be able to pierce Diversifeid's corporate veil if Diversified is found to be liable to Wilbur-Ellis for indemnity and contribution but uses its undercapitalized state to shield the company from any such judgment.

The Individual Defendants argue that Diversified has failed to state a claim for piercing the veil and that it should be dismissed.

Missouri law presumes that corporations are separate entities, and courts do not lightly disregard the corporate form to hold one corporation liable for the behavior of another. *Mid-Missouri Tel. Co. v. Alma Tel.*, 18 S.W.3d 578, 582 (Mo. Ct. App. 2000); *Hibbs v. Berger*, 430

S.W.3d 296, 306 (Mo. Ct. App. 2014). However, "[a] court may, pursuant to its equitable powers, 'disregard the separate legal entity of the corporation and the individual where the separateness is used as a subterfuge to defraud a creditor.'" *Fleming Companies, Inc. v. Rich*, 978 F. Supp. 1281, 1302–03 (E.D. Mo. 1997) (citing *Gevers Heating & Air Conditioning v. R. Webbe Corp.,* 885 S.W.2d 771, 773 (Mo.App.1994) (internal quotations omitted). Missouri courts will "pierce the corporate veil" and hold a defendant liable for the torts of another corporation under the "instrumentality" or "alter ego" rule if the plaintiff can establish:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Radaszewski v. Telecom Corp.*, 981 F.2d 305, 306 (8th Cir. 1992) (citing *Collet v. American Nat. Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. Ct. App. 1986).

"In order to determine whether or not the corporate veil should be pierced, the courts consider a number of different indicators which they believe 'justify the inference that they [the indicators] occurred for an improper purpose.'" *Fleming Companies, Inc. v. Rich*, 978 F. Supp. 1281, 1303 (E.D. Mo. 1997) (internal citations and quotations omitted). "These indicators include but are not limited to, operating a corporation without sufficient funds to meet its obligations, the transfer by the debtor corporation of its property to a second corporation when both are controlled by the same person, and/or the manipulation or stripping of assets to avoid the demands of creditors. *Id.* (internal citations omitted).

Here, assuming that the challenged "wrong" that Wilbur-Ellis argues justifies piercing the veil is Diversified's alleged mislabeling of the poultry byproduct meal as poultry meal, Wilbur-Ellis has failed to sufficiently allege the requisite elements of control and proximate cause. As stated above, before a court will take the drastic measure of piercing the corporate veil, the plaintiff must establish that the entity it wishes to reach had "[c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *Radaszewski v. Telecom Corp.*, 981 F.2d 305, 306 (8th Cir. 1992). Moreover, the entity's "control and breach of duty must proximately cause the injury or unjust loss complained of." *Id.*

Even when taking Wilbur-Ellis' factual allegations to be true, Wilbur-Ellis's claim fails because it never alleges that the Individual Defendants themselves controlled anything other than Diversified's finances. There is simply no allegation that the Individual Defendants controlled Diversified's business practices or policies, let alone that they had "complete domination" of Diversified's business decisions "in respect to the transaction attacked." *Id.* In fact, the only individual Wilbur-Ellis alleges to have engaged in the allegedly harmful transaction is not one of the named Individual Defendants but rather, a separate Diversified employee.

In its opposition, Wilbur-Ellis argues the wrong that justifies piercing the veil is that Diversified is undercapitalized and will not satisfy any judgment that might be entered against it. First, a review of the complaint demonstrates that the true harm Wilbur-Ellis alleges it has suffered is that Diversified is responsible for mislabeling its product before re-selling it to Blue Buffalo. Second, even an allegation that the harmful transaction is the fact that Diversified is undercapitalized fails because Wilbur-Ellis has not pleaded facts supporting such a conclusion.

Wilbur-Ellis alleges that Diversified is undercapitalized because the Individual Defendants have retained the company's earnings that were in excess of what the company needed to maintain its operations budget.  Wilbur-Ellis also alleges that the Individual Defendants then loan capital back to Diversified as needed and at interest.  Wilbur-Ellis then argues that there could be no reason for such actions except to profit the Individual Defendants and to shield money from potential creditors.  As the Individual Defendants argue, however, and Wilbur-Ellis concedes, such behavior does not violate any statutory or other legal provision.  Nor is such behavior inconsistent with how S-corporations may operate under corporate or tax laws.  Moreover, Wilbur-Ellis' allegations on this point are wholly hypothetical.  There is no allegation that Diversified has defrauded or failed to satisfy any debts, including to Wilbur-Ellis.  Taken in the context of Wilbur-Ellis' claims for indemnity and contribution, which are also purely hypothetical and depend upon not only Blue Buffalo being held liable to Purina, but also on Blue Buffalo prevailing on its claims for contribution and indemnity against Wilbur-Ellis, Wilbur-Ellis' allegations for piercing the veil are insufficient to state a plausible claim that it is entitled to such relief.

For these reasons, Wilbur-Ellis has failed to state a claim for piercing the corporate veil against the Individual Defendants.  As a result, I will dismiss Wilbur-Ellis' claim for piercing the veil, and will dismiss *without prejudice* the Individual Defendants from this suit.

Accordingly,

**IT IS HEREBY ORDERED** that Diversified Ingredients' Motion to Dismiss Third-party Complaint of Wilbur-Ellis #[921] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that David Dressel, Dean H. Hiller and Edward J. Wanner's Motion to Dismiss the Third-party Complaint of Wilbur-Ellis #[919] is **GRANTED**.

David Dressel, Dean H. Hiller and Edward J. Wanner shall be **DISMISSED** from this suit without prejudice.

**IT IS FURTHER ORDERED** that Wilbur-Ellis shall file an amended third-party complaint to bring it into compliance with the terms of this Memorandum and Order **no later than October 10, 2016**.

_/s/ Rodney W. Sippel_
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2016.