UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BLUE BUFFALO COMPANY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  4:14 CV 859 RWS |
| | ) | |
| WILBUR-ELLIS COMPANY, LLC and, | ) | |
| DIVERSIFIED INGREDIENTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | | |
| | | |
| AND RELATED ACTIONS | ) | |

## ORDER AND MEMORANDUM

This matter is before me on Blue Buffalo's Motion for Leave to Amend Its

Complaint [1325].  I address Diversified Ingredients' (Diversified) Motion for

Leave to Amend its Pleadings [1339] in a separate Order.

Blue Buffalo moves for leave to amend its complaint in order to incorporate

facts from recent guilty pleas and charging documents from criminal cases related

to this dispute, to add new counts of civil conspiracy and civil RICO against both

Defendants, to add an additional breach of contract claim against both Defendants,

and to add Diversified as a defendant to its tort claims and Connecticut Unfair

Trade Practices Act (CUTPA) claim against Wilbur-Ellis.  After fully considering

the parties' submissions and arguments on Blue Buffalo's motion on January 9,

2019, and for the reasons below, I will grant Blue Buffalo's motion as it pertains to the contract, statutory and intentional tort claims, and I will deny it as it pertains to the addition of Diversified as a defendant to its negligence claims.

## I.    Background

While it was still litigating against Nestle Purina, Blue Buffalo filed its initial cross-complaint against Wilbur-Ellis and Diversified in May 2015.  In June 2016, Blue Buffalo informally agreed to stay its discovery requests of Wilbur-Ellis and Diversified, including pending 30(b)(6) depositions, while the United States Attorney for the Eastern District of Missouri proceeded with a criminal investigation regarding events that related to the civil dispute.  At the United States Attorney's request, I ordered a formal temporary stay of the case on March 9, 2017, so the United States Attorney could investigate potential criminal charges.

That stay remains largely in effect.  Blue Buffalo has urged me to lift the stay and permit the Parties to resume discovery on several occasions, beginning with the first Status Conference I held after ordering the stay.  [See Tr. of April 25, 2018 Status Conference, ECF No. 1287, at 5]  In order to allow the United States Attorney's work to proceed without interference from this civil dispute, and in the interest of judicial economy, I have continued the stay, with some exceptions.  [See July 19, 2018 Order, ECF No. 1293 (permitting the parties to exchange written discovery that does not involve submitting answers under oath)]  Some criminal

proceedings remain ongoing, though the United States Attorney entered into plea agreements with all but one of the charged defendants during the course of the summer and fall of 2018.

On October 11, 2018, Judge Baker entered judgment in the criminal matter against Wilbur-Ellis and Diversified. See USA v. Rychlik et al, 4:17-CR-100-NAB [hereinafter "Rychlik"], Nos. 173, 174. One week later, on October 18, 2018, Blue Buffalo filed its motion for leave to amend its complaint.

## II.     Legal Standard

As a general rule, leave to amend a party's pleadings should be freely given when justice so requires.  See Fed. R. Civ. P. 15(a).  However, on April 21, 2016, I ordered further requests to amend pleadings in this case must satisfy the requirements of Fed. R. Civ. P. 16(b)(4).  See April 21, 2016 Order, ECF Doc. No. 768, 2. None of the Parties objected to that Order.  Accordingly, Rule 16(b)(4) applies to Blue Buffalo's motion for leave to amend its complaint.

Where, as here, a party seeks leave to amend the pleadings after the case management deadline to do so has passed, courts must first determine whether good cause exists under Rule 16(b)(4)'s good cause standard.  See Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008).  Then, if the movant establishes good cause, courts will consider whether amendment is proper under

Rule 15(a).  See Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir.

2008) (citing Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir.2003)).

