UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BLUE BUFFALO COMPANY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14 CV 859 RWS |
| | ) | |
| WILBUR-ELLIS COMPANY, LLC and, | ) | |
| DIVERSIFIED INGREDIENTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| AND RELATED ACTIONS | ) | |

## ORDER AND MEMORANDUM

This matter is before me on Diversified Ingredients' (Diversified) Motion for Leave to Amend Its Complaint [1339]. I address Blue Buffalo's Motion for Leave to Amend Its Complaint [1325] in a separate Order.

Diversified moves for leave to amend its complaint in order to incorporate facts it alleges it has learned during the course of discovery, to add new counts of negligence, negligent misrepresentation, and breach of contract against Blue Buffalo, and to plead new damages against Wilbur-Ellis and Custom Ag. After fully considering the parties' submissions and arguments on Diversified's motion on January 9, 2019, and for the reasons below, I will deny Diversified's motion as it pertains to the counterclaims against Blue Buffalo, and I will grant it in part as it

pertains to the addition of damages allegations to its cross-claims against Wilbur-Ellis and third party claims against Custom Ag.

**I.      Background**

Diversified first became a party to this lawsuit when Blue Buffalo alleged cross-claims against it in May 2015. Since that time, a complicated set of dispositive motions, discovery disputes, and criminal investigations have kept this case from moving to trial. The case is currently stayed, pursuant to an Order I entered on March 9, 2017 so the United States' Attorney for the Eastern District of Missouri could pursue potential criminal charges against the defendants and several of their employees.

In the time since I ordered the stay, Diversified and Wilbur-Ellis have both pleaded guilty to federal misdemeanor charges and the parties have largely paused discovery (especially that which requires them to submit answers under oath). See USA v. Rychlik et al, 4:17-CR-100-NAB [hereinafter "Rychlik"], Nos. 86, 110; July 19, 2018 Order, ECF No. 1293 (permitting the parties in this case to exchange written discovery that does not involve submitting answers under oath).

Before I issued the stay, Diversified was preparing to ask for leave to amend its pleadings. It did not do so before the stay went into effect. Diversified now asks that I grant leave so that it can amend its pleadings.

## II. Legal Standard

As a general rule, leave to amend a party's pleadings should be freely given when justice so requires. See Fed. R. Civ. P. 15(a). However, on April 21, 2016, I ordered further requests to amend pleadings in this case must satisfy the requirements of Fed. R. Civ. P. 16(b)(4). [See April 21, 2016 Order, ECF Doc. No. 768, at 2] None of the Parties objected to that Order. Accordingly, Rule 16(b)(4) applies to Diversified's motion for leave to amend its pleadings.

Where, as here, a party seeks leave to amend the pleadings after the case management deadline to do so has passed, courts must first determine whether good cause exists under Rule 16(b)(4)'s good cause standard. See Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008). Then, if the movant establishes good cause, courts will consider whether amendment is proper under Rule 15(a). See Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008) (citing Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir.2003)).

The primary consideration when courts apply the good cause standard is the movant's "diligence in attempting to meet the [case management] order's requirements." Sherman 532 F.3d at 716. Next, because a party seeking to amend its pleadings must also satisfy the requirements of Rule 15(a), prejudice to the nonmovant resulting from the amendment "may also be a relevant factor." Id. at 717; see also Foman v. Davis, 371 U.S. 178, 182 (1962). "The burden is on the

3

party opposing the amendment to show such prejudice." Beeck v. Aquaslide "N" Dive Corp., 562 F.2d 537, 540 (8th Cir. 1977). Courts generally "will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." Sherman, F.3d at 717 (citing Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir.2001)).

Finally, courts will not grant leave to amend a complaint when the proposed amendment is futile, meaning "the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." Hillesheim v. Myron's Cards & Gifts, Inc., 897 F.3d 953, 955 (8th Cir. 2018). This means that, in assessing whether an amendment is futile, I must accept as true all factual allegations in the Proposed Amended Pleadings [ECF Doc. No. 1339-1] ("PAP"). Fed. R. Civ. P. 12(b)(6); Erickson v. Pardus, 551 U.S. 89, 94 (2007). This requirement remains in effect "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of her claim. Id.

