UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BLUE BUFFALO COMPANY, LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WILBUR-ELLIS COMPANY, ) <br> LLC, et al., ) <br> ) <br> Defendants, ) <br> ) <br> AND RELATED ACTIONS ) | Case No. 4:14 CV 859 RWS |

## **MEMORANDUM AND ORDER**

This matter is before me on Defendant Wilbur-Ellis's objection to Special Master Bradley A. Winters's Omnibus Order No. 7, ECF No. [1613]. For the reasons explained below, I will overrule the objection and adopt the order of the Special Master.

## **BACKGROUND**

In Order No. 7, the Special Master resolved the privilege status of each document listed on Blue Buffalo's privilege logs based on his *in camera* review of those documents. Wilbur-Ellis objects to 28 of these determinations, all concerning emails containing legal advice rendered by attorneys from Simpson Thacher & Bartlett and received by Justin Barstein, an employee of The Invus Group, LLC ("Invus").[1] For each of these documents, the Special Master wrote:

---

[1] Invus was Blue Buffalo's majority shareholder. As the Special Master noted in Omnibus Order No. 5, Invus "was never a party to this litigation [but] has, however, been involved." Wilbur-Ellis requested

1

> PRIVILEGE OBJECTION OVERRULED.
>
> MR. BARSTEIN WAS IDENTIFIED AS "BLUE BUFFALO BOARD OF DIRECTORS" IN MATERIALS PROVIDED TO THE CSM BY BLUE BUFFALO, AS "BILIMER'S ASSISTANT" ABOVE AND AS "A MANAGING DIRECTOR" ON INVUS' WEBSITE…DOCUMENTS SHARED WITH HIM ARE NOT PRIVILEGED AND ANY PRIVILEGE WHICH MAY HAVE APPLIED IS WAIVED.
>
> **PROVIDED, HOWEVER, IF SIMPSON, THATCHER & BARTLETT REPRESENTED INVUS OR THE INVUS INDIVIDUALS (IN ADDITION TO BLUE BUFFALO) ON [DATE OF THE COMMUNICATION AT ISSUE], THE OBJECTION IS SUSTAINED.**

Wilbur-Ellis argues that "conditioning the waiver of privilege on whether Ivus's legal counsel was copied on the otherwise privileged email sent by Blue Buffalo" was inappropriate because when a party discloses privileged communications to a third party with whom it shares no common legal interest, the privilege is waived. Wilbur-Ellis also represents that the Special Master previously concluded, in Omnibus Order No. 5, that Invus employees did not share any common legal interest with Blue Buffalo. As a result, Wilbur-Ellis argues that "these 28 communications with [Barstein] must be produced regardless of whether Simpson Thacher was copied on them and was legal counsel to Invus at the time."

In its response to the objection, Blue Buffalo argues that the joint-client privilege protects the communications at issue because Simpson Thacher acted as counsel for

---

the production of Blue Buffalo's communications with Invus employees to determine whether Blue Buffalo's "story about this litigation changes based on its audience." ECF No. [1602 at 7].

both Blue Buffalo and Invus "at the same time, on the same issues, and with regard to the communications Wilbur-Ellis now challenges."

## ANALYSIS

In Omnibus Order No. 5, the Special Master clearly stated that there is "no blanket protection for all communications exchanged between Blue Buffalo's counsel and Invus employees or all documents generated by Invus employees concerning this litigation, [but] *there are subclasses of documents and materials that may be privileged and entitled to protection*" (emphasis added). These potential subclasses included:

> Communications exchanged between Blue Buffalo counsel and any Invus employee serving on the Blue Buffalo board of directors, *while they served as board members,* or shared with other Invus employees providing direct support to those board members, may be privileged depending on the role of the employee and the substance of the communication. This may also include communications memorializing or discussing advice of counsel.
>
> Communications exchanged with Invus employees or others serving as consultants or advisors to the board may also be privileged depending on the consultant or advisor's role (i.e., whether the consultant or advisor was providing legal or commercial advice) and the substance of the communication.
>
> Further, communications exchanged between an Invus employee and an attorney serving as that employee's counsel (including a Blue Buffalo attorney assigned to represent the employee) as part of the employee's preparation for written (e.g., a formal Declaration) or oral testimony may also be privileged.

