UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BLUE BUFFALO COMPANY, LTD., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:14 CV 859 RWS |
| ) | |
| WILBUR-ELLIS COMPANY, LLC ) | |
| and DIVERSIFIED INGREDIENTS, ) | |
| INC., ) | |
| ) | |
|     Defendants, ) | |
| ) | |
| AND RELATED ACTIONS ) | |

## MEMORANDUM AND ORDER

This matter is before me on Plaintiff Blue Buffalo's objection to Special Master Bradley A. Winters's Omnibus Order No. 12, ECF No. [1633]. Defendants Wilbur-Ellis and Diversified Ingredients ("Diversified") have filed responses. For the reasons explained below, I will overrule the objection and adopt the order of the Special Master.

## BACKGROUND

In Omnibus Order No. 12, the Special Master granted Blue Buffalo's motion to compel the billing rates for the defendants' four most expensive outside counsel from the Nestlé Purina and class action lawsuits and the government's related criminal investigation (the "collateral proceedings"). He did not, however, order

1

production of information about fees expended and work performed by all defense counsel in the collateral proceedings.  Blue Buffalo objects to this determination, arguing that "it is entitled to explain to a jury that Defendants used their own employees to cover-up [sic] their illegal scheme and hide the truth…Defendants' lawyers are no different.  Blue Buffalo is entitled to tell the jury that Defendants used their lawyers to carry out their strategy of deny and delay."  To make this showing, Blue Buffalo contends that it must be able to discuss the fees that the defendants' lawyers were paid, including information or summary information from the collateral proceedings that consists of counsels' hourly rates; the total amount of fees each defendant spent; and information about the work that counsel performed.

In their responses to the objection, Wilbur-Ellis and Diversified argue that this issue was previously resolved in Omnibus Order No. 6 and is squarely governed by the United States Court of Appeals for the Eighth Circuit's decision in <u>Burks v. Siemens Energy & Automation, Inc.</u>, 215 F.3d 880 (8th Cir. 2000).[1]

## **ANALYSIS**

*Omnibus Order Nos. 6 and 12*

In Omnibus Order No. 6, the Special Master addressed Blue Buffalo's request for discovery of Wilbur-Ellis's and Diversified's fee records to support the

---

[1] Additionally, Diversified argues that Blue Buffalo has not attempted to distinguish between its alleged conduct and that of Wilbur-Ellis, and has instead conflated the defendants' behavior.

reasonableness of Blue Buffalo's claimed damages.  He concluded that <u>Burks</u> is the

"controlling authority for this issue" and further explained:

> [T]he Fees as Damages sought here by Blue Buffalo differ in significant
> ways from the traditional "prevailing party" contractual and statutory
> fee awards which are properly the subject of Fed. R. Civ. P. 54(d) post-
> trial motions.  The fees sought as damages here were incurred in
> litigation involving different claims (from those made by Blue Buffalo
> here), asserted against Blue Buffalo by different parties (from those
> sued by Blue Buffalo here) with different counsel (from those
> representing BB's adversaries here).  Either the Court or a jury will
> decide whether the Fees as Damages sought by Blue Buffalo are
> reasonable and whether they were incurred due to Wilbur-Ellis's or
> Diversified's conduct. The time entries of Wilbur-Ellis's and
> Diversified's counsel in this case (where Blue Buffalo seeks to recover
> fees spent defending the Nestlé Purina and class action claims) offer
> nothing of value to a finder of fact (or law) attempting to decide whether
> Blue Buffalo's counsel's Fees as Damages were reasonable or incurred
> due to the conduct of Wilbur-Ellis or Diversified.

ECF No. [1602 at 9].

He concluded:

> The C.S.M. believes that Blue Buffalo's jump from "*litigation tactics
> are discoverable*" to "*therefore, Defendants' legal bills and billing
> records must be turned over to Blue Buffalo*," is a syllogistic leap too
> far. Blue Buffalo cites many cases, but none that reach the conclusion
> that because litigation tactics are discoverable, defendants' legal bills
> and billing records are also discoverable.

ECF No. [1602 at 11].

