UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BLUE BUFFALO COMPANY, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 4:14 CV 859 RWS |
| WILBUR-ELLIS COMPANY, LLC ) | |
| and DIVERSIFIED INGREDIENTS, ) | |
| INC., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| AND RELATED ACTIONS ) | |

### **MEMORANDUM AND ORDER**

This matter is before me on Defendant Wilbur-Ellis's objection to Special Master Bradley A. Winters's Omnibus Order No. 11, ECF No. [1649]. For the reasons explained below, I will overrule the objection in part.

### **BACKGROUND**

In Omnibus Order No. 11, the Special Master resolved the privilege status of the 168 documents on Wilbur-Ellis's Peppercomm Documents Privilege Log. Wilbur-Ellis objects to 15 of these determinations. The Special Master found that the communications at issue were not privileged, writing either "PRIVILEGE OBJECTION OVERRULED" or:

> PRIVILEGE OBJECTION OVERRULED. See June 16, 2015 Order, Dkt. No. 363, at 3-4. ("Additionally, materials [shared with a public

1

relations firm] generally will not qualify as protected work product unless they were prepared by or for counsel, in anticipation of litigation, and discuss Purina's litigation – as opposed to public relations or brand – strategy. This is true even if the public relations and brand strategy is related to this suit.").

Wilbur-Ellis argues that these 15 communications are privileged. The communications fall into one of two categories: (1) documents that Wilbur-Ellis employees created or compiled for and at the direction of counsel; and (2) Wilbur-Ellis's in-house counsel's substantive edits to and commentary about draft press statements.

## ANALYSIS

### I. *Documents that Wilbur-Ellis employees created or compiled for and at the direction of counsel*

Documents 376, 524, 526, 594, 595, 606, and 607 fall into this first category. Wilbur-Ellis represents that these documents are no different from Document 541, which the Special Master deemed privileged in Omnibus Order No. 11. Before issuing his order, the Special Master asked Wilbur-Ellis to explain why it asserted privilege over Document 541. Wilbur-Ellis recited the well-known principle that the work product privilege extends to material prepared by an attorney's agents as well as those prepared by an attorney herself. United States v. Nobles, 422 U.S. 225, 238 (1975). The Special Master accepted this argument and sustained Wilbur-Ellis's claim of privilege. Now, Wilbur-Ellis contends that the Special Master erred in not applying that same standard to the other documents in this category.

2

As a threshold matter, with the exception of one document which will be discussed below, Wilbur-Ellis has not presented any evidence demonstrating that its in-house counsel, Mr. David Granoff, requested this information or directed its compilation. Wilbur-Ellis submitted the specific documents at issue for my review, as ordered, but based on the record before me, I cannot determine that most of the documents were actually created or compiled at Mr. Granoff's direction.

Document 376 is a PDF attachment to Document 375, which the Special Master deemed privileged and which Wilbur-Ellis did not submit for my review. The documents are from 2013 with a "last printed" date of January 4, 2016. Assuming that Mr. Granoff directed the compilation of these documents, based on the date, it does not appear that they were prepared in anticipation of litigation. Rather, it appears that they were produced in the ordinary course of business. See Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987) (the work product privilege protects from disclosure only documents that were prepared in anticipation of litigation, which is "clearly a factual determination").

Document 524 is also a PDF attachment.[1] It contains a letter from Rob Fullerton, President of Wilbur-Ellis's Feed Division to Dig Gurung, Commodities Manager, Operations of WellPet about Wilbur-Ellis's turkey meal product. It also contains a document titled "WellPet LLC Raw Material Specification," dated May

---

[1] Documents 524 and 526 appear identical.

3

21, 2014.  There is no indication that Mr. Granoff ordered the compilation of these documents, or reviewed, edited, and provided legal advice about them, such that either the work product or attorney-client privilege prevent their disclosure.

