UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BLUE BUFFALO COMPANY, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 4:14 CV 859 RWS |
| WILBUR-ELLIS COMPANY, LLC | ) | |
| and DIVERSIFIED INGREDIENTS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| AND RELATED ACTIONS | ) | |

## MEMORANDUM AND ORDER

Wilbur-Ellis has filed an objection to Special Master Bradley A. Winters's Omnibus Order No. 13, ECF No. [1663].  For the reasons explained below, I will sustain the objection in part and overrule it in part.

## BACKGROUND

In Omnibus Order No. 13, the Special Master completed an *in camera* review of Blue Buffalo's attorney time entries on its privilege logs.  According to Wilbur-Ellis, these redactions "make it impossible to evaluate…whether the work is recoverable as damages from Wilbur-Ellis and Diversified, or not."  Wilbur-Ellis further argues that Blue Buffalo has "placed the time entries describing [its] legal work 'at issue,' and thus waived all protections that might have applied in the

absence of such a damages claim" under <u>Pamida, Inc. v. E.S. Originals, Inc.</u>, 281 F.3d 726 (8th Cir. 2002).

In its response to the objection, Blue Buffalo argues that the Special Master already addressed the scope of redactions for its attorney fee invoices in Omnibus Order No. 10 and that because Wilbur-Ellis did not object to the ruling then, it cannot be permitted to do so now.  Blue Buffalo contends that Wilbur-Ellis reads <u>Pamida</u> too broadly and that the case does not establish that a party waives all privileges by seeking attorneys' fees as damages.

## ANALYSIS

*Omnibus Order No. 10*

In Omnibus Order No. 10, the Special Master discussed the scope of privilege that Blue Buffalo could assert over its attorney time entry descriptions.  He expressed general agreement with Wilbur-Ellis's contention that "Blue Buffalo cannot demand that Wilbur-Ellis pay for a specific task while at the same time refusing to reveal what that task is."  ECF No. [1614 at 36].  However, he also acknowledged that some redactions might still be appropriate and concluded that an *in camera* review of the proposed redactions would be necessary.  He then offered "general guidance" about proper and improper redactions:

1.  The substance of communications between attorney and client may be privileged, but the fact of such communications is not.  Descriptions of such communications in a timesheet or attorney invoice will most likely not be deemed privileged.

2

2.  The identity of still-undisclosed consulting experts may be protectable, but not if the identity of that expert…is the only way to determine for which issues his expertise was sought…Aside from the identity of the non-testifying consulting expert, the subject matter of the work performed by a timekeeper on a given day relating to experts will most likely not be privileged—barring some kind of extraordinary disclosure of confidential information or sensitive attorney advice.

3.  The subject matter of work performed by a timekeeper on a given day will most likely not be privileged—barring disclosure of genuinely confidential information or sensitive attorney advice.

4.  The substance of communications with a mediator described in a timesheet or attorney invoice will most likely not be deemed privileged.

5.  Attorney tasks described in a timesheet or law firm invoice relating to federal investigations and grand jury proceedings will most likely not be privileged—barring disclosure of genuinely confidential information or sensitive attorney advice.

ECF No. [1614 at 47-49].

Wilbur-Ellis emphasizes that it "largely agrees" with the general guidance set forth in Omnibus Order No. 10 and filed the instant objection because it believes that some of the redactions ultimately permitted in Omnibus Order No. 13 are inconsistent with this general guidance.

Blue Buffalo argues that because Wilbur-Ellis did not object to this portion of Omnibus Order No. 10, it waived the right to do so and cannot now object to any specific privilege determinations made in Omnibus Order No. 13.  I disagree.  Rather than decisively resolve the issue, Omnibus Order No. 10 established a framework intended to help Blue Buffalo focus its redactions when submitting its attorney time

entries.  The Special Master had not reviewed any of Blue Buffalo's redactions at that time, and the order clearly indicated that he would do so in the future.  As a result, I find that Wilbur-Ellis did not waive its right to object to any of the Special Master's specific privilege determinations in Omnibus Order No. 13.

### *Pamida Inc. v. E.S. Originals, Inc.*

The Special Master did not discuss <u>Pamida</u> in Omnibus Order No. 13.  Wilbur-Ellis argues that this was error because "none of Blue Buffalo's specific justifications for its redactions overcome <u>Pamida</u> or provides a separate legitimate ground to withhold [the] information."

