UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BLUE BUFFALO COMPANY, LTD., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   No. 4:14 CV 859 RWS |
| WILBUR-ELLIS COMPANY, LLC | ) |
| and DIVERSIFIED INGREDIENTS, | ) |
| INC., | ) |
| | ) |
|     Defendants, | ) |
| | ) |
| AND RELATED ACTIONS | ) |

## MEMORANDUM AND ORDER

Non-Party Witness William Douglas Haning has filed an objection to the Special Master's Order No. 17. (Doc. 1752). For the reasons set forth below, Haning's objection will be overruled.

## BACKGROUND

Haning is a former employee of Defendant Wilbur-Ellis Company, LLC, and he was previously named as a third-party defendant in this case. Haning is also a former client of Covington & Burlington, LLP—one of the law firms serving as counsel of record for Wilbur-Ellis. Covington's representation of Haning began in the fall of 2015 when Haning agreed to be jointly represented with Wilbur-Ellis and

two other Wilbur-Ellis employees. The engagement letter that Covington sent to Haning and the other Wilbur-Ellis employees stated:

> Dear Messrs. Haning, Rychlik, and Harwell:
>
> We are pleased to represent each of you with respect to *Nestlé Purina Petcare Co. v. Blue Buffalo Co., Ltd.*, No. 4:14-cv-00859 (RWS), currently pending in U.S. District Court in the Eastern District of Missouri (the "Litigation"). As you know, each of you has been named as a third-party defendant to claims asserted by Diversified Ingredients, Inc. in the Litigation. In addition, **each of you may be called as a witness with respect to the Litigation or to parallel class action litigation also pending in the Eastern District of Missouri**. We do not undertake to represent you in connection with any matter other than the Litigation or the class action litigation.
>
> As you know, **we are already representing Wilbur-Ellis with respect to the Litigation as well as the class action litigation and related matters** and, if you agree, we would jointly represent each of you together with Wilbur-Ellis with respect to the Litigation as described above. Wilbur-Ellis Company has agreed to pay our fees and expenses incurred in representing you, so we will not be charging you for this representation.
>
> You each have the option of hiring your own counsel, who would represent only you and not any of the other[s] we would represent jointly. We understand that Mr. Haning and Mr. Harwell have each done so and will be separately represented by their respective individual counsel in addition to being jointly represented by our firm. And, each of you could and should consider retaining separate counsel at any time you wish to obtain legal advice about this matter from an attorney whose only responsibility is to you. Being jointly represented, on the other hand, obviously provides certain strategic and other advantages, including savings over the costs that otherwise would be incurred were each party to retain separate counsel. But it also has implications of which each of you should be aware. Notably, there may be circumstances where it could be preferable for you to have separate counsel. There are issues where your interests and those of Wilbur-Ellis may conflict or potentially conflict as the Litigation proceeds.

These could include the scope of employment of Rosser employees, the scope of awareness at American By-Product and Wilbur-Ellis as to any alleged wrongdoing by Rosser employees, the force and content of policies of American By-Product and Wilbur-Ellis, to name a few.  In addition, **in order to develop fully the factual record relevant to potential defenses for Wilbur-Ellis or one of you, we may need to seek information from you or to ask you questions in deposition**. Notwithstanding these potential issues, each of you has expressed that, to coordinate a defense to Diversified Ingredients' claims and the Litigation generally, and to keep legal costs to a minimum, you wish our law firm to represent each of you in a joint representation with, along with Wilbur-Ellis.

It is also possible that, in the course of our representation, matters for decision may arise on which one or more of you and Wilbur-Ellis do not agree, such as whether to accept a global settlement proposal, what strategy to take with respect to a particular issue, or some other issue for decision.  If such a disagreement emerges and cannot be satisfactorily resolved among you, we will not be able to represent all of you with respect to the issue in dispute.  In such an event, we might be obliged to discontinue representing you, though we would be free to continue representing Wilbur-Ellis.  Accordingly, **if a matter of adversity arises between you and Wilbur-Ellis, you agree that we will have the right to (a) terminate our representation of you, and (b) continue to represent Wilbur-Ellis with respect to the Litigation**.