The primary consideration when courts apply the good cause standard is the

movant's "diligence in attempting to meet the [case management] order's

requirements."  Sherman, 532 F.3d at 716.  Next, because a party seeking to amend

its pleadings must also satisfy the requirements of Rule 15(a), prejudice to the

nonmovant resulting from the amendment "may also be a relevant factor."  Id. at

717; see also Foman v. Davis, 371 U.S. 178, 182 (1962).  "The burden is on the

party opposing the amendment to show such prejudice."  Beeck v. Aquaslide "N"

Dive Corp., 562 F.2d 537, 540 (8th Cir. 1977).  Courts generally "will not consider

prejudice if the movant has not been diligent in meeting the scheduling order's

deadlines."  Sherman, F.3d at 717 (citing Bradford v. DANA Corp., 249 F.3d 807,

809 (8th Cir.2001)).

Finally, courts will not grant leave to amend a complaint when the proposed

amendment is futile, meaning "the amended claim could not withstand a motion to

dismiss under Rule 12(b)(6)."  Hillesheim v. Myron's Cards & Gifts, Inc., 897

F.3d 953, 955 (8th Cir. 2018).  This means that, in assessing whether an

amendment is futile, I must accept as true all factual allegations in the Proposed

Amended Complaint, ECF Doc. No. 1328-1 ("PAC").  Fed. R. Civ. P. 12(b)(6);

Erickson v. Pardus, 551 U.S. 89, 94 (2007).  The requirement remains in effect

"even if it strikes a savvy judge that actual proof of those facts is improbable."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v.

Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319,

327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's

disbelief of a complaint's factual allegations.").  The issue is not whether the

plaintiff will ultimately prevail, but whether the plaintiff is entitled to present

evidence in support of her claim.  Id.

## III.    Discussion

Blue Buffalo's proposed amendments seek to add Diversified as a defendant

to some existing claims and to assert new claims jointly against both Diversified

and Wilbur-Ellis.  The existing claims that Blue Buffalo seeks to assert against

Diversified include intentional tort claims, negligence claims, and a CUTPA claim.

The new claims that Blue Buffalo seeks to bring against both Defendants include

civil conspiracy, civil RICO, and breach of warranty claim. Blue Buffalo also

seeks to add facts that it learned from the guilty pleas and charging documents in

the criminal investigation.  Below, I address each proposed amendment category.

### a.  Proposed Additional Facts from the Criminal Investigation

The additional facts that Blue Buffalo seeks to add to the complaint based on

the Rychlik guilty pleas satisfy Rule 16(b)(4)'s good cause requirement.  Even if

Blue Buffalo had previously discovered certain documents that pertained to the

pleaded conduct, the fact that the Defendants and their employees subsequently pleaded guilty to that conduct could not have been alleged by the original pleading deadline, because the pleas came more than two years later. Furthermore, fundamental fairness leads me to allow Blue Buffalo to add facts revealed as a result of the criminal investigations. Over Blue Buffalo's opposition, I have continued a stay that may well have prevented Blue Buffalo from discovering some of these facts more quickly and alleging them much closer to the initial deadline. One of my reasons for that stay was that the criminal investigation may help focus the parties in this action. Now that some of the cases have been resolved, Blue Buffalo may include information from those criminal investigations. I find that Blue Buffalo diligently moved to amend its complaint to include the facts of the guilty pleas and the acts to which the criminal defendants pleaded guilty.

I also find that Blue Buffalo's addition of these proposed facts to its complaint is not unduly prejudicial to the Defendants. Fact discovery remains open in this case, and the new facts substantially relate to previously pleaded ones. Additionally, they come from admissions in guilty pleas of the Defendants or their employees, so the Defendants were at least constructively on notice of these facts. C.f. Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981) ("Where the facts on which a previously unasserted claim is based are

all known or available to all parties, there is no prejudice in allowing an amended complaint.").

### b. Tort Claims Against Diversified (PAC Claims 3, 4, 5, 6)

#### i. Diligence

Blue Buffalo acted diligently in attempting to meet the original pleading deadline to assert tort claims against Diversified. Blue Buffalo's new tort allegations against Diversified are based in part on facts that it was not able to obtain before it accessed the guilty pleas and charging documents in the <u>Rychlik</u> case in October 2018.