## III. Discussion

Diversified's proposed amendments seek to allege negligence claims or, in the alternative, a breach of contract claim against Blue Buffalo. Additionally, Diversified seeks to allege additional damages against Wilbur-Ellis and Custom Ag.

Diversified argues that I should grant leave to amend under the more permissive standard of Federal Rule of Civil Procedure 15(a). However, because I previously imposed the Rule 16(b)(4) requirement for motions for leave to amend in this case, Diversified must show good cause under Federal Rule of Civil Procedure 16(b)(4). Diversified has met the good cause requirement of Federal Rule of Civil Procedure 16(b)(4).

As an initial matter, it is my finding that Diversified has been diligent in bringing these new claims. Like the other parties in this case, Diversified has faced a complicated set of procedural hurdles in this case, including the stay I imposed nearly two years ago. As the parties are aware, there is still substantial discovery to conduct in this case, and no opposing parties will suffer unfair prejudice as a result of Diversified's counter- or cross-claims. Even if Diversified's amendments are based on facts or legal theories that were available to it before I imposed the stay, Diversified's timeliness in bringing its motion for

leave to amend is reasonable in light of the stay and the criminal proceedings related to this case.

### a. Counterclaims Against Blue-Buffalo

Diversified's proposed counterclaims against Blue Buffalo allege negligence and negligent misrepresentation, or, alternatively, a breach of contract claim. In support of these counterclaims, Diversified argues that Blue Buffalo, Diversified's customer, owed it either a duty of care or contractual duties.

Most of Diversified's allegations and arguments appear to be affirmative defenses rather than counterclaims. While Diversified remains free to argue that it is not liable to Blue Buffalo for the reasons it articulates in its proposed counterclaims, Diversified's attempt to hold Blue Buffalo liable for failing to properly inspect the goods it purchased is futile.

Because of the economic loss doctrine, Diversified cannot bring tort claims against Blue Buffalo for alleged injuries that arise out of their extensive contractual relationship. Additionally, Diversified cannot impose a duty to inspect on Blue Buffalo without alleging facts showing that the parties intended for that duty to be incorporated into the contract as either a usage of trade or as a result of the course of performance.

### i. Negligence Claims

Diversified's request to amend its pleadings to allege negligence against Blue Buffalo requires me to return to my discussion of the economic loss doctrine from other orders in this case.

Generally, the economic loss doctrine "prohibits a cause of action in tort where the loss is purely economic." Rockport Pharmacy, Inc. v. Digital Simplistics, Inc., 53 F.3d 195, 198 (8th Cir.1995) (discussing Missouri law). Economic loss includes "commercial loss for inadequate value and consequent loss of profits or use." R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 825 n.5 (8th Cir. 1983). Recovery in tort, on the other hand, "is limited to cases in which there has been personal injury, or property damage either to property other than the property sold, or to the property sold when it [i]s rendered useless by some violent occurrence[.]" Rockport Pharmacy, 53 F.3d at 198 (internal citations omitted).

In an Order on April 19, 2016, I ruled that Diversified could not bring tort claims against Wilbur-Ellis because Diversified's complaint "alleged that it had a contract with Wilbur-Ellis and that the contract was breached because of misrepresentations about the quality of the product sold." [April 19, 2016 Order, ECF Doc. No. 756 [hereinafter "April 2016 Order"], at 20]

The question before me on Diversified's motion for leave to amend is substantially similar to the one before me in the April 2016 Order. As I explained in the April 2016 Order, Diversified's negligence allegations against Wilbur-Ellis arose entirely out of its alleged contractual relationship with Wilbur-Ellis. In its currently proposed amendments, Diversified's allegations arise entirely out of its alleged contractual relationship with Blue Buffalo. Accordingly, the economic loss doctrine will apply, and I will not grant leave to Diversified to amend its complaint to allege negligence against Blue Buffalo.