ECF No. [1601 at 21-22].

Generally, when otherwise privileged information is voluntarily disclosed to a third party, the attorney-client privilege is waived because "[a] communication is only

privileged if it is made 'in confidence.'" In re Teleglobe Commc'ns. Corp., 493 F.3d 345, 361 (3d Cir. 2007) (citing Restatement (Third) of the Law Governing Lawyers § 68 (2000)).  However, "[w]hen co-clients and their common attorneys communicate with one another, those communications are 'in confidence' for privilege purposes." Id. at 363.  This exception is known as the joint-client privilege.  See also Robinson Mech. Contractors Inc. v. PTC Grp. Holding Corp., 2017 WL 2021070, at *2 (E.D. Mo. May 12, 2017); Shukh v. Seagate Tech., LLC, 872 F.Supp.2d 851, 855 (D. Minn. 2012); Oppliger v. United States, 2010 WL 503042, at *4 (D. Neb. Feb. 8, 2010).  For the privilege to apply, the clients must share a *legal* interest.  See Net2Phone, Inc. v. Ebay, Inc., 2008 WL 8183817, at *29 (D.N.J. June 26, 2008) (explaining that the joint-client privilege does not automatically protect communications made between litigants and shareholders because "a legal interest cannot arise simply because a company acts in a way that advances the economic interests of its majority shareholder…While shareholders and the corporation may share an interest in commercial success, this shared economic interest is not a legal interest").

     Wilbur-Ellis's objection consists of two interrelated arguments: (1) the joint-client privilege does not apply "simply because those emails included a law firm," and (2) the Special Master already found that there was no shared legal interest between Invus employees and Blue Buffalo.  However, the communications at issue were not deemed privileged "simply because those emails included a law firm."  The same attorneys represented both Blue Buffalo and Invus or the Invus employees "at the same

4

time, on the same issues, and with regard to the [challenged] communications." Blue Buffalo "submitted evidence of Simpson Thacher's representation of both Blue Buffalo and Invus at the time of the relevant communications for the Special Master's *in camera* review," and he "had that evidence in hand when finalizing his Order No. 7." Wilbur-Ellis does not dispute this assertion. This fact distinguishes this case from Net2Phone, the one case that Wilbur-Ellis cites in support of its argument that "[w]hether or not [a] third party's counsel was also sent [a privileged communication] is immaterial to the finding of a waiver."[2]

Additionally, although Wilbur-Ellis argues that the Special Master already concluded that there was no shared legal interest between Blue Buffalo and any Invus employees, Omnibus Order No. 5 contemplated various scenarios in which privilege could exist because of a common legal interest.

Finally, Wilbur-Ellis emphasizes that none of the Special Master's previous orders explicitly discussed the joint-client privilege and that Blue Buffalo raised arguments about the joint-client privilege for the first time in its opposition to Wilbur-Ellis's objection. In so doing, Wilbur-Ellis appears to contend that it has been unfairly ambushed by the finding that some communications between Blue Buffalo's counsel

---

[2] Net2Phone discussed the community-of-interest privilege rather than the joint-client privilege. The United States Court of Appeals for the Third Circuit explained the distinction between the two privileges in Teleglobe: "(1) the co-client (or joint-client) privilege…applies when multiple clients hire the same counsel to represent them on a matter of common interest, and (2) the community-of-interest (or common-interest) privilege…comes into play when clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities." 493 F.3d at 359.

5

and Invus employees are privileged. However, as discussed previously, Omnibus Order No. 5 clearly delineated examples of communications that could be privileged. Wilbur-Ellis did not object to that order and has had the opportunity to address the issue in this briefing. As a result, I will overrule the objection and adopt the Special Master's Order No. 7 in its entirety.

Accordingly,

**IT IS HEREBY ORDERED that** Wilbur-Ellis's objection to Omnibus Order No. 7, [1620], is **OVERRULED.**

/s/ Rodney W. Sippel
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of November, 2021.