Blue Buffalo filed an objection to this order.  After reviewing Omnibus Order

No. 6 and the parties' briefs, I issued an order overruling the objection and adopting

the Special Master's conclusions about the discoverability of Wilbur-Ellis's

3

attorneys' fees related to this litigation.  However, I allowed the parties to submit additional briefs concerning the discoverability of fee information from the collateral proceedings.  This led to the issuance of Omnibus Order No. 12, in which the Special Master concluded:

> Thus, I stand by the observation "that Blue Buffalo's jump from '*litigation tactics are discoverable*' to '*therefore, Defendants' legal bills and billing records must be turned over to Blue Buffalo*,' is a syllogistic leap too far."
>
> And I still believe that the Eighth Circuit's 2000 decision in *Burks v. Siemens Energy & Automation, Inc*. is the controlling authority for this issue.
>
> Notwithstanding the foregoing, to assure that the parties and the Court have benchmark "reasonableness" information available to them, I will Order the Defendants to provide certain very limited information set forth below.
>
> **IT IS THEREFORE HEREBY ORDERED** that Blue Buffalo's motion "for information regarding Defendants' attorney fee invoices" is **DENIED WITHOUT PREJUDICE** except that Defendants shall each provide Blue Buffalo with the names and hourly billing rates of their four (4) outside counsel in this litigation with the highest hourly rates between May 1, 2014 and May 31, 2015.

ECF No. [1633 at 15].

*Governing standard for theory of relevance*

Wilbur-Ellis and Diversified agree with the Special Master's conclusion that the Eighth Circuit's analysis in <u>Burks</u> governs this issue.  Blue Buffalo disagrees, citing three Eighth Circuit cases, in addition to one district court case, in support of its argument that courts may permit discovery of an opponent's attorneys' fees to

4

prove the reasonableness of a party's requested fees.  See Tussey v. ABB, Inc., 746 F.3d 327, 340-41 (8th Cir. 2014) (upholding trial court's award of attorneys' fees, which considered the hourly rate of defendant's lawyers and plaintiff's lawyers, in the lodestar calculation); Craik v. Minn. State Univ. Bd., 738 F.2d 348, 349 (8th Cir. 1984) (concluding that "the amount of time spent by defendants is a relevant factor, and in some cases can result, when considered with other circumstances, in a reduction of the time for which plaintiffs' counsel are entitled to be compensated"); Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1220 (8th Cir. 1981) (noting, without explaining whether discovery into the issue had actually occurred, that the attorneys' fees awarded to plaintiff's counsel seemed "appropriate and reasonable, as [defendant's controlling shareholder] testified at trial that [defendant] had expended close to one million dollars in attorney fees in this case"); Kademani v. Mayo Clinic, 2012 WL 6014775, at *1 (D. Minn. Dec. 3, 2012) (recognizing that "an opposing party's fees and hours are far from dispositive of the reasonableness of a prevailing party's fees and hours" but concluding that discovery of defendant's billing records "may have some bearing on the reasonableness of [plaintiff's] fees and hours because, among other reasons, the two sides worked on identical factual and legal issues and the attorneys work in the same legal market").[2]

---

[2] Kademani cited Dependahl but did not acknowledge Burks.

In <u>Burks</u>, the plaintiff appealed the district court's reduction of his counsel's requested attorneys' fees, arguing that the district court should have compared the fees requested to the fees that defense counsel charged.  The Eighth Circuit disagreed, finding that "[s]uch an apples-to-oranges comparison is not required by law and would not be advisable."  215 F.3d at 884.  The court explained that the plaintiff's requested analysis would "not make sense" because "making such a comparison—where the benchmark for the award of plaintiff's attorney fees is 'reasonableness'—would require the trial court to first determine whether the defendant's counsel billed a reasonable amount."  <u>Id.</u>  <u>Burks</u> does not forbid courts from *ever* considering one party's attorneys' fees when determining the reasonableness of another's fees.  However, the case is clear that even if a court *can* make this comparison, it generally should not.

My review of subsequent case law further supports this reading of <u>Burks</u>. Several district courts in this circuit have cited <u>Burks</u> when declining to compare attorneys' fees.  <u>See</u>, <u>e.g.</u>, <u>McKeage v. Bass Pro Outdoor World, LLC</u>, 2018 WL 10648681, at *3 (W.D. Mo. Nov. 8, 2018); <u>Harris v. Chipotle Mexican Grill</u>, 2018 WL 617972, at *7 n. 5 (D. Minn. Jan. 29, 2018); <u>Safelite Grp., Inc. v. Rothman</u>,

---

Blue Buffalo contends that the Eighth Circuit "refused to follow <u>Burks</u> and returned to the reasoned positions of <u>Craik</u> and <u>Dependahl</u>" in <u>Tussey</u>.  However, <u>Tussey</u> did not cite <u>Burks</u>, <u>Craik</u>, or <u>Dependahl</u> and merely discussed the district court's award of attorneys' fees without providing substantive analysis on the issue.