Documents 606 and 607 are an email, dated July 21, 2015, and an attached bill of lading dated May 24, 2011.  The bill of lading reflects 25 tons of chicken meal blend shipped to Custom AG Commodities, LLC.  It does not appear that the bill of lading was prepared in anticipation of litigation.  Furthermore, the email, which was neither written nor received by Mr. Granoff, simply informs that the document was "missing" and was recently discovered.  Neither document is entitled to work product protection.

However, I find that Documents 594 and 595—another email and PDF attachment—are protected work product. Document 595 specifically states that it was created at counsel's request "as a follow-up" to an earlier assessment.  Because these documents appear to have been created in anticipation of litigation, and at counsel's clear request, Wilbur-Ellis's privilege objection is sustained.

> II.  *Documents containing Wilbur-Ellis's in-house counsel's substantive edits to and commentary about draft press statements*

Documents 131, 535, 579, 580, 657, 658, 660, and 661 are included in this category.[2]  Wilbur-Ellis maintains that these documents are opinion work product

---

[2] Wilbur-Ellis notes that Documents 131 and 535 are the same.

4

entitled to "almost absolute immunity" from discovery because "Mr. Granoff's substantive communications and edits to these draft press releases reflect his mental impressions concerning the relevant facts and what statements might or might not elicit potential liability." See Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000) (ordinary work product, which "includes raw factual information," is discoverable if the party seeking discovery "has a substantial need for the materials and…cannot obtain the substantial equivalent of the materials by other means," while opinion work product, which "includes counsel's mental impressions, conclusions, opinions or legal theories…enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances"). In these documents, according to Wilbur-Ellis, "Mr. Granoff characterizes and highlights his view of certain underlying facts, including by expressly summarizing litigation positions and related strategy or implicitly through substantive revisions."

After reviewing these documents, I find that this characterization of Mr. Granoff's contributions is inaccurate. The first of these communications, Document 131, is titled "Statements Re: Diversified Ingredients – if they go public and name us." The document, which is dated one month after Nestlé Purina filed suit, contains one short paragraph directed at Diversified Ingredients and another aimed at the press. It appears that Mr. Granoff deleted one sentence from the second paragraph. This minor editing of a public-facing document does not rise to the level of

privileged attorney work product and does not demonstrate that Mr. Granoff was rendering legal advice. See Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc., 2004 WL 1299042, at *10 (E.D. La. June 4, 2004).

Documents 579 and 580 are an email and attached Word document titled "FAQ." The document, which states that it was last updated on October 10, 2014, contains 32 questions that Wilbur-Ellis seemingly believed it might have to answer about the Purina litigation. Mr. Granoff reviewed and edited some of the responses and added a few questions of his own. Like the previous document, this is an outwardly facing communication, aimed at the general public, that discusses the Purina litigation for public relations/brand strategy purposes. The edits made by Mr. Granoff largely concern grammar, style, and public relations and do not communicate his "mental impressions, conclusions, opinions, or legal theories…concerning the litigation." Fed. R. Civ. P. 26(b)(3).

Finally, Documents 657, 658, 660, and 661 originate from the same email chain concerning a September 2016 segment about pet food on The Dr. Oz Show. The emails discussed how Wilbur-Ellis would respond publicly if the show referenced the Purina litigation. The communications were made in anticipation of potential bad publicity *related to* the Purina litigation—not in anticipation of litigation itself—and Mr. Granoff did not render legal advice.

Having carefully reviewed the documents at issue, I will overrule Wilbur-Ellis's objection and adopt the Special Master's Omnibus Order No. 11 in its entirety except with respect to Documents 594 and 595.

Accordingly,

**IT IS HEREBY ORDERED that** Wilbur-Ellis's objection to Omnibus Order No. 11, [1656], is **OVERRULED** except with respect to Documents 594 and 595. Those privilege objections are **SUSTAINED**.

                                        */s/ Rodney W. Sippel*
                                        RODNEY W. SIPPEL
                                        UNITED STATES DISTRICT JUDGE

Dated this 1st day of March, 2022.