<u>Pamida</u> involved two lawsuits: a patent infringement suit, which Pamida (a shoe retailer) eventually settled for $475,000; and an indemnification suit, which Pamida brought against Dynasty Footwear, Inc. ("Dynasty") and several other shoe manufacturers before the patent suit settled.  The same law firm represented Pamida in both suits.  After the patent suit settled, Dynasty subpoenaed several of Pamida's attorneys, seeking their deposition testimony and documents to determine "what actions Pamida took to give Dynasty notice of the patent infringement suit and its claim for indemnity from Dynasty as well as whether the $750,000 in attorneys' fees sought by Pamida were reasonably incurred in defending the patent infringement action."   281 F.3d at 729.  Pamida filed a motion to quash the subpoenas; the district court granted the motion with respect to testimony and documents related to the

indemnification suit, but denied it with respect to testimony and documents related to the patent suit.  On appeal, the Eighth Circuit affirmed.

In reaching this conclusion, the court discussed the standard for deposing opposing counsel as established in Shelton v. Am. Motors Corp., 805 F.2d 1323 (8th Cir. 1986).  Under Shelton, the moving party must show that "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case."  Id. at 1327.  The Pamida court held that this standard applied to the indemnification suit but not to the concluded patent suit.  Pamida, 281 F.3d at 730.  As a result, Dynasty could depose opposing counsel and review the requested documents so long as it could "demonstrate that there has been a waiver of the attorney-client privilege and that the work product privilege has either been waived or that the standard of [Rule 26(b)(3)] has been satisfied."  Id. at 731.  The court held that under Nebraska state law, Pamida had impliedly waived the attorney-client privilege by filing the indemnification suit.  Id. at 732.  The court further found that Pamida also impliedly waived the work product privilege, not only because it sought indemnification, but also because "the interests [of] fairness and consistency mandate a finding of waiver."  Id.   The information sought "involve[d] crucial issues in the indemnification action," including the reasonableness of the attorneys'

fees claimed as damages, and Dynasty could not investigate "critical information" underlying the claims against it without a finding of implied waiver.  Id.

Blue Buffalo believes that Pamida merely establishes that waiver of privilege should be determined on a case-by-case basis.   It argues that Pamida is distinguishable from the instant case in two key respects: first, in Pamida, the prior litigation was "completely concluded," while the information sought here is "relevant to ongoing disputes;" and second, Pamida applied Nebraska law.  Id. at 731 (under Nebraska law, an implied waiver of the attorney-client privilege occurs when "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense") (quoting League v. Vanice, 374 N.W.2d 849, 856 (Ne. 1985)).   Finally, Blue Buffalo characterizes Pamida as an "aberration," correctly noting that it has received some criticism.  See UnitedHealth Grp. Inc. v. Columbia Cas. Co., 2010 WL 11537514 (D. Minn. Aug. 10, 2010) (explaining that "very few cases hold that an insurance policyholder waives work product protection merely by filing a coverage action…Further, Wright & Miller have noted that even as to non-insurance cases, Pamida and a small number of similar cases are *sui generis*, stating, '[t]hese cases do not fit within any sensible concept of waiver'")

6

(citing 8 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 2016.6, at 420-23 & 420 n. 20).

Although this is not a straightforward indemnification suit, I find Pamida instructive.  Wilbur-Ellis is correct that by seeking attorneys' fees as damages in this suit, Blue Buffalo has placed those fees at issue.  However, I disagree with Wilbur-Ellis's broad interpretation of the case—namely, "that merely by requesting attorney's fees and costs, every single document or conversation protected by the applicable privilege[s] has been waived."  Moldex Metric, Inc. v. 3M Co., 2015 WL 9859754, at *3 (D. Minn. Oct. 28, 2015) (rejecting plaintiff's assertion of blanket privilege over all requested documents but finding implicit waiver of privilege over certain documents "that contain vital information peculiarly possessed by the attorneys necessary to 3M to defend Moldex's claims").

*Redactions in Omnibus Order No. 13*

1. Entries containing information protected by the work product privilege

Most of the time entries at issue in this Order are redacted because they purportedly contain information protected by the work product privilege.  As I will discuss in detail below, many of the entries assert specific justifications for the invocation of the privilege (for example, some contain the names of non-testifying experts, or reference grand jury materials).  However, other entries are redacted

because they contain "counsel's thoughts and impressions about legal issues in this case"—a straightforward invocation of the work product privilege.