We have confirmed from our records that we do not have any outstanding representation of another client on any matter that is adverse to you. Without your prior consent, we will not undertake any adverse representation in the future in a matter that is substantially related to this matter.  In addition, you consent to our representing clients in the following two circumstances, in each case provided that the matter on which we represent another client is not substantially related to any matter in which we represent or previously represented you: First, you consent to our representing another client in a transactional, counseling, litigation, legislation or other matter in which the other client is adverse to you.  Second, with respect to a party who is adverse to you in a matter in which we do represent you, you consent

3

to our representing that party as a client in another matter in which it is not adverse to you.

**You understand and agree that there will be no confidences between us and Wilbur-Ellis regarding our work in connection with this joint representation**. In other words, **if we receive any confidential information from or about you that we believe Wilbur-Ellis should have in order to make decisions regarding the subject of your representation, we will give it that information**. On the other hand, if Wilbur-Ellis requests that we not provide you with certain information, we will keep that information from you and continue to represent you so long as we believe that we can do so without there being any adversity between you and Wilbur-Ellis and that we can adequately represent your interests. **Although, as described, the attorney-client privilege may not apply as between you and Wilbur-Ellis, it will still have application with regard to the rest of the world, and we will not disclose any of your confidences to third parties without your consent**.

…

…

I trust this letter accurately states our mutual understanding. If you have questions about any aspect of it, please let me know promptly; otherwise, I would appreciate your confirming our understanding by signing and returning a copy of this letter to me. In addition, you may wish to consult independent counsel of your choice about the disclosures made and the conflicts of interest sought in this letter.

This engagement letter was sent to Haning, through Haning's independent counsel, on September 28, 2015. Haning signed and returned the engagement letter, again through his independent counsel, on October 2, 2015. Covington then represented Haning until it notified him in March 2016 that it could no longer represent both his interests and the interests of Wilbur-Ellis. The claims against

4

Haning in this case were later dismissed, though Haning did plead guilty to two related federal charges in October 2019.

Earlier this year, on July 22, 2022, Haning received a notice of deposition from counsel for Plaintiff The Blue Buffalo Company, Ltd. for a deposition scheduled for August 23, 2022. In response, Haning inquired into whether Covington intended on participating in the deposition. Covington confirmed that it intended on participating and, shortly thereafter, sent Haning a cross-notice of deposition and a subpoena on behalf of Wilbur-Ellis. Haning responded to the cross-notice of deposition and subpoena by noting that he disputed Covington's ability to depose him as a former client.

After the parties agreed to postpone Haning's deposition, Haning submitted to the Special Master a motion for a protective order preventing Covington from deposing him, claiming that Rule 4-1.9 of the Missouri Rules of Professional Conduct precludes Covington from taking such action.[1] The Special Master denied Haning's motion in Order No. 17, which was entered on September 26, 2022.

---

[1] Haning asserts that the Special Master's Order No. 17 incorrectly claims that he is seeking to preclude Wilbur-Ellis from deposing him. (Doc. 1752 at p. 5 n.3). According to Haning, "[he] has never claimed that Wilbur-Ellis is disqualified from taking his deposition—his claim has always focused on his former counsel." (Id.) The motion submitted to the Special Master is not in the record before me, so the discussion in this Memorandum and Order will proceed based on Haning's assertion and address only whether Haning has established "good cause" for the issuance of a protective order barring Covington from deposing him.

5

Haning then filed a timely objection to the Special Master's Order No. 17 pursuant to Rule 53(f) of the Federal Rules of Civil Procedure.

Haning argues that the Special Master's Order No. 17 is erroneous in three respects: (1) "the Order unjustifiably places a burden on Haning to prove that Covington has received confidential and privileged information from him by disclosing those very confidential and privileged communications;" (2) "the Order incorrectly concludes that 'without proof' Covington will reveal information relating to its representation of Haning at a deposition, there is no basis to bar Haning's former lawyers from deposing him;" and (3) "the Order is imprecise concerning whether Missouri Rule of Professional Conduct 4-1.9(c) is waivable."