Due to the stay in this case, Blue Buffalo has not yet been able to depose any of Diversified's employees. Despite Blue Buffalo's attempts to convince me to lift the stay and allow discovery under oath to proceed, I have so far granted the United States Attorney's requests to maintain a stay on that discovery. Given the new facts that emerged from the guilty pleas, the claims arising from them also satisfy the good cause requirement of Rule 16(b)(4).

#### ii. Undue Prejudice

Diversified has argued not only that it was not aware of the fraud Blue Buffalo alleges, but that it, too is a victim in this matter. I mention those assertions now to note that Blue Buffalo's allegations, taken as true, may have been delayed in part by its past interactions with Diversified. Blue Buffalo has represented that

there is significant outstanding discovery, including depositions of Diversified's'

witnesses, and Diversified itself has a pending motion to amend its cross-claims

and to add a counterclaim.

In its response to this motion, Diversified does not argue that these

amendments unduly prejudice it, but to the extent that it has suggested any undue

prejudice, I find that it is not unduly prejudiced.

### iii. Futility

The futility inquiry into Blue Buffalo's proposed fraud claims against

Diversified requires me to return to my discussion of the economic loss doctrine

from previous orders in this case. Generally, the economic loss doctrine "prohibits

a cause of action in tort where the loss is purely economic." Rockport Pharmacy,

Inc. v. Digital Simplistics, Inc., 53 F.3d 195, 198 (8th Cir.1995) (discussing

Missouri law). Economic loss includes "commercial loss for inadequate value and

consequent loss of profits or use." R.W. Murray Co. v. Shatterproof Glass Corp.,

697 F.2d 818, 825 n.5 (8th Cir. 1983). Recovery in tort, on the other hand, "is

limited to cases in which there has been personal injury, or property damage either

to property other than the property sold, or to the property sold when it [i]s

rendered useless by some violent occurrence[.]" Rockport Pharmacy, 53 F.3d at

198 (internal citations omitted).

On the basis of the economic loss doctrine, Wilbur-Ellis has previously filed a motion to dismiss Blue Buffalo's tort claims against it. In an Order on September 8, 2015, ECF Doc. No. 450 ("Sept. 2015 Order"), I denied Wilbur-Ellis's motion to dismiss Blue Buffalo's tort claims on the ground that there was an outcome-determinative conflict of laws question not yet ripe for my decision. Against Wilbur-Ellis, Blue Buffalo asserted negligence claims as the third-party beneficiary of contracts between Wilbur-Ellis and Diversified. Blue Buffalo also asserted that Texas or California law, and not Missouri law, should govern the resolution of its tort claims against Wilbur-Ellis.

In that Sept. 2015 Order, I discussed the difference in the conflict of laws analysis in the case of intentional tort claims and negligence. First, regarding the intentional tort claims, I wrote that "there is a conflict between how Missouri courts and California and Texas courts apply the economic loss doctrine to intentional torts." Sept. 2015 Order at 3. While Missouri's application of the economic loss doctrine also bars intentional torts that arise from contractual duties, Texas permits plaintiffs to bring intentional tort cases in some instances. Id. at 4.

Then, regarding Blue Buffalo's negligence claims, I wrote

> To the extent that Blue Buffalo's claims for negligent misrepresentation and negligence are based on representations around the formation of and in the text of the contracts between Blue Buffalo and Wilbur-Ellis, there is no choice of law issue. Missouri, California, and Texas all bar recovery for negligence claims when the claims are

> based in contract and there is no economic injury independent of
> contract damages.

Id. at 4.  That is to say, regardless of which state law applies, the economic loss

doctrine would prevent Blue Buffalo from bringing negligence claims that are

based on the same allegations as its contract claims.