This is consistent with my ruling that Blue Buffalo cannot amend its complaint to allege negligence claims against Diversified. Shortly before Diversified filed its motion for leave to amend its pleadings, Blue Buffalo also filed a motion for leave to amend its pleadings. [ECF Doc. No. 1325] Against Blue Buffalo, Diversified argued that the economic loss doctrine applied to Blue Buffalo's proposed tort claims against Diversified, because they arose out of the same contractual relationship at issue in this motion. In my Order on Blue Buffalo's motion for leave to amend, I declined to allow Blue Buffalo to bring negligence claims against Diversified in its amended pleadings. In this Order, I decline to grant leave for Diversified to bring negligence claims against Blue Buffalo in its amended pleadings.

### ii.     Breach of Contract Claim

Diversified alternatively pleaded a breach of contract claim against Blue Buffalo.  Diversified alleges that the contractual relationship between Diversified and Blue Buffalo included a requirement that Blue Buffalo "approve Rosser as its supply source <u>only</u> after adequately testing, auditing, and assuring the quality of the ingredients Diversified sourced from Rosser, as regularly observed in the trade by pet food manufacturers."  Diversified PAP, ECF Doc. No. 1339-1, at 20.

To prove a breach of contract, a party must show "(1) the existence of an enforceable contract between the parties; (2) mutual obligations arising under the terms of the contract; (3) one party's failure to perform the obligations imposed by the contract; and (4) the resulting damage to the other party."  <u>See</u> <u>Midwest Bankcentre v. Old Republic Title Co. of St. Louis</u>, 247 S.W.3d 116, 128 (Mo. Ct. App. 2008).

Diversified has not shown the existence of a contract that required Blue Buffalo to adequately inspect Rosser before contracting with Diversified to source ingredients from there.  Diversified includes a copy of a purported contract between Diversified and Blue Buffalo as an attachment to its proposed amended complaint, making it a "part of the pleading."  <u>See</u> Confirmation of Sale #81188, Diversified PAP, Exh. B-1, ECF Doc. No. 1339-1; Fed. R. Civ. P. 10(c).  The

9

purported contract states it is governed by Missouri law, so I will interpret it under Missouri law for the purpose of this Order.

In the purported contract, there is no term that states Blue Buffalo is responsible to Diversified for the inspection of Blue Buffalo's meal supplier. Rather, under the contract, Diversified confirms its sale as "600 LOAD(S)," at "25 TON/ LOAD" of "CHICKEN MEAL W/NATUROX." Id. It lists the price as "$500.00 / TON FOB." Id. The contract is dated June 12, 2013. Id. There are other terms and conditions in the contract, none of which impose a duty on Blue Buffalo as the sole inspector of meal suppliers.

The contract contains an integration clause. PAP at ¶ 102. However, in Missouri, a usage of trade or course of performance can "supplement" a contract. RSMo § 400.1-303(d). Diversified argues that the parties incorporated the duty to inspect into the contract as a usage of trade and/or through the course of performance.

A usage of trade "is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage shall be proved as facts." RSMo § 400.1-303(c).

Diversified's complaint does not contain allegations sufficient to establish a usage of trade in which Blue Buffalo owes Diversified a duty to inspect potential

ingredient suppliers for the benefit of Diversified. Diversified's allegations, if true, would only establish a usage of trade whereby: Blue Buffalo selects the suppliers from which Diversified is to source ingredients, Blue Buffalo is responsible for inspecting its chosen suppliers to ensure those suppliers meet Blue Buffalo's standards, and Diversified does not have a responsibility to inspect the ingredient suppliers Blue Buffalo selects. This usage of trade may serve to minimize the liability of an ingredient broker like Diversified to inspect the products it resells, but it does not impose a contractual duty running from Blue Buffalo to Diversified to "adequately inspect" facilities before selecting them. While it may be the case that Blue Buffalo owes to its customers a duty to adequately inspect its ingredient suppliers, Diversified has not made any factual allegations establishing a usage of trade that Blue Buffalo owes a duty to inspect to Diversified.