2017 WL 3495768, at *8 (D. Minn. Aug. 11, 2017); Ewald v. Royal Norwegian Embassy, 2015 WL 1746375, at *15 (D. Minn. Apr. 13, 2015); Gay v. Saline Cty., 2006 WL 3392443, at *3 (E.D. Ark. Oct. 20, 2006); Mock v. S. Dakota Bd. of Regents, 296 F.Supp.2d 1061, 1066 (D.S.D. 2003).

The Eighth Circuit has not cited Tussey, Craik, or Dependahl for the proposition that Blue Buffalo urges, and only a handful of district courts in this circuit have relied on those cases since Burks was decided in 2000. See, e.g., Tussey v. ABB, Inc., 2012 WL 5386033, at *4 (W.D. Mo. Nov. 2, 2012) (citing Dependahl and stating that "comparison of Plaintiffs' requested fees to the fees Defendants paid their attorneys may also be relevant to determining reasonableness" in the lodestar calculation); U.S. ex rel. Thompson v. Walgreen Co., 621 F.Supp.2d 710, 729 (D. Minn. 2009) (citing Dependahl and explaining that "[t]he Eighth Circuit has referenced differentials in bills and hourly rates between litigants in addressing appeals of the awards of attorney's fees"); Brown v. Miss Elaine, Inc., 2003 WL 21517919, at *1 (E.D. Mo. Apr. 17, 2003) (citing Craik while explaining that "[t]he Eighth Circuit and the Eastern District of Missouri have recognized that the fees charged to one party by its attorneys is relevant to the reasonableness of the fees charged to the opposing party by its attorneys"). None of these cases even

acknowledged <u>Burks</u>.  They appear to be outliers and I decline to follow their lead in this case.[3]

Even if Blue Buffalo's reading of <u>Burks</u> was correct—namely, that "[t]he most [the case] stands for is that permitting the discovery of a defendant's attorney's fees is within the broad discretion of the district court"—I do not believe that comparing attorneys' fees would be appropriate in this case because I agree with the Special Master's finding that the parties were not engaged in the same kind of work in the collateral proceedings.  The Special Master explained this finding in Omnibus Order No. 6 and reiterated it in Omnibus Order No. 12, stating: "[w]hile Blue Buffalo and Wilbur-Ellis may not have been aligned as adversaries in the Collateral Proceedings pleadings until May 19, 2015 [when Blue Buffalo named Wilbur-Ellis and Diversified as third-party defendants in its answer to Purina's Third Amended Complaint], they were still, qualitatively and quantitatively, in very different

---

[3] Blue Buffalo also cited an unpublished memorandum and order, <u>Gilbert v. Monsanto Co.</u>, 4:95-cv-1180-CDP (E.D. Mo. Mar. 27, 2001), ECF No. [98].  In this order, Judge Catherine Perry explained why she "ordered limited discovery of Monsanto's fees in connection with the motion to enforce the settlement" after Monsanto contested the reasonableness of the fees requested for that portion of the case:

> Certainly, a simple "comparison" between Monsanto's fees and Gilbert's fees is not an appropriate method for me to determine a reasonable fee award in this case.  But when Monsanto claims that the fee application is unreasonable because no client would (or should) pay for internal conferences between lawyers, I find it probative that Monsanto in fact paid for 61 of such internal conferences between its Thompson Coburn lawyers. I also believe that the exchange of ideas and information between attorneys working on the same matter is an integral part of the litigation process.  <u>See Emmenegger v. Bull Moose Tube Co.</u>, 33 F.Supp.2d 1127, 1139 (E.D. Mo. 1998).  Judging by the number of internal conferences billed by Thompson Coburn for this matter, Monsanto must agree.