I have reviewed these entries and find that they mostly describe work done at a high level of generality.  They do not convey Blue Buffalo's attorneys' "mental impressions, conclusions, opinions, or legal theories…concerning the litigation" and therefore cannot be considered opinion work product that would be entitled to "almost absolute immunity."  Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000) (citation omitted).

As redacted, the entries at issue do not provide insight into the work that Blue Buffalo's attorneys performed such that Wilbur-Ellis could argue whether it is or is not responsible for these fees.  Wilbur-Ellis has no other way of obtaining this information and has a substantial need for it.  Id. at 1054; Fed. R. Civ. P. 26(b)(3).  Furthermore, I believe that "the interests of fairness and consistency mandate a finding of waiver."  Pamida, 281 F.3d at 732.

This ruling is consistent with the Special Master's guidance in Omnibus Order No. 10, particularly his advice that "[t]he subject matter of work performed by a timekeeper on a given day will most likely not be privileged—barring disclosure of genuinely confidential information or sensitive attorney advice."

2.  Entries containing names of non-testifying experts

The Special Master found that Fed. R. Civ. P. 26(b)(4)(D) allows Blue Buffalo to redact over 400 time entries containing the names of non-testifying experts and the subject of their work.  Wilbur-Ellis contends that this was error because it "has no other means of determining who Blue Buffalo's non-testifying experts were, the subject matters of their work, or whether all or some portion of their work related to subjects besides poultry byproduct meal."  It further argues that these redactions contradict the guidance provided in Omnibus Order No. 10.

Fed. R. Civ. P. 26(b)(4)(D) provides:

> (D) *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or
>
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

As an initial matter, it is unclear that the time entries here fall within the category of information that Rule 26(b)(4)(D) was designed to protect.  The time entries at issue do not reveal the "facts known or opinions held" by those experts.  Rather, the entries contain only names of non-testifying experts and very simple descriptions of their area of expertise.  See Manzo v. Stanley Black & Decker, Inc.,

9

2015 WL 136011, at *2 (E.D.N.Y. Jan. 9, 2015) ("Although the case law is not entirely uniform, the majority of courts hold that the identities of non-testifying experts, as opposed [to] the 'facts known or opinions held' by such experts, is governed by Fed. R. Civ. P. 26(b)(1)…As a result, identity information is discoverable without a showing of 'exceptional circumstances'") (citing Baki v. B.F. Diamond Constr. Co., 71 F.R.D. 179, 181-82 (D. Md. 1976)); Manjunath A. Gokare, P.C. v. Fed. Exp. Corp., 2012 WL 3136668, at *2 (W.D. Tenn. Aug. 1, 2012) (explaining that "Rule 26(b)(4)(D)…merely limits the discovery of the 'facts known or opinions held' by an expert witness unless exceptional circumstances are present" and "does not bar the disclosure of…the identity of a witness, and it does not negate the requirements under Rule 26(a)(1) and Rule 26(b)(1) that the identity of an individual that provides factual allegations in the complaint must be provided"). But see Ager v. Jane C. Stormont Hosp. and Training Sch. for Nurses, 622 F.2d 496, 503 (10th Cir. 1980); State Auto. Ins. Companies v. Briley, 140 F.R.D. 394, 397 (E.D. Mo. 1992). But to the extent that Rule 26(b)(4)(D) is applicable to this information, I find that there are exceptional circumstances justifying its disclosure. As redacted, the entries at issue do not provide insight into the work that Blue Buffalo's attorneys performed in connection with these experts. Wilbur-Ellis has no other way of determining what work was done. As a result, I will sustain Wilbur-Ellis's objection

to these time entries and order Blue Buffalo to produce unredacted versions.  Again, I find this ruling consistent with <u>Pamida</u> and Omnibus Order No. 10.

### 3. Entries describing work done in connection with federal grand jury proceedings

The Special Master permitted Blue Buffalo to partially redact approximately sixty time entries that contain descriptions of work relating to federal grand jury proceedings.  Wilbur-Ellis argues that there is no legal basis for these redactions. Blue Buffalo argues that Federal Rule of Criminal Procedure 6(e) and the work product privilege both protect this information from disclosure.   In support of its argument, Blue Buffalo emphasizes that "the Special Master and the Court have previously concluded that parties like Blue Buffalo—and Wilbur-Ellis and Diversified—are entitled to protect information under Rule 6" in ECF Nos. [1582] and [1583].