## DISCUSSION

Haning's objection to the Special Master's Order No. 17 will be overruled because Rule 4-1.9 of the Missouri Rules of Professional Conduct does not provide a basis for barring Covington from deposing him. Rule 4-1.9 provides that:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
>
>> (1) whose interests are materially adverse to that person; and

6

> (2) about whom the lawyer had acquired information protected by Rules 4-1.6 and 4-1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> > (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client or when the information has become generally known; or
> >
> > (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Mo. Sup. Ct. R. 4-1.9. In arguing that the Special Master's Order No. 17 is erroneous, Haning appears to rely on Rule 4-1.9(c). The discussion in this Memorandum and Order will therefore focus on that subsection. I will briefly note, however, that I agree with the Special Master's determination that Haning waived any complaints based on Rule 4-1.9(a) and (b) by providing informed consent, confirmed in writing.[2]

---

[2] As explained by the Special Master, the Covington engagement letter was clear that: (1) Haning could be a witness in this case; (2) Covington was already representing Wilbur-Ellis; (3) Covington could seek information from Haning or ask him questions in a deposition; (4) there would be no confidences between Covington and Wilbur-Ellis regarding Covington's work in connection with the joint representation; and (5) Covington retained the right to terminate its representation of Haning and continue representing Wilbur-Ellis if a matter of adversity between the two arose. Haning signed and returned the Covington engagement letter through his independent counsel. In light of these facts, I agree with the Special Master that Haning waived any complaints based on Rule 4-1.9(a) and (b) by providing informed consent, confirmed in writing.

7

Based on the record before me, I also agree with the Special Master's determination that Covington should not be barred from deposing Haning based on Rule 4-1.9(c).  Haning argues that there is a presumption under Rule 4-1.9 that he disclosed confidences to Covington during their attorney-client relationship.  While that may be true, see State ex rel. Thompson v. Dueker, 346 S.W.3d 390, 397 n.4 (Mo. Ct. App. 2011) (suggesting that there is a presumption in Rule 4-1.9 cases that confidences were disclosed during a prior attorney-client relationship), such a presumption does not resolve the specific question of whether Covington should now be barred from deposing Haning based on Rule 4-1.9(c).

Rule 4-1.9(c) prohibits lawyers from: (1) using information relating to the representation of a former client to the disadvantage of the former client except as the Rules of Professional Conduct would permit or require or when the information has become generally known; and (2) revealing information relating to the representation of a former client except as the Rules of Professional Conduct would permit or require.  Mo. Sup. Ct. R. 4-1.9(c).  Here, it is not apparent from anything in the record that Covington will use information relating to its representation of Haning (that has not become generally known) to his disadvantage or that Covington will reveal such information in his deposition, and Haning has not provided any real explanation of how Covington might do so.  Haning merely states, in cursory fashion, that "Covington cannot possibly depose [him] without using his confidences

8

against him to his disadvantage" and that "Covington now seeks to … disclose [his] confidences to the outside world without his consent. (Doc. 1752 at pp. 2–3).

Even accepting Haning's contention that there is a presumption that he disclosed confidences to Covington during their attorney-client relationship, I find that he has not made a sufficient showing that Covington is certain, or at least likely, to violate Rule 4-1.9(c) so as to justify barring Covington from deposing him. In the absence of such a showing, I find that Haning has not established "good cause" for the issuance of the protective order he seeks. See Fed. R. Civ. P. 26(c)(1) (a court may issue a protective order "for good cause").

Accordingly,

**IT IS HEREBY ORDERED** that Non-Party Witness William Douglas Haning's objection to the Special Master's Order No. 17 [1752] is **OVERRULED**.

_/s/ Rodney W. Sippel_
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 14th day of October 2022.