The following year, in an Order on April 19, 2016, I ruled that Diversified

could not bring tort claims against Wilbur-Ellis because Diversified's complaint

"alleged that it had a contract with Wilbur-Ellis and that the contract was breached

because of misrepresentations about the quality of the product sold."  [April 19,

2016 Order, ECF Doc. No. 756 [hereinafter "April 2016 Order"], at 20]

The 2015 and 2016 applications of the economic loss doctrine are rooted in

the different relationships the parties allege they had with each other.  As I noted in

the 2015 Order, Blue Buffalo alleged that it was a third-party beneficiary of the

contracts between Wilbur-Ellis and Diversified, an assertion that requires more

factual development to determine.  On the other hand, as I explained in the 2016

Order, Diversified's allegations against Wilbur-Ellis arose entirely out of its

contractual relationship with Wilbur-Ellis.  The same choice of law question did

not apply because Diversified did not argue that some state law other than

Missouri's should apply to its intentional fraud claims against Wilbur-Ellis.

It is clear from Blue Buffalo's allegations in its PAC that its relationship

with Diversified was one born out of contract.  [See, e.g. PAC, ECF. Doc. No.

1328-1, at ¶ 24 ("These written purchase orders [with Diversified] constitute

binding and enforceable contracts between Blue Buffalo and Diversified")]

Therefore I must evaluate Diversified's opposition to this motion to amend

differently from the way in which I evaluated Wilbur-Ellis's Motion to Dismiss

against Blue Buffalo in the Sept. 2015 Order.

### 1. Negligence Claims (PAC Claims 4, 6)

Blue Buffalo's PAC alleges two claims of negligence against Diversified.

Neither of these claims against Diversified is new to this iteration of the complaint,

and Diversified only challenges the negligent misrepresentation claim. However,

in order to remain consistent in my application of the economic loss doctrine to

this case, I will consider both of Blue Buffalo's negligence claims against

Diversified.

Based on Blue Buffalo's own complaint, Blue Buffalo's claims for negligent

misrepresentation and negligence pertain to representations around the formation

of and in the text of the contracts between Blue Buffalo and Diversified. See, e.g.,

PAC at ¶¶ 24, 27, 29. Therefore, there is no choice of law issue as it pertains to the

negligence claims. Missouri and Texas both bar recovery for negligence claims

when the underlying "injury results from a breach of a contractual duty."

Dubinsky v. Mermart, LLC, 595 F.3d 812, 819 (8th Cir. 2010); see also September

8, 2015 Order at 4-5 (citing Texas and California cases for the same proposition).

I find that Blue Buffalo's negligence claims against Diversified are futile. When viewed as true, the factual allegations that Blue Buffalo pleads would prove the existence of a contractual relationship that sets out Diversified's duties regarding the poultry meal Blue Buffalo allegedly purchased. Blue Buffalo cannot also bring negligence-based claims against Diversified that allege Diversified did not provide the poultry meal their contract purportedly required.

### 2. Intentional Tort Claims (PAC Claims 3, 5)

Blue Buffalo's intentional tort claims against Diversified are not futile at this stage. Diversified argues that Missouri's economic loss doctrine applies to all of Blue Buffalo's tort claims against it, because the contracts between the two contain a provision selecting Missouri law as the governing law. Blue Buffalo contends that a traditional choice-of-law analysis should apply to its tort claims against Diversified as well as Wilbur-Ellis. That choice-of-law analysis requires a more developed factual record than I currently have before me.

It is true that the example Confirmation of Sale that Diversified references in its Response to Blue Buffalo's motion contains a forum selection clause that provides that Missouri law governs any contractual disputes. If Missouri law applies to the contract, then it appears likely that the forum law selection clause in the contract will apply to Blue Buffalo's intentional tort claims as well. In Missouri, "[w]hether a forum selection clause that by its terms applies to contract

actions also reaches non-contract claims 'depends on whether resolution of the claims relates to interpretation of the contract.'" <u>Reed v. Reilly Co., LLC</u>, 534 S.W.3d 809, 811 (Mo. 2017) (citing Major v. McCallister, 302 S.W.3d 227, 231 (Mo. App. 2009)).  This rule applies even when the claims at issue are "not expressly based upon the agreement." <u>Reed</u>, 534 S.W.3d at 811.