Diversified also asserts that the course of performance of the contracts between Diversified and Blue Buffalo establish that it was Blue Buffalo's responsibility to inspect its ingredient manufacturers before approving them. Diversified's allegations regarding the course of performance may well have established that Blue Buffalo took on the role of inspecting its suppliers, but a contractual duty running from Blue Buffalo to Diversified in this straightforward sales contract does not follow.

### b. Damages Allegations

Diversified also seeks to allege additional damages in its cross-claims against Wilbur-Ellis and third party claims against Custom Ag. Diversified's damages claims against Wilbur-Ellis and Custom Ag include the cost of cover; reputational harm and loss of goodwill; reduced sales, revenue, and profits going forward; expenses—including investigative expenses—arising from the breach; actual, incidental, and consequential damages; other injuries to its business expectancy as an ongoing concern; a worsened business relationship with Blue Buffalo; canceled contracts; litigation costs and potential damages from this lawsuit; and restitution payments in a criminal proceeding.

Diversified's request to amend its cross-claims is diligent and not unfairly prejudicial. As this case has progressed, Diversified has become aware of damages arising from its contract claims. Discovery remains ongoing, and Wilbur-Ellis has yet to take any deposition of Diversified's officers or employees.

Diversified's damages claims are plausible and they meet the pleading requirements of Federal Rule of Civil Procedure 9(g). In general, Diversified's damages claims fairly put the defendants on notice of the categories of damages Diversified is pursuing. Though Diversified uses unspecific language regarding damages in Paragraph 84 of the PAP, I read that generic language as an

introductory overview of the specific categories of damages Diversified alleges in the following paragraphs.

However, I will not grant leave for Diversified to amend its complaint to include the futile damages allegations in Paragraph 88 of its PAP. There, Diversified attempts to shift to Wilbur-Ellis and Custom Ag the burden of the restitution payment it made as a result of its guilty plea.

As Diversified stipulated in its guilty plea agreement, "the aggregate, approximate gain realized by Diversified Ingredients from the adulterated and misbranded shipments . . . is $1,575,000." See Diversified Guilty Plea Agreement, USA v. Rychlik et al, 4:17-CR-100-NAB, No. 112, at 15. That plea agreement also acknowledged Diversified's restitution payment as factoring into the calculation of the recommended $2,000.00 fine. Id. at 20. The restitution was not joint and several with any other defendant. Id. at 24. The court accepted the guilty plea agreement provision regarding restitution. See Transcript of Sentencing, USA v. Rychlik et al, 4:17-CR-100-NAB, No. 185, at 38-39.

No other defendant is responsible for protecting "the aggregate, approximate gain realized by Diversified Ingredients from the adulterated and misbranded shipments." Diversified Guilty Plea Agreement at 15. The restitution payment was Diversified's return of the ill-gotten gains it obtained while it engaged in illegal conduct. See Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 944 (8th

13

Cir. 1999) ("Restitution seeks to punish the wrongdoer by taking his ill-gotten gains") (citing Dan B. Dobbs, *Law of Remedies* § 4.1(1), at 369–71 (Abr. 2d ed. 1993)). It would run contrary to the purpose of restitution, the order of the sentencing court, and the guilty plea agreement were I to grant leave to Diversified to seek from other parties the payment of the amount it made in restitution.

**IV. Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Diversified's Motion for Leave to Amend [1339] is **DENIED** as it pertains to its proposed counterclaims against Blue Buffalo and its cross-claim damages allegations regarding its restitution payments,

**IT IS FURTHER ORDERED** that Diversified's Motion for Leave is **GRANTED** as it pertains to its other proposed cross-claim damages and factual allegations.

**IT IS FURTHER ORDERED** that Diversified shall file an amended pleading that complies with the terms of this Order no later than **June 13, 2019.**

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 6th day of June, 2019.