positions." ECF No. [1633 at 11]. Although Blue Buffalo argues that "the parties were working on the same legal and factual issues…analyz[ing] the same information and documents," and "collecting and producing documents and responding to the Government's requests" throughout the collateral proceedings, they were not performing "similar work." This conclusion is supported by the helpful list supplied by Diversified's counsel, which sets forth differences between Diversified's conduct and that of Blue Buffalo throughout the course of the collateral proceedings. ECF No. [1633 at 9-10] (noting, for example, that during this time period, Blue Buffalo defended against Purina's claims of false advertising and violations of the Lanham Act, while Diversified did not; and Diversified brought cross claims and third-party claims against Wilbur-Ellis and Custom AG Commodities, LLC, and engaged in discovery disputes in other courts, while Blue Buffalo did not).[4] It makes sense to compare fees, or even allow discovery into the issue, when parties are litigating against one another in the *same case*. See, e.g.,

---

[4] Counsel for Wilbur-Ellis explained how it and Blue Buffalo were also in different positions during the collateral proceedings, writing to the Special Master:

> …Wilbur-Ellis's costs defending itself against criminal charges are in no way a legitimate proxy for, or logically comparable to, Blue Buffalo's costs incurred while voluntarily participating in that investigation as a non-defendant and alleged victim. Nor is there any reason to believe that, in late 2014 and early 2015, the costs Wilbur-Ellis incurred responding to third party subpoenas as a non-party in the present action would bear any resemblance to what Blue Buffalo spent defending against Purina's much broader claims as a defendant before Judge Sippel, let alone shed any light on the reasonableness of Blue Buffalo's fees for defending against Purina's claims.

ECF No. [1633 at 8].

Kademani, 2012 WL 6014775, at *1 (discovery of opposing counsel's attorneys' fees was relevant because "the two sides worked on identical factual and legal issues and the attorneys work in the same legal market").  But here, such a comparison would not speak to the reasonableness of Blue Buffalo's requested attorneys' fees, as the parties were not engaged in the same work in the collateral proceedings.

However, Blue Buffalo contends that "regardless of whether Blue Buffalo and Defendants were performing similar work in the Collateral Proceedings," the requested fee information possesses independent relevance and is therefore discoverable under Federal Rule of Civil Procedure 26.  Specifically, Blue Buffalo contends that the fee information will aid the jury's causation and punitive damages assessments.  In support, Blue Buffalo cites CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 499 F.3d 184, 195 (3d Cir. 2007) and Rasidescu v. Globe College, Inc., 2005 WL 8164751 (D. Minn. June 8, 2005) for the proposition that "[w]hen a party seeks punitive damages…evidence of litigation tactics and conduct intended to prolong and draw out the proceedings is relevant to that calculation." However, Blue Buffalo has not cited, and I have not identified, any cases indicating that a court has ordered the disclosure of a party's attorney billing records under these circumstances.  And while it is well-established that the reprehensibility of a defendant's conduct is relevant to assessing punitive damages, I do not wish to seemingly endorse the position that Blue Buffalo appears to advance—namely, that

mounting a vigorous defense can or should be viewed as evidence of sinister or nefarious behavior.  Without commenting specifically on the propriety of Wilbur-Ellis and Diversified's conduct in the collateral proceedings, I emphasize the Special Master's assertion that "[u]nder our system of justice, the vigor and extent of a party's defense is not evidence of that party's guilt."  ECF No. [1633 at 10].

The Special Master ordered the production of "certain very limited" fee information from defense counsel "to assure that the parties and the Court have benchmark 'reasonableness' information available to them."  I believe that was appropriate.  Requiring the production of any further fee information from the collateral proceedings, particularly time entries detailing the work that defense counsel performed, is "not required by law and would not be advisable."[5]  Burks, 215 F.3d at 884.  As a result, I will overrule Blue Buffalo's objection and adopt the Special Master's Omnibus Order No. 12 in its entirety.

Accordingly,

---

[5] In their response briefs, Wilbur-Ellis and Diversified both argued that portions of the fee information that Blue Buffalo requested would be protected by the work product privilege and/or the attorney-client privilege.  The Special Master also indicated, in Omnibus Order No. 6 and Omnibus Order No. 12, that some of the information would likely be privileged and the billing records, if produced, would have to be redacted.

Because I have determined that the requested fee information will not be compelled, I need not address the issue in detail.  However, I agree that the records, if compelled, would likely be redacted—especially the time entries, which would seem to be most crucial to proving Blue Buffalo's claims.

**IT IS HEREBY ORDERED that** Blue Buffalo's objection to Omnibus

Order No. 12, [1635], is **OVERRULED.**

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 20th day of December, 2021.