In July 2020, the Special Master issued Omnibus Order No. 1, ECF No. [1582], which recommended granting in part Blue Buffalo's request for production of grand jury materials.   The Special Master recommended that the United States produce specific grand jury materials—most of which were unavailable through any other means—for Blue Buffalo's review.[1]   I adopted this order in full.  ECF No.

---

[1] Among the materials not produced were documents that "may reveal the identities of cooperative witness[es] and the grand jury's inner workings," and those that could have been "secured by other means less corrosive to the grand jury process."  ECF No. [1582 at 24].

[1583].   The information that Blue Buffalo sought in that order is far different from the information it now seeks to protect.  Blue Buffalo does not cite, and I have been unable to identify, any authority suggesting that Fed. R. Crim. P. 6(e) protects attorney time entries merely referring to work done in preparation for grand jury proceedings from disclosure in a separate civil case.

The work product privilege does not provide a separate basis for permitting these redactions.  The entries do not communicate "mental impressions, conclusions, opinions, or legal theories…concerning the litigation" and therefore do not constitute opinion work product.  Fed. R. Civ. P. 26(b)(3); Baker, 209 F.3d at 1054. Furthermore, having reviewed the specific time entries at issue, I do not find that they communicate "genuinely confidential information or sensitive attorney advice," which the Special Master indicated might support a finding of privilege in Omnibus Order No. 10.

As a result, I will sustain Wilbur-Ellis's objection as to the time entries containing descriptions of work relating to federal grand jury proceedings.  Blue Buffalo must produce unredacted versions of these entries.

### 4. Entries containing information protected by the attorney-client privilege

Approximately twelve entries are redacted on the basis of attorney-client privilege.  Wilbur-Ellis argues that these redactions were improper under Pamida and further contends that the privilege does not apply because time entries

"infrequently if ever divulge the legal opinions expressed in the attorney-client communication itself."  Blue Buffalo emphasizes that <u>Pamida</u> does not control my analysis of these entries because under Missouri law, "seeking indemnification for attorney fees does not waive attorney-client privilege."  <u>Chipman v. Trans. Ins. Co.</u>, 2013 WL 796083, at *6 (E.D. Mo. Mar. 4, 2013) (citing <u>State ex. rel. Chase Resorts, Inc. v. Campbell</u>, 913 S.W.2d 832, 837 (Mo. Ct. App. 1995)).

I find that the redactions the Special Master permitted were appropriate and will overrule Wilbur-Ellis's objection as to these twelve entries.

### 5. <u>Entries containing names of individuals considered for depositions and names of Blue Buffalo employees interviewed by counsel</u>

The Special Master permitted redactions to twenty entries containing the names of individuals Blue Buffalo considered for depositions.  He also permitted redactions to a "handful" of other entries containing the names of Blue Buffalo employees contacted by counsel.  Wilbur-Ellis argues that no authority justifies these redactions and that the unredacted entries must be produced because "[i]n the underlying lawsuits, some potential deponents were relevant to the byproduct-related claims while other potential (and actual) deponents had no plausible connection with those claims."  Blue Buffalo contends that revealing these individuals' names will provide insight into its litigation strategy, and that these names "have no bearing on the ***subject*** of each billing entry, and thus provide no insight into the work Blue Buffalo performed (and whether that work related to

byproduct, corn, or soy—the purported need Wilbur-Ellis offers for demanding unredacted bills).”

I agree that the names of individuals interviewed or considered for deposition may reveal some insight into counsel's litigation strategy.  However, the redacted entries leave Wilbur-Ellis without knowledge of the work done in connection with these conversations.  Wilbur-Ellis is entitled to this information.  The entries must be produced without redacted names.

*Rulings on two entries left unresolved by the Special Master*

The Special Master declined to rule on two entries.  I have carefully reviewed both entries.  The proposed redaction for the email written by "CC" and dated April 2, 2015 is permitted, as it contains privileged information.  However, the April 14, 2015 email written by "SAZ" must be produced in its entirety.

Accordingly,

**IT IS HEREBY ORDERED that** Wilbur-Ellis's objection to Omnibus Order No. 13, [1673], is **SUSTAINED,** except with respect to Blue Buffalo's attorney time entries invoking the attorney-client privilege.  That portion of the objection is **OVERRULED.**

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 16th day of September, 2022.