However, I will not rely on that document at the futility stage, when I must accept Blue Buffalo's allegations as true, and before the parties have had a chance to further develop the record.  A determination of the enforceability of any forum selection clause in the contracts between Wilbur-Ellis and Blue Buffalo would be premature at this stage.  Therefore, I will permit Blue Buffalo to include intentional tort claims against Diversified in its fourth amended complaint.

### c.  Proposed Civil Conspiracy and Civil RICO Claims Against Both Defendants (PAC Claims 11, 12)

#### i.  Diligence

Blue Buffalo diligently attempted to meet the original pleading deadline in alleging its civil RICO and civil conspiracy claims.  With the benefit of hindsight and the <u>Rychlik</u> guilty pleas, I understand Wilbur-Ellis's argument that Blue Buffalo had previously obtained the documents it needed to make the allegations it now makes against the Defendants.  However, it is my finding that the <u>Rychlik</u> guilty pleas contain information without which Blue Buffalo could not plausibly allege a civil RICO claim.  As an initial matter, the guilty pleas themselves

constitute an important development in the case, and they document specific instances of conduct that Blue Buffalo had previously suspected but could not investigate due to the stay I imposed. Moreover, had Blue Buffalo hypothetically discovered the specific information contained in the guilty pleas during discovery in 2016 or 2017 (while it was stayed), I would have found those discoveries sufficient to meet the good cause standard to amend then, though the deadline to amend had already passed. It is entirely reasonable and diligent that Blue Buffalo would wait to allege civil RICO claims against the Defendants until it had the specific facts it needed to meet both the RICO standards and the fraud pleading standards of Federal Rule of Civil Procedure 9(b). This is especially so in this case, where the Defendants have, in the past, each contended to Blue Buffalo that they were unaware of what poultry products the other was representing or shipping to Blue Buffalo.

One week after Blue Buffalo obtained access to the information in <u>Rychlik</u> pleas, it filed its motion to amend its complaint. The PAC incorporates specific allegations based on the facts in the <u>Rychlik</u> guilty pleas and charging documents. Relevant guilty pleas after the amendment deadline are themselves "newly discovered facts," and they represent a significant "change in circumstances" in this case. <u>See</u> <u>Sherman</u>, 532 F. 3d at 718. Blue Buffalo diligently acted after learning of the nature of these new facts and changed circumstances.

Wilbur-Ellis's response in opposition contends that Blue Buffalo's latest effort to amend its complaint was not diligent, because Wilbur-Ellis produced the documents that served as the basis for its guilty plea before I instituted the Rule 16(b)(4) deadline on April 21, 2016.  Though Blue Buffalo did previously obtain discovery that references the practices that now form the basis of its latest complaint (and some of the United States Attorney's criminal allegations), I find that the stay prevented Blue Buffalo from accessing information—especially through sworn testimony—that may have been sufficient to plausibly allege civil RICO at an earlier time.

Furthermore, Blue Buffalo asserts that before the guilty pleas, it could not have plausibly alleged that Wilbur-Ellis and Diversified conspired to defraud Blue Buffalo.  Though Blue Buffalo suspected the two Defendants had more of a relationship than discovery had revealed at the pleading deadline, Blue Buffalo had not yet taken any depositions of Diversified's' representatives or witnesses, nor had Blue Buffalo deposed witnesses from Wilbur-Ellis's Rosser facility.  [See Tr. of January 9, 2019 Status Conference, ECF Doc. No. 1370, at 14]  Blue Buffalo's inability to conduct discovery in those areas may well have been fatal to an earlier attempt to meet the heightened pleading requirements for the civil RICO and civil conspiracy counts it now alleges in its amended complaint.  [C.f. April 2016 Order, ECF. No. 756,  at 4-5 (describing the pleading requirements of civil RICO)]

### ii. Undue Prejudice

"In light of the particular facts of this case," the civil RICO and civil conspiracy amendments do not cause undue prejudice to Wilbur-Ellis or Diversified.  See Beeck v. Aquaslide "N" Dive Corp., 562 F.2d 537, 540 (8th Cir. 1977).  The Defendants did not address the issue of undue prejudice in their responses to Blue Buffalo's motion, but Wilbur-Ellis briefly discussed the issue at the Status Conference on January 7, 2019.  Wilbur-Ellis conceded that it does not "know what the prejudice would be . . . but it seems obvious there will be some." [Tr. of January 9, 2019 Status Conference, ECF No. 1370, at 44]  The prejudice Wilbur-Ellis appears to fear relates to the burden of additional discovery. Although there may be additional discovery as a result of these amendments, the "adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."  Dennis v. Dillard Dep't Stores, Inc., 207 F.3d 523, 526 (8th Cir. 2000).

Despite the lengthy history of this case, it remains at a stage when the parties will actively reengage in discovery when I lift the stay.  The Defendants will not suffer any undue prejudice as a result of the civil RICO and civil conspiracy amendments.

### iii. Futility

### 1. Civil Conspiracy (PAC Claim 11)

Blue Buffalo's proposed civil conspiracy amendment is not futile, subject to the same analysis that applies to its intentional tort claims.

In general, a "civil conspiracy is an agreement or understanding between two persons to do an unlawful act, or to use unlawful means to do an act which is lawful." <u>Ritterbusch v. Holt</u>, 789 S.W.2d 491, 494 (Mo. 1990) (internal citations omitted). Civil conspiracy "sounds in tort, and is of the nature of an action on the case upon the wrong done under the conspiracy alleged. The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy." <u>Beck v. Prupis</u>, 529 U.S. 494, 503 n.7 (2000) (citing <u>Royster v. Baker</u>, 365 S.W.2d 496, 499 (Mo. 1963)).

Blue Buffalo's PAC "adequately allege[s] the necessary, ultimate facts" necessary to sustain a civil conspiracy claim. <u>Ritterbusch</u>, 789 S.W.2d at 494. Simply stated, Blue Buffalo alleges that the Defendants agreed to commit fraud against Blue Buffalo.

The same economic loss doctrine principles that apply to the other intentional torts in the PAC apply to the civil conspiracy claim. As I have discussed regarding Blue Buffalo's intentional tort claims against both Wilbur-Ellis and Diversified, the viability of Blue Buffalo's civil conspiracy claim will

turn on facts that the parties have not yet fully developed, including the scope and enforceability of Blue Buffalo's contracts with the two Defendants, as well as a choice-of-law analysis.

## 2. Civil Rico (PAC Claim 12)

Blue Buffalo's proposed civil RICO claim is not futile; it would survive a motion to dismiss. To successfully state a claim for civil RICO under 18 U.S.C. § 1962, Blue Buffalo must allege that Wilbur-Ellis and Diversified were engaged in the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." H & Q Properties, Inc. v. Doll, 793 F.3d 852, 855-856 (8th Cir. 2015). Blue Buffalo's Complaint makes allegations that satisfy each of those requirements.

### a. Participation in the conduct of an enterprise

In the April 2016 Order, I discussed the law defining participation in a RICO enterprise. [See April 2016 Order at 6-7] A RICO enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group on individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

An "association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v.

United States, 556 U.S. 938, 946 (2009). Blue Buffalo's PAC alleges facts

supporting each of these structural features. It alleges that Wilbur-Ellis and

Diversified were actors in a joint enterprise defrauded Blue Buffalo in order to

maximize and split joint profits (¶¶ 94, 99, 101, 165), that the two firms were

involved in the activities of the other (¶¶ 52-54), and that they did so multiple

times over a period of years (¶ 94).

As Wilbur-Ellis notes, participation in a RICO enterprise requires more than

an actor pursuing its own self-interest. See Reves v. Ernst & Young, 507 U.S. 170,

185 (1993) (holding that a participant in a RICO enterprise must have "conducted

or participated in the conduct of the enterprise's affairs, not just [its] own affairs.").

Reves requires that RICO participants must "participate in the operation or

management of the enterprise itself." Id. This was one reason I dismissed

Diversified's RICO claim against Wilbur-Ellis and Custom Ag in my April 2016

Order.

In that Order, I discussed the persuasive reasoning of United Food &

Commercial Workers Unions & Employers Midwest Health Benefits Fund v.

Walgreen Co, 719 F.3d 849 (7th Cir. 2013). Like the Walgreen Court, I held that

Diversified merely alleged activities consistent with the existence of a business

partnership, even if that partnership were fraudulent or illegal. I specifically noted

that Diversified had not alleged, "for example, that Custom Ag or Geraci were

involved in Wilbur-Ellis' manufacturing process, or that Wilbur-Ellis and its employees were involved in creating Custom Ag's bills of lading certification. In fact, the complaint never alleges that Custom Ag or Geraci certified compliance with Blue Buffalo's ingredient specifications." April 21, 2016 Order, ECF Doc. No. 756, at 8-9.

Blue Buffalo's PAC alleges some of the very kinds of facts that Diversified's Complaint lacked. Blue Buffalo alleges that Diversified supplied bills of lading to Wilbur-Ellis for use instead of Wilbur-Ellis's own labels, and that Diversified signed off on ingredient verifications on Wilbur-Ellis's behalf. <u>See</u> PAC at ¶¶ 94-95.

Relatedly, absent some sort of profit-sharing arrangement, <u>Walgreen</u> counsels against finding participation in a RICO enterprise in this case. If, for example, it is the case that Wilbur-Ellis charged Diversified the going rate for the by-product free meal Blue Buffalo thought it was purchasing, and Diversified made the profit it would normally make selling that meal, then it is unlikely that a cause of action for RICO would lie. Based on what I know of this case, I remain skeptical that Blue Buffalo will be able to meet this high bar. I have no doubt that the Defendants will return to these allegations at the Summary Judgment phase of this litigation.

For now, when assuming the facts in the PAC as true, Blue Buffalo has adequately alleged a profit-sharing arrangement.  Blue Buffalo has made this allegation more clearly at oral argument and in its reply briefing than it did in its PAC.  <u>See</u> January 9, 2019 Oral Argument Transcript, ECF Doc. No. 1370, at 19 ("The purpose, as alleged in the amended complaint, was to maximize the profits for both of these companies – which were splitting the profits between them"); Blue Buffalo Reply, ECF. Doc. No. 1359, at 16 ("[T]he defendants shared the profits of their joint scheme").  Still, it is my finding that Blue Buffalo's allegation that the Defendants sought to "realize greater profits" includes the allegation that they did so through profit-sharing.  PAC at ¶ 165.  For the sake of clarity and fairness to all Parties, I will allow Blue Buffalo to include a more definite allegation of profit-sharing when it files its amended complaint consistent with this Order.

### b. Pattern of racketeering activity

Blue Buffalo's PAC adequately alleges a pattern of racketeering activity. "The phrase 'racketeering activity' is a term of art defined in terms of activity that violates other laws," including the fraud allegations Blue Buffalo makes in its PAC.  <u>Klehr v. A.O. Smith Corp.</u>, 521 U.S. 179, 183 (1997) (explaining the definition of racketeering activity from 18 U.S.C. § 1961(1)).  "Pattern" is "defined to require 'at least two acts of racketeering activity, . . . the last of which occurred

within ten years . . . after the commission of a prior act of racketeering activity.'" Id. (reciting the definition of pattern from 18 U.S.C. § 1961(5)). The acts that the plaintiff alleges constitute a pattern must be "related," and must "'amount to or pose a threat of continued criminal activity.' Continuity in this context refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1028 (8th Cir. 2008) (citing H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989)).

The PAC alleges that the purported enterprise knowingly engaged in numerous instances of related fraudulent activities over a period of more than two years. See ¶¶ 48-50, 172.This satisfies the requirement for alleging a pattern of racketeering activity. Because Blue Buffalo has alleged that the Defendants were engaged in the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," Blue Buffalo's civil RICO claim is not futile. H & Q Properties, Inc. v. Doll, 793 F.3d at 855-856.

### d. Proposed Addition of Diversified to Connecticut Unfair Trade Practices Act (CUTPA) Claim (PAC Claim 8)

Blue Buffalo has diligently alleged CUTPA claims against Diversified. As I note in Part III.b.1 above, Blue Buffalo has not yet had the chance to depose any of Diversified's employees, and the stay I imposed in this case has slowed the discovery process. The Rychlik guilty pleas and charging documents provided

Blue Buffalo with new factual information that it contends now allows it to plausibly claim a CUTPA violation against Diversified.

Diversified has not argued that Blue Buffalo's proposed amendment is unduly prejudicial or futile. I find that adding Diversified to the existing CUTPA claim against Wilbur-Ellis is not futile, and that it does not unduly prejudice Diversified, which also has a pending motion for leave to amend its own pleadings.

### e. Proposed Addition of Claim Alleging Breach of the Implied Warranty of Merchantability (PAC Claim 10)

Blue Buffalo diligently asserted the claim that the Defendants breached the implied warranty of merchantability, and its inclusion in the amended complaint does not prejudice the Defendants. I will grant Blue Buffalo leave to amend its complaint to include the claim.

### i. Diligence

Blue Buffalo diligently brought its claim alleging the Defendants breached the implied warranty of merchantability. While it may be the case that Blue Buffalo could have asserted this claim earlier, my analysis of Blue Buffalo's diligence takes into account this case's extensive and complicated procedural history. Though the parties have already engaged in discovery exchanges, there remains extensive outstanding discovery for the parties to conduct. When I lift the stay in this case, it will be a chance for the parties to refocus their efforts, including litigation of this additional claim.

Blue Buffalo has conceded that it seeks to add the implied warranty of merchantability claim not because of newly discovered facts, but rather, as a result of returning to this case as we approach the point in time when I lift the stay. Despite Blue Buffalo's concession, and in consideration of the principles of judicial fairness and economy, it is my finding that Blue Buffalo was diligent in bringing these claims when it did, before the stay is lifted and before discovery under oath resumes.

### ii.  Undue Prejudice

Blue Buffalo's addition of a claim for breach of the implied warranty of merchantability will not prejudice Wilbur-Ellis and Diversified.  The Defendants will have every opportunity to respond to the allegation, which substantially overlaps with other breach of warranty claims in the complaint.

## IV.    Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Blue Buffalo's Motion for Leave to Amend [1325] is **GRANTED** with respect to the proposed additional facts from the Rychlik investigation, the intentional tort claims against Diversified (PAC Claims 3, 5), the CUTPA claim against Diversified (PAC Claim 8), the implied warranty of merchantability claim against both Defendants (PAC Claim 10), the

civil conspiracy claim against both Defendants (PAC Claim 11), and the civil RICO claim against both Defendants (PAC Claim 12).

**IT IS FURTHER ORDERED** that Blue Buffalo's Motion for Leave is **DENIED** with respect to the negligence claims against Diversified (PAC Claims 4, 6).

**IT IS FURTHER ORDERED** that Blue Buffalo shall file an amended complaint that complies with the terms of this Order no later than **June 13, 2019.**

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 6th day of